IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| KATHLEEN A. MARTIN,<br>   Plaintiff,<br><br>v.<br><br>MERCK & CO., INC., et al.<br>   Defendants. | CIVIL ACTION No.: 05CV11716-MLW |

**MEMORANDUM OF REASONS FOR GRANTING THE MOTION OF THE PLAINTIFF, KATHLEEN A. MARTIN, TO REMAND THIS ACTION TO THE ESSEX COUNTY SUPERIOR COURT OF MASSACHUSETTS**

I. **Introduction**

  This is an action alleging misrepresentation, medical monitoring, and unjust enrichment, under Massachusetts law, against Merck & Co., Inc., (hereinafter "Merck"), and an action alleging medical negligence against three medical doctors, Dr.'s Carr, Pinto-Powell and Millett, and breach of contract against their respective treatment centers, Dartmouth-Hitchcock Medical Center and Brigham and Women's Hospital. The action arises out of the ingestion of the drug VIOXX, by the plaintiff, and the prescription of VIOXX and other medications to the plaintiff by her treating physicians that had potentially known contraindications.

  Plaintiff was prescribed VIOXX on many occasions, from at least 2002 through 2004, and she ingested same pursuant to instruction from her treating physicians. See Complaint, Para.'s 53-55. Plaintiff's claims against the physician defendants center on the prescription of VIOXX in combination with other drugs, specifically aspirin, the effect of which was disclosed by VIOXX as potentially increasing the rate of GI ulceration or other complications. See Complaint, Para. 54 and

1

VIOXX Package Insert, Page 12, Attached hereto as Exhibit A.[1] Defendant Dr. Millet is a party to this action because he treated the plaintiff for a knee concern and recommended the ingestion by plaintiff of medications that he knew or should have known had dangerous contraindications. See Complaint, Para. 93-98.

On or about March 11, 2004, the plaintiff experienced severe gastrointestinal bleeding requiring the transfusion of twelve (12) units of packed red blood cells to promote her recovery.[2] See Complaint, Para. 57. She continues to suffer serious and debilitating health conditions as a result of the use of VIOXX, including elevated risk of stroke, elevated blood pressure, complications during knee surgery and other cardiac issues. See Complaint, Para. 58.

On August 31, 2004, a review of plaintiff's conditions by Dr. Samuel Goldhaber of Brigham and Women's Hospital led Dr. Goldhaber to conclude that, "Her GI bleeding was most likely due to the combination of Vioxx, aspirin and vitamin E and since she is no longer taking these, she should do well." See Dr. Goldhaber's Notes of August 31, 2004, Exhibit B hereto.

## II. Defendant Merck Cannot Show that there is Absolutely no Possibility that the Plaintiff will be able to Establish a Cause of Action Against the Non-Diverse Defendants in State Court

The crux of Merck's argument for fraudulent joinder, which is its sole basis for contesting its lack of complete diversity for purposes of removal, is contained within Paragraph 18 of its Notice of Removal, stating:

> "The Healthcare Defendants in this case are fraudulently joined for the same reason – the claims against them are fraudulently inconsistent with the claims against Merck and are not supported by specific factual allegations. On the one hand, Plaintiff alleges that Merck successfully misrepresented and concealed the risks of VIOXX from the general public and

---

[1] The VIOXX Package Insert states under the section "Precautions, Drug Interactions" "Aspirin: Concomitant administration of low-dose aspirin with VIOXX may result in an increased rate of GI ulceration or other complications, compared to use of VIOXX alone."

[2] A unit of blood is approximately one (1) pint. The average person has about twelve (12) units of blood.

the medical community, proximately causing his (sic.) injury. On the other, Plaintiff maintains that Drs. Powell and Carr should have known the information concerning the risks of VIOXX that she claims was hidden from everyone, including the medical community."

What Merck overlooks in its argument is that plaintiff's claims against the defendant physicians are based upon not only the prescription of VIOXX itself, but the <u>combination</u> of VIOXX with other medications, particularly aspirin, that have known or suspected contraindications, the combination of which may lead to GI ulceration and bleeding – the exact condition suffered by plaintiff. Merck did provide some notice of this "precaution" to the medical community. <u>See</u> VIOXX Package Insert, Page 12, attached hereto as Exhibit A. Merck's liability to the plaintiff stems from the concealment of the known harmful effects on an individual from a cardio standpoint. The claims against the separate defendants are not "fraudulently inconsistent" with the claims asserted against Merck, as Merck claims in its Notice of Removal.

The plaintiff submits, based upon the allegations against the defendant Dr. Millett, and the information provided as to the factual support for the intended cause of action, that Merck cannot meet its burden of establishing fraudulent joinder. Consequently, there is incomplete diversity, and as such, this court lacks subject matter jurisdiction and the matter must be remanded to the Middlesex County Superior Court of Massachusetts.

### III. Legal Argument

As the 5th Circuit acknowledged in <u>Travis v. Irby</u>, 326 F.3d 644, 649 (5th Cir. 2003), the burden of proving fraudulent joinder placed upon a party removing a state court action to a United States District Court "is a heavy one". District Judge O'Toole, of this Court, noted in <u>Tepaske v. Delgado</u>, 2003 U.S. Dist. LEXIS 23638, U.S.D.C., Massachusetts, Civil Action No. 03-CV-11535-

3

GAO, at page 4: "Any doubts concerning diversity should be resolved against jurisdiction and in favor of remand to the state court, Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d dr. 1990)".' As this Court held in DiCostanzo v.Trymax, 1988 U.S. Dist. LEXIS 17951, U.S.D.C., Massachusetts, Civil Action No. 88-147-WD, at page 3, the language of the removal statute, 28 USC § 1441(b), is not "hazy, ambiguous or susceptible to varying interpretations: a diversity case simply cannot be removed if any defendant is a resident of the state in which the suit was brought".

Many recent decisions of federal trial and appellate courts in other jurisdictions have addressed the heavy burden placed upon a party seeking removal based upon alleged fraudulent joinder and the legal standards to be followed in determining whether joinder is proper, in order to defeat removal on diversity grounds. In Travis v. Irby, 326 F.3d 644, 649 (5tb dir. 2003), the 5th Circuit discussed the fact that standards applied by various courts often appear to be in conflict and observed that "Neither our circuit nor other circuits have been clear in describing the fraudulent joinder standard. The test has been stated by this court in various terms, even within the same opinion". Id. at 647.

By way of example, it cited the following language from Griggs v. State Farm Lloyds, 181 f.3d 694, 698 (5th Cir. 1999):

> To establish that a non-diverse defendant has been fraudulently joined to defeat diversity, the removing party must prove . . . that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court.

Griggs at 699. (Emphasis supplied). The Court in Griggs also held

> Stated differently, we must determine whether there is any reasonable basis for predicting that [the plaintiff] might be able to establish [the non-diverse defendant's] liability on the pleaded claims in state court.

Griggs at 699. (Emphasis supplied).

4

The Travis Court noted that "(a)lthough these tests appear dissimilar, 'absolutely no possibility' vs. 'reasonable basis,' we must assume that they are meant to be equivalent because each is presented as a restatement of the other". Travis at 647. Coordinating the intent of the above language, the Travis Court held:

> The court determines whether that party has any possibility of recovery against the party whose joinder is questioned. If there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved, then there is no fraudulent joinder. This possibility, however, must be reasonable, not merely theoretical.

Travis at 648. (Emphasis supplied).

Applying the Travis test to the allegations of the present Complaint against defendant Dr. Millett demonstrates that there clearly is a reasonable possibility that liability might be imposed upon Dr. Millett under Massachusetts law and that the Complaint does not simply create a theoretical possibility. Dr. Millett was a treating physician of plaintiff who prescribed and affirmed the medications being taken by plaintiff. Dr. Millett treated plaintiff from approximately June of 2003, prescribing VIOXX and aspirin between that time, and plaintiff's near death experience in March of 2004. Subsequent treating physicians have opined that the combination of VIOXX, aspirin and vitamin E caused the GI bleeding. See Dr. Goldhaber's Notes of August 31, 2004, Exhibit B hereto.

This Court recently considered a motion to remand brought after Merck removed a VIOXX matter from Middlesex Superior Court, based upon essentially the same arguments, claiming lack of diversity based upon fraudulent joinder. This Court in Isner v. Merck & Co., Inc. et al., C.A. No. 05-10328-DPW, remanded the matter to Middlesex Superior Court, agreeing with plaintiff's argument that lack of diversity could not be defeated by Merck's claim of fraudulent joinder. In that matter, the fact that a distribution representative who provided VIOXX was made a party

5

defendant, was sufficient to defeat diversity. See Docket and Order for Remand, attached hereto as Exhibit C.

## IV. Conclusion

The fact that plaintiff has been harmed by the taking of VIOXX, on two factually different levels, supports separate grounds for claims against the defendant treating physicians from those lodged as against Merck. Given the existence of the factually distinct claims, Merck's assertion of the existence of fraudulently inconsistent claims is untenable, and not supportive of its claim of fraudulent joinder.

For the reasons stated above, and the grounds set forth in plaintiff's Motion to Remand, there is no fraudulent joinder of defendant Dr. Millett. Consequently, there is incomplete diversity among and between the parties, precluding jurisdiction by this Court and requiring remand to the Essex County superior court of Massachusetts.

Plaintiff,
By her attorneys,

_____
Andrew J. Tine (BBO#633639)
Haese, LLC
30 Federal Street, 3rd Floor
Boston, MA 02110
Tel. (617) 428-0266
Fax (617) 428-0276

## CERTIFICATE OF SERVICE

I, Andrew J. Tine, hereby certify that I served the foregoing upon all counsel of record this 29th day of August 2005.

_____

VIOXX® (rofecoxib tablets and oral suspension)                                    9556417

with fatal outcome) have been reported with NSAIDs, including VIOXX. In controlled clinical trials of VIOXX, the incidence of borderline elevations of liver tests at doses of 12.5 and 25 mg daily was comparable to the incidence observed with ibuprofen and lower than that observed with diclofenac. In placebo-controlled trials, approximately 0.5% of patients taking rofecoxib (12.5 or 25 mg QD) and 0.1% of patients taking placebo had notable elevations of ALT or AST.

A patient with symptoms and/or signs suggesting liver dysfunction, or in whom an abnormal liver test has occurred, should be monitored carefully for evidence of the development of a more severe hepatic reaction while on therapy with VIOXX. The maximum recommended chronic daily dose in patients with moderate hepatic insufficiency is 12.5 mg daily. Use of VIOXX is not recommended in patients with severe hepatic insufficiency (see CLINICAL PHARMACOLOGY, *Special Populations* and DOSAGE AND ADMINISTRATION, *Hepatic Insufficiency*). If clinical signs and symptoms consistent with liver disease develop, or if systemic manifestations occur (e.g., eosinophilia, rash, etc.), VIOXX should be discontinued.

*Hematological Effects*

Anemia is sometimes seen in patients receiving VIOXX. In placebo-controlled trials, there were no significant differences observed between VIOXX and placebo in clinical reports of anemia. Patients on long-term treatment with VIOXX should have their hemoglobin or hematocrit checked if they exhibit any signs or symptoms of anemia or blood loss. VIOXX does not generally affect platelet counts, prothrombin time (PT), or partial thromboplastin time (PTT), and does not inhibit platelet aggregation at indicated dosages (see CLINICAL STUDIES, *Special Studies, Platelets*).

*Preexisting Asthma*

Patients with asthma may have aspirin-sensitive asthma. The use of aspirin in patients with aspirin-sensitive asthma has been associated with severe bronchospasm which can be fatal. Since cross reactivity, including bronchospasm, between aspirin and other nonsteroidal anti-inflammatory drugs has been reported in such aspirin-sensitive patients, VIOXX should not be administered to patients with this form of aspirin sensitivity and should be used with caution in patients with preexisting asthma.

**Information for Patients**

Physicians should instruct their patients to read the patient package insert before starting therapy with VIOXX and to reread it each time the prescription is renewed in case any information has changed.

VIOXX can cause discomfort and, rarely, more serious side effects, such as gastrointestinal bleeding, which may result in hospitalization and even fatal outcomes. Although serious GI tract ulcerations and bleeding can occur without warning symptoms, patients should be alert for the signs and symptoms of ulcerations and bleeding, and should ask for medical advice when observing any indicative signs or symptoms. Patients should be apprised of the importance of this follow-up. For additional gastrointestinal safety information see CLINICAL STUDIES, *Special Studies, VIGOR* and WARNINGS, *Gastrointestinal (GI) Effects - Risk of GI Ulceration, Bleeding and Perforation*. Patients should be informed that VIOXX is not a substitute for aspirin for cardiovascular prophylaxis because of its lack of effect on platelets. For additional cardiovascular safety information see CLINICAL STUDIES, *Special Studies, VIGOR* and ▓▓▓▓▓▓▓▓, *Cardiovascular Effects*.

Patients should promptly report signs or symptoms of gastrointestinal ulceration or bleeding, skin rash, unexplained weight gain, edema or chest pain to their physicians.

Patients should be informed of the warning signs and symptoms of hepatotoxicity (e.g., nausea, fatigue, lethargy, pruritus, jaundice, right upper quadrant tenderness, and "flu-like" symptoms). If these occur, patients should be instructed to stop therapy and seek immediate medical therapy.

Patients should also be instructed to seek immediate emergency help in the case of an anaphylactoid reaction (see WARNINGS).

In late pregnancy VIOXX should be avoided because it may cause premature closure of the ductus arteriosus.

*Laboratory Tests*

Because serious GI tract ulcerations and bleeding can occur without warning symptoms, physicians should monitor for signs or symptoms of GI bleeding.

*ACE inhibitors:* Reports suggest that NSAIDs may diminish the antihypertensive effect of Angiotensin Converting Enzyme (ACE) inhibitors. In patients with mild to moderate hypertension, administration of 25 mg daily of VIOXX with the ACE inhibitor benazepril, 10 to 40 mg for 4 weeks, was associated with an average increase in mean arterial pressure of about 3 mm Hg compared to ACE inhibitor alone. This interaction should be given consideration in patients taking VIOXX concomitantly with ACE inhibitors.

▓▓▓▓: ▓▓▓▓▓▓▓▓▓ administration of low-dose aspirin with VIOXX may result in an increased rate of GI ulceration or other complications, compared to use of VIOXX alone. In a 12-week endoscopy study

12

**EXHIBIT A**

BRIGHAM AND WOMEN'S HOSPITAL        187-03-35-5
HARVARD TEACHING AFFILIATE
BOSTON, MASSACHUSETTS 02115         MARTIN, KATHLEEN

BRIGHAM MEDICAL SPECIALTIES

Note on 08/31/04
Regarding: Note

NOTE:

August 31, 2004
Wolfgang Fitz, M.D.
Department of Orthopedic Surgery
Brigham and Women's Hospital
75 Francis St
Boston, MA 02115
RE: Kathleen Martin
MR #187-03-35-5
Dear Wolfgang:
Thank you for your kind referral of Kathleen Martin, 57 years old, who has a history of
postoperative deep vein thrombosis in 2002 following prior left knee surgery. As you
know, she was hospitalized in March of 2004 with a major GI bleed requiring a
transfusion of 12 units of packed red blood cells. At the time, she was taking full
strength aspirin, Vioxx, and vitamin E. Since then, she has not taken any of these and
despite a flare of her diverticulitis, over the last week, her hematocrit has remained stable
and has had no further evidence of GI bleeding.
In addition to her history of deep vein thrombosis in June of 2002 following a left ACL
repair, she has a history of hypertension, osteoarthritis, diverticulitis and multiple
sclerosis which was diagnosed at the age of 23.
She has also undergone a fibroid embolization in 2000 and following that an umbilical
hernia repair.
She has no family history of clotting disorders.
She is currently unemployed but has her PHD in child psychology. She has two children.
She does not smoke but she does enjoy a glass of wine each day.
She currently has no symptoms of chest pain, shortness of breath or leg pain. The
remainder of her review of systems is negative.
Martin, Kathleen
MR #187-03-35-5 -2- August 31, 2004
Her current medications include Tegretol 200 mg daily, an Estraderm patch, glucosamine
chondroitin and Lopressor daily.
On physical examination, she is healthy appearing. Weight 159 pounds, blood pressure
140/90 mmHg, heart rate 72 and regular, respirations 16 per minute. HEENT is normal.
Neck has no jugular vein distention. Chest is clear to auscultation bilaterally. Heart is
regular rhythm with a normal S1, single S2 and no murmur, rub or gallop. Abdomen has
no mass or hepatomegaly. Extremities have no clubbing, cyanosis or edema and the skin
has no rash.
Kathleen Martin is stable from a cardiovascular standpoint. I do think that it

**EXHIBIT B**

```
BRIGHAM AND WOMEN'S HOSPITAL                    187-03-35-5
HARVARD TEACHING AFFILIATE
BOSTON, MASSACHUSETTS 02115                     MARTIN,KATHLEEN

                        --NOTES-- (continued)


    would be
    safe for her to be prophylaxed with Coumadin following knee replacement
    surgery. Her
    prior GI bleeding was most likely due to the combination of Vioxx, aspirin and
    vitamin E
    and since she is no longer taking these, she should do well.
    Thank you for letting me work with you to take care of this kind woman.
    Best personal regards.
    Sincerely yours,
    Samuel Z. Goldhaber, M.D.
    Erin Glasheen, PA-C
    Scribe for Samuel Z. Goldhaber, M.D.
    /db
     ******* Not reviewed by Attending Physician *******


Note by GOLDHABER,SAMUEL ZACHARY,M.D. (SG4)
```

Page 9

**EXHIBIT B**

CLOSED

# United States District Court
## District of Massachusetts (Boston)
### CIVIL DOCKET FOR CASE #: 1:05-cv-10328-DPW

| | |
|---|---|
| Isner v. Merck & Co., Inc., et al | Date Filed: 02/18/2005 |
| Assigned to: Judge Douglas P. Woodlock | Jury Demand: Defendant |
| Cause: 28:1332 Diversity-Personal Injury | Nature of Suit: 365 Personal Inj. Prod. Liability |
| | Jurisdiction: Diversity |

**Plaintiff**

**Linda Isner**　　　　　　　　　　　　represented by　**Joseph L. Doherty, Jr.**
*Executrix of Estate of Jeffery Isner,*　　　　　　　　　　　Joseph L. Doherty and Associates
*M.D.*　　　　　　　　　　　　　　　　　　　　　　　225 Franklin Street
　　　　　　　　　　　　　　　　　　　　　　　　　26th Floor
　　　　　　　　　　　　　　　　　　　　　　　　　Boston, MA 02110
　　　　　　　　　　　　　　　　　　　　　　　　　617-217-2837
　　　　　　　　　　　　　　　　　　　　　　　　　Fax: 617-217-2001
　　　　　　　　　　　　　　　　　　　　　　　　　Email: jdoherty@jdohertylaw.com
　　　　　　　　　　　　　　　　　　　　　　　　　*LEAD ATTORNEY*
　　　　　　　　　　　　　　　　　　　　　　　　　*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Merck & Co., Inc.,**　　　　　　　　represented by　**Bradley E. Abruzzi**
　　　　　　　　　　　　　　　　　　　　　　　　　Foley Hoag LLP
　　　　　　　　　　　　　　　　　　　　　　　　　155 Seaport Boulevard
　　　　　　　　　　　　　　　　　　　　　　　　　Seaport World Trade Center West
　　　　　　　　　　　　　　　　　　　　　　　　　Boston, MA 02210
　　　　　　　　　　　　　　　　　　　　　　　　　617-832-1291
　　　　　　　　　　　　　　　　　　　　　　　　　Fax: 617-832-7000
　　　　　　　　　　　　　　　　　　　　　　　　　Email: babruzzi@foleyhoag.com
　　　　　　　　　　　　　　　　　　　　　　　　　*LEAD ATTORNEY*
　　　　　　　　　　　　　　　　　　　　　　　　　*ATTORNEY TO BE NOTICED*

　　　　　　　　　　　　　　　　　　　　　　　　　**James J. Dillon**
　　　　　　　　　　　　　　　　　　　　　　　　　Foley Hoag LLP
　　　　　　　　　　　　　　　　　　　　　　　　　155 Seaport Boulevard
　　　　　　　　　　　　　　　　　　　　　　　　　Boston, MA 02210-2600
　　　　　　　　　　　　　　　　　　　　　　　　　617-832-1109
　　　　　　　　　　　　　　　　　　　　　　　　　Fax: 617-832-1976
　　　　　　　　　　　　　　　　　　　　　　　　　Email: jdillon@foleyhoag.com
　　　　　　　　　　　　　　　　　　　　　　　　　*LEAD ATTORNEY*
　　　　　　　　　　　　　　　　　　　　　　　　　*ATTORNEY TO BE NOTICED*

**EXHIBIT C**

**Defendant**

**Kimberly Hendricks**

| Date Filed | # | Docket Text |
|---|---|---|
| 06/07/2005 | 31 | Receipt for documents 1-30. (Attachments: # 1 Receipt #2)(Nici, Richard) (Entered: 06/09/2005) |
| 05/24/2005 | | Remark - Mailed originals and certified copies of the docket sheet and all documents to Middlesex Superior Court via certified mailed with return receipt. (Nici, Richard) (Entered: 05/24/2005) |
| 05/23/2005 | | Civil Case Terminated. (Rynne, Michelle) (Entered: 05/23/2005) |
| 05/23/2005 | 30 | Judge Douglas P. Woodlock : ORDER FOR REMAND entered. Case is remanded to the Superior Court for Middlesex County. (Rynne, Michelle) (Entered: 05/23/2005) |
| 05/22/2005 | 29 | Judge Douglas P. Woodlock : Electronic ORDER entered granting 6 Motion to Remand to State Court, denying 12 Motion to Stay, finding as moot 19 Motion for Hearing, the defendant having conceded - after further examination of its books and records - "that Ms. Hendricks may indeed have supplied samples of VIOXX to Dr. Isner" and the complaint appearing adequately to allege a claim against Ms. Hendricks, a non-diverse party, the federal courts lack jurisdiction to entertain this action. (Woodlock, Douglas) (Entered: 05/22/2005) |
| 05/11/2005 | | Judge Douglas P. Woodlock : Electronic ORDER entered granting 26 Motion for Leave to File sur-reply. (Rynne, Michelle) (Entered: 05/11/2005) |
| 05/11/2005 | 27 | SUR-REPLY to Motion re 12 MOTION to Stay *Proceedings Pending a Transfer Decision by the Judicial Panel on Multidistrict Litigation* filed by Linda Isner. (Doherty, Joseph) (Entered: 05/11/2005) |
| 05/11/2005 | 26 | MOTION for Leave to File *Surreply Brief* by Linda Isner.(Doherty, Joseph) (Entered: 05/11/2005) |
| 05/05/2005 | 28 | Copy of Consolidated Response to Plaintiffs' Motions to Vacate Conditional Transfer Order No. 2, original of which was filed on 5/2/05 with the Judicial Panel on Multidistrict Litigation, MDL No. 1657, by Merck & Co., Inc., (Patch, Christine) (Entered: 05/12/2005) |
| 05/05/2005 | | Judge Douglas P. Woodlock : Electronic ORDER entered granting 22 Motion for Leave to File reply. (Rynne, Michelle) (Entered: 05/05/2005) |
| 04/25/2005 | 25 | SUR-REPLY to Motion re 6 MOTION to Remand to State Court filed by Merck & Co., Inc.,. (Abruzzi, Bradley) (Entered: 04/25/2005) |
| 04/25/2005 | 24 | Second AFFIDAVIT in Opposition re 6 MOTION to Remand to State Court *of Kimberly Bahry* filed by Merck & Co., Inc.,. (Abruzzi, Bradley) (Entered: 04/25/2005) |

**EXHIBIT C**

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

LINDA ISNER, Executirix of
ESTATE OF JEFFREY ISNER, M.D.
    Plaintiff,

v.                                                              CIVIL ACTION
                                                                    NO. 05-10328-DPW

MERCK & CO, INC and
KIMBERLY HENDRICKS
    Defendant,

## ORDER FOR REMAND

WOODLOCK, District Judge

    In accordance with this Court's Allowance of the Motion to Remand to State Court [6], it is hereby ORDERED that the above entitled action be, and it hereby is, REMANDED to the Superior Court of the Commonwealth of Massachusetts, Middlesex County for further proceedings.

                                                  BY THE COURT,

                                                  /s/ Michelle Rynne

                                                  Deputy Clerk

DATED: May 23, 2005

**EXHIBIT C**