IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

KATHLEEN A. MARTIN,

　　　　　Plaintiff,

　　　　v.

MERCK & CO., INC., et als

　　　　　Defendants.

CIVIL ACTION No. 05-11716-MLW

## NOTICE OF FILING CERTIFIED COPIES OF STATE COURT PAPERS

Pursuant to 28 U.S.C. § 1446, defendant hereby files certified copies of all records and

proceedings in the superior court action (Essex County Superior Court Civil Action No. 05-

0641).

　　　　　　　　　　　MERCK & CO., INC.
　　　　　　　　　　　By its attorneys:

　　　　　　　　　　　James J. Dillon (BBO# 124660)
　　　　　　　　　　　Lucy Fowler (BBO# 647929)
　　　　　　　　　　　Kalun Lee (BBO# 657489)
　　　　　　　　　　　FOLEY HOAG LLP
　　　　　　　　　　　155 Seaport Boulevard
　　　　　　　　　　　Boston, MA  02110-2600
　　　　　　　　　　　(617) 832-1000

Dated: August 29, 2005

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing document was served by U.S. mail on August 29, 2005, upon:

Andrew J. Tine
Haese, LLC
30 Federal Street, 3rd Floor
Boston, MA 02110

John M. Dellea, Esq.
Ficksman & Conley, LLP
98 N. Washington Street
Boston, MA 02114

## COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss

SUPERIOR COURT
CIVIL ACTION NO,:



KATHLEEN A. MARTIN, )
    Plaintiff, )
                )
                )
        v. )
                )
MERCK & CO., INC., DARTMOUTH )
-HITCHCOCK MEDICAL CENTER, )
DR. ROSHINI PINTO POWELL, )
DR. CHARLES CARR, BRIGHAM AND )
WOMEN'S HOSPITAL and DR. PETER J. )
MILLETT, )
    Defendants. )
_____)

### COMPLAINT AND JURY DEMAND

This is an action brought by Plaintiff for damages resulting from the ingestion of

the non-steroidal, anti-inflammatory pain medication called Vioxx (chemical name

"rofecoxib"). This action seeks damages and the establishment of a medical monitoring

program on behalf of the Plaintiff for the diagnosis and treatment of Vioxx-related

adverse health effects from which Plaintiff presently suffers. This action is also brought

based on the actions or inactions of the Dartmouth-Hitchcock Medical Center and

Brigham and Women's Hospital in allowing the drug to be prescribed to Plaintiff as well

as the specific actions of Dr. Roshini-Pinto Powell and Dr. Peter J. Millet in prescribing

the medication and/or failing to provide the proper treatment to Plaintiff.

### I.   INTRODUCTION

1.   Plaintiff Kathleen A. Martin ("Martin") brings this civil action for damages and

medical monitoring as a result of harm suffered from (a) the purchase and use of Vioxx;

(b) the increased risk of health problems causally connected to the consumption of

TRUE COPY, ATTEST

DEPUTY ASS'T. CLERK

Vioxx; and (c) the actual health problems already experienced by Plaintiff as a result of the consumption of Vioxx.

2. Plaintiff purchased Vioxx and ingested the drug on a regular basis, as prescribed by her physicians, Dr. Roshini Pinto-Powell, Dr. Charles Carr, and Dr. Peter Millet. At all times relevant hereto, Defendants Dr. Roshini Pinto-Powell and Defendant Dr. Charles Carr were employed and/or otherwise affiliated with the Defendant Dartmouth-Hitchcock Medical Center. At all relevant times hereto, Defendant Dr. Peter Millet was employed and/or otherwise affiliated with the Defendant Brigham and Women's Hopsital.

3. Ingestion of Vioxx has been linked to an increased risk of adverse health effects for users, including the increased risk of cardiovascular events such as heart attack, stroke, and risk of GI bleeding.

4. The Food and Drug Administration ("FDA") approved Vioxx in 1999 for the reduction of pain and inflammation caused by osteoarthritis, as well as for acute pain in adults and for the treatment of menstrual pain. The FDA accelerated the approval process of Vioxx because of a perceived benefit to consumers over the available alternatives at the time, including ibuprofen and naproxen. Subsequently, the FDA approved Vioxx to treat the signs and symptoms of rheumatoid arthritis in adults and children.

5. In June 2000, Merck & Co. Inc. ("Merck") submitted to the FDA a safety study called VIGOR (Vioxx Gastrointestinal Outcomes Research) that found an increased risk of serious cardiovascular events including heart attacks and strokes, in patients taking Vioxx compared to patients taking naproxen. Defendant Merck attributed these results to a purported "cardio-protective effect" of naproxen.

6. Despite reports over the next few years to the contrary, Defendant Merck continued to maintain that Vioxx did not increase a user's risk of cardiovascular events such as heart attack and stroke.

7. On September 30, 2004, Defendant Merck revealed that Vioxx doubled the risk of heart attack and stroke to consumers who took the drug for longer than 18 months, as compared to subjects taking a placebo. As a result of this revelation, Vioxx was withdrawn from the market worldwide.

8. However, the withdrawal from the market came after Plaintiff Kathleen A. Martin ingested the drug without notice of the inherent risks to her health. As such, Plaintiff suffered harm in that her consumer choice was distorted by misleading representations by Defendant Merck, and now Plaintiff is at increased risk of cardiovascular events, such as heart attack and stroke, and thrombosis, hemorrhage, and drainage to GI track, and thus requires medical monitoring.

## II.  PARTIES

9. Plaintiff Kathleen A. Martin is currently a resident of the Commonwealth of Massachusetts and acquired and ingested Vioxx while first a resident of Vermont and later of Rockport, Massachusetts.

10. Defendant Merck & Co., Inc. describes itself as a global research-driven pharmaceutical company which discovers, develops, manufactures and markets a broad range of products to improve human and animal health, directly and through joint ventures. Merck is incorporated under the laws of the State of New Jersey with its principal place of business at One Merck Drive, Whitehouse Station, New Jersey.

Defendant was in the business of profiting from the design, manufacture, marketing, distribution and/or sales of the brand-name prescription drug Vioxx.

11. Defendant Dartmouth Hitchcok Medical Center is a patient treatment medical facility organized under the law of the State of New Hampshire with its principal place of business located at One Medical Center Drive, Lebanon, New Hampshire.

12. Defendant Brigham and Women's Hospital is a medical facility organized under the laws of the Commonwealth of Massachusetts with its principal place of business located at 75 Francis Street, Boston, Massachusetts.

13. Defendants Dr. Roshini-Pinto Powell and Dr. Charles Carr are medical doctors affiliated with and practicing under the auspices of the Defendant Dartmouth-Hitchcock Medical Center, both with business addresses of One Medical Drive, Lebanon, New Hampshire.

14. Defendant Dr. Peter Millet is a medical doctor affiliated with and practicing under the auspices of the Defendant Brigham and Women's Hospital, with a business address of 75 Francis Street, Boston, Massachusetts.

## III.  **FACTUAL BACKGROUND**

15. At all times relevant, Defendant Merck, itself or by use of others, did distribute, market, sell, promote, advertise, and otherwise distribute in the Commonwealth of Massachusetts, the pharmaceutical product Vioxx.

16. Vioxx belongs to a class of drugs called "non-steroidal anti-inflammatory drugs," or "NSAIDs." NSAIDs reduce pain by blocking the body's production of enzymes called cyclooxygenase, or "COX." of which there are two forms: COX-1 and COX-2. Most traditional NSAIDs (such as ibuprofen and naproxen) work by blocking the

COX-1 enzyme, which reduces pain but may lead to gastroinstestinal perforations and bleeds.

17. Vioxx, it is believed, blocks the COX-2 enzyme that triggers pain and inflammation while sparing the COX-1 enzyme that helps maintain normal stomach lining. It is indicated for treating the signs and symptoms of osteoarthirtis and rheumatoid arthritis, management of acute pain in adults, and treatment of primary dysmenorrhea.

18. Vioxx did not promise to be any more effective than traditional NSAIDs, like ibuprofen and naproxen, at treating inflammation and pain. The sole advantage of Vioxx over other NSAIDs was its purported improved safety profile.

19. Vioxx is a brand name used by Merck to market and distribute rofecoxib. Vioxx was approved for marketing based on information in the New Drug Application submitted by Merck to the FDA. The FDA put Vioxx on a fast-track approval process that lasted approximately 6 months. Merck obtained FDA approval on Vioxx in or around May of 1999 and began its distribution and sale throughout the United States, including Massachusetts, in or about May of 1999.

20. Merck concealed the serious cardiovascular risks associated with Vioxx because a successful launch of Vioxx was viewed as critical for Merck and safety concerns over hypertension, edema and/or cardiovascular events would have drastically impacted positioning in the market as compared to the competing drug, Celebrex (clecoxib), which was placed into the market by Merck competitors Pharmacia and Pfizer some three months prior to the launch of Vioxx.

21.    Merck knowingly chose to place these adverse health risks on its consumers despite its knowledge at product launch and in post-marketing data thereafter that use of Vioxx carried significant risk factors. These adverse effects were realized in adverse event reports, in clinical trials adjudicated by primary investigators with Merck's assistance, and in one or more studies shortly after market launch, which showed statistically significant increases in adverse cardiovascular events among Vioxx users.

22.    On or about December 16, 1999, the FDA called Merck to task for its materially false and misleading marketing and promotional materials. The FDA sent Merck an official letter (the "First FDA Warning Letter") admonishing it that the "promotion pieces.. .that promoted VIOXX (rofecoxib) ... are false and misleading because they contain misrepresentations of VIOXX's safety profile, unsubstantiated comparative claims, and are lacking in fair balance."

23.    In March 2000, Merck released the results of a Merck-sponsored VIGOR Study, which had begun in or around January of 1999. The VIGOR Study revealed, among other things, "significantly fewer heart attacks were observed in patients taking Naproxen (0 percent) compared to the group taking VIOXX 50 mg (0.5 percent) in this study. There was no difference in cardiovascular mortality between the group treated with VIOXX or Naproxen."

24.    Merck attributed the difference in rates of cardiovascular events to the fact that riaproxen has "cardio-protective effects," and not to an increased risk of cardiovascular events attributable to Vioxx.

25.   In designing the VIGOR Study, Merck took the exceptional step of including an "external Vascular Event Committee (VEC), containing three separate subspecialty committees (cardiac, cerebrovascular, and peripheral), [] for surveillance, monitoring, and adjudication of vascular events occurring in COX-2 inhibitor trials." According to a July 13, 2002 article that appeared in the British medical journal, *The Lancet*, Merck "apparently was aware of possible myocardial toxicity before the [VIGOR] trial, because it set in place a separate adjudication procedure to study the event."

26.   While VIGOR did demonstrate that Vioxx reduced the incidence of serious gastrointestinal side effects as compared to naproxen, it did not demonstrate an improved safety profile for Vioxx. The VIGOR data revealed that:

a.   Patients on Vioxx were five times more likely to suffer a heart attack as compared to patients on naproxen;

b.   Patients on Vioxx were 2.3 times more likely to suffer serious cardiovascular disease (including heart attacks, ischemic stroke, unstable angina, and sudden unexplained death) as compared to patients on naproxen;

c.   According to the FDA. [e]valuation of safety by routine parameters showed no advantage of [vioxx] rofecoxib over Naproxen; and

d   Patients on Vioxx actually suffered *more* cases of serious disease (either gastrointestinal or cardiovascular) than did naproxen users (61 and 57 cases respectively).

27.   In industry sponsored studies presented at the European United League Against Rheumatism (EULAR), an organization in which Merck is a member and corporate sponsor, in June of 2000, it was shown that Vioxx use resulted in a statistically significant increase in hypertension and myocardial infarction. Merck denied these

studies as to the hypertension problems in the official publication of the American Pharmaceutical Association, Pharmacy Today. (*Spin War Aside, Lessons Emerge From Cox-2 Trials*, August 2000, page 3).

27.    Merck continued to deny the ill health effects associated with Vioxx while at the same time reaping the profits obtained through the non-disclosure. Merck engaged in a massive advertising and sampling program and gained continued increases in market share, which enhanced Merck's financial bottom line. The effect was a more than $2 billion profit for Merck in 2000 and a 23 percent market share.

28.    Merck continued to withhold relevant data from the public throughout the Class Period. For example, in November of 2000, Merck caused the publication of a study in the New England Journal of Medicine and knowingly downplayed and/or withheld from this publication the severity of cardiovascular risks associated with Vioxx consumption over Naproxen consumption.

29.    On February 8, 2001, Merck submitted the results of the VIGOR Study to the FDA Arthritis Advisory Committee as part of Merck's application to modify the prescribing information for Vioxx to reflect the Drug's purported gastrointestinal ("GI") benefits.

30.    In considering the VIGOR Study results, however, the FDA Advisory Committee concluded (in February 2001) Vioxx has no safety advantage over the generic drug naproxen, a drug that sells for a fraction of the cost of Vioxx. According to the *FDA Advisory Committee Briefing Document, VIOXX Gastrointestinal Safety,* dated February 8, 2001: "[I]n the VIGOR Study the potential advantage of decreasing the risk of

complicated [GI side effects] was paralleled by the increased risk of developing cardiovascular thrombotic events."

31.    According to a memo prepared by an Advisory Committee member, Lourdes Villalba, M.D., dated February 8, 2001, which discusses the "Overall Safety" of Vioxx, "the VIGOR Study found there were more overall deaths among Study participants taking Vioxx than those taking naproxen (22 and 15, respectively).

32.    The VIGOR results showed that 50mg doses of Vioxx increased the risk of heart attacks and cardiovascular disease. Faced with this treat to the success of its new blockbuster drug, Defendant Merch offered an unfounded explanation for the negative cardiovascular findings of the VIGOR Study. Defendant Merck asserted that the dramatically increased risk of heart attacks in persons taking Vioxx 50mg was not due to Vioxx; rather, Defendant Merck claimed naproxen was cardio-protective and thus dramatically reduced the risk of heart attacks. Tellingly, the marketers of naproxen have never promoted their drug as being cardio-protective.

33.    On August 22, 2001, the *Journal of the American Medical Association* ("JAMA") published an article authored by cardiologists Eric J. Topol and Steven E. Nessen of the Cleveland Clinic Foundation entitled "*Risk of cardiovascular Events Associated With Selective Cox-2 Inhibitors*," which reported the results of a study of Vioxx and Celebrex. The JAMA article reported the findings of the Cleveland Clinic's study that "current data would suggest that use of these so-called 'COX-2 inhibitors' might lead to increased cardiovascular events."

34. The day before the JAMA article was published, *Bloomberg News* reported that Merck commented, with regard to the article, "We have additional data beyond what they cite, and the findings are very, very reassuring. Vioxx does not result in any increase in cardiovascular events compared to placebo." Further, on August 23, 2001, the day after the article was published, Merck stated in a press release, "the Company stands behind the overall and cardiovascular safety profile...of Vioxx."

35. In a follow-up study reported in the Journal of the American College of Cardiology on or about February 6, 2002, Dr. Richard J. Bing conducted scientific testing and confirmed that the Cox-2 inhibitor tips the balance of prostacyclinlthromboxane in favor of thromboxane, leading to increased vascular and thrombotic events.

36. In September 2001, the FDA sent Defendant another warning letter (the "Second FDA Warning Letter") which again warned Defendant that Merck's marketing of VIOXX was "false, lacking in fair balance, or otherwise misleading..." The Second Warning Letter went on to advise Merck that Merck's marketing "minimize[s] the potential serious cardiovascular findings that were observed in the VIGOR Study. minimize[s] the VIOXX/Coumadin drug interaction, omit[s] crucial risk information associated with VIOXX therapy. contain[s] unsubstantiated comparative claims, and promote[s3 unapproved uses."

37. The Second Warning Letter also reprimanded Merck for:

> "assert[ing] that Vioxx does not increase the risk of [heart attacks] and that the VIGOR finding is consistent with naproxen's ability to block platelet aggregation like aspirin. That is a possible explanation, but you fail to disclose that your explanation is hypothetical, has not been demonstrated by substantial evidence, and that there is another reasonable explanation, that Vioxx may have pro-thrombotic properties."

38. Merck denied reports concerning the increased risk of cardiovascular problems as inaccurate and inconclusive. For example, on May 22, 2001, Merck issued a press release through the *PR Newswire* that stated, among other things: "In response to news and analyst reports of data the Company first released a year ago, Merck & Co., Inc. today reconfirmed the favorable cardiovascular safety profile of Vioxx."

39. The theory that naproxen had a cardioprotective effect and therefore accounted for the higher cardiovascular risks among Vioxx users was debunked in approximately January of 2002 by a Vanderbilt University School of Medicine human epidemiologic peer-reviewed study. The study was published in *The Lancet*, and concluded that there is an absence of a protective effect of naproxen or other non-aspirin non-steroidal anti-inflammatory drugs on risk of coronary heart disease. Ray, W., et. at., *Non-Steroidal Anti-Inflammatory Drugs and Risk of Serious Coronary Heart Disease: An Observational Cohort Study, The Lancet,* 359: 118-123, Jan. 12, 2002.

40. The FDA's Adverse Reporting System ("AERS") database is a computerized system for collecting and maintaining information about adverse events reported by drug manufacturers, health professionals, and others. The system contains adverse events detected and reported after marketing of the drug.

41. According to AERS, through October of 2003, almost 2,000 adverse cardiovascular events were experienced by persons taking Vioxx, including myocardial infarctions, cardiac arrests, and cardiac failures. These cardiac events reported to the FDA, which, according to some measures, represent underreporting of as much as 99%, resulted in such outcomes as hospitalization, life threatening conditions, and even death.

42. On October 22, 2003, *Reuters* published an article that stated "arthritis drug is suffering from clinical trial data suggesting it might slightly raise the risk of heart attacks, and the growing perception that its pain-fighting capabilities are no better than traditional painkillers."

43. On October 30, 2003, in an article entitled "Vioxx Study Sees Heart-Attack Risk," *The Wall Street Journal* reported that another study, sponsored by Merck, presented at the annual meeting of the American College of Rheumatology, confirmed an increased "risk of heart attacks in patients taking the pill [Vioxx]." According to *The Wall Street Journal* article, within the first 30 days of taking Vioxx, the risk of a heart attack was increased 39% as compared to Vioxx's competitor, Celebrex.

44. At all times relevant to this litigation, Defendant Merck had a significant market share based upon claims of Vioxx's efficacy, a very aggressive marketing program which involved financial incentives to sales teams, infusion of some 700 new sales representatives, and a massive advertising and sampling program.

45. If Merck had not engaged in this conduct, consumers, including Plaintiff, would have known the true risks of ingesting Vioxx and would have switched from Vioxx to safer products or refrained wholly from its use.

46. The marketing strategies of the Merck targeted Plaintiff and the other users to induce them to purchase Vioxx. At the time the Merck distributed, manufactured and marketed Vioxx, Merck intended that Plaintiff would rely on the marketing, advertisements and product information propounded by Merck, as well as Merck's omission of relevant negative information from such materials.

47. From the initial marketing of Vioxx until April 2002, the safety label for Vioxx set forth an explicit warning concerning "Gastrointestinal (GI) Effects." Specifically, the safety label warned of the "Risk of GI Ulceration, Bleeding, and Perforation." Nowhere within the safety label did Merck make full or adequate disclosure of the cardiovascular safety issues related to Vioxx.

48. After reviewing the results of the VIGOR study and other available data from controlled clinical trials, the FDA consulted with its Arthritis Advisory Committee. In April 2002, pursuant to the review by the FDA and resultant instructions, Merck implemented labeling changes for Vioxx to reflect the findings from the VIGOR study. The labeling changes included information about the occurrence of cardiovascular events, including heart attack and stroke, in some patients. At no time did the safety label disclose the level of risk that consumers were subjected to as a result of their ingestion of Vioxx. In fact, Merck continued to stand by the "safety profile" of Vioxx.

49. The April 2002 labeling changes were insufficient to put the consuming public on notice of the extent of the risk of adverse health effects that use of Vioxx presented.

50. Thus, despite knowledge in its clinical trials and post-marketing reports, studies and information relating to cardiovascular-related adverse health effects, Merck promoted and marketed Vioxx as safe and effective for persons such as Plaintiff.

51. Merck failed to reveal the true connection between use of Vioxx and cardiovascular events until September 30, 2004.

52. On June 2, 2002, Plaintiff Martin underwent surgery at the Dartmouth-Hitchcock Medical Center to repair the left anterior cruciate ligament tear in her left leg; the surgical procedure being performed under the care of Dr. Charles F. Carr, MD.

53. On or December 19, 2002, Martin was prescribed Vioxx by Dr. Roshini Pinto-Powell, M.D. of the Dartmouth-Hitchcock Medical Center.

54. Dr. Powell, Dr. Carr and the Dartmouth-Hitchcock Medical center knew or should have known of the dangers and contraindications posed by the prescription to and subsequent use by Plaintiff Martin of the drug Vioxx, but prescribed the drug without regard thereto.

55. Martin continued to take the prescribed Vioxx through and including March of 2004.

56. On or about March 10, 2004, Martin experienced severe bleeding and hemorrhaging, and was admitted to Massachusetts General Hospital, on an outpatient basis, and then sent home on an out-patient basis.

57. On or about March 11, 2004, Martin again experienced major gastrointestinal bleeding, was admitted again to Massachusetts General Hospital for emergency treatment, said treatment requiring the transfusion of 12 units of packed red blood cells to deal with the blood loss and hemorrhaging.

58. Martin continues to suffer serious and debilitating health conditions as a result of the use of the Vioxx prescribed, including but not limited to elevated risk of stroke, elevated blood pressure, complications during two (2) different medical with respect to procedures in relation to Plaintiff's left knee, and other cardiac issues.

## COUNT I

### (Misrepresentation)

59. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

60. Defendant Merck intentionally employed deceptive representations as to the risks and side effects of Vioxx in the marketing, promotion and sale of the drug to consumers, as set forth above.

61. Defendant Merck's wrongful conduct included the issuance of the false and misleading representations and omissions of material facts regarding Vioxx's capabilities and the side effects of Vioxx upon which Plaintiff relied.

62. Defendant Merck failed to sell Vioxx in the manner and of the nature advertised or offered, and was unable to provide Vioxx in accordance with other terms or conditions.

63. The fraudulent practices of Defendant Merck have directly, foreseeably, and proximately caused damages and injury to Plaintiff.

64. Defendants Merck's conduct, in part, caused Plaintiff to acquire and ingest Vioxx.

65. By reason of Defendant Merck's unlawful conduct, Plaintiff has suffered losses and is entitled to damages.

## COUNT II

### (Medical Monitoring)

66. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

67. As a direct and proximate result of Defendants' acts and omissions as set forth herein, Plaintiff was exposed to a hazardous substance and, as a result, now suffers a significantly increased risk of contracting further serious injury or latent disease,

including heart attack and stroke. This increased risk makes periodic diagnostic and medical examination reasonable and necessary. Easily administered, cost-effective monitoring and testing procedures exist which make the early detection and treatment of such injuries or disease possible and beneficial.

68. The recommended testing and monitoring procedures will be subject to expert testimony at the time of trial.

69. The increased susceptibility to injuries and irreparable threat to the health of Plaintiff resulting from Plaintiff's exposure to Vioxx can only be mitigated or addressed by the creation of a comprehensive medical monitoring program.

70. Plaintiff has no adequate remedy at law in that monetary damages alone cannot compensate for the continuing nature of the harm to her, and a monitoring program which notifies her of possible injury and aids in the diagnosis and treatment of these injuries can prevent the greater harms which may not occur immediately and which may be preventable if proper research is conducted and the health risks are diagnosed and treated before they occur or worsen.

71. The susceptibility of Plaintiff to heart attacks, strokes, and other disorders is a result of her use of Vioxx. Early detection and diagnosis of these conditions is clinically invaluable because it can prevent and/or significantly delay resulting pain, suffering and/or death.

72. In the absence of a court-approved and supervised medical monitoring program, Plaintiff will not receive prompt medical care which could detect injury and disease and prolong her productive life, increase her prospects for improvement, and minimize disability.

## COUNT III

### (Unjust Enrichment as to Merck)

73. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

74. As a direct proximate, and foreseeable result of Defendant Merck's acts and otherwise wrongful conduct, Plaintiff was economically harmed. Defendant Merck profited and benefited from the sale of Vioxx, even as Plaintiff suffered the noted harm.

75. Defendant Merck has voluntarily accepted and retained these profits and benefits, derived from Plaintiff with full knowledge and awareness that, as a result of Defendant Merck's unconscionable and intentional wrongdoing, Plaintiff, was not receiving products of the quality, nature, fitness, or value that had been represented by Defendant Merck or that a reasonable consumer would have expected. Plaintiff purchased medicine that she expected would improve her health, and instead found that her health was instead negatively affected.

76. By virtue of the conscious wrongdoing alleged in this Complaint, Defendant Merck has been unjustly enriched at the expense of Plaintiff, who is entitled to in equity, and hereby seeks, the disgorgement and restitution of Merck's wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court; and such other relief as the Court deems just and proper to remedy Merck's unjust enrichment.

## COUNT IV

### (Medical Malpractice as against Defendants Pinto-Powell and Carr)

77. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

78. Defendant Dr. Pinto-Powell and Dr. Charles Carr are medical doctors licensed to deliver medical services to the public at large within the State of New Hampshire.

79. Plaintiff on multiple occasions was treated by Defendants Pinto-Powell and Defendant Carr and provided prescriptions by Defendant Pinto-Powell.

80. Defendant Pinto-Powell and Defendant Carr breached the standard of medical care, or in other words, was negligent in the delivery of medical services and treatment as set forth above and thus breached the standard of due care and diligence in the medical treatment of the Plaintiff.

81. Plaintiff Martin has suffered injuries from the medical services and treatment received from Defendant Pinto-Powell and Defendant Carr.

82. Defendant Pinto-Powell and Defendant Carr acted negligently in providing medical services and treatment to Plaintiff Martin, resulting in damages and injuries to Plaintiff Martin.

## COUNT V

### (Breach of Contract as against Defendant Dartmouth–Hitchcock Medical Center)

83. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

84. Defendant Dartmouth sought services from the physicians and medical staff at Defendant Dartmouth's facilities and entered into a contract with Defendant Dartmouth for treatment of Plaintiff's medical condition.

85. Defendant Dartmouth failed to provide medical services in a professional and reasonable manner in accordance with standard practices and requirements.

86. Defendant Dartmouth failed to warn Plaintiff of the dangers of Vioxx, even though Defendant Dartmouth and/or its medical professionals and staff knew or had reason to know of the dangers of Vioxx and thus failed to deliver the medical and supporting services in accordance with the agreement between the parties and/or in accordance with standard medical practice.

87. Defendant Dartmouth failed to warn Plaintiff of the dangers of Vioxx, even though Defendant Dartmouth and/or its medical professionals and staff knew or had reason to know of the dangers of Vioxx in violation of state law.

88. Defendant Dartmouth breached the contract between Defendnat Dartmouth and Plaintiff Martin resulting in substantial injury, harm and damages to Plaintiff Martin.

### COUNT VI

**(Unjust Enrichment as against Defendant Dartmouth-Hitchcock Medical Center))**

89. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

90. As a direct proximate, and foreseeable result of Defendant Dartmouth-Hitchcock Medical Center's acts and otherwise wrongful conduct, Plaintiff was economically harmed. Defendant Dartmouth-Hitchcock Medical Center profited and benefited from the sale of Vioxx, even as Plaintiff suffered this harm.

91. Defendant Dartmouth-Hitchcock Medical Center has voluntarily accepted and retained these profits and benefits, derived from Plainitiff with full knowledge and awareness that, as a result of Defendant's unconscionable and intentional wrongdoing, Plaintiff was not receiving products of the quality, nature, fitness, or value that had been represented by Defendant or that a reasonable consumers, expected. Plaintiff purchased

medicine that she expected would improve her health, and instead found her health negatively affected.

92. By virtue of the conscious wrongdoing alleged in this Complaint, Defendant Dartmouth has been unjustly enriched at the expense of Plaintiff, who is entitled to in equity, and hereby seek, the disgorgement and restitution of Defendant's wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court; and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

## COUNT VII

### (Medical Malpractice as against Defendant Millet)

93. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

94. Defendant Dr. Peter Millet is medical doctors licensed to deliver medical services to the public at large within the Commonwealth of Massachusetts.

95. Plaintiff on multiple occasions was treated by Defendant Millet and provided prescriptions by Defendant Millet.

96. Defendant Millet breached the standard of medical care, or in other words, was negligent in the delivery of medical services and treatment as set forth above and thus breached the standard of due care and diligence in the medical treatment of the Plaintiff.

97. Plaintiff Martin has suffered injuries from the medical services and treatment received from Defendant Millet.

98. Defendant Millet acted negligently in providing medical services and treatment to Plaintiff Martin, resulting in damages and injuries to Plaintiff Martin.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows on each and every Count of its Complaint:

1. General damages in amount to be proven at trial and in excess of the jurisdictional minimum of this Court;

2. Pre-judgment and post-judgment interest as provided by law;

3. Full refund of all purchase costs Plaintiff paid for Vioxx;

4. Compensatory damages in excess of the jurisdictional minimum of the Court, according to proof;

5. Consequential damages in excess of the jurisdictional minimum of the Court, according to proof;

6. Disgorgement of all profits associated with Vioxx;

7. Injunction requiring Defendant to fund a medical monitoring program to address the needs of the Plaintiff associated with the use of Vioxx; and

8. Such further relief as this Court deems necessary, just and proper.

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS AND ISSUES SO TRIABLE

Plaintiff,
By her attorneys,

Andrew J. Tine
BBO#633639
Haese, LLC
30 Franklin Street, 3rd Floor
Boston, MA 02110
Tel. (617) 428-0266
Fax (617) 428-0276

| CIVIL ACTION COVER SHEET | DOCKET NO(S) 05G641 | Trial Court of Massachusetts Superior Court Department County:_____ |
|---|---|---|

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| Kathleen A. Martin | Merck & Co., Inc., et al. |

| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE | ATTORNEY (if known) |
|---|---|
| Andrew J. Tine, Haese, LLC, 30 Federal Street, 3rd Floor, Boston, MA 02110. Board of Bar Overseers number: 633639 | |

### Origin code and track designation

Place an x in one box only:
- [X] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)
- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

CODE NO.    TYPE OF ACTION (specify)    TRACK    IS THIS A JURY CASE?

B05    Tort    (A  )    (X )Yes    ( )No

**The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.**

### TORT CLAIMS
(Attach additional sheets as necessary)

A.  Documented medical expenses to date:
1.  Total hospital expenses ...................................................... $............
2.  Total Doctor expenses ....................................................... $............
3.  Total chiropractic expenses ................................................ $............
4.  Total physical therapy expenses ............................................ $............
5.  Total other expenses (describe) ............................................ $............
        Subtotal $ 70,000(est)
B.  Documented lost wages and compensation to date ................................ $............
C.  Documented property damages to date ......................................... $............
D.  Reasonably anticipated future medical and hospital expenses .................. $ unknown....
E.  Reasonably anticipated lost wages ........................................... $............
F.  Other documented items of damages (describe) Future Medical Monitoring
        $ unknown....

G.  Brief description of plaintiff's injury, including nature and extent of injury (describe)

    Plaintiff was prescribed and ingested VIOXX. Plaintiff has experienced various medical concerns, not limited to, cardiac concerns, bleeding, and vascular concerns.    $1,000,000.
        TOTAL $1,100,000.+

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

TOTAL $............

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

A TRUE COPY ATTEST

DEPUTY ASS'T. CLERK

**"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."**

Signature of Attorney of Record _____    DATE: 4-19-05

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

## COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss

SUPERIOR COURT
CIVIL ACTION NO.:_____

C500.4

**D**

KATHLEEN A. MARTIN, )
    Plaintiff, )
                        )
                        )
        v. )
                        )
MERCK & CO., INC., DARTMOUTH )
-HITCHCOCK MEDICAL CENTER, )
DR. ROSHINI PINTO POWELL, )
DR. CHARLES CARR, BRIGHAM AND )
WOMEN'S HOSPITAL and DR. PETER J. )
MILLETT, )
    Defendants. )
_____ )

## STATEMENT OF DAMAGES

        Plaintiff state that the damages suffered, as alleged in her Complaint, are as follows:

        COUNT I    -     in excess of $25,000
        COUNT II   -     in excess of $25,000
        COUNT III  -     in excess of $25,000
        COUNT IV  -     in excess of $25,000
        COUNT V   -     in excess of $25,000
        COUNT VI  -     in excess of $25,000
        COUNT VII -     in excess of $25,000

Plaintiff,
By her attorneys,

_____
Andrew J. Tine
BBO#633639
Haese, LLC
30 Franklin Street, 3rd Floor
Boston, MA 02110
Tel. (617) 428-0266
Fax (617) 428-0276

**A TRUE COPY. ATTEST**
**DEPUTY ASS'T. CLERK**

# Commonwealth of Massachusetts
## County of Essex
## The Superior Court

CIVIL DOCKET# **ESCV2005-00641-D**

RE:    **Martin v Merck & Co Inc et al**

TO: Andrew J Tine, Esquire
Haese Law Office
70 Franklin Street
9th floor
Boston, MA 02110

## TRACKING ORDER - A TRACK

You are hereby notified that this case is on the average (A) track as per Superior Court
Standing Order 1-88. The order requires that the various stages of litigation described below
must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE |
|---|---|
| Service of process made and return filed with the Court | 07/20/2005 |
| Response to the complaint filed (also see MRCP 12) | 09/18/2005 |
| All motions under MRCP 12, 19, and 20 filed | 09/18/2005 |
| All motions under MRCP 15 filed | 07/15/2006 |
| All discovery requests and depositions completed | 06/10/2007 |
| All motions under MRCP 56 served and heard | 08/09/2007 |
| Final pre-trial conference held and firm trial date set | 12/07/2007 |
| Case disposed | 04/20/2008 |

The final pre-trial deadline is **not the scheduled date of the conference.** You will be
notified of that date at a later time.
**Counsel for plaintiff must serve this tracking order on defendant before the deadline
for filing return of service.**

This case is assigned to session **D** sitting **in CtRm 2 (Lawrence), Essex Superior Court.**

Dated: 04/25/2005

Thomas H. Driscoll Jr.
Clerk of the Courts
BY: Philip Massa
Assistant Clerk

Location: CtRm 2 (Lawrence)
Telephone: (978) 687-7463

A TRUE COPY, ATTEST

DEPUTY ASS'T. CLERK

## COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss                          SUPERIOR COURT
                                   CIVIL ACTION NO.: 2005-00641-D

---

KATHLEEN A. MARTIN,                          )
    Plaintiff,                               )
                                             )
        v.                                )
                                             )
MERCK & CO., INC., DARTMOUTH                 )
-HITCHCOCK MEDICAL CENTER,                   )
DR. ROSHINI PINTO POWELL,                    )
DR. CHARLES CARR, BRIGHAM AND                )
WOMEN'S HOSPITAL and DR. PETER J.            )
MILLETT,                                     )
    Defendants.                              )

---

### MOTION TO EXTEND TIME TO FILE RETURN OF SERVICE

NOW comes the Plaintiff, Kathleen A. Martin, and moves this Honorable Court for an extension of sixty (60) days to serve the summons and file proof of service of same upon the Defendants. In support of this motion, Plaintiff states as follows:

1. The Tracking Order in this matter requires filing of the return of service upon Defendants by July 20, 2005.

2. This lawsuit is a complex products liability and medical malpractice case. Statutory requirements and the complexity of this lawsuit dictate Plaintiff's intention to obtain an expert medical opinion for purposes of the medical tribunal that may be convened shortly after an answer is filed to the complaint.

3. Plaintiff is still in the process of obtaining a medical opinion and has not served the complaint, pending the receipt of this opinion.

4. The complaint was filed in advance of obtaining such an opinion due to: 1) the obvious claims available to Plaintiff as a result of ingesting VIOXX and the resulting negative health consequences; and 2) the need to prevent a statute of limitations defense from accruing to Defendants.

WHEREFORE, Plaintiff requests an extension of sixty (60) days to serve and file the returns of service of the summons upon all the Defendants.



FILED
IN THE SUPERIOR COURT
FOR THE COUNTY OF ESSEX

JUN 2 8 2005

Thomas H. Driscoll Jr.
CLERK

Plaintiff,
By her attorneys,

Andrew J. Tine
BBO#633639
Haese, LLC
30 Franklin Street, 3rd Floor
Boston, MA 02110
Tel. (617) 428-0266
Fax (617) 428-0276

*3*

(TO PLAINTIFF'S ATTORNEY: *Please Circle Type of Action Involved:* - TORT - MOTOR VEHICLE TORT - CONTRACT - EQUITABLE RELIEF - OTHER.)

# COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.

SUPERIOR COURT
CIVIL ACTION
No. 050641

........ Kathleen A. Martin ........................., Plaintiff(s)

v.

........ Merck & Co. et al ........................., Defendant(s)

**D**

### SUMMONS

To the above named ~~Defendant:~~ Peter Millett:

You are hereby summoned and required to serve upon Andrew Tine of Haese, UC,

plaintiff's attorney, whose address is 30 Federal St., Boston MA 02110 , an answer to the

complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the

day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the

complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at

Lawrence, MA _____ either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13 (a), your answer must state as a counterclaim any claim which you may
have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's
claim or you will thereafter be barred from making such claim in any other action.

## Barbara J. Rouse

WITNESS, ~~BARNE V. SOFFAN~~ Esquire, at Salem, the 14th

**FILED** day of July , in the year of our Lord two thousand 05 .

IN THE SUPERIOR COURT
FOR THE COUNTY OF ESSEX
**FILED**
IN THE SUPERIOR COURT
FOR THE COUNTY OF ESSEX
JUL 2 5 2005
JUL 2 5 2005

CLERK
CLERK

Thomas H. Driscoll Jr.
*Clerk*

A TRUE COPY ATTEST

DEPUTY ASS'T. CLERK

NOTES:
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each
defendant, each should be addressed to the particular defendant.

NOTICE TO DEFENDANT - You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

4

(TO PLAINTIFF'S ATTORNEY: *Please Circle Type of Action Involved:* - TORT - MOTOR VEHICLE TORT - CONTRACT - EQUITABLE RELIEF - OTHER.)

# COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.

SUPERIOR COURT
CIVIL ACTION
No.  050641

<div style="writing-mode: vertical">NOTICE TO DEFENDANT - You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.</div>

Kathleen A. Martin ........................, Plaintiff(s)

*v.*

Merck & Co., Inc. et al ........................, Defendant(s)



### SUMMONS

To the above named ~~Defendant:~~ Brigham and Women's Hospital

You are hereby summoned and required to serve upon Andrew J. Tine of Hagens LLC

plaintiff's attorney, whose address is 30 Federal St., Boston, MA 02110 , an answer to the

complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the

day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the

complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at

Lawrence, MA either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13 (a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

### Barbara J. Rouse

WITNESS, SUZANNE V. DELVECCHIO, Esquire, at Salem, the 14th
day of July , in the year of our Lord two thousand 05.

FILED
IN THE SUPERIOR COURT
FOR THE COUNTY OF ESSEX

JUL 2 5 2005

*Thomas H. Driscoll Jr.*
CLERK

FILED
IN THE SUPERIOR COURT
FOR THE COUNTY OF ESSEX

JUL 2 5 2005

*H. Driscoll Jr.*
CLERK

*Thomas H. Driscoll Jr.*
Clerk

A TRUE COPY, ATTEST
*[signature]*
DEPUTY ASS'T. CLERK

NOTES:
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

5

## COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS                                                    SUPERIOR COURT

| | |
|---|---|
| KATHLEEN A. MARTIN, | |
| Plaintiff, | CIVIL ACTION No. 050641   - Ɔ |
| v. | |
| MERCK & CO., INC., et al. | |
| Defendants. | |

## **ANSWER TO COMPLAINT AND JURY CLAIM**

Defendant Merck & Co., Inc. ("Merck") responds to the numbered allegations set forth in

the Complaint of Kathleen A. Martin on behalf of Merck only and not for any other defendant as

follows:

### INTRODUCTION

1.    Merck denies every allegation in Paragraph 1 of the Complaint, except admits that

Plaintiff Kathleen Martin purports to bring a civil action for damages and medical monitoring.

2.    Merck lacks knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations in Paragraph 2 of the Complaint and therefore denies the same.

3.    Merck denies every allegation in Paragraph 3 of the Complaint.

4.    Merck denies every allegation in Paragraph 4 of the Complaint, except admits that

Merck sought and, in May 1999, received FDA approval to manufacture and market the

prescription medicine VIOXX® subject to the information contained in the FDA-approved

prescribing information for VIOXX® and respectfully refers the Court to the relevant

prescribing information for its actual language and text.

5.    Merck denies every allegation in Paragraph 5 of the Complaint and avers that in

March 2000 Merck forwarded to the FDA the VIOXX® Gastrointestinal Outcomes Research

2005

**A TRUE COPY, ATTEST**

**DEPUTY ASS'T. CLERK**

(VIGOR) study and subsequently, in June 2000, filed a supplemental New Drug Application (sNDA) that included the VIGOR study. Merck respectfully refers the Court to the referenced sNDA for its actual language and full text.

6.      Merck denies every allegation in Paragraph 6 of the Complaint.

7.      Merck denies every allegation in Paragraph 7 of the Complaint except admits that on September 30, 2004 Merck announced the voluntary worldwide withdrawal of VIOXX® and respectfully refers the Court to the referenced announcement for its actual language and full text. Merck further avers that it announced on September 30, 2004 that in a prospective, randomized, placebo controlled clinical trial there was an increased risk for confirmed cardiovascular events beginning after 18 months of treatment in the patients taking VIOXX® compared with those taking placebo and that Merck concluded that given the availability of alternative therapies and questions raised by the data from that trial, Merck concluded that a voluntary withdrawal of VIOXX® best served the interests of patients.

8.      Merck denies every allegation in Paragraph 8 of the Complaint.

## PARTIES

9.      Merck lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 9 of the Complaint and therefore denies the same.

10.     Merck denies every allegation in Paragraph 10 of the Complaint, except admits that Merck is a New Jersey corporation with its principal place of business in the State of New Jersey and admits that Merck is a leading research-driven pharmaceutical products and services company that researches, discovers, develops, manufactures, and markets a broad range of innovative pharmaceutical products.

- 2 -

11.     Merck lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 11 of the Complaint and therefore denies the same.

12.     Merck lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 12 of the Complaint and therefore denies the same.

13.     Merck lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 13 of the Complaint and therefore denies the same.

14.     Merck lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 14 of the Complaint and therefore denies the same.

## FACTUAL BACKGROUND

15.     Merck denies every allegation in Paragraph 15 of the Complaint except admits that Merck manufactured, marked and distributed the prescription medicine VIOXX® until Merck voluntarily withdrew VIOXX® from the market on September 30, 2004.

16.     Merck denies every allegation in Paragraph 16 except admits that VIOXX® is part of a class of drugs known as NSAIDs and that Merck manufactured, marketed and distributed the prescription medicine VIOXX® which reduces pain and inflammation and that the mechanism of action is believed to be due to the inhibition of prostaglandin synthesis via inhibition of an enzyme known as cyclooxygenase-2 (COX-2).

17.     Merck denies every allegation in Paragraph 17 of the Complaint except admits that the mechanism of action for VIOXX® is believed to be due to inhibition of prostaglandin synthesis via inhibition of an enzyme known as COX-2.  Merck further avers that the FDA approved VIOXX® as safe and effective for certain indicated uses subject to the information contained in the FDA-approved prescribing information for VIOXX® and respectfully refers the Court to the relevant prescribing information for its actual language and full text.

18. Merck denies every allegation in Paragraph 18 of the Complaint.

19. Merck denies every allegation in Paragraph 19 of the Complaint except admits that Merck sought and, in 1999, received FDA approval to manufacture and market the prescription medicine VIOXX®. Merck further admits that VIOXX® is the brand name for rofecoxib.

20. Merck denies every allegation in Paragraph 20 of the Complaint.

21. Merck denies every allegation in Paragraph 21 of the Complaint.

22. Merck denies every allegation in Paragraph 22 of the Complaint except admits that Merck received a letter from a regulatory review officer dated December 16, 1999 and respectfully refers the Court to the referenced letter for its actual language and full text.

23. Merck denies every allegation in Paragraph 23 of the Complaint except admits that the VIGOR study involving VIOXX® exists and respectfully refers the Court to the referenced study for its actual conclusions and full text.

24. Merck denies every allegation in Paragraph 24 of the Complaint.

25. Merck denies every allegation in Paragraph 25 of the Complaint except admits that the article referenced in sentence two of Paragraph 25 exists and respectfully refers the Court to said article for its actual language and full text. Merck further avers that prior to the VIGOR trial, Merck had put in place a cardiovascular standard operating procedure consisting of three external panels of experts, the purpose of which was to adjudicate investigator reported cardiovascular adverse events from clinical trials of VIOXX®.

26. Merck denies every allegation in Paragraph 26 of the Complaint including subparagraphs (a)-(d) except admits that VIOXX® is a selective NSAID and that the inhibition of cyclooxygenase-1 (COX-1) in patients taking traditional non-selective NSAIDs such as

- 4 -

naproxen is believed to be associated with gastric damage and increased bleeding among patients taking such traditional non-selective NSAIDs.

27.    Merck denies every allegation in Paragraph 27 of the Complaint except admits that the studies referenced in sentence one of Paragraph 27 and the article referenced in sentence two of Paragraph 27 exist, and respectfully refers the Court to said publications for their actual language and full text.

27a.    Merck denies every allegation in Paragraph 27a of the Complaint.[1]

28.    Merck denies every allegation in Paragraph 28 of the Complaint except admits that the referenced publication exists and respectfully refers the Court to said publication for its actual language and full text.

29.    Merck denies every allegation in Paragraph 29 of the Complaint except admits that on February 8, 2001, the Arthritis Advisory Committee met and discussed, among other things, the VIGOR data.

30.    Merck denies every allegation in Paragraph 30 of the Complaint except admits that the referenced briefing document exists and respectfully refers the Court to said document for its actual language and full text.

31.    Merck denies every allegation in Paragraph 31 of the Complaint except admits that the memorandum document exists and respectfully refers the Court to said memorandum for its actual language and full text.  Merck further admits that the VIGOR study exists and respectfully refers the Court to the VIGOR study for its actual conclusions and full text.

32.    Merck denies every allegation in Paragraph 32 of the Complaint.

---

[1]  Plaintiff's Complaint contains two paragraphs numbered 27.  To maintain consistency between the Complaint and Merck's Answer, Merck has renumbered the second paragraph numbered 27 as Paragraph 27a.

33.     Merck denies every allegation in Paragraph 33 of the Complaint except admits the existence of the journal, the article contained therein, and that plaintiff appears to have accurately quoted the document referenced in said paragraph, and respectfully refers the Court to the referenced document for its actual language and full text.

34.     Merck denies every allegation in Paragraph 34 of the Complaint except admits that the referenced article and press release exist and respectfully refers the Court to the referenced documents for their actual language and full text.

35.     Merck denies every allegation in Paragraph 35 of the Complaint except admits that the referenced study exists and respectfully refers the Court to said study for its actual language and full text.

36.     Merck denies every allegation in Paragraph 36 of the Complaint except admits that Merck received a letter from a regulatory review officer in September 2001 and respectfully refers the Court to that letter for its actual language and full text.

37.     Merck denies every allegation in Paragraph 37 of the Complaint except admits that Merck received a letter from a regulatory review officer in September 2001 and respectfully refers the Court to that letter for its actual language and full text.

38.     Merck denies every allegation in Paragraph 38 of the Complaint except admits that Merck issued a press release on May 22, 2001 entitled "Merck Confirms Favorable Cardiovascular Safety Profile of VIOXX®" and respectfully refers the Court to the referenced press release for its actual language and full text.

39.     Merck denies every allegation in Paragraph 39 of the Complaint except admits that the referenced article exists and respectfully refers the Court to the referenced publication for its actual language and full text.

40.     Merck denies every allegation in Paragraph 40 of the Complaint except admits that the referenced system for adverse event reporting exists, although the reports on the system are not necessarily accurate. Merck further avers that adverse events are reported without regard to causality and do not reflect a conclusion by the reporter of the adverse event or the Food and Drug Administration that the event was caused by the drug.

41.     Merck denies every allegation in Paragraph 41 of the Complaint except admits various cardiovascular adverse events associated with VIOXX® have been reported to the AERS system and respectfully refers the Court to the AERS for complete data on particular reported events.

42.     Merck denies every allegation in Paragraph 42 of the Complaint except admits that the *Reuters* article referenced in Paragraph 42 of the Complaint exists and that plaintiff purports to quote from the referenced article, but respectfully refers the Court to the referenced publication for its actual language and full text.

43.     Merck denies every allegation in Paragraph 43 of the Complaint except admits that the referenced article exists and respectfully refers the Court to said article for its actual language and full text.

44.     Merck denies every allegation in Paragraph 44 of the Complaint.

45.     Merck denies every allegation in Paragraph 45 of the Complaint.

46.     Merck denies every allegation in Paragraph 46 of the Complaint.

47.     Merck denies every allegation in Paragraph 47 of the Complaint and respectfully refers the Court to the relevant FDA-approved prescribing information for VIOXX® for its actual language and full text.

- 7 -

48.    Merck denies every allegation in Paragraph 48 of the Complaint except admits that in April 2002 the FDA approved certain changes to the VIOXX® prescribing information and respectfully refers the Court to the prescribing information for VIOXX® for its actual language and full text.

49.    Merck denies every allegation in Paragraph 49 of the Complaint.

50.    Merck denies every allegation in Paragraph 50 of the Complaint.

51.    Merck denies every allegation in Paragraph 51 of the Complaint.

52.    Merck lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 52 of the Complaint and therefore denies the same.

53.    Merck lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 53 of the Complaint and therefore denies the same.

54.    The allegations contained in Paragraph 54 of the Complaint are not directed at Merck, and therefore no responsive pleading is required.  Should a response be deemed required, Merck denies every allegation in Paragraph 54 of the Complaint.

55.    Merck lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 55 of the Complaint and therefore denies the same.

56.    Merck lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 56 of the Complaint and therefore denies the same.

57.    Merck lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 57 of the Complaint and therefore denies the same.

58.    Merck denies every allegation in Paragraph 58 of the Complaint.

## COUNT I

### (Misrepresentation)

59.    Merck hereby incorporates by reference the preceding specific responses to the allegations in Paragraphs 1 through 58 of the Complaint.

60.    Merck denies every allegation in Paragraph 60 of the Complaint.

61.    Merck denies every allegation in Paragraph 61 of the Complaint.

62.    Merck denies every allegation in Paragraph 62 of the Complaint.

63.    Merck denies every allegation in Paragraph 63 of the Complaint.

64.    Merck denies every allegation in Paragraph 64 of the Complaint.

65.    Merck denies every allegation in Paragraph 65 of the Complaint.

## COUNT II

### (Medical Monitoring)

66.    Merck hereby incorporates by reference the preceding specific responses to the allegations in Paragraphs 1 through 65 of the Complaint.

67.    Merck denies every allegation in Paragraph 67 of the Complaint.

68.    Merck denies every allegation in Paragraph 68 of the Complaint.

69.    Merck denies every allegation in Paragraph 69 of the Complaint.

70.    The allegations of Paragraph 70 of the Complaint are legal conclusions to which no responsive pleading is required.  Should a response be deemed required, Merck denies every allegation in Paragraph 70 of the Complaint.

71.    Merck denies every allegation in Paragraph 71 of the Complaint.

72.    Merck denies every allegation in Paragraph 72 of the Complaint.

- 9 -

## COUNT III

### (Unjust Enrichment as to Merck)

73.    Merck hereby incorporates by reference the preceding specific responses to the allegations in Paragraphs 1 through 72 of the Complaint.

74.    Merck denies every allegation in Paragraph 74 of the Complaint.

75.    Merck denies every allegation in Paragraph 75 of the Complaint.

76.    Merck denies every allegation in Paragraph 76 of the Complaint except admits that the Plaintiff purports to state a claim for damages, but Merck denies that there is any legal or factual basis for said relief.

## COUNT IV

### (Medical Malpractice as Against Defendants Pinto-Powell and Carr)

77.    Merck hereby incorporates by reference the preceding specific responses to the allegations in Paragraphs 1 through 76 of the Complaint.

78-82.  Count IV and each of Paragraphs 78 through 82 make no allegations against Merck, and Merck therefore need make no response. To the extent that Merck may be deemed to be required to respond to these allegations, Merck denies every allegation contained in Paragraphs 78 through 82.

## COUNT V

### (Breach of Contract as against Defendant Dartmouth-Hitchcock Medical Center)

83.    Merck hereby incorporates by reference the preceding specific responses to the allegations in Paragraphs 1 through 82 of the Complaint.

84-88.  Count V and each of Paragraphs 84 through 88 make no allegations against Merck, and Merck therefore need make no response. To the extent that Merck may be deemed

- 10 -

to be required to respond to these allegations, Merck denies every allegation contained in Paragraphs 84 through 88.

## COUNT VI

### (Breach of Contract as against Defendant Dartmouth-Hitchcock Medical Center)

89.    Merck hereby incorporates by reference the preceding specific responses to the allegations in Paragraphs 1 through 88 of the Complaint.

90-92. Count VI and each of Paragraphs 90 through 92 make no allegations against Merck, and Merck therefore need make no response. To the extent that Merck may be deemed to be required to respond to these allegations, Merck denies every allegation contained in Paragraphs 90 through 92.

## COUNT VII

### (Medical Malpractice as against Defendant Millet)

93.    Merck hereby incorporates by reference the preceding specific responses to the allegations in Paragraphs 1 through 92 of the Complaint.

94-98. Count VI and each of Paragraphs 94 through 98 make no allegations against Merck, and Merck therefore need make no response. To the extent that Merck may be deemed to be required to respond to these allegations, Merck denies every allegation contained in Paragraphs 94 through 98.

## RESPONSE TO "WHEREFORE…"

The allegations contained in the "Wherefore . . ." section of the Plaintiff's Complaint are not allegations to which any responsive pleading is required. Should a response be deemed required, Merck admits that the Plaintiff purports to state a claim for damages, but Merck denies that there is any legal or factual basis for said relief.

- 11 -

## RESPONSE TO JURY DEMAND

Merck admits that the Plaintiff demands a trial by jury.

## JURY DEMAND

Merck hereby requests a trial by jury.

## DEFENSES

## FIRST DEFENSE

The Complaint fails to set forth a cause of action upon which relief can be granted.

## SECOND DEFENSE

Any product for which Merck was responsible at the time of the occurrence or injuries alleged by the Plaintiff was not defective and unreasonably dangerous in its design, manufacture, or marketing, and was at all times reasonably safe and reasonably fit for its intended use. The warnings and instructions accompanying the product or products at issue at the time of the occurrence or injuries alleged by the Plaintiff were legally adequate warnings and instructions.

## THIRD DEFENSE

The occurrence and injuries alleged by the Plaintiff were caused or contributed to by the negligence, breaches of warranty, or defective products of third parties over whom Merck had no control and for whom Merck is not responsible.

## FOURTH DEFENSE

If the Plaintiff has sustained injuries or losses as alleged in the Complaint, upon information and belief, such injuries and losses were caused by the actions of persons having no real or apparent authority to take said actions on behalf of Merck and over whom Merck had no control and for whom Merck may not be held accountable.

## FIFTH DEFENSE

The occurrence and injuries alleged by the Plaintiff resulted from an intervening cause or

- 12 -

a new and independent cause which was the proximate and/or producing cause and/or the sole proximate and/or sole cause of the occurrence and injuries alleged by the Plaintiff. Moreover, the occurrence and injuries were caused by separate and independent events or agencies not reasonably foreseeable. Such separate and independent events or agencies destroy the causal connection, if any, between any breach of legal duty on the part of Merck and the occurrence and injuries alleged by the Plaintiff, and thereby become the immediate and/or sole cause, and/or sole proximate and/or sole producing cause of such occurrence and injuries, relieving Merck of liability to the Plaintiff or any other parties.

## SIXTH DEFENSE

If the Plaintiff sustained the injuries or incurred the expenses alleged, the same were caused, in whole or in part, by operation of nature or an act of God.

## SEVENTH DEFENSE

If the Plaintiff sustained the injuries or incurred the expenses alleged, the same were caused by an idiosyncratic reaction, without any negligence, defect, or failure on the part of Merck.

## EIGHTH DEFENSE

The injuries and damages alleged in the Plaintiff's Complaint were the result of unavoidable circumstances that could not have been prevented by anyone, including Merck.

## NINTH DEFENSE

Any and all damages alleged by the Plaintiff were caused by misuse of the product or products at issue in this case, failure to use the product or products properly, and/or alteration or negligent use of the product or products.

## TENTH DEFENSE

The Plaintiff cannot recover under the Complaint because the product at issue was made in accordance with the state of the art at the time it was manufactured.

## ELEVENTH DEFENSE

The Plaintiff' claims are barred by the Plaintiff's contributory negligence and the contributory negligence of others.

## TWELFTH DEFENSE

The Plaintiff's claims are barred by the Plaintiff's express and/or implied assumption of the risks, if any, inherent in the alleged use of the product or products at issue.

## THIRTEENTH DEFENSE

Each and every claim asserted or raised in the Complaint is barred by the doctrine of laches.

## FOURTEENTH DEFENSE

The benefits of the product or products at issue outweigh the risks, if any, that may be attendant to their use.

## FIFTEENTH DEFENSE

The damages and injuries alleged, if any, were caused or enhanced by a preexisting medical condition of the Plaintiff that was not related to any product manufactured by Merck.

## SIXTEENTH DEFENSE

Each and every claim asserted or raised in the Complaint is barred by the doctrine set forth in Comment k of the Restatement (Second) of Torts § 402A as to the product or products at issue.

- 14 -

## SEVENTEENTH DEFENSE

The Plaintiff's claims are barred in whole or in part pursuant to comment f to Section 6 of the Restatement (Third) of Torts: Product Liability.

## EIGHTEENTH DEFENSE

The Plaintiff's claims are barred in whole or in part pursuant to comment j to Section 402A of the Restatement (Second) of Torts.

## NINETEENTH DEFENSE

The Plaintiff's claims are barred under Section 4 et seq. of the Restatement (Third), of Torts: Product Liability.

## TWENTIETH DEFENSE

Any warnings that Merck gave were transmitted to the prescribing physicians and/or health care providers, and under Massachusetts law Merck's only obligation is to warn the prescribing physician and/or health care providers and said obligation was fulfilled.

## TWENTY-FIRST DEFENSE

Merck has complied with all requirements of the Food and Drug Administration of the United States Department of Health and Human Services, and the product or products at issue were approved pursuant to the applicable statutes and regulations. Pursuant to such, the product or products at issue could only be used pursuant to the prescription of a licensed prescriber. The package insert for the product or products at issue was also approved by the Food and Drug Administration, and the marketing was conducted in conformity with the regulations of the Food and Drug Administration. Therefore, the Plaintiff's claims are preempted.

## TWENTY-SECOND DEFENSE

The Plaintiff's claims are barred by the applicable statute(s) of limitations.

- 15 -

### TWENTY-THIRD DEFENSE

If the Plaintiff sustained the injuries and damages alleged in the Complaint, such injuries resulted, in whole or in part, from the negligence or fault of the Plaintiff and/or third parties, not from any negligence or breach of duty by Merck. Judgment may not enter for the Plaintiff if it is found that the Plaintiff was more negligent than Merck. If judgment is rendered in the Plaintiff's favor, the amount of such judgment must be reduced under the doctrine of comparative negligence.

### TWENTY-FOURTH DEFENSE

Merck is unaware at this time of any settlement by any alleged joint tortfeasor. However, in the event any settlement is or has been made by any alleged joint tortfeasor, Merck is entitled to a credit/offset for such settlement.

### TWENTY-FIFTH DEFENSE

The extent of any risk associated with the use of Merck's product, the existence of which is not admitted, was, at the time of the distribution of the product by Merck, unknown and could not have been known by the use of ordinary care by Merck.

### TWENTY-SIXTH DEFENSE

At the time the product at issue was manufactured, there was no practical and technically feasible alternative design or formulation that would have prevented the alleged harm without substantially impairing the usefulness of the product.

### TWENTY-SEVENTH DEFENSE

Merck made no express or implied representations or warranties of any kind to the Plaintiff, nor did the Plaintiff rely on any representations or warranties made by Merck. To the extent the Plaintiff relied on any representations or warranties, such reliance was unjustified.

### TWENTY-EIGHTH DEFENSE

Merck did not breach any duty of care to the Plaintiff.

### TWENTY-NINTH DEFENSE

The Plaintiff's claims are barred by the doctrine of estoppel.

### THIRTIETH DEFENSE

The Plaintiff's claims are barred by the doctrine of waiver.

### THIRTY-FIRST DEFENSE

The Plaintiff has failed to join all necessary and indispensable parties.

### THIRTY-SECOND DEFENSE

The Plaintiff's claims are barred because the Plaintiff has failed and refused to mitigate her alleged damages.

### THIRTY-THIRD DEFENSE

Merck did not violate any state or federal statute, regulation or ordinance to cause the Plaintiff's alleged injuries.

### THIRTY-FOURTH DEFENSE

The Plaintiff's claims are barred in whole or in part due to a lack of notice.

### THIRTY-FIFTH DEFENSE

To the extent that the Plaintiff asserts claims based on Merck's adherence to and compliance with applicable state laws, regulations, and rules, such claims are preempted by federal law under the Supremacy Clause of the United States Constitution.

### THIRTY-SIXTH DEFENSE

The Plaintiff's claims are barred, in whole or in part, because the Plaintiff lacks capacity and/or standing to bring such claims.

- 17 -

### THIRTY-SEVENTH DEFENSE

To the extent the Plaintiff is seeking recovery for benefits entitled to be received or actually received from any other source for injuries alleged in the Complaint, such benefits are not recoverable in this action.

### THIRTY-EIGHTH DEFENSE

The Plaintiff's state-law claims are barred, in whole or in part, because VIOXX® was subject to and received pre-market approval by the FDA under 52 Stat. 1040, 21 U.S.C. § 301.

### THIRTY-NINTH DEFENSE

The Complaint and the causes of action contained therein are barred in whole or in part by the United States and Massachusetts Constitutions, which prohibit the extraterritorial application of Massachusetts law.

### FORTIETH DEFENSE

The Complaint and the causes of action contained therein are barred in whole or in part by the U.S. Constitution, article I, section VIII, clause 3 to the extent they seek to regulate Merck's practices outside of Massachusetts. That constitutional provision prohibits a State from regulating conduct that occurs wholly outside of its borders.

### FORTY-FIRST DEFENSE

Merck hereby gives notice that it intends to rely upon such other defenses as may become available or appear during discovery proceeding in this case or that are included in the master answer to be filed in the Multidistrict Litigation proceeding before Judge Fallon of the Eastern District of Louisiana. Merck hereby reserves the right to amend its answer to assert any such defense.

- 18 -

**WHEREFORE**, Defendant Merck & Co. respectfully requests that the Plaintiff take

nothing in this suit, that it recover its costs of court and expenses and such other relief to which it

may show itself justly entitled.

> MERCK & CO., INC.
> By its attorneys:
>
> _James Fowler_
>
> James J. Dillon (BBO# 124660)
> Lucy Fowler (BBO# 647929)
> FOLEY HOAG LLP
> 155 Seaport Boulevard
> Boston, MA 02110-2600
> (617) 832-1000

Dated: August 5, 2005

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing Answer was served on August 5, 2005 by U.S. mail, upon:

Andrew J. Tine
Haese, LLC
30 Franklin Street, 3rd Floor
Boston, MA 02110

Dartmouth Hitchcock Medical Center
One Medical Center Drive
Lebanon, NH 03756

Dr. Roshini-Pinto Powell
Dr. Charles Carr
Dartmouth Hitchcock Medical Center
One Medical Center Drive
Lebanon, NH 03756

Brigham & Women's Hospital
75 Francis Street
Boston, MA 02115

Dr. Peter Miller
Brigham & Women's Hospital
75 Francis Street
Boston, MA 02115

_Lucy Fowler_

- 19 -

COMMONWEALTH OF MASSACHUSETTS

| | |
|---|---|
| ESSEX, SS. | SUPERIOR COURT<br>C. A. NO. ESCV 2005-00641-D |

KATHLEEN A. MARTIN )
    Plaintiff )
     )
v. )  NOTICE OF MOTION OF DEFENDANT,
     )  BRIGHAM AND WOMEN'S HOSPITAL,
MERCK & CO., INC., DARTMOUTH- )  TO DISMISS PLAINTIFF'S CLAIMS
HITCHCOCK MEDICAL CENTER, )  PURSUANT TO MASS. R. CIV. P. 8(a)(1)
DR. ROSHINI PINTO POWELL, )  and (e)(1) and 12(b)(6)
DR. CHARLES CARR, BRIGHAM )
AND WOMEN'S HOSPITAL AND )
DR. PETER J. MILLETT, )
    Defendants )

       Now comes the defendant, Brigham and Women's Hospital, and pursuant to Superior

Court Rule 9E, submits a Notice of Motion to Dismiss Plaintiff's Claims Pursuant to Mass. R.

Civ. P. 8(a)(1) and (e)(1) and 12(b)(6). Counsel for the defendant, Brigham and Women's

Hospital, submits this Notice of Motion and affirms that the Motion to Dismiss was served by

first class mail on plaintiff's counsel pursuant to Rule 9A on **Friday, August 5, 2005**, in

compliance with the time frame allotted to file a responsive pleading to the plaintiff's Complaint.

       Respectfully submitted,

       Edward F. Mahoney (BBO No. 546436)
       Maria L. Mazur (BBO No. 642612)
       Attorneys for Defendant,
        Brigham and Women's Hospital
       MARTIN, MAGNUSON, MCCARTHY
        & KENNEY
       101 Merrimac Street
       Boston, Massachusetts 02114
       (617) 227-3240

A TRUE COPY ATTEST
DEPUTY ASS'T. CLERK

COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS

SUPERIOR COURT
NO: ESCV2005-00641-D

KATHLEEN A. MARTIN,    )
       Plaintiff,    )
       )
VS.    )
       )
MERCK & CO., INC., DARTMOUTH-    )
HITCHCOCK MEDICAL CENTER,    )
DR. ROSHINI PINTO POWELL,    )
DR. CHARLES CARR, BRIGHAM AND    )
WOMEN'S HOSPITAL and    )
DR. PETER J. MILLETT,    )
       Defendants.    )

## NOTICE OF MOTION TO DISMISS

      Pursuant to the provisions of Superior Court Rule 9E, defendants Dartmouth-Hitchcock

Medical Center, Roshini Pinto Powell, M.D. and Charles Carr, M.D. hereby notify this Court that

a Motion to Dismiss for lack of personal jurisdiction under Mass. R. Civ. P. Rule 12(b)(2) has

this date been served upon all parties who have thus far appeared in this action, in the manner

prescribed by Superior Court Rule 9A(b)(2). The original of said Motion to Dismiss, together

with the original of any opposition which may be received, will be filed with the Court in due

course pursuant to the terms of Superior Court Rule 9A(b)(2).

                        Respectfully submitted
                        By their attorneys

                        FICKSMAN & CONLEY, LLP

                        _____

                        David M. Gould, Esq.
                        BBO # 205100
                        John M. Dellea, Esq.
                        BBO # 544190
                        98 N. Washington Street
                        Suite 500
                        Boston, MA 02114
                        Telephone: (617) 720-1515

A TRUE COPY ATTEST
DEPUTY ASS'T. CLERK

## CERTIFICATE OF SERVICE

I, John M. Dellea, attorney for said defendant, hereby make oath that I have this day

served a copy of the attached:

## NOTICE OF MOTION TO DISMISS.

upon all parties, by mailing a copy thereof, postage pre-paid, directed to:

Andrew J. Tine, Esquire
Haese, LLC
30 Franklin Street, 3rd Floor
Boston, MA 02110

Signed under the pains and penalties of perjury.

DATED:

John M. Dellea, Esq.
B.B.O. #544190
Ficksman & Conley, LLP
98 North Washington Street
Suite 500
Boston, MA 02114
Telephone: (617) 720-1515

## COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS.

SUPERIOR COURT
C. A. NO. ESCV 2005-00641-D

KATHLEEN A. MARTIN )
    Plaintiff )
     )
     )
v. )    NOTICE OF MOTION OF DEFENDANT,
     )    DR. PETER J. MILLETT, TO DISMISS
MERCK & CO., INC., DARTMOUTH- )    PLAINTIFF'S CLAIMS PURSUANT TO
HITCHCOCK MEDICAL CENTER, )    MASS. R. CIV. P. 8(a)(1) and (e)(1) and
DR. ROSHINI PINTO POWELL, )    12(b)(6)
DR. CHARLES CARR, BRIGHAM )
AND WOMEN'S HOSPITAL AND )
DR. PETER J. MILLETT, )
    Defendants )

Now comes the defendant, Dr. Peter J. Millett, and pursuant to Superior Court Rule 9E,

submits a Notice of Motion to Dismiss Plaintiff's Claims Pursuant to Mass. R. Civ. P. 8(a)(1)

and (e)(1) and 12(b)(6). Counsel for the defendant, Dr. Peter J. Millett, submits this Notice of

Motion and affirms that the Motion to Dismiss was served by first class mail on plaintiff's

counsel pursuant to Rule 9A on **Friday, August 12, 2005**, in compliance with the time frame

allotted to file a responsive pleading to the plaintiff's Complaint.

Respectfully submitted,

Edward F. Mahoney (BBO No. 546436)
Maria L. Mazur (BBO No. 642612)
Attorneys for Defendant,
  Peter J. Millett, M.D.
MARTIN, MAGNUSON, MCCARTHY
  & KENNEY
101 Merrimac Street
Boston, Massachusetts 02114
(617) 227-3240

A TRUE COPY, ATTEST

DEPUTY ASS'T. CLERK

## CERTIFICATE OF SERVICE

I, Maria L. Mazur, counsel for defendant, Peter J. Millett, M.D., hereby certify that on the

12th day of August, 2005, I served the above MOTION OF DEFENDANT, DR. PETER J.

MILLETT, TO DISMISS PLAINTIFF'S CLAIMS PURSUANT TO MASS. R. CIV. P. 8(a)(1)

and (e)(1) and 12(b)(6) by mailing a copy thereof, postage prepaid to:

Andrew Tine, Esq.
Haese, LLC
30 Federal Street, 3rd Floor
Boston, MA 02110

Edward F. Mahoney (BBO No. 546436)
Maria L. Mazur (BBO No. 642612)
Attorneys for the Defendant,
Peter J. Millett, M.D.
Martin, Magnuson, McCarthy & Kenney
101 Merrimac Street
Boston, MA 02114
(617) 227-3240

2

$9$

## COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS

SUPERIOR COURT

KATHLEEN A. MARTIN,

Plaintiff,

v.

MERCK & CO., INC., et al.

Defendants.

CIVIL ACTION No. 050641

NOTICE OF FILING NOTICE OF REMOVAL

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

Please take notice that defendant Merck & Co., Inc. has filed the attached Notice of

Removal in the United States District Court for the District of Massachusetts.

MERCK & CO., INC.
By its attorneys:

James J. Dillon (BBO# 124660)
Lucy Fowler (BBO# 647929)
Kalun Lee (BBO# 657489)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02110-2600
(617) 832-1000

Dated: August 18, 2005

FILED
IN THE SUPERIOR COURT
FOR THE COUNTY OF ESSEX

AUG 1 8 2005

Thomas A. Driscoll Jr.
CLERK

A TRUE COPY ATTEST
DEPUTY ASS'T. CLERK

I hereby certify that the
foregoing document is true and correct copy of the
☐ electronic docket in the captioned case
☐ electronically filed original filed on
☐ original filed in my office on
Sarah A. Thornton
Clerk, U.S. District Court
District of Massachusetts
By:
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

KATHLEEN A. MARTIN,

      Plaintiff,

      v.

MERCK & CO., INC., et als

      Defendants.

CIVIL ACTION No. _____

**05 cv 11716 MLW**

## NOTICE OF REMOVAL

    Defendant Merck & Co, Inc. ("Merck"), by its undersigned counsel, hereby removes the

above-captioned action from Massachusetts Superior Court, Essex County, to the United States

District Court for the District of Massachusetts pursuant to 28 U.S.C. §§ 1332, 1441 and 1446

and respectfully files this Notice of Removal and states:

    1.    This is one of numerous actions that have been filed recently in both federal and

state courts around the country concerning the pharmaceutical VIOXX®. On or about October

21, 2004, Merck filed a motion for coordinated pre-trial proceedings with the Judicial Panel on

Multidistrict Litigation ("JPML") to coordinate all cases involving the pharmaceutical VIOXX®

("VIOXX® cases") pending in federal courts in a single district court ("MDL"), pursuant to 28

U.S.C. § 1407 and Rule 7.1(b) of the Rules of Procedure of the Judicial Panel on Multidistrict

Litigation. These pending cases, while involving different and distinct legal facts, raise certain

overlapping factual issues and allege similar legal theories. Merck intends to seek the inclusion

of this case within such MDL proceedings.

    2.    On or about April 19, 2005 Kathleen A. Martin ("plaintiff"), commenced this

action against Merck and other defendants by filing a complaint in Essex County Superior Court

in the Commonwealth of Massachusetts, bearing the Case No. 050641.

FILED
IN THE SUPERIOR COURT
FOR THE COUNTY OF ESSEX

AUG 1 8 2005

Thomas H. Driscoll Jr.
CLERK

3.    As more fully set out below, this case is properly removed to this Court pursuant

to 28 U.S.C. § 1441 because Merck has satisfied the procedural requirements for removal and

this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1441(a).

## I.    MERCK HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

4.    Merck was served with a copy of plaintiff's Complaint on July 18, 2005.

Accordingly, this Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b). A true and

correct copy of the Summons and Complaint served on Merck, together with Merck's Answer, is

attached hereto as Exhibit A. 28 U.S.C. § 1446(a).

5.    All properly joined and served defendants consent to this removal.[1]

6.    Venue is proper in this Court pursuant to 28 U.S.C. §115(a)(2) because it is the

"district and division embracing the place where such action is pending." *See* 28 U.S.C.

§1441(a).

7.    No further proceedings have been had in the state court action.

8.    No previous application has been made for the relief requested herein.

9.    Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served

upon counsel for plaintiff and a copy is being filed with the Clerk of Court, Essex County

Superior Court.

---

[1]    28 U.S.C. 1441(b) does not bar removal. It is well-settled that co-defendants who have not yet been properly served or who are fraudulently joined need not join in the removal. *See Getty Oil Corp. v. Insurance Co. of North Amer.*, 841 F.2d 1254, 1261 n.9 (5th Cir. 1988). Defendants Dartmouth-Hitchcok Medical Center, Dr. Roshini Pinto Powell, and Dr. Charles Carr (collectively, "New Hampshire Healthcare Defendants") have indicated that they have not been properly served with the complaint because, as citizens of New Hampshire being sued for alleged actions taken in new Hampshire, Massachusetts courts, whether state or federal, lack personal jurisdiction over these New Hampshire Defendants. Accordingly, the New Hampshire Defendants contend that they were not properly served and, therefore, their consent is not required at this time. The consent of the New Hampshire Healthcare Defendants is also not required because, as set out more fully below, these defendants are fraudulently joined. The only remaining defendants, Brigham & Women's Hospital and Dr. Peter J. Millett (collectively, "Massachusetts Healthcare Defendants") are also fraudulently joined. Therefore, their consent to removal is not required.

- 2 -

## II.     REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different states.

### A.     Complete Diversity of Citizenship.

11.     There is complete diversity as between Plaintiff and the only arguably properly joined defendant - Merck. Plaintiff is, upon information and belief, a citizen of Massachusetts. (Complaint ¶ 9.) Merck is, and was at the time plaintiff commenced this action, a corporation organized under the laws of the State of New Jersey with its principal place of business in New Jersey and, therefore, is a citizen of New Jersey for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

12.     There also is complete diversity as between Plaintiff and the New Hampshire Healthcare Defendants – Dartmouth–Hitchcock Medical Center, Dr. Roshini-Pinto Powell, and Charles Carr, all of whom are, upon information and belief, citizens of New Hampshire. (See Complaint ¶¶11-13.)

13.     Defendants Brigham & Women's Hospital and Dr. Peter Millet are the only alleged non-diverse defendants.

### 1.     The Healthcare Defendants Are Fraudulently Joined.

14.     Joinder of the Healthcare Defendants, collectively, does not defeat removal because these defendants are fraudulently joined. *See, e.g., Carey v. Bd. of Governors of Kenwood Country Club*, 337 F. Supp. 2d 339, 341-43 (D. Mass. 2004); *Mills v. Allegiance Healthcare Corp.*, 178 F. Supp. 2d 1, 4-5 (D. Mass. 2001). Joinder of a non-diverse defendant is "fraudulent" when the claims against the defendant do not have a "reasonable basis in law and

- 3 -

fact." *Mills*, 178 F. Supp. 2d at 4. "A mere theoretical possibility of recovery under state law does not suffice to preclude removal." *Id.* at 5. Joinder of the Healthcare Defendants is fraudulent in this instance because there is no reasonable basis in law or fact for the claims against these defendants for the following reasons.

15.    **First**, Plaintiff makes only vague and conclusory allegations against the Healthcare Defendants. Plaintiff cannot defeat removal by simply adding Healthcare Defendants to the caption and making passing reference to these defendants in the complaint. *See, e.g., Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999) (finding in-state defendant fraudulently joined where plaintiff refers to the in-state defendant only in passing and directs specific allegations towards the diverse defendants). In fact, with respect to the only non-diverse defendants – Dr. Millet and Brigham & Women's Hospital – Plaintiff alleges even less. The only factual allegation that the plaintiff makes as to Dr. Millet is that Plaintiff "on multiple occasions was treated by Defendant Millet and provided prescriptions by Defendant Millet," and that Dr. Millet somehow breached the standard of medical care. (Complaint ¶¶ 95 & 96.) The plaintiff does not allege anywhere in the Complaint that Dr. Millet prescribed Vioxx to her. Nor does Plaintiff allege any connection between her alleged use of VIOXX®, her alleged injuries, and her alleged treatment by Dr. Millet at Brigham & Women's Hospital.

16.    *Second*, the Non-Diverse Defendants are fraudulently joined for the additional reason that the claims against them are wholly inconsistent with the gravamen of his allegations: that Merck misled the public at large and the healthcare community regarding the safety of VIOXX®. In *In re Rezulin Prods. Liab. Litig.*, MDL No. 1348, 00 Civ. 2843, 2003 WL 43356, *1 (S.D.N.Y. Jan. 6, 2003) (attached as Ex. B), the court held that conclusory allegations that a defendant physician failed to warn the plaintiff of the risks of a drug, like those in this case, are

legally insufficient where the complaint contains detailed contradictory allegations that the manufacturer hid those very risks. "[I]n light of plaintiff's myriad allegations that the [pharmaceutical] defendants withheld information concerning the risks of Rezulin from physicians and others, an entirely conclusory allegation that the physician failed to warn of risks of Rezulin is insufficient to provide the defendant sufficient notice of the claim against him." *Id.* at \*1 (footnote omitted); *see also In re Rezulin Prods. Liab. Litig.*, MDL No. 1348. 00 Civ. 2843, 2002 WL 31852826, at \*2 (S.D.N.Y. Dec. 18, 2002) (attached as Ex. C) (finding fraudulent joinder of conclusory malpractice allegations where "the main tenor of plaintiffs' complaints is that Rezulin was an unsafe drug and that the manufacturers concealed its risks from the public, physicians, and others").

17.     Other courts have reached the same result when faced with similar conflicting claims against Merck and non-diverse physicians or defendants in the Vioxx® litigation. *See, e.g., Flores v. Merck & Co., Inc.*, No. C-03-362 slip op. at 2 (S.D. Tex. Mar. 15, 2004) (finding doctor fraudulently joined where allegations against the doctor were conclusory and where plaintiffs "claim[ed] that Merck 'failed to adequately and timely inform the health care industry of the risks of serious personal injury and death from Vioxx ingestion'") (attached as Ex. D); *Omobude v. Merck & Co.*, Inc., No. 3:03CV528LN, slip op. at 3-5 (S.D. Miss. Oct. 3, 2003) (attached as Ex. E) (finding fraudulent joinder of a physician in a suit against Merck for injuries allegedly caused by VIOXX®: "[W]here a plaintiff has specifically alleged facts from which one would necessarily infer that the defendant in question would not have known information otherwise alleged to have been misrepresented or concealed from him, then . . . to sustain his pleading burden, the plaintiff would have to plead at least some facts tending to show why or how the defendant knew or should have known of the information."); *see also Chiles v. Am.*

- 5 -

*Home Prods. Corp.*, No. 4:03-CV-802-A, slip op. at 4 (N.D. Tex. Sept. 26, 2003 (finding doctors fraudulently joined in thimerosal litigation and denying remand where plaintiffs had alleged misrepresentation against a drug manufacturer that "negate[d] any possible liability of the physicians" (attached as Ex. F).

18.     The Healthcare Defendants in this case are fraudulently joined for the same reason – the claims against them are fraudulently inconsistent with the claims against Merck and are not supported by specific factual allegations.  On the one hand, Plaintiff alleges that Merck successfully misrepresented and concealed the risks of VIOXX® from the general public and the medical community, proximately causing his injury.  On the other, Plaintiff maintains that Drs. Powell and Carr should have known the information concerning the risks of VIOXX® that she claims was hidden from everyone, including the medical community.

**B.     The Amount in Controversy Requirement is Satisfied.**

19.     Plaintiff's allegations clearly meet the amount-in-controversy threshold.  Plaintiff alleges that she "continues to suffer serious and debilitating health conditions as a result of the use of the Vioxx prescribed, including but not limited to elevated risk of stroke, elevated blood pressure, complications during two (2) different medical [sic] with respect to procedures in relation to Plaintiff's left knee, and other cardiac issues." (Complaint, ¶ 58)  Plaintiff also claims the disgorgement of all profits associated with VIOXX®.  It is well established that the amount in controversy requirement is easily satisfied in cases alleging personal injury. *See, e.g., In re Rezulin Prods. Liability Litig.*, 133 F. Supp. 2d 272, 296 (S.D.N.Y. 2001) (amount in controversy requirement satisfied in case alleging personal injury where "[t]he complaint . . . does not preclude recovery in excess of $75,000"); *Cygielman v. Cunard Line Ltd.*, 890 F. Supp. 305, 306-07 (S.D.N.Y. 1995) (in personal injury action, finding amount in controversy requirement

satisfied where it did not appear to legal certainty that claim was for less than jurisdictional amount).

20. Federal courts around the country have ruled that the amount-in-controversy threshold was met in similar actions alleging personal injuries caused by VIOXX®. *See, e.g.*, *Stubblefield v. Merck & Co., Inc.*, Civ. No. H-02-3139 (S.D. Tex. Oct. 8, 2002); *Zeedyk v. Merck & Co., Inc.*, No. 02-C-4203 (N.D. Ill. Aug. 30, 2002); *Abrusley v. Merck & Co., Inc.*, No. 02-0196 (W.D. La. June 18, 2002); *Jones v. Merck & Co., Inc.*, Civ. No. 02-00186 (D. Haw. June 5, 2002). These courts were all presented with complaints seeking actual damages for injuries caused by VIOXX® and all found, either explicitly or implicitly, that the requirements for federal diversity jurisdiction, including the amount in controversy, were satisfied.

**WHEREFORE,** Defendant Merck respectfully removes this action from the Essex County Superior Court to this Court pursuant to 28 U.S.C. § 1441.

MERCK & CO., INC.
By its attorneys:

James J. Dillon (BBO# 124660)
Lucy Fowler (BBO# 647929)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02110-2600
(617) 832-1000

Dated: August 17, 2005

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing NOTICE OF REMOVAL was served by U.S. mail on August 17, 2005, upon:

Andrew J. Tine
Haese, LLC
30 Franklin Street, 3rd Floor
Boston, MA 02110

- 7 -

Dartmouth Hitchcock Medical Center
One Medical Center Drive
Lebanon, NH  03756

Dr. Roshini-Pinto Powell
Dr. Charles Carr
Dartmouth Hitchcock Medical Center
One Medical Center Drive
Lebanon, NH  03756

Brigham & Women's Hospital
75 Francis Street
Boston, MA  02115

Dr. Peter Miller
Brigham & Women's Hospital
75 Francis Street
Boston, MA  02115

- 8 -

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing document was served by U.S. mail on August 18, 2005, upon:

Andrew J. Tine
Haese, LLC
30 Federal Street, 3rd Floor
Boston, MA 02110

John M. Dellea
Ficksman & Conley
One Boston Place
Boston, MA 02108

Brigham & Women's Hospital
75 Francis Street
Boston, MA 02115

Dr. Peter Miller
Brigham & Women's Hospital
75 Francis Street
Boston, MA 02115

- 2 -

# Commonwealth of Massachusetts
## County of Essex
## The Superior Court

*10*

CIVIL DOCKET# **ESCV2005-00641**

Martin

vs.

Merck & Co Inc et al

---

## ORDER OF TRANSFER

Pursuant to Massachusetts General Laws Chapter 231, Section 102C, as amended, and in accordance with Superior Court Rule 29, the above referenced case is

ORDER transferring case to United States District Court (Elizabeth M. Fahey, Justice)

Dated at Lawrence, Massachusetts this 19th day of August, 2005.

Thomas H. Driscoll Jr.,
Clerk of the Courts

BY: _____
Clerk

Telephone: (978) 687-7463

A TRUE COPY ATTEST

DEPUTY ASS'T. CLERK