IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| KATHLEEN A. MARTIN,<br>Plaintiff,<br><br>v.<br><br>MERCK & CO., INC., et al.<br>Defendants. | )<br>)<br>)<br>) CIVIL ACTION No.: 05CV11716-DPW<br>)<br>)<br>)<br>)<br>) |

### PLAINTIFF'S OPPOSITION, IN PART, TO DEFENDANTS, DARTMOUTH HITCHCOCK MEDICAL CENTER, ROSHINI PINTO POWELL, M.D., AND CHARLES CARR, M.D.'S MOTION TO DISMISS OR IN THE ALTERNATIVE, FOR REMAND OF THE CLAIMS AGAINST THEM TO THE MASSACHUSETTS SUPERIOR COURT

The plaintiff hereby opposes, in part, the motion of defendants, Dartmouth Hitchcock Medical Center, Roshini Pinto Powell, MD, and Charles Carr, to dismiss or, in the alternative, for remand of the claims against them to the Massachusetts Superior Court.

**A. Background**

This is an action brought by plaintiff for damages resulting from the ingestion of the non-steroidal, anti-inflammatory pain medication "Vioxx." Plaintiff underwent orthopedic surgery on or about June 2, 2002 at the Darthmouth-Hitchcock Medical Center. This surgery was performed by defendant Dr. Charles Carr. On December 19, 2002, Plaintiff was prescribed Vioxx by Dr. Roshini Pinto Powell of the Darthmouth Hitchcock Medical Center. Consequently, Plaintiff purchased and ingested Vioxx on a regular basis, as prescribed by her physicians. In late 2002, defendant Dr. Pinto Powell instructed plaintiff to take the painkiller "Aleve" and it was later recommended by defendant Dr. Peter Millet that the defendant also ingest aspirin. Plaintiff ingested these painkillers as directed by her physicians until March 2004.

On March 10, 2004, plaintiff experienced severe bleeding and hemorrhaging and had to be treated at Massachusetts General Hospital. The next day, she was again admitted to Massachusetts General Hospital for emergency treatment, as she experienced major gastrointestinal bleeding. The treatment required the administration of twelve (12) units of packed red blood cells to replace the blood loss, and to sustain her condition.

Defendants Darthmouth-Hitchcock Medical Center, Dr. Carr and Dr. Pinto Powell have moved to dismiss the complaint pursuant to F.R.C.P. Rule 12(b)(2), for lack of personal jurisdiction. Defendants assert that, as the three defendants are citizens of New Hampshire and have provided medical services only there, Massachusetts courts have no personal jurisdiction over them. They claim that neither the long arm statute of Massachusetts (M.G.L. Chapter 223 A, Section 3) nor due process requirements are satisfied.

Defendants' arguments for dismissal are as follows:

(1)     Defendants see the "increased risk of cardiovascular disease" as the injury suffered by the plaintiff. As plaintiff was a resident of Vermont when the treatment commenced, they aver that the injury has not occurred in Massachusetts and jurisdiction of Massachusetts courts do not exist.

(2)     They further assert that neither defendant has regularly done or solicited business in Massachusetts or engaged in any other persistent course of conduct or derived substantial revenues from services rendered in Massachusetts.

**B. Argument**

**1) Causation, In Part, and Injury Were Experienced in Massachusetts**

Defendants' first point, that the "injury" here is the "increased hypothetical risk of hypothetical disease" alone is incorrect. Plaintiff has two obvious injuries: 1) a near death bleeding event and 2) cardiovascular abnormalties, which increase her risks of a future cardiovascular event. The ongoing treatment of the plaintiff with Vioxx, and separately, the treatment of plaintiff with Vioxx in combination with Aspirin and/or Alleve and vitamin E appear to be the causes of her injuries. At this point, there is no clear line as to when one physician's treatment of plaintiff began or stopped being a factor in the ultimate harm suffered by plaintiff. Being unable to separate the causation from the injuries suffered by plaintiff requires the several joint tortfeasor defendants to have plaintiff's claims against them resolved in one jurisdiction. The appropriate jurisdiction is Massachusetts, because plaintiff moved to Massachusetts during the course of her treatment and she ultimately experienced the first of the disastrous consequences of such treatment while residing in Massachusetts.

Defendants incorrectly quote *Mello v. K-Mart Corp.*, in support of their view that no jurisdiction was established in Massachusetts. In that case, plaintiffs, residents of Massachusetts on vacation in Tennessee, suffered severe injury from an accident involving a defective hydraulic

jack. They then received medical treatment in their home state of Massachusetts and claimed that they had suffered tortious injury in Massachusetts, because they had incurred medical expenses and endured pain and suffering here. The court, quoting *Walsh v. National Seating Co., Inc. 411 Supp. 564*, ruled that the fact that plaintiffs had suffered in Massachusetts as a result from an injury/accident that occurred in Tennessee does not create personal jurisdiction over the defendant in Massachusetts. To decide otherwise would mean that parties "could choose their court by choosing their hospital or place of recuperation."

*Mello* is distinguishable from the case at bar because plaintiff suffered the causation, in part, and the manifestation of injury (treatment in and its near fatal effect) while residing in Massachusetts. She did not "choose" her court by choosing a hospital or a place of recuperation: she almost died in Massachusetts and had to be treated here on an emergency basis. She did not only feel the "effects" of the injury in Massachusetts (meaning pain and suffering from an accident/injury manifesting itself here) but experienced the causation, in part, also through the continuing treatment, initiated in New Hampshire, while residing in Massachusetts.

**2) New Hampshire Defendants' Connection to Massachusetts**

In order to establish personal jurisdiction, some basis for jurisdiction enumerated in the long arm statute must be established and the exercise of jurisdiction must be consistent with the basic due process requirements mandated by the U.S. Constitution.

Defendants solicit business in Massachusetts, engage in other persistent courses of conduct and derive substantial revenue from services performed on Massachusetts citizens. According to Dartmouth-Hitchcock Medical Center's own website, it is *"one of eleven members of the Darthmouth-Hitchcock Alliance, a regional network of hospitals and other health care organizations in New Hampshire, Vermont, and Massachusetts that share a common commitment to finding cost-effective and innovative ways to meet the health care needs of each member's community."* See Exhibit A hereto. The website refers to Cooley Dickinson Hospital as a Dartmouth-Hitchcock Alliance member in Massachusetts. Without having yet conducted discovery, it should be inferred from Dartmouth-Hitchcock's own statements that it has created a network reaching into Massachusetts in order to actively solicit patients from Massachusetts through its alliance member in Massachusetts. Also, it should recognized that the Dartmouth-Hitchcock Medical Center must derives substantial revenue from patients referred from its alliance member in Massachusetts.

3

As a result of Dartmouth-Hitchcock's own efforts to solicit and treat residents of Massachusetts, basic due process requirements are satisfied. Specific personal jurisdiction is satisfied if there are "minimal contacts" with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Defendants solicitation of business in Massachusetts, its creation of an alliance with a Massachusetts hospital to act as a referral network within Massachusetts, and its treatment of plaintiff, that started her on a disastrous course substantially impacting her health, should have caused defendants to anticipate being haled before a Massachusetts court on some future occasion.

Defendants incorrectly cite *Gelineau v. New York University Hospital,* 375 F. Supp. 661, (1974), in support of their position (cited in Exhibit B to their papers). In that case, defendant, unlike in the case at bar, was a local University hospital, not affiliated with any out-of-state hospitals and not actively soliciting referrals from affiliated out-of-state institutions. Further, our case deals with a continuing regime of treatment, started in New Hampshire and continued in Massachusetts, with several contributory tortfeasors.

The defendants also incorrectly invoke the "special rules" in the medical malpractice context quoted in *Mosier v. Kinley,* 142 N.H. 415, 702 A.2d 803 (1997). Those special rules are based on the belief that it would be unfair to permit a suit in whatever distant jurisdiction the patient may carry the consequences of his treatment. New Hampshire invoke these limiting rules to resident physicians <u>with an essentially a local practice.</u> Unlike *Mosier,* defendants here are a large medical institution, and its associated physicians, which are part of an interstate medical alliance, seeking to draw patients from at least four (4) states.

### 3) Remand to State Court

Plaintiff does not oppose remand to state court of this matter. Plaintiff concurs that this matter was improperly removed on the basis that, *inter alia,* defendant Merck failed to obtain consent for removal from the other party defendants.

### C. Conclusion

Based on the foregoing, it can be concluded that both the requirements of the long arm statute and fundamental due process requirements are satisfied. If this Court doubts that the requirements of the Massachusetts long arm statute or due process requirements have been met,

4

plaintiff seeks leave for discovery as to the defendants' solicitation, treatment and revenue generated by them from residents of Massachusetts.

Plaintiff,
By her attorneys,

/s/ Andrew J. Tine

Andrew J. Tine
BBO#633639
Haese, LLC
30 Franklin Street, 3rd Floor
Boston, MA 02110
Tel. (617) 428-0266
Fax (617) 428-0276

## CERTIFICATE OF SERVICE

I, Andrew J. Tine, hereby certify that I served the foregoing Opposition and Cross Motion to Amend upon Maria L. Mazur, John Dellea and James Dillon via U.S. Mail, postage prepaid, this 29th day of September 2005.

/s/ Andrew J. Tine

Home | Contact us | Site index | Search: [        ] [go]

# Dartmouth-Hitchcock Medical Center

Find a Doctor | Departments & Services | Health Information | Quality Reports | Jobs | Classes & Events | News

**About Dartmouth-Hitchcock Medical Center**

Facts and Figures

Annual & Community Benefits Reports

Mission and Values

Directions, Maps and Parking

Who We Are

Publications

Our History

Awards & Rankings

DHMC News Center

**Go back to...**

Departments & Services

DHMC Home

# About Dartmouth-Hitchcock Medical Center

Printable Version

**OUR MISSION:**
**To provide high-quality health care and comfort to the ill, to prevent illness among the well, and to advance health care through education, research, community service and the improvement of clinical practice.**



**Dartmouth-Hitchcock Medical Center (DHMC)** is New Hampshire's only academic medical center. Internationally renowned, nationally ranked, and regionally respected, we integrate high-quality patient care, advanced medical education, and translational research to provide a full spectrum of health care.

DHMC is located on a 225-acre campus in the heart of New Hampshire's Upper Connecticut River Valley in Lebanon. In August 2004, the New Doctors Office Building opened, increasing the campus by 40%. Read more about the expansion and Project for Progress.

**Dartmouth-Hitchcock Medical Center is made up of:**

- Mary Hitchcock Memorial Hospital,
- the Dartmouth-

DHMC is home to leading specialists and researchers who provide care in almost every area of medicine. Specialty care services and multispecialty programs include:

- Cardiac Care

**EXHIBIT A**

- Hitchcock Clinic (a network of more than 900 primary and specialty care physicians located throughout New Hampshire and Vermont),
- Dartmouth Medical School and
- VA Medical and Regional Office Center in White River Junction, VT.

- The Comprehensive Breast Program
- Diabetes Center
- Infertility and Reproductive Medicine
- Pain Management
- Palliative Medicine
- The Spine Center
- Bone Marrow Transplant

DHMC is also home to the Children's Hospital at Dartmouth (CHaD) and Norris Cotton Cancer Center (NCCC), New Hampshire's only children's hospital and the state's only National Cancer Institute designated comprehensive cancer center.



DHMC is one of eleven members of the Dartmouth-Hitchcock Alliance, a regional network of hospitals and other health care organizations in New Hampshire, Vermont, and Massachusetts that share a common commitment to finding cost-effective and innovative ways to meet the health care needs of each member's community.



Dartmouth-Hitchcock Medical Center is recognized in national rankings for the quality and depth of its services. In its annual "America's Best Hospitals" issue, *U.S. News and World Report* lists the Norris Cotton Cancer Center in the top 50 treatment and research centers in the country.

As a charitable organization, we are committed to serving our community. In fiscal year 2003 Dartmouth-Hitchcock provided over $46 million worth of community benefits and subsidized Medicaid and Medicare costs by more than $51 million. We also developed plans to meet identified community needs in the Upper Valley, Manchester, Nashua, Keene and Concord, NH.

D A R T M O U T H - H I T C H C O C K   M E D I C A L   C E N T E R
One Medical Center Drive, Lebanon, NH 03756  |  (603) 650-5000

Dartmouth Medical School  |  Dartmouth College  |  Dartmouth-Hitchcock Partners

Privacy Statement  |  Copyright © 2005 Dartmouth-Hitchcock Medical Center  |  Printable Version

**EXHIBIT A**

# DARTMOUTH-HITCHCOCK

Search:

- Find a Health Care Provider
- News
- Education & Events
- Disease & Wellness Information
- Employment
- Locations

**Welcome to northern New England's most comprehensive health care system.**
We comprise New Hampshire's only teaching and research medical center, the Dartmouth Me School, the VA Medical Center in White River Junction, Vermont, community practices, and a collaboration of independent providers called Dartmouth-Hitchcock Alliance.

## LOCATIONS



Dartmouth-Hitchcock is a leader in patient care, research, and education.

We have locations throughout New Hampshire, Vermont and Massachusetts.

### D-H Highlights
* Valley Regional Hospital Joins Dartmouth-Hitchcock Alliance
* Infants with Eczema May be Eligible for CHaD Asthma Study
* HPV Vaccine Shown to "Substantially" Reduce Cervical Cancer

### New Hampshire
Dartmouth-Hitchcock Medical Center, Leban
Dartmouth-Hitchcock Concord
Dartmouth-Hitchcock Keene
Dartmouth-Hitchcock Manchester
Dartmouth-Hitchcock Nashua
Upper Connecticut Valley Hospital, Colebroo
Valley Regional Hospital, Claremont
Visiting Nurse Association and Hospice of Ve and New Hampshire
Weeks Medical Center, Lancaster
West Central Behavioral Health, Lebanon

### Vermont
Central Vermont Medical Center, Barre
Gifford Medical Center, Randolph
Mt. Ascutney Hospital, Windsor
Northeastern Vermont Regional Hospital, St Johnsbury
Visiting Nurse Association and Hospice of Ve and New Hampshire
VA Medical Center, White River Junction

### Massachusetts

Cooley Dickinson Hospital, Northampton

© Dartmouth-Hitchcock 2005

**EXHIBIT A**

# COOLEY DICKINSON HOSPITAL
## DARTMOUTH-HITCHCOCK ALLIANCE

Website Layo
Font Size: 12 px

Home | About Us | Services | Patients & Visitors | Employment

Search

September 29, 2005

COOLEY DICKINSON HOS

Home>Welcome>About Us

- Welcome
- **About Us**
- News
- Events
- Our History
- Privacy Practices
- Visiting Hours
- Contact Us

**About Cooley Dickinson Hospital**

 Print

**Events**

cooley



Register

Search Even

Click here fo groups

Cooley Dickinson was founded in 1886 through a bequest from a Hatfield farmer, Caleb Cooley Dickinson (Amherst poet Emily Dickinson's fourth cousin, twice removed). As a locally governed, not-for-profit community hospital, Cooley Dickinson provides convenient, personalized care.


Find a Healthcare Provider at CDH

Cooley Dickinson Hospital offers a wide range of inpatient and outpatient services at its main campus in Northampton as well as a variety of outpatient services at locations throughout western Hampshire and southern Franklin counties. To better meet the needs of residents living east of the Connecticut River, the Amherst Community Outpatient Center at 170 University Drive offers x-rays, ultrasound, mammography, childbirth/parent education, physical and occupational therapy, behavioral health counseling, and laboratory services. Facilities offering a variety of services are also located in Easthampton, Hadley, Florence and South Deerfield.

The hospital features an extremely well-qualified medical staff and a highly skilled, compassionate nursing, professional and support staff. Fully accredited by the Joint Commission on Accreditation of Healthcare Organizations, Cooley Dickinson Hospital is proud to be affiliated since 1993 with Dartmouth-Hitchcock Medical Center in Lebanon, New Hampshire and is a member of the Dartmouth-Hitchcock Alliance.

**Cooley Dickinson Hospital**      30 Locust Street (Route 9) Northampton, MA, 01061-5001      (41:
Terms and Conditions | Privacy Statement | CDH Notice of Privacy Practices | DHA | Site Map | Contact Us

**EXHIBIT A**

http://www.cooley-dickinson.org/about_us.php      29-09-2005