IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KATHLEEN A. MARTIN, <br><br> Plaintiff, <br><br> v. <br><br> MERCK & CO., INC., et al., <br><br> Defendants. | Civil Action No. 05-11716-DPW |

**MEMORANDUM OF DEFENDANT MERCK & CO., INC.
IN OPPOSITION TO MOTION OF DARTMOUTH HITCHCOCK MEDICAL CENTER,
ROSHINI PINTO POWELL, AND CHARLES CARR FOR REMAND OF THE CLAIMS
AGAINST THEM TO THE MASSACHUSETTS SUPERIOR COURT**

Defendant Merck & Co., Inc. ("Merck"), through its undersigned counsel, respectfully submits this Memorandum in Opposition to the Motion of the Defendants, Dartmouth Hitchcock Medical Center, Roshini Pinto Powell, M.D. and Charles Carr, M.D. for Remand of the Claims Against Them to the Massachusetts Superior Court (the "Motion").

**INTRODUCTION**

Plaintiff commenced this action in the Massachusetts Superior Court of Essex County against Merck and various fraudulently joined or misjoined healthcare defendants for injuries allegedly resulting from her use of the prescription drug VIOXX®, which was manufactured by Merck. The healthcare defendants include Dartmouth Hitchcock Medical Center, Dr. Roshini Pinto Powell, and Dr. Charles Carr (collectively, "New Hampshire Defendants") and Brigham and Women's Hospital ("Brigham") and Dr. Peter Millet (collectively with Brigham, "Massachusetts Defendants").

Merck removed the case to federal court on August 18, 2005, asserting that this court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332 and that removal was proper pursuant to 28 U.S.C. § 1441, 1446. Merck explained in its Notice of Removal that Plaintiff's joinder of the non-diverse Massachusetts Defendants and the non-consenting but diverse New Hampshire Defendants could not defeat Merck's right to remove this action because both the New Hampshire and Massachusetts Defendants are fraudulently joined and misjoined. As such, their citizenship may be ignored and their consent to removal is not required.

The Plaintiff's case is one of numerous cases that have been filed against Merck since it announced the voluntary withdrawal of VIOXX® from the market on September 30, 2004. The Judicial Panel on Multi-District Litigation (the "Panel") has already transferred hundreds of these cases to an MDL proceeding in the Eastern District of Louisiana. Merck notified the Panel of the tag-along status of this action on August 23, 2005 (*see* Letter, attached as Ex. A), and the Panel conditionally transferred this case to the VIOXX® MDL on September 16, 2005. (*See* Conditional Transfer Order No. 24, attached as Ex. B).

Plaintiff moved to remand the case to state court on August 29, 2005, and Merck responded on September 12, 2005. Plaintiff moved to remand on the ground that the citizenship of the Massachusetts Defendants deprives this Court of subject matter jurisdiction pursuant to 28 U.S.C. § 1332. However, as set forth in Merck's Opposition and as set forth below, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the citizenship of the only non-diverse defendants – the Massachusetts Defendants – must be ignored because they are fraudulently joined and misjoined in this action. In her Motion to Remand, Plaintiff did not dispute that the New Hampshire Defendants were fraudulently joined or misjoined defendants whose consent to removal was not required. As explained in Merck's Notice of Removal and as

set out more fully below, any objection based on the failure of the New Hampshire Defendants to consent to removal would have been without merit. The New Hampshire Defendants, like the Massachusetts Defendants, are fraudulently joined or misjoined defendants. The Plaintiff's claims against both are conclusory and fails to allege any connection between her alleged use of VIOXX®, her alleged injuries and her alleged treatment by the Healthcare Defendants. In addition, the claims against the Healthcare Defendants are wholly inconsistent with the gravamen of her allegations against Merck and are not supported by specific factual allegations. Accordingly, Merck was not required to obtain their consent to removal. The New Hampshire Defendants have now moved to dismiss for lack of personal jurisdiction or, in the alternative, to remand to Massachusetts Superior Court based on their inability to consent to removal. As set out more fully below, the Court should defer ruling on the motions of the New Hampshire Defendants pending final transfer of the case to the MDL proceedings before Judge Fallon in the Eastern District of Louisiana, where Judge Fallon will be considering virtually identical issues in a number of cases already transferred to the MDL. However, should the Court to proceed to consider these motions. Merck does not object to the New Hampshire Defendants' Motion to Dismiss, but does object to their alternative Motion for Remand. The motion of the New Hampshire Defendants for remand should be denied because Merck was not required to obtain the consent of the fraudulently joined or misjoined New Hampshire Defendants.

## ARGUMENT

As set out more fully below, the Court should defer ruling on all pending motions, including the New Hampshire Defendant's Motion to Dismiss and Alternative Motion For Remand, pending transfer of this action to the VIOXX® MDL before Judge Fallon. Alternatively, if the Court addresses the merits of the remand motions, it should deny the

- 3 -

alternative motion to remand because the New Hampshire Defendants are fraudulently joined or misjoined in this action.

## I.    THE COURT SHOULD DEFER CONSIDERATION OF THE NEW HAMPSHIRE HEALTHCARE DEFENDANTS' MOTION TO DISMISS AND ALTERNATIVE MOTION TO REMAND PENDING TRANSFER TO THE MDL.

As a threshold matter, for the reasons already set out in Merck's Opposition to Plaintiff's Motion to Remand and Merck's Motion to Stay (both of which are incorporated herein by reference), the Court should refrain from ruling on the New Hampshire Defendants' Motion To Dismiss and their alternative Motion For Remand pending the transfer of this case to *In re Vioxx Products Liab. Litig.*, No. 1657 ("VIOXX® MDL"), the MDL proceeding that has been established in the Eastern District of Louisiana to coordinate all product liability cases involving alleged health risks from VIOXX® (the "VIOXX® cases"). *See* Transfer Order dated February 16, 2005 (attached hereto as Ex. C). The Judicial Panel has recognized that threshold motions such as motions to remand may be decided by the MDL court. (*See id.* at 2). Moreover, Judge Fallon of the VIOXX® MDL transferee court along with transferor courts around the country have recognized that having jurisdictional issues such as those arising in motions to remand decided by a single judge promotes consistency, fairness, and judicial economy. (*See In re Vioxx Products Liab. Litig.*, Transcript of Status Conference, June 23, 2005, at 21 (attached hereto as Ex. D) ("[I]f different decisions are made by numerous judges, then you have no consistency and no predictability and no one knows exactly what to do or how to do it. It's easier if one court decides some of these matters than if 50 or 100 courts decide the matter.").) *See also Wilbanks v. Merck & Co,* Civ. Action No. 05-1241-T/AN, 2005 WL 2234071, at *2 (W.D. Tenn. Sep. 13, 2005) (attached hereto as Ex. E)( "having the jurisdictional issues decided in one proceeding will promote judicial economy and conserve judicial resources[,] . . . any prejudice to the plaintiffs resulting from a stay would be minimal[, and] . . . in the absence of a stay, the risk to Merck of

- 4 -

duplicative motions and discovery is significant"); *Anderson v. Merck & Co.*, Civ. Action No. 4:05-cv-89 (E.D. Mo. Mar. 16, 2005) (attached hereto as Ex. F); *McCrerey v. Merck & Co.*, Civ. Action No. 04-cv-2576 (S.D. Cal. Mar. 2, 2005) (attached hereto as Ex. G); *Dixon v. Merck & Co.*, Civ. Action No. 05-0121 (S.D. Tex. Feb. 23, 2005) (attached hereto as Ex. H).

For these reasons and those set forth in Merck's Motion to Stay, this Court should defer ruling on the New Hampshire Defendants' Motion to Dismiss and Alternative Motion For Remand pending final transfer of this case to the VIOXX® MDL before Judge Fallon.

## II.    THE NEW HAMPSHIRE DEFENDANTS' ALTERNATIVE MOTION FOR REMAND SHOULD BE DENIED BECAUSE MERCK WAS NOT REQUIRED TO OBTAIN THE CONSENT OF THE NEW HAMPSHIRE DEFENDANTS PRIOR TO REMOVING THIS ACTION TO FEDERAL COURT.

If the Court does consider the merits of the New Hampshire defendants' alternative Motion For Remand, it should be denied.

In their alternative Motion For Remand, the New Hampshire Defendants object to removal on the ground that Merck removed this action to federal court without their consent. (New Hampshire Defs.' Motion at 2.) However, it is well settled that removing parties need not obtain consent for removal from fraudulently joined or misjoined parties.[1] *See Polyplatics, Inc. v. Transconex, Inc.*, 713 F.2d 875, 877 (1st Cir. 1983) (party joined fraudulently "need not join in a removal petition"); *Carey*, 337 F. Supp. 2d at 441 (D. Mass. 2004); *Hill v. City of Boston*, 706 F. Supp. 966, 968 (D. Mass. 1989); *Montanez v. Solstar Corp.*, 46 F. Supp. 2d 101, 103 (D.P.R. 1999); *see also In re Diet Drugs*, 220 F. Supp. 2d 414, 425 (E.D. Pa. 2002). In the

---

[1]  As this Court has recognized, "'fraudulent joinder' is a term of art used to describe not only to the deceptive practice of joining a resident defendant solely to defeat diversity, but also any improper joinder" and does not necessarily mean that Plaintiff acted to mislead or deceive." *Carey v. Bd. of Governors of the Kernwood Country Club*, 337 F. Supp. 2d 339, 341 n.1; *Coughlin*, 776 F. Supp. at 628 n.1.

instant case the New Hampshire Defendants are fraudulently joined or misjoined defendants and, therefore, need not consent to removal.

A.     **The New Hampshire Defendants Are Fraudulently Joined.**

A defendant is fraudulently joined when there is no reasonable basis to predict that a plaintiff could prevail on the claims against that defendant as those claims are pleaded on the face of the complaint. *See Carey*, 337 F. Supp. 2d at 341-42 (D. Mass. 2004) (citing *Mills v. Allegiance Healthcare Corp.*, 178 F. Supp. 2d 1, 4 (D. Mass. 2001)). Fraudulent joinder may be shown by a lack of a factual or legal basis for a plaintiff's claims. *See Anderson v. Allstate Life Ins.*, No. CA 00-0958-C, 2001 WL 228057, * 8 (S.D. Ala. Feb. 1, 2001). The New Hampshire Defendants are fraudulently joined in this case for both of these reasons. First, Plaintiff has not pleaded a sufficient factual basis for the claims against the New Hampshire Defendants. Second, there is no legal basis for the claims against the New Hampshire Defendants because, as set out in the New Hampshire Defendants Motion to Dismiss, Plaintiff commenced this action in a court lacking personal jurisdiction over the claims against the New Hampshire Defendants.

1.     *The New Hampshire Defendants Are Fraudulently Joined Because Plaintiff Has Not Alleged A Sufficient Factual Basis For Claims Against The New Hampshire Defendants.*

The factual allegations against the New Hampshire Defendants are deficient, and the New Hampshire Defendants are therefore fraudulently joined, for at least two independent reasons: (1) the minimal allegations directed at the New Hampshire Defendants are merely conclusory generic allegations which do not even meet the notice pleading requirements of Rule 8 of the Federal Rules of Civil Procedure and thus cannot defeat Merck's right to remove, and (2) these conclusory and general allegations are undermined and contradicted by the more abundant and specific allegations directed at Merck.

a.    Plaintiff Makes Only Conclusory And General Allegations With
Respect To The New Hampshire Healthcare Defendants.

Defendants are fraudulently joined when plaintiffs do no more than "make conclusory,
general allegations of negligence against [physician defendants] which they fail to support with
specific, underlying facts." *Flores v. Merck &Co.,* Civ. Action No. C-03-362, Order at 2 (S.D.
Tex. Mar. 15, 2004) (attached hereto as Ex. I); *Benavides v. Merck & Co.,* Civ. Action No. L-03-
CV-134, Report and Recommendation at 5 (S.D. Tex. Feb. 24, 2004) (Report and
Recommendation) ("[w] hen considering the Plaintiff's allegations, "speculative and conclusory
allegations do not state a cause of action without factual support.") (attached hereto as Ex. J);
*Omobude v. Merck & Co., Inc.*, Civ. Action No. 3:03CV528LN, Memorandum & Order at 3-4
(S.D. Miss. Oct. 3, 2003) (same) (attached hereto as Ex. K); *Baisden v. Bayer Corp.*, 275 F.
Supp. 2d 759, 762-63 (S.D. W. Va. 2003) (same); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp.
2d 272, 295 (S.D.N.Y. 2001) (same).

In *Flores, Benevides,* and *Omobude,* all of which involved similar medical malpractice
claims against physicians arising out of the physicians prescription of VIOXX®, plaintiffs
alleged that at the time the health care defendants prescribed VIOXX® they "knew or should
have known" of the alleged risks and either failed to consider those risks or failed to warn of
those risks. *Flores,* Civ. Action No. C-03-362, Order at 2; *Benevides,* Civ. Action No. L-03-CV-
134, Report & Recommendation at 5; *Omobude,* Civ. Action No. 3:03CV528 LN, Order at 3-4.
In all of these cases the plaintiffs did not allege how the physician defendants knew or should
have known of these alleged health risks associated with VIOXX® and, as a result, the courts
held that the physician defendants were fraudulently joined. In the instant case, Plaintiff alleges
in even more vague and conclusory terms that the New Hampshire Defendants, at the time they
prescribed VIOXX® in 2002, knew or should have known of the alleged risks of VIOXX®.

- 7 -

(Compl. ¶ 51-54.) Moreover, Plaintiff purports to hold the physicians liable for prescribing a drug despite known contraindications but make no effort to identify the alleged contraindication. Accordingly, the New Hampshire Defendants, like the health care defendants in the above-cited cases, are fraudulently joined.

Plaintiff's allegations against the New Hampshire Defendants do not meet even the minimal notice pleading requirements of Rule 8 of the Federal Rules of Civil Procedure ("Rule 8"). Rule 8 requires that plaintiffs at least provide fair notice of the basis for the claim and the grounds for relief. Fed. R.Civ. P. 8. By pleading in only conclusory and contradictory terms, Plaintiff has failed to provide such fair notice and, accordingly, the New Hampshire Defendants are fraudulently joined. *See, e.g., In re Rezulin Prods. Liab. Litig.,* 133 F. Supp. 2d 272, 284 (S.D.N.Y. 2001).

> b.    The Conclusory And Generic Allegations Are Contradicted By The Abundant And More Specific Allegations That Merck Misrepresented or Concealed The Same Information That Plaintiff Claims The New Hampshire Defendants Knew or Should Have Known.

The Plaintiffs' Steering Committee in the VIOXX® MDL has recognized that joinder of physicians as defendants is generally improper in cases such as this where the claims against Merck are "by and large incompatible with a claim that the doctor is at fault." *See In re VIOXX MDL,* Pls. Mem. in Supp. of Mot. to Modify Order of June 6, 2005 Regarding Physician Contacts, at 3 (attached hereto as Ex. L). This concession was likely made as a result of the rulings of courts around the country that physician defendants are fraudulently joined where the conclusory allegations that the physician defendant somehow knew or should have known of the alleged risks of VIOXX® are contradicted by the more abundant and specific allegations that Merck concealed and misrepresented the very information that plaintiff claims the physician defendant knew or should have known. *See, e.g., Flores*, No. C-03-362 slip op. at 2 (finding

- 8 -

doctor fraudulently joined where allegations against the doctor were conclusory and where plaintiffs "claim[ed] that Merck 'failed to adequately and timely inform the health care industry of the risks of serious personal injury and death from Vioxx ingestion'"); *Omobude,* No. 3:03CV528LN, slip op. at 3-5 (finding fraudulent joinder of a physician in a suit against Merck for injuries allegedly caused by VIOXX®: "[W]here a plaintiff has specifically alleged facts from which one would necessarily infer that the defendant in question would not have known information otherwise alleged to have been misrepresented or concealed from him, then . . . to sustain his pleading burden, the plaintiff would have to plead at least some facts tending to show why or how the defendant knew or should have known of the information.").

Other courts have reached similar conclusions in other pharmaceutical litigation. *See, e.g., Chiles v. Am. Home Prods. Corp.*, No. 4:03-CV-802-A, slip op. at 4 (N.D. Tex. Sept. 26, 2003) (thimerosal litigation; physician fraudulently joined where plaintiff's allegations that drug manufacturer misrepresented or concealed information "negate[d] any possible liability of the physicians") (attached hereto as Ex. M); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 295 (S.D.N.Y. 2001) (finding there was no factual basis on which to impute knowledge against a physician based on the physician's prescription of the diabetes drug Rezulin because the plaintiff's allegations that the drug manufacturer had concealed the drug's risks from everyone, "refutes the assumption that ... [the] physician[] had knowledge of [the drug's] harmful effects."); *Brown v. Bristol Meyers Squibb Co.*, Civ. A. No. 4:02CV301LN, slip op. at 11 (S.D. Miss. Dec. 2, 2002) (physician defendant fraudulently joined in litigation involving the prescription drug Stadol) (attached hereto as Ex. N). [2] For example, in *Brown*, plaintiffs alleged

---

[2]     *In re Diet Drugs Prods. Liab. Litig.*, 220 F. Supp. 2d 414, 424 (E.D. Pa. 2002) (physician defendant fraudulently joined); *Louis v. Wyeth-Ayerst Pharms., Inc.*, Civ. A. No. 5:00CV102LN (S.D. Miss. Sept. 25, 2000) (attached hereto as Ex. O) (finding pharmacy defendant fraudulently joined for similar reasons).

that an in-state physician had negligently prescribed the prescription drug Stadol with knowledge

of its allegedly dangerous propensities. Civ. A. No. 4:02CV301LN, slip op. at 11. The court

denied the motion to remand, finding that the physician defendant had been fraudulently joined

because any possible inference of the physician's knowledge was undermined by the more

specific allegations made "consistently and repeatedly ... throughout the complaint that in the

manufacturing defendants' aggressive marketing of Stadol, they failed to disclose all possible

side effects associated with the use of Stadol ... and specifically misrepresented the safety and

effectiveness of Stadol." *Id.*

Similarly, the court in the *Rezulin MDL*, 133 F. Supp. 2d 272 (S.D.N.Y. 2001), has held

that there was no factual basis on which to impute knowledge against a physician defendant

where the plaintiff alleges that the drug manufacturer had concealed the drug's risks from

everyone because such allegation, "refutes the assumption that ... [the] physician[] had

knowledge of [the drug's] harmful effects."[3] 133 F. Supp. 2d at 295.

The same is true here. Plaintiff's conclusory allegations that the New Hampshire

Defendants somehow knew or should have known of the alleged risks of VIOXX® when they

prescribed VIOXX® in 2002 are undermined by the allegations throughout Plaintiff's Complaint

in which Plaintiff alleges an elaborate scheme by Merck to intentionally misrepresent or conceal

knowledge of the alleged risks of VIOXX® at least until September 2004. (*See* Compl. ¶ 51

---

[3]     *Accord In re Rezulin Prods. Liab. Litig.*, MDL No. 1348, 00 Civ. 2843, 2003 WL 43356, *1 (S.D.N.Y. Jan. 6, 2003) (attached as Ex. P) ("[I]n light of plaintiff's myriad allegations that the [pharmaceutical] defendants withheld information concerning the risks of Rezulin from physicians and others, an entirely conclusory allegation that the physician failed to warn of risks of Rezulin from physicians and others, an entirely conclusory allegation that the physician failed to warn of risks of Rezulin is insufficient to provide the defendant sufficient notice of the claim against him."); *In re Rezulin Prods. Liab. Litig.*, MDL No. 1348. 00 Civ. 2843, 2002 WL 31852826, at *2 (S.D.N.Y. Dec. 18, 2002) (attached as Ex. Q) (finding fraudulent joinder of conclusory malpractice allegations where "the main tenor of plaintiffs' complaints is that Rezulin was an unsafe drug and that the manufacturers concealed its risks from the public, physicians, and others");

(alleging that Merck did not reveal the alleged cardiovascular risks of VIOXX® until September 2004); *see also* ¶¶ 20-50 (alleging a variety of ways in which Merck allegedly withheld or misrepresented the safety information regarding the cardiovascular effects of VIOXX®).) Therefore, like the physician defendants in *Flores* and *Omobude* and numerous other cases discussed *supra*, the New Hampshire Defendants are fraudulently joined.

> **2.    *The New Hampshire Defendants Are Fraudulently Joined Because There Is No Legal Basis For Plaintiff's Claims Against The New Hampshire Defendants.***

The New Hampshire defendants are also fraudulently joined because it is apparent on the face of the complaint that personal jurisdiction is lacking. A court may exercise personal jurisdiction over a defendant only if (1) the requirements of the Massachusetts long-arm statute are met, ch 223A, § 3 and (2) the exercise of such jurisdiction would not offend "traditional notions of fair play and substantial justice[,]" *REMF Corp. v. Miranda*, 801 N.E.2d 296, 297, 60 Mass. App. Ct. 905, 907 (Mass. App. Ct. 2004) (*quoting Int'l Shoe Co. v. Washington*, 206 U.S. 310, 316, 66 S.Ct. 154 (1945)). Neither requirement is satisfied in this case.

This Court has held that where, as here, all acts of the defendant are alleged to have occurred outside Massachusetts, and there was no evidence that the defendant conducted business in Massachusetts, the Massachusetts long arm statute does not apply and the court therefore lacks personal jurisdiction. *See Cook v. McLaughlin*, 917 F. Supp. 79, 83 (D. Mass. 1996) (concluding that factual allegations in complaint are insufficient to confer personal jurisdiction over defendants under Mass. Gen. Laws ch. 223A, § 3). Plaintiff alleges that she was treated by the New Hampshire Defendants in New Hampshire and does not allege if or how these New Hampshire Defendants may have conducted business in Massachusetts. Plaintiff has not even attempted to plead a basis for the exercise of personal jurisdiction by Massachusetts Courts.

- 11 -

Indeed, because the allegations in the Complaint are so plainly insufficient to confer personal jurisdiction under § 3(d) of ch. 223A, it is abundantly clear that the due process requirements for personal jurisdiction are also not satisfied with respect to the claims against the New Hampshire Defendants. *Cook*, 917 F. Supp. at 83-84.

In light at the complete absence of any allegations regarding a basis for personal jurisdiction, there is no reasonable legal basis to predict that Plaintiff could prevail on claims against the New Hampshire Defendants and these defendants are fraudulently joined defendants. As such, their consent to removal is not required.

To find otherwise would be to permit Plaintiff to defeat removal simply by manipulating the pleadings to include claims against otherwise diverse defendants that plaintiff will not or cannot pursue. By joining the diverse New Hampshire Defendants in an action in a jurisdiction that does not have personal jurisdiction, Plaintiff has put the New Hampshire Defendants in the position of being unable to consent to removal without risking waiver of an ironclad personal jurisdiction defense. This is exactly the sort of manipulation of the pleadings that the fraudulent joinder doctrine is meant to guard against. *See, e.g., In re Diet Drugs*, 220 F. Supp. 2d at 425 (consent of diverse defendant not required where consent was withheld as a result of plaintiff's agreement with non-consenting party).

**B.    Alternatively, The Motion To Remand Of The New Hampshire Defendants Should Be Denied Because The Claims Against The New Hampshire Defendants, Like The Claims Against The Massachusetts Defendants, Are Fraudulently Misjoined.**

Consent of the New Hampshire defendants was also unnecessary because they were fraudulently joined. As set forth with regard to the Massachusetts Defendants in Merck's first remand opposition, plaintiff's claims against the healthcare defendants involve a separate transaction or occurrence from her claims against the medical defendants. Plaintiff's allegations

- 12 -

against Merck arise out of Merck's alleged failure to warn of alleged cardiovascular risks of

VIOXX® and the alleged increased risk of cardiovascular risks that Plaintiff has been subject to.

In contrast, as Plaintiff explains in her Motion to Remand, Plaintiff's claims against the

healthcare defendants arise out of their alleged failure to consider alleged gastrointestinal risks

arising out of known, warned of contraindications and the resulting gastrointestinal injuries

allegedly caused by the healthcare defendants' conduct in prescribing the contraindicated drug.

(Pl.'s Mot. to Remand at 3 and Exhibit A thereto (attaching portion of prescribing information

for VIOXX® in which it states, among other things, "administration of low-dose aspirin with

VIOXX may result increased rate of ulceration or other complications, compared to use of

VIOXX alone.  Merck states. . . .").)  These claims, arising out of unrelated conduct and

unrelated injuries, are obviously improperly misjoined under Federal Rule of Civil Procedure 20.

"Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom

a plaintiff has no possibility of a cause of action."  *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d

1353, 1360 (11th Cir. 1996) (*abrogated on other grounds, Cohen v. Office Depot, Inc.,* 204 F.3d

1069, 1076 (11th Cir. 2000)).  Thus, where plaintiffs have improperly joined parties or claims

pursuant to Fed. R. Civ. P. 20, courts have severed the misjoined claims in order to preserve the

removing parties right to removal.  *See, e.g., Grennell v. Western Southern Life Ins. Co.*, 298 F.

Supp. 2d 390 (S.D. W. Va. 2004) (motion to remand denied because non-diverse parties were

misjoined); *In re Diet Drugs Prods. Liab. Litig.,* 294 F. Supp. 2d 667 (E.D. Pa. 2003) ("*Diet

Drugs I"*); *In re Diet Drugs Prods. Liab. Litig.*, MDL No. 1203, No. Civ.A. 98-20478, 1999 WL

554584, at *4 (E.D. Pa. July 16, 1999) ("*Diet Drugs II*") (same) (attached as Ex. R).  *See also In

re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 147-48 (S.D.N.Y. 2001) (misjoinder of

claims warrants removal of misjoined completely diverse claims); *In re Rezulin Prods. Liab.*

*Litig.,* MDL No. 1348, 2003 WL 21276425 (S.D.N.Y. June 2, 2003) (medical malpractice claim against non-diverse physician misjoined; denying motion to remand with respect to remaining claims and severing and remanding only the medical malpractice claim against the physician defendant) (attached as Ex. S).[4]

The court's decision in *Rezulin,* 2003 WL 21276425, is particularly instructive. In *Rezulin,* the plaintiff alleged claims for failure to warn, monitor and diagnose against a non-diverse defendant physician as well as breach of warranty claims against both the physician and the diverse defendant drug manufacturer. *Id.* at *1. The court denied remand, finding that, to the extent the claims were based on an alleged failure to warn of the alleged dangers that the manufacturer was alleged to have concealed from, among others, the medical community, the court held that those claims were fraudulently joined. *Id.* Moreover, the court held, to the extent the claims were based on the physician defendant's alleged failure to diagnose the effects of the drug or to monitor the plaintiff's health while plaintiff was taking the drug, such claims did not arise from the same transaction or occurrence as the products liability claims against the manufacturers and were therefore misjoined. *Id.* Having found that the only reasonably possible claims were misjoined, the court dismissed those misjoined claims without prejudice and retained jurisdiction over the remaining completely diverse claims. *Id.* at *1- 2. The claims found misjoined in *Rezulin* arose out of separate and distinct conduct – the manufacturers alleged failure to warn of the health risks of the drug at issue versus the physician defendant's alleged failure to diagnose and treat the effects of the drug on the plaintiff. *Id.* at *1. Under these

---

[4] Upon a finding that non-diverse plaintiffs are fraudulently misjoined, there are two options with respect to the severed claims: The Court may remand the severed claims. *See, e.g., Grennell,* 2004 WL 50869; *Rezulin I,* 168 F. Supp. 2d at 146. Alternatively, the court may also dismiss the non-diverse claims without prejudice. *See, e.g., Coleman v. Conseco, Inc.,* 238 F. Supp. 2d 804, 819 & n.10 (S.D. Miss. 2002) (permitting misjoined parties to be "dropped or added by order of the court ... [at] its own initiative at any stage of the action.").

circumstances, the claims were found misjoined pursuant to Fed. R. Civ. P. 20. *Id. Accord Lee v. Mann*, No. MDL 1348, 00 Civ. 2843, 2000 WL 724046, at *2 (Va. Cir. Ct. Apr. 5, 2000) (attached hereto as Ex. T) (claims against drug manufacturer and malpractice claim against prescribing physician did "not arise out of the 'same transaction or occurrence' "); *see also Smith v. Nationwide Mut. Ins. Co.*, 286 F. Supp. 2d 777, 781-82 (S.D. Miss. 2003).

The misjoinder is even more obvious in the instant case. Like the plaintiff's claims in *Rezulin,* Plaintiff's claims against Merck and the Healthcare Defendants arise out of unrelated conduct – Merck's alleged failure to warn of the alleged cardiovascular effects of VIOXX® and the Healthcare Defendants' failure to consider gastronintestinal risks and contraindications that Merck warned of. The claims against Merck and the Healthcare Defendants in the instant case are even more distinct because they seek relief for separate and distinct injuries – gastrointestinal injuries allegedly arising out of the Healthcare Defendants misconduct and the alleged increased risk of cardiovascular injuries arising out of Merck's alleged misconduct.

Therefore, like the claims in *Rezulin,* the claims against Merck and the Healthcare Defendants are obviously and egregiously misjoined and should be severed in order that the Court may retain jurisdiction over Plaintiff's claims against Merck. For this reason too, Merck was not required to seek the consent of the New Hampshire defendants prior to removal.

## CONCLUSION

For the foregoing reasons, the Court should defer consideration of the New Hampshire Healthcare Defendant's Motion pending MDL transfer or, alternatively, deny the New Hampshire Defendants Motion for Remand because the New Hampshire Defendants are fraudulently joined or misjoined defendants who need not consent to removal.

- 15 -

MERCK & CO., INC.
By its attorneys:


/s/ Kalun Lee _____
James J. Dillon (BBO# 124660)
Lucy Fowler (BBO# 647929)
Kalun Lee (BBO# 657489)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA  02110-2600
(617) 832-1000

Dated:  September 30, 2005

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing document was served on September 30, 2005 electronically upon:

Andrew J. Tine, Esq.
Haese, LLC
30 Federal Street, 3rd Floor
Boston, MA 02110

and by U.S. mail upon:

John M. Dellea, Esq.
Ficksman & Conley, LLP
98 N. Washington Street
Boston, MA  02114

Maria L. Mazur, Esq.
Martin Magnuson McCarthy & Kenney
101 Merrimac Street, 7th Floor
Boston, MA  02114


/s/ Kalun Lee

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

KATHLEEN A. MARTIN,

                         Plaintiff,                    CIVIL ACTION No. 05-11716-DPW

              v.

MERCK & CO., INC., et al.

                         Defendants.

## DECLARATION OF KALUN LEE

I, Kalun Lee, hereby depose and say:

1.        I am an attorney at the law firm Foley Hoag LLP and represent Defendant Merck

& Co., Inc. in this action.  I am admitted to practice in the Commonwealth of Massachusetts and

the United States District Court for the District of Massachusetts.  I have personal knowledge of

the matters set forth in this Declaration and could and would competently testify to them if called

as a witness.

2.        The document attached as Exhibit A is a true and accurate copy of a letter from

Hughes Hubbard & Reed LLP to the Judicial Panel on Multidistrict Litigation dated August 23,

2005 notifying the Panel of potential "tag-along actions."

3.        The document attached as Exhibit B is a true and accurate copy of Conditional

Transfer Order dated September 16, 2005 of the Judicial Panel on Multidistrict Litigation, *In re*

*Vioxx Products Liab. Litig.*, No. 1657.

4.        The document attached as Exhibit C is a true and accurate copy of Transfer Order

dated February 16, 2005 of the Judicial Panel on Multidistrict Litigation, *In re Vioxx Products*

*Liab. Litig.*, No. 1657.

5.    The document attached as Exhibit D is a true and accurate copy of pages from a transcript of a Status Conference on June 23, 2005, in *In re Vioxx Products Liab. Litig.*, No. 1657 (E.D. La.).

6.    The document attached as Exhibit E is a true and accurate copy of an order issued on September 15, 2005 in *Wilbanks v. Merck & Co,* Civ. Action No. 05-1241-T/AN (W.D. Tenn.).

7.    The document attached as Exhibit F is a true and accurate copy of an order issued on March 16, 2005 in *Anderson v. Merck & Co.,* Civ. Action No. 4:05-cv-89 (E.D. Mo.).

8.    The document attached as Exhibit G is a true and accurate copy of an order issued on March 2, 2005 in *McCrerey v. Merck & Co.,* Civ. Action No. 04-cv-2576 (S.D. Cal.).

9.    The document attached as Exhibit H is a true and accurate copy of an order issued on February 23, 2005 in *Dixon v. Merck & Co.*, Civ. Action No. 05-0121 (S.D. Tex.).

10.    The document attached as Exhibit I is a true and accurate copy of an order issued on March 15, 2004 in *Flores v. Merck &Co.,* Civ. Action No. C-03-362 (S.D. Tex).

11.    The document attached as Exhibit J is a true and accurate copy of a report and recommendation issued on February 24, 2004 in *Benavides v. Merck & Co.,* Civ. Action No. L-03-CV-134 (S.D. Tex.).

12.    The document attached as Exhibit K is a true and accurate copy of an memorandum and order issued on October 3, 2003 in *Omobude v. Merck & Co., Inc.*, Civ. Action No. 3:03CV528LN (S.D. Miss.).

13.    The document attached as Exhibit L is a true and accurate copy of the Plaintiffs Memorandum in Support of Motion to Modify Order of June 6, 2005 Regarding Physician Contacts filed in *In re VIOXX MDL*, No. 1657.

14.    The document attached as Exhibit M is a true and accurate copy of an order issued on September 26, 2003 in *Chiles v. Am. Home Prods. Corp.*, No. 4:03-CV-802-A (N.D. Tex.).

15.    The document attached as Exhibit N is a true and accurate copy of an memorandum opinion and order issued on December 2, 2002 in *Brown v. Bristol Meyers Squibb Co.*, Civ. A. No. 4:02CV301LN (S.D. Miss.).

16.    The document attached as Exhibit O is a true and accurate copy of an order issued on September 25, 2000 in *Louis v. Wyeth-Ayerst Pharms., Inc.*, Civ. A. No. 5:00CV102LN (S.D. Miss.).

17.    The document attached as Exhibit P is a true and accurate copy of an order issued on January 6, 2003 in *In re Rezulin Prods. Liab. Litig.*, MDL No. 1348, 00 Civ. 2843 (S.D.N.Y.).

18.    The document attached as Exhibit Q is a true and accurate copy of an order issued on December 18, 2002 in *In re Rezulin Prods. Liab. Litig.*, MDL No. 1348. 00 Civ. 2843 (S.D.N.Y.).

19.    The document attached as Exhibit R is a true and accurate copy of a memorandum and order issued on July 16, 1999 in *In re Diet Drugs Prods. Liab. Litig.*, MDL No. 1203, No. Civ.A. 98-20478 (E.D. Pa.).

20.    The document attached as Exhibit S is a true and accurate copy of an order issued on June 2, 2003 in *In re Rezulin Prods. Liab. Litig.,* MDL No. 1348 (S.D.N.Y.).

21.    The document attached as Exhibit T is a true and accurate copy of letter from the court issued on April 5, 2000 in *Lee v. Mann*, No. MDL 1348, 00 Civ. 2843 (Va. Cir. Ct.).

I declare under the penalty of perjury that the foregoing statement is true and correct.

Dated:  September 30, 2005              /s/ Kalun Lee
                                        Kalun Lee

# EXHIBIT A

# Hughes Hubbard & Reed LLP

One Battery Park Plaza
New York, New York 10004-1482
Telephone: 212-837-6000
Fax: 212-422-4726

August 23, 2005

**VIA FEDERAL EXPRESS**

Michael J. Beck, Esq.
Catherine Maida
Judicial Panel on Multidistrict Litigation
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, N.E., Room G-255, North Lobby
Washington, D.C. 20002-8004

Re:    In re: VIOXX® Products Liability Litigation, MDL
Docket No. 1657

Dear Sir and Madam:

Pursuant to J.P.M.L. Rule 7.5(e), Merck hereby notifies the Panel of potential "tag-along actions." This letter is Merck's fifty-sixth notification of potential "tag-along actions" and includes cases that have been filed in or removed to federal court since Friday, August 19, 2005. Courtesy copies of the complaints and docket sheets for the following actions are enclosed.

1. *Oswalt v. Merck & Co., Inc.*, C.A. No. 7:05-cv-01763 (N.D. Ala.)
2. *Ruekert v. Merck & Co., Inc.*, C.A. No. 3:05-cv-03361 (N.D. Cal.)
3. *Shuely v. Merck & Co., Inc.*, C.A. No. 3:05-cv-03362 (N.D. Cal.)
4. *Jackson v. Merck & Co., Inc.*, C.A. No. 8:05-cv-01535 (M.D. Fla.)
5. *Tomlinson v. Merck & Co., Inc.*, C.A. No. 05-CV-22287 (S.D. Fla.)
6. *Martin v. Merck & Co., Inc.*, C.A. No. 1:05-cv-11716 (D. Mass.)
7. *Day v. Merck & Co., Inc.*, C.A. No. 0:05-cv-01876 (D. Minn.)
8. *Johnson v. Merck & Co., Inc.*, C.A. No. 1:05-cv-00724 (M.D. N.C.)
9. *Hawk v. Merck & Co., Inc.*, C.A. No. 2:05-cv-00787 (S.D. Ohio)
10. *Connally et al., v. Merck & Co., Inc.*, C.A. No. 4:05-cv-02865 (S.D. Tex.)
11. *Justice et al., v. Merck & Co., Inc.*, C.A. No. 4:05-cv-02864 (S.D. Tex.)

There are three new cases filed in the transferee court.

1. *Anderson v. Merck & Co., Inc. et al.*, C.A. No. 2:05-cv-03787 (E.D. La.)

47, Avenue Georges Mandel     1775 I Street, N.W.     350 South Grand Avenue     201 South Biscayne Boulevard     Akasaka Tokyu Building 6F     101 Hudson Street
75116 Paris, France           Washington, D.C.        Los Angeles, California    Miami, Florida                 2-14-3 Nagata-cho, Chiyoda-ku  Jersey City, New Jersey
(33) (1) 44.05.80.00          20006-2401              90071-3442                 33131-4332                     Tokyo 100-0014 Japan           07302-3918
                              202-721-4600            213-613-2800               305-358-1666                   (81) (3) 3539-2771             201-536-9210

# Hughes Hubbard & Reed LLP

2. *Braden v. Merck & Co., Inc.*, C.A. No. 2:05-cv-03783 (E.D. La.)
3. *Pennington v. Merck & Co., Inc.*, C.A. No. 2:05-cv-03951 (E.D. La.)

Respectfully submitted,

Lewis D. Zirogiannis

Enclosures
LDZ/eaa

2

# EXHIBIT B

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

SEP 1 6 2005

FILED
CLERK'S OFFICE

*DOCKET NO. 1657*

*BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION*

*IN RE VIOXX PRODUCTS LIABILITY LITIGATION*

*(SEE ATTACHED SCHEDULE)*

*CONDITIONAL TRANSFER ORDER (CTO-24)*

On February 16, 2005, the Panel transferred 138 civil actions to the United States District Court for the Eastern District of Louisiana for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. Since that time, 1,551 additional actions have been transferred to the Eastern District of Louisiana. With the consent of that court, all such actions have been assigned to the Honorable Eldon E. Fallon.

It appears that the actions on this conditional transfer order involve questions of fact which are common to the actions previously transferred to the Eastern District of Louisiana and assigned to Judge Fallon.

Pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Eastern District of Louisiana for the reasons stated in the order of February 16, 2005, 360 F.Supp.2d 1352 (J.P.M.L. 2005), and, with the consent of that court, assigned to the Honorable Eldon E. Fallon.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Eastern District of Louisiana. The transmittal of this order to said Clerk shall be stayed fifteen (15) days from the entry thereof and if any party files a notice of opposition with the Clerk of the Panel within this fifteen (15) day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

*Michael J. Beck*
Michael J. Beck
Clerk of the Panel

M001641428

# SCHEDULE CTO-24 - TAG-ALONG ACTIONS
## DOCKET NO. 1657
## IN RE VIOXX PRODUCTS LIABILITY LITIGATION

DIST. DIV. C.A. #                    CASE CAPTION

**ALABAMA NORTHERN**
ALN   7   05-1763           Gary Oswalt v. Merck & Co., Inc.

**CALIFORNIA CENTRAL**
CAC   2   05-5867           Joyce Moore, et al. v. California Hospital Medical Center-Los Angeles, et al.

**CALIFORNIA NORTHERN**
CAN   3   05-3237           Christopher Dunn v. Merck & Co., Inc.
CAN   3   05-3361           Alan Ruckert v. Merck & Co., Inc.
CAN   3   05-3362           Elsie Shuely v. Merck & Co., Inc.

**CONNECTICUT**
CT    3   05-1275           Patricia J. Davis, etc. v. Merck & Co., Inc.

**FLORIDA MIDDLE**
FLM   8   05-1535           Edward Jackson v. Merck & Co., Inc.

**FLORIDA SOUTHERN**
FLS   1   05-22170          Gloria Levine, et al. v. Merck & Co., Inc.
FLS   1   05-22287          Dorothy Tomlinson v. Merck & Co., Inc.

**ILLINOIS SOUTHERN**
ILS   3   05-601            Norma Henderson, etc. v. Merck & Co., Inc.

**KENTUCKY WESTERN**
KYW   1   05-113            William Warinner v. Merck & Co., Inc.
KYW   1   05-114            Frances Skaggs v. Merck & Co., Inc.
KYW   1   05-115            William Flatt v. Merck & Co., Inc.
KYW   1   05-116            LaRue Turner v. Merck & Co., Inc.
KYW   1   05-117            Jimmie Kinnard v. Merck & Co., Inc.
KYW   4   05-119            Clara I. Durall v. Merck & Co., Inc.
KYW   4   05-120            Elmer Nelson v. Merck & Co., Inc.
KYW   4   05-121            Janice Stover v. Merck & Co., Inc.

**MASSACHUSETTS**
MA    1   05-11716          Kathleen Martin v. Merck & Co., Inc.

**MARYLAND**
MD    8   05-2073           Vivian Shinberg v. Merck & Co., Inc.

**MINNESOTA**
MN    0   05-1876           Sandra L. Day, etc. v. Merck & Co., Inc.

**MISSOURI EASTERN**
MOE   4   05-1268           Michael Elder, et al. v. Merck & Co., Inc., et al.
MOE   4   05-1272           Nina Cook, et al. v. Merck & Co., Inc., et al.
MOE   4   05-1273           George Likins, et al. v. Merck & Co., Inc., et al.

**NORTH CAROLINA MIDDLE**
NCM   1   05-724            John Johnson v. Merck & Co., Inc.

**NEW YORK SOUTHERN**
NYS   1   05-7241           Emanuel Makropoulos, et al. v. Merck & Co., Inc.

M001641429

SCHEDULE CTO-24 TAG-ALONG ACTIONS (MDL-1657)                    PAGE 2 of 2

| DIST. DIV. C.A. # | | CASE CAPTION |
|---|---|---|
| NYS | 1  05-7242 | Jilly Boiangiu, et al. v. Merck & Co., Inc. |
| NYS | 1  05-7301 | Douglas A. Spalter, et al. v. Merck & Co., Inc., et al. |

OHIO SOUTHERN
| OHS | 2  05-787 | Dennis Hawk v. Merck & Co., Inc. |

PENNSYLVANIA EASTERN
| PAE | 2  05-587 | Diane Mitchell, et al. v. Merck & Co., Inc., et al. |
| PAE | 2  05-4322 | Carl Howard, et al. v. Merck & Co., Inc., et al. |

TENNESSEE EASTERN
| TNE | 3  05-388 | George T. Grubb v. Merck & Co., Inc. |

TENNESSEE WESTERN
| TNW | 1  05-1231 | Hazel Pearson v. Merck & Co., Inc. |

TEXAS EASTERN
| TXE | 1  05-567 | Alison Nettles, et al. v. Medical Center of Southeast Texas, LP, et al. |
| TXE | 2  05-366 | Dale R. Anderson, et al. v. Merck & Co., Inc., et al. |
| TXE | 2  05-367 | Vince Andrade, et al. v. Merck & Co., Inc., et al. |
| TXE | 2  05-368 | Mary E. Barclay v. Merck & Co., Inc., et al. |
| TXE | 2  05-369 | John S. Breeding, et al. v. Merck & Co., Inc., et al. |
| TXE | 2  05-370 | Barbara D. Brice, et al. v. Merck & Co., Inc., et al. |
| TXE | 2  05-371 | Guadalupe Duran, et al. v. Merck & Co., Inc., et al. |
| TXE | 2  05-372 | Mary D. Gonzales, et al. v. Merck & Co., Inc., et al. |
| TXE | 2  05-373 | Sharon L. Kelly v. Merck & Co., Inc., et al. |
| TXE | 2  05-374 | Johnny Prado, et al. v. Merck & Co., Inc., et al. |
| TXE | 2  05-375 | Lee St. John, et al. v. Merck & Co., Inc., et al. |
| TXE | 2  05-376 | S. Susan J. Preston, et al. v. Merck & Co., Inc., et al. |
| TXE | 2  05-377 | Mona L. Price v. Merck & Co., Inc., et al. |
| TXE | 2  05-378 | Susan C. Rogers, et al. v. Merck & Co., Inc., et al. |
| TXE | 2  05-379 | Mary R. Ruiz, et al. v. Merck & Co., Inc., et al. |
| TXE | 2  05-381 | Anita A. Shannon, et al. v. Merck & Co., Inc., et al. |
| TXE | 2  05-382 | Martha A. Shull, et al. v. Merck & Co., Inc., et al. |
| TXE | 2  05-383 | Andrew E. Sisneros, et al. v. Merck & Co., Inc., et al. |
| TXE | 2  05-384 | Johnny M. Wallace, et al. v. Merck & Co., Inc., et al. |
| TXE | 2  05-385 | Donna R. Wesley v. Merck & Co., Inc., et al. |
| TXE | 2  05-390 | Jean E. Badger v. Merck & Co., Inc., et al. |
| TXE | 2  05-391 | Fannie L. Frazier v. Merck & Co., Inc., et al. |
| TXE | 2  05-392 | Cleta A. Johnson, et al. v. Merck & Co., Inc. |
| TXE | 2  05-393 | Peggy J. Newman v. Merck & Co., Inc., et al. |
| TXE | 2  05-394 | Paula S. Quattlebaum v. Merck & Co., Inc., et al. |
| TXE | 2  05-397 | Josefina R. Rivera v. Merck & Co., Inc., et al. |
| TXE | 2  05-398 | Joe Sullivan, et al. v. Merck & Co., Inc., et al. |

TEXAS SOUTHERN
| TXS | 4  05-2864 | Blair Justice, Ph.D., et al. v. Merck & Co., Inc. |
| TXS | 4  05-2865 | Chris Connally, et al. v. Merck & Co., Inc. |

TEXAS WESTERN
| TXW | 6  05-305 | Charlotte Leifester v. Merck & Co., Inc. |

WASHINGTON WESTERN
| WAW | 2  05-1419 | Thomas Dunlap, et al. v. Merck & Co., Inc. |

WEST VIRGINIA SOUTHERN
| WVS | 1  05-665 | Annie Potter v. Merck & Co., Inc. |
| WVS | 1  05-668 | Lucy Kidd v. Merck & Co., Inc. |
| WVS | 5  05-663 | Jency J. Tincher, et al. v. Merck & Co., Inc. |

M001641430

RULE 5.2:    SERVICE OF PAPERS FILED

(a)    All papers filed with the Clerk of the Panel shall be accompanied by proof of previous or simultaneous service on all other parties in all actions involved in the litigation. Service and proof of service shall be made as provided in Rules 5 and 6 of the Federal Rules of Civil Procedure. The proof of service shall indicate the name and complete address of each person served and shall indicate the party represented by each. If a party is not represented by counsel, the proof of service shall indicate the name of the party and the party's last known address. The proof of service shall indicate why any person named as a party in a constituent complaint was not served with the Section 1407 pleading. The original proof of service shall be filed with the Clerk of the Panel and copies thereof shall be sent to each person included within the proof of service. After the "Panel Service List" described in subsection (d) of this Rule has been received from the Clerk of the Panel, the "Panel Service List" shall be utilized for service of responses to motions and all other filings. In such instances, the "Panel Service List" shall be attached to the proof of service and shall be supplemented in the proof of service in the event of the presence of additional parties or subsequent corrections relating to any party, counsel or address already on the "Panel Service List."

(b)    The proof of service pertaining to motions for transfer of actions pursuant to 28 U.S.C. §1407 shall certify that copies of the motions have been mailed or otherwise delivered for filing to the clerk of each district court in which an action is pending that will be affected by the motion. The proof of service pertaining to a motion for remand pursuant to 28 U.S.C. §1407 shall certify that a copy of the motion has been mailed or otherwise delivered for filing to the clerk of the Section 1407 transferee district court in which any action affected by the motion is pending.

(c)    Within eleven days of filing of a motion to transfer, an order to show cause or a conditional transfer order, each party or designated attorney shall notify the Clerk of the Panel, in writing, of the name and address of the attorney designated to receive service of all pleadings, notices, orders and other papers relating to practice before the Judicial Panel on Multidistrict Litigation. Only one attorney shall be designated for each party. Any party not represented by counsel shall be served by mailing such pleadings to the party's last known address. Requests for an extension of time to file the designation of attorney shall not be granted except in extraordinary circumstances.

(d)    In order to facilitate compliance with subsection (a) of this Rule, the Clerk of the Panel shall prepare and serve on all counsel and parties not represented by counsel, a "Panel Service List" containing the names and addresses of the designated attorneys and the party or parties they represent in the actions under consideration by the Panel and the names and addresses of the parties not represented by counsel in the actions under consideration by the Panel. After the "Panel Service List" has been received from the Clerk of the Panel, notice of subsequent corrections relating to any party, counsel or address on the "Panel Service List" shall be served on all other parties in all actions involved in the litigation.

(e)    If following transfer of any group of multidistrict litigation, the transferee district court appoints liaison counsel, this Rule shall be satisfied by serving each party in each affected action and all liaison counsel. Liaison counsel designated by the transferee district court shall receive copies of all Panel orders concerning their particular litigation and shall be responsible for distribution to the parties for whom he or she serves as liaison counsel.

M001641431

RULE 7.4:    CONDITIONAL TRANSFER ORDERS FOR "TAG-ALONG ACTIONS"

(a)    Upon learning of the pendency of a potential "tag-along action," as defined in Rule 1.1 of these Rules, an order may be entered by the Clerk of the Panel transferring that action to the previously designated transferee district court on the basis of the prior hearing session(s) and for the reasons expressed in previous opinions and orders of the Panel in the litigation. The Clerk of the Panel shall serve this order on each party to the litigation but, in order to afford all parties the opportunity to oppose transfer, shall not send the order to the clerk of the transferee district court for fifteen days from the entry thereof.

(b)    Parties to an action subject to a conditional transfer order shall notify the Clerk of the Panel within the fifteen-day period if that action is no longer pending in its transferor district court.

(c)    Any party opposing the transfer shall file a notice of opposition with the Clerk of the Panel within the fifteen-day period. If a notice of opposition is received by the Clerk of the Panel within this fifteen-day period, the Clerk of the Panel shall not transmit said order to the clerk of the transferee district court until further order of the Panel. The Clerk of the Panel shall notify the parties of the briefing schedule.

(d)    Within fifteen days of the filing of its notice of opposition, the party opposing transfer shall file a motion to vacate the conditional transfer order and brief in support thereof. The Chairman of the Panel shall set the motion for the next appropriate hearing session of the Panel. Failure to file and serve a motion and brief shall be treated as withdrawal of the opposition and the Clerk of the Panel shall forthwith transmit the order to the clerk of the transferee district court.

(e)    Conditional transfer orders do not become effective unless and until they are filed with the clerk of the transferee district court.

(f)    Notices of opposition and motions to vacate such orders of the Panel and responses thereto shall be governed by Rules 5.12, 5.2, 7.1 and 7.2 of these Rules.

RULE 7.5:    MISCELLANEOUS PROVISIONS CONCERNING "TAG-ALONG ACTIONS"

(a)    Potential "tag-along actions" filed in the transferee district require no action on the part of the Panel and requests for assignment of such actions to the Section 1407 transferee judge should be made in accordance with local rules for the assignment of related actions.

(b)    Upon learning of the pendency of a potential "tag-along action" and having reasonable anticipation of opposition to transfer of that action, the Panel may direct the Clerk of the Panel to file a show cause order, in accordance with Rule 7.3 of these Rules, instead of a conditional transfer order.

(c)    Failure to serve one or more of the defendants in a potential "tag-along action" with the complaint and summons as required by Rule 4 of the Federal Rules of Civil Procedure does not preclude transfer of such action under Section 1407. Such failure, however, may be submitted by such a defendant as a basis for opposing the proposed transfer if prejudice can be shown. The inability of the Clerk of the Panel to serve a conditional transfer order on all plaintiffs or defendants or their counsel shall not render the transfer of the action void but can be submitted by such a party as a basis for moving to remand as to such party if prejudice can be shown.

(d)    A civil action apparently involving common questions of fact with actions under consideration by the Panel for transfer under Section 1407, which was either not included in a motion under Rule 7.2 of these Rules, or was included in such a motion that was filed too late to be included in the initial hearing session, will ordinarily be treated by the Panel as a potential "tag-along action."

(e)    Any party or counsel in actions previously transferred under Section 1407 or under consideration by the Panel for transfer under Section 1407 shall promptly notify the Clerk of the Panel of any potential "tag-along actions" in which that party is also named or in which that counsel appears.

M001641432

## INVOLVED COUNSEL LIST (CTO-24)
## DOCKET NO. 1657
## IN RE VIOXX PRODUCTS LIABILITY LITIGATION

Joseph R. Alexander, Jr.
Mithoff & Jacks, L.L.P.
500 Dallas Street, Suite 3450
Houston, TX 77002

Joseph M. Andrews
Andrews & Hensleigh
611 West Sixth Street, Suite 2350
Los Angeles, CA 90017

Crystal Bowie Baker
Nelson Mullins Riley & Scarborough
The Knollwood, Suite 530
380 Knollwood Street
Winston-Salem, NC 27103

Dan H. Ball
Bryan Cave, L.L.P.
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, MO 63102-2750

Kathryn E. Barnett
Lieff, Cabraser, Heimann
& Bernstein, LLP
One Nashville Place
150 4th Avenue North, Suite 1650
Nashville, TN 37219

Charles H. Bendig, III
Wilcox, Schlosser & Bendig Co.
4937 West Broad Street
Columbus, OH 43228

Kevin F. Berry
Cozen O'Connor
The Atrium
1900 Market Street, Third Floor
Philadelphia, PA 19103

Lawrence P. Biondi
81 Main Street, Suite 504
White Plains, NY 10601

Christopher J. Blake
Nelson, Mullins, Riley
& Scarborough, LLP
P.O. Box 30519
Raleigh, NC 27622-0519

Dana A. Blanton
Reed Smith, LLP
Two Embarcadero Center, Suite 2000
San Francisco, CA 94111

Michael K. Brown
Reed Smith, LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071-1514

Evan D. Buxner
Walther Glenn Law Associates
10 S. Brentwood Blvd., Suite 102
St. Louis, MO 63105

Rebecca L. Byrne
Nevin & Absalom
22 Battery Street, Suite 333
San Francisco, CA 94111

Andrew J. Carboy
Sullivan, Papain, Block, McGrath
& Cannavo
120 Broadway, 18th Floor
New York, NY 10271

John J. Carey
Carey & Danis, LLC
8235 Forsyth Boulevard, Suite 1100
St. Louis, MO 63105

Mark P. Chalos
Neal & Harwell
150 Fourth Avenue, North, Suite 2000
Nashville, TN 37219

Gary Yunchian Chen
Reed Smith, LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071

Curry L. Cooksey
Orgain, Bell & Tucker, L.L.P.
10077 Grogan's Mill Road, Suite 500
The Woodlands, TX 77380

Billy H. Davis, Jr.
Campbell, Cherry, Harrison, Davis
& Dove
P. O. Drawer 21387
Waco, TX 76702-1387

Victor Manuel Diaz, Jr.
Podhurst, Orseck, P.A
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130

David A. Dick
Thomspson Coburn, LLP
One US Bank Plaza, Suite 2600
St Louis, MO 63101

James J. Dillon
Foley Hoag, LLP
155 Seaport Boulevard
Seaport World Trade Center West
Boston, MA 02210-2600

John J. Driscoll
Brown & Crouppen, PC
720 Olive Street, Suite 1800
St. Louis, MO 63101-2302

Robert T. Ebert, Jr.
Bryan Cave, L.L.P.
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, MO 63102

James L. Ferraro
Ferraro & Associates, P.A.
4000 Ponce de Leon Blvd., Suite 700
Miami, FL 33146

Francis J. Flynn
Jeffrey J. Lowe, P.C.
8235 Forsyth Boulevard, Suite 1100
St. Louis, MO 63105

John A. Fulmer, II
Fulmer Law Firm, LLC
601 Greensboro Avenue, Suite 600
Tuscaloosa, AL 35401

Sidney W. Gilreath
Gilreath & Associates
550 Main Avenue, Suite 500
P.O. Box 1270
Knoxville, TN 37901-1270

Evan S. Glanz
Gibbons, Del Deo, Dolan,
Griffinger, et al.
One Riverfront Plaza
Newark, NJ 07102

Amy N. Hanson
Keller, Rohrback, LLP
1201 3rd Avenue
Suite 3200
Seattle, WA 98101-3052

M001641433

INVOLVED COUNSEL LIST (CTO-24) MDL-1657

Vilia B. Hayes
Hughes, Hubbard & Reed, LLP
One Battery Park Plaza
New York, NY 10004

Russ M. Herman
Herman, Herman, Katz & Cotlar,
L.L.P.
820 O'Keefe Avenue
New Orleans, LA 70113

Barry M. Hill
Hill, Toriseva & Williams
89-12th Street
Wheeling, WV 26003

Jeffrey A. Holmstrand
McDermott & Bonenberger, PLLC
53 Washington Avenue
Wheeling, WV 26003-0316

Timothy E. Irwin
Irwin & Reed
P.O. Box 2186
Knoxville, TN 37901

Richard L. Josephson
Baker Botts LLP
One Shell Plaza
910 Louisiana Street, Suite 3000
Houston, TX 77002-9934

John S. Kearns
Saiontz, Kirk & Miles, P.A.
3 South Frederick Street, Suite 900
Baltimore, MD 21202

Norman C. Kleinberg
Hughes Hubbard & Reed, LLP
One Battery Park Plaza, 12th Floor
New York, NY 10004-1482

Andrea B. Lamere
Schaeffer & Lamere, PC
5512 Godfrey Road, Suite B
Godfrey, IL 62035

Carlene Rhodes Lewis
Goforth Lewis Sanford, LLP
1111 Bagby, Suite 2200
Houston, TX 77002

Gary S. Logsdon
Logsdon & Hawkins, P.S.C.
P.O. Box 3400
Bowling Green, KY 42102

J. Franklin Long
727 Bland Street
Bluefield, WV 24701

Jeffrey J. Lowe
Jeffrey J. Lowe, PC
8235 Forsyth Boulevard, Suite 1100
St. Louis, MO 63105

Kurt W. Maier
English, Lucas, Priest & Owsley
1101 College Street
P.O. Box 770
Bowling Green, KY 42101-0770

Andrea L. McDonald-Hicks
Reed Smith, LLP
Two Embarcadero Center, Suite 2000
San Francisco, CA 94111

James J. McHugh, Jr.
Beasley Firm, LLC
1125 Walnut Street
Philadelphia, PA 19107

Stephen P. Meyer
Meyer & Ford
P.O. Box 11090
Charleston, WV 25339

Richard W. Mithoff, Jr.
Mithoff & Jacks, L.L.P.
500 Dallas, Suite 3450
Penthouse, One Allen Center
Houston, TX 77002

Bob K. Monk
McPherson, Monk, Hughes, et al.
3120 Central Mall Drive
Port Arthur, TX 77642

Robb W. Patryk
Hughes Hubbard & Reed, LLP
One Battery Park Plaza
New York, NY 10004

James S. Peterson
500 Tracy Way
Charleston, WV 25311

John S. Rand
Clark, Gagliardi & Miller, P.C.
99 Court Street
White Plains, NY 10601

Robert W. Rowan
Gollatz, Griffin & Ewing, PC
Four Penn Center
1600 JFK Blvd., Suite 200
Philadelphia, PA 19103

Gregory P. Sautter
Zimmerman Reed
651 Nichollet Avenue, Suite 501
Minneapolis, MN 55402-4123

Joshua G. Schiller
Dechert LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103-2793

Kathryn A. Snapka
Snapka, Turman & Waterhouse, LLP
606 North Carancahua, Suite 1511
P. O. Drawer 23017
Corpus Christi, TX 78403

John Edward Spalding
Johnson, Spalding, Doyle, West
& Trent
910 Travis, Suite 1700
Houston, TX 77002

Michael A. Stratton
Stratton Faxon
59 Elm Street
New Haven, CT 06510

Andrew K. Tine
Haese, LLC
30 Federal Street, Third Floor
Boston, MA 02110

E. Todd Tracy
Tracy & Carboy
5473 Blair Road, Suite 200
Dallas, TX 75231

Joy Rhyne Webb
Browne, Flebotte, Wilson, Horn
& Webb, PLLC
Meridian Business Campus
2525 Meridian Parkway, Suite 300
P.O. Box 2247
Durham, NC 27713

Michael M. Weinkowitz
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106

Kim Williams
Williamson & Williams
811 1st Avenue, Suite 620
Seattle, WA 98104

Phillip A. Wittmann
Stone, Pigman, Walther & Wittmann,
LLC
546 Carondelet Street
New Orleans, LA 70130-3588

M001641434

# EXHIBIT C

A CERTIFIED TRUE COPY

FEB 1 6 2005

ATTEST
FOR THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FILED
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FEB 1 6 2005

FILED
CLERK'S OFFICE

U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 FEB 17 AM 11: 37

LORETTA G. WHYTE
CLERK

*RELEASED FOR PUBLICATION*

*DOCKET NO. 1657*

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE VIOXX PRODUCTS LIABILITY LITIGATION

### BEFORE WM. TERRELL HODGES, CHAIRMAN, JOHN F. KEENAN, D. LOWELL JENSEN, J. FREDERICK MOTZ,* ROBERT L. MILLER, JR., KATHRYN H. VRATIL AND DAVID R. HANSEN, JUDGES OF THE PANEL

## TRANSFER ORDER

This litigation presently consists of 148 actions pending in 41 federal districts and listed on the attached Schedule A  Before the Panel are two motions, pursuant to 28 U S C § 1407, that taken together seek centralization for coordinated or consolidated pretrial proceedings of all but one of these actions.[1]  Plaintiff in one Eastern Louisiana action seeks centralization of this litigation in the Eastern or Western Districts of Louisiana  Defendant Merck & Co., Inc. (Merck) moves for centralization of this litigation in either the District of Maryland, the Southern District of Indiana, or the Northern District of Illinois. Merck also agrees with some plaintiffs that the District of New Jersey would be an appropriate transferee district.  AmerisourceBergen Corp., a wholesaler defendant, supports centralization in the Maryland district  Most responding plaintiffs agree that centralization is appropriate, although some plaintiffs suggest alternative transferee districts, including the Northern District of Alabama, the Central or Northern Districts of California, the District of Delaware, the Southern District of Illinois, the District of Minnesota, the Eastern District of Missouri, the District of New Jersey, the Eastern or Southern Districts of New York, the Northern or Southern Districts of Ohio, the Western District of Oklahoma, the Eastern District of Pennsylvania, and the Southern or Western Districts of Texas

---

* Judge Motz took no part in the decision of this matter

[1] Included in the Section 1407 motions were eleven additional actions pending in the Central District of California (2), the Southern District of California (1), the Southern District of Illinois (2), the Southern District of Indiana (1), the Western District of Missouri (1), the Southern District of New York (1), the Northern District of Texas (1), and the Southern District of Texas (2)  These actions have been either remanded to their respective state courts, voluntarily dismissed, or otherwise closed  Accordingly, inclusion of the actions in Section 1407 proceedings is moot

One other action – *Teamsters Local 237 Welfare Fund, et al  v  Merck & Co , Inc , S D  New York, C.A No  1:04-9248 –* was not included on either MDL-1657 motion and is now included in this transfer order. All parties to this action had notice of the proceedings before the Panel relating to Section 1407 centralization and had an opportunity to participate in those proceedings by stating their respective positions in writing and during the Panel's hearing session

The Panel has been notified of nearly 300 potentially related actions pending in multiple federal districts. In light of the Panel's disposition of this docket, these actions will be treated as potential tag-along actions. *See* Rules 7 4 and 7 5, R P J P M L , 199 F R D  425, 435-36 (2001)

Fee_____
Process_____
_X_ CkmDep_____
_____ Doc. No _____

- 2 -

A CERTIFIED TRUE COPY

FEB 0 1 2005

The three arguments in opposition to Section 1407 centralization can be summarized as follows: plaintiffs in two actions oppose inclusion of their actions in MDL-1657 proceedings because motions to remand their actions to state court are pending; plaintiffs in some Southern District Texas actions along with plaintiffs in one third-party payor action pending in the Eastern District of New York oppose these actions' inclusion in MDL-1657, arguing that individual questions of fact in their actions predominate over any common questions of fact and/or that discovery is already underway in these actions; and plaintiffs in one action pending in the Eastern District of New York oppose inclusion of their action in 1407 proceedings, since it involves additional claims relating to a different prescription medication not involved in other MDL-1657 actions

On the basis of the papers filed and hearing session held, the Panel finds that the actions in this litigation involve common questions of fact, and that centralization under Section 1407 in the Eastern District of Louisiana will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. All actions focus on alleged increased health risks (including heart attack and/or stroke) when taking Vioxx, an anti-inflammatory drug, and whether Merck knew of these increased risks and failed to disclose them to the medical community and consumers Centralization under Section 1407 is necessary in order to eliminate duplicative discovery, avoid inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary

The pendency of a motion to remand to state court is not a sufficient basis to avoid inclusion in Section 1407 proceedings We note that motions to remand in two actions, one action each in the District of Kansas and the Eastern District of Missouri, as well as in any other MDL-1657 actions can be presented to and decided by the transferee judge *See, e.g., In re Ivy*, 901 F.2d 7 (2d Cir 1990); *In re Prudential Insurance Company of America Sales Practices Litigation*, 170 F.Supp.2d 1346, 1347-48 (J.P.M.L. 2001).

Nor are we persuaded by the arguments of some opposing Texas plaintiffs and the New York third-party payor plaintiffs We point out that transfer under Section 1407 has the salutary effect of placing all actions in this docket before a single judge who can formulate a pretrial program that: 1) allows discovery with respect to any non-common issues to proceed concurrently with discovery on common issues, *In re Joseph F Smith Patent Litigation*, 407 F.Supp 1403, 1404 (J P.M L 1976); and 2) ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties We note that the MDL-1657 transferee court can employ any number of pretrial techniques – such as establishing separate discovery and/or motion tracks – to efficiently manage this litigation In any event, we leave the extent and manner of coordination or consolidation of these actions to the discretion of the transferee court *In re Mutual Funds Investment Litigation*, 310 F Supp 2d 1359 (J P.M L 2004). It may be, on further refinement of the issues and close scrutiny by the transferee judge, that some claims or actions can be remanded to their transferor districts for trial in advance of the other actions in the transferee district But we are unwilling, on the basis of the record before us, to make such a determination at this time Should the transferee judge deem remand of any claims or actions appropriate, procedures are available whereby this may be accomplished with a minimum of delay. *See* Rule 7.6, 199 F.R.D. at 436-38. We are confident in the transferee judge's ability to streamline pretrial proceedings in these actions, while concomitantly directing the appropriate resolution of all claims.

- 3 -

The Panel is persuaded, however, that claims involving a prescription drug other than Vioxx in one Eastern District of New York action do not share sufficient questions of fact with claims relating to Vioxx to warrant inclusion of these non-Vioxx claims in MDL-1657 proceedings

Given the geographic dispersal of constituent actions and potential tag-along actions, no district stands out as the geographic focal point for this nationwide docket  Thus we have searched for a transferee judge with the time and experience to steer this complex litigation on a prudent course  By centralizing this litigation in the Eastern District of Louisiana before Judge Eldon E. Fallon, we are assigning this litigation to a jurist experienced in complex multidistrict products liability litigation and sitting in a district with the capacity to handle this litigation

IT IS THEREFORE ORDERED that, pursuant to 28 U S.C. § 1407, the actions listed on the attached Schedule A and pending outside the Eastern District of Louisiana are transferred to the Eastern District of Louisiana and, with the consent of that court, assigned to the Honorable Eldon E  Fallon for coordinated or consolidated pretrial proceedings with the actions pending there and listed on Schedule A.

IT IS FURTHER ORDERED that claims in *Dominick Cain, et al. v Merck & Co , Inc., et al ,* E D  New York, C A  No. 1:01-3441, against Pharmacia Corp , Pfizer Inc., and G D. Searle & Co relating to a prescription medication other than Vioxx are simultaneously separated and remanded to the Eastern District of New York.

FOR THE PANEL:

Wm  Terrell Hodges
Chairman

## SCHEDULE A

<u>MDL-1657 -- In re Vioxx Products Liability Litigation</u>

**SECT. L MAG. 3**

*CASE No. ASSIGNED*
*EASTERN DIST OF LOUISIANA*

### Middle District of Alabama

*Paul Turner, Sr. v. Merck & Co., Inc., C.A. No 1:04-999*          05-0428
*Danny M Wilson v. Merck & Co., Inc., C A No 2:03-844*              05-0429

### Northern District of Alabama

*Carolyn O Hensley, etc v Merck & Co., Inc, C.A. No. 1:03-906*     05-0430
*William Cook v. Merck & Co., Inc., et al, C A. No. 2:02-2710*     05-0431
*Sharon Scott Jones v Merck & Co., Inc, C A No. 5:04-3079*         05-0432

### Southern District of Alabama

*Carolyn Younge, etc v Merck & Co., Inc., et al., C.A. No 1:03-125*   05-0433

### Eastern District of Arkansas

*Linda Sue Otts v Merck & Co., Inc, C.A No 5:04-57*                05-0434

### Western District of Arkansas

*Bobby Brown, et al v. Merck & Co., et al., C.A No 4:04-4140*      05-0435
*Arthur Fulton, etc v. Merck & Co., Inc, C.A. No. 6:03-6107*       05-0436

### Central District of California

*Charles Ashman v Merck & Co., Inc, C A. No. 2:04-8225*           05-0437
*Janet Briggs v Merck & Co., Inc., C.A No. 2:04-9275*             05-0438

### Northern District of California

*Kathy Tokes v Merck & Co., Inc, C A No. 3:04-4435*               05-0439
*Patricia A Taylor v. Merck & Co., Inc, C.A No 3:04-4510*         05-0440
*Jeffrey Brass v Merck & Co., Inc, C A. No 3:04-4521*             05-0441

### Middle District of Florida

*Frances Dunleavey, et al v Merck & Co., Inc, C.A No 2:04-539*    05-0442

- A2 -

MDL-1657 Schedule A (Continued)

**SECT. L MAG. 3**

### Northern District of Florida

Benjamin Burt, et al v Merck & Co., Inc., C A No. 3:04-388                     05-0443

### Southern District of Florida

Ellen B. Gerber, et al v Merck & Co, Inc, C A No. 0:04-61429                   05-0444
Josefa Abraham, et al v. Merck & Co, Inc, C A. No 1:04-22631                   05-0445
Sidney Schneider v Merck & Co, Inc., et al, C A No 1:04-22632                  05-0446
Clara Fontanilles v. Merck & Co, Inc, C.A. No. 1:04-22799                      05-0447
Stanley Silber, et al v Merck & Co., Inc, C A No 9:04-80983                    05-0448

### Northern District of Georgia

Richard Zellmer v Merck & Co & Inc, et al, C.A No 1:03-2530                    05-0449
Edna Strickland v Merck & Co, Inc, C.A. No. 1:04-3231                          05-0450

### Northern District of Illinois

Linda Grant, et al v Merck & Co., Inc., C A No. 1:04-6407                      05-0451
Constance Oswald v Merck & Co., Inc, C.A. No 1:04-6741                         05-0452
Anita Ivory v Merck & Co, Inc, C A No. 1:04-7218                               05-0453

### Southern District of Illinois

Roberta Walson, etc. v Merck & Co., Inc., C.A. No. 3:04-27                     05-0454
John Ellis v. Merck & Co., Inc, et al, C A. No 3:04-792                        05-0455
Bilbrey v. Merck & Co., Inc, C A. No 3:04-836                                  05-0456

### Southern District of Indiana

Estate of Lowell D Morrison v Merck & Co, Inc, C A No 1:03-1535               05-0457
Kimberly Van Jelgerhuis, et al v Merck & Co, Inc, C A No 1:04-1651            05-0458

### District of Kansas

Vicky Hunter v Merck & Co, Inc., C A No 2:04-2518                             05-0459
Betty S Smith v. Merck & Co, Inc., C A No 6:04-1355                           05-0460

- A3 -

MDL-1657 Schedule A (Continued)

SECT. L MAG. 3

### Eastern District of Kentucky

| | |
|---|---|
| Daniel K. Williams v Merck & Co., Inc., C.A. No. 2:04-235 | 05-0461 |
| Richard J Getty, et al v Merck & Co., Inc., C.A. No 5:04-452 | 05-0462 |

### Eastern District of Louisiana

Salvadore Christina, Sr v Merck & Co., Inc., C.A. No 2:04-2726
Angelis Alexander v Merck & Co., Inc., C.A. No. 2:04-2845
Leonce Davis v. Merck & Co., Inc., C.A. No 2:04-2937
Mary V. Gagola v Merck & Co., Inc., C.A. No 2:04-3053
Christine L Parr v Merck & Co., Inc., C.A. No 2:04-3054
Clifton Adam Savage, Sr v. Merck & Co., Inc., C.A. No. 2:04-3055
Delores Thomas Robertson v Merck & Co., Inc., C.A. No. 2:04-3056
Howard Mark Falick v. Merck & Co., Inc., C.A. No 2:04-3060
Warren L Gottsegen, M D v Merck & Co., Inc., C.A. No. 2:04-3065

### Middle District of Louisiana

| | |
|---|---|
| Michael Wayne Russell v Merck & Co., Inc., C.A. No. 3:04-712 | 05-0463 |
| Linda Kay Hudson v Merck & Co., Inc., C.A. No 3:04-776 | 05-0464 |
| Jesse Wilkinson v Merck & Co., Inc., C.A. No. 3:04-800 | 05-0465 |
| Wilson Brown v Merck & Co., Inc., C.A. No. 3:04-801 | 05-0466 |
| Dorothy Bracken v Merck & Co. Inc., C.A. No 3:04-802 | 05-0467 |
| James Edward Benoit v Merck & Co., Inc., C.A. No 3:04-803 | 05-0468 |
| Clarence Chiszle v Merck & Co., Inc., C.A. No 3:04-804 | 05-0469 |

### Western District of Louisiana

| | |
|---|---|
| Anthony J. Mallet, et al v Merck & Co., Inc., et al., C.A. No. 2:02-2304 | 05-0470 |
| Calvin Warren, et al v Merck & Co., Inc., C.A. No 3:04-2110 | 05-0471 |
| Vicki White v Merck & Co., Inc., C.A. No. 3:04-2126 | 05-0472 |
| Norma Merrit, et al. v. Merck & Co., Inc., C.A. No 5:03-1401 | 05-0473 |
| Herchial Wright, et al v Merck & Co., Inc., C.A. No 5:04-2268 | 05-0474 |
| Leroy Bates, et al v Merck & Co., Inc., C.A. No. 5:04-2269 | 05-0475 |
| Vaughn McKnight v. Merck & Co., Inc., C.A. No. 5:04-2270 | 05-0476 |
| Josephine Harper v Merck & Co., Inc., C.A. No. 5:04-2271 | 05-0477 |
| Lendell Burns, et al v Merck & Co., Inc., C.A. No 5:04-2272 | 05-0478 |
| Leona Sadler v Merck & Co., Inc., C.A. No. 5:04-2273 | 05-0479 |
| William Tice, et al v Merck & Co., Inc., C.A. No 5:04-2274 | 05-0480 |
| Maynard Butler, et al v Merck & Co., Inc., C.A. No 5:04-2275 | 05-0481 |
| Marion Evans, et al v. Merck & Co., Inc., C.A. No. 5:04-2276 | 05-0482 |
| Donna Lavergne v Merck & Co. Inc., C.A. No 6:04-2174 | 05-0483 |

- A4 -

MDL-1657 Schedule A (Continued)

BEST | IMAGE 3

### District of Maryland

| | |
|---|---|
| *Lindsey Edler, etc. v. Merck & Co, Inc*, C.A. No 1:03-3612 | 05-0484 |
| *Melvin Biles v. Merck & Co, Inc*, C.A No. 1:04-975 | 05-0485 |
| *David Morris, Jr. v Merck & Co, Inc.*, C.A No 8:04-3024 | 05-0486 |
| *Daniel Martin Jeffers, et al. v. Merck & Co, Inc*, C.A No 8:04-3604 | 05-0487 |

### District of Massachusetts

| | |
|---|---|
| *Frank R. Saia v Merck & Co, Inc*, C.A. No. 1:04-12166 | 05-0488 |

### District of Minnesota

| | |
|---|---|
| *Carolyn Y. Glover v. Merck & Co., Inc*, C.A No 0:03-5166 | 05-0489 |
| *Lowell Burris, Jr. v Merck & Co, Inc*, C.A. No. 0:04-4375 | 05-0490 |
| *Shirley Homister v Merck & Co, Inc.*, C.A No. 0:04-4754 | 05-0491 |

### Northern District of Mississippi

| | |
|---|---|
| *Frances Shannon, et al. v. Merck & Co., Inc., et al.*, C.A No. 2:03-105 | 05-0492 |

### Southern District of Mississippi

| | |
|---|---|
| *Leona McFarland et al. v. Merck & Co, Inc., et al*, C.A No 2:03-247 | 05-0493 |
| *Bettye J. Magee, et al v Merck & Co, Inc, et al.*, C.A No 2:03-249 | 05-0494 |
| *Jerry Melton v Merck & Co, Inc, et al*, C.A. No 2:04-372 | 05-0495 |
| *Janet Sue Morgan, et al v. Merck & Co., Inc., et al.*, C.A No 3:03-435 | 05-0496 |
| *Brenda Price, et al v Merck & Co, Inc, et al*, C.A. No 3:04-866 | 05-0497 |

### Eastern District of Missouri

| | |
|---|---|
| *Deyonne E Whitmore v Merck & Co, Inc*, C.A No 4:03-1354 | 05-0498 |
| *Janice Perkins v. Merck & Co, Inc*, C.A No. 4:04-1446 | 05-0499 |
| *Jurhee Bench v Merck & Co, Inc.*, C.A. No 4:04-1447 | 05-0500 |

### Western District of Missouri

| | |
|---|---|
| *Caroline Nevels v Merck & Co, Inc, et al.*, C.A No 4:04-952 | 05-0501 |
| *Russell Young, etc v Merck & Co., C.A. No. 6:04-5117 | 05-0502 |

- A5 -

MDL-1657 Schedule A (Continued)                    SECT. L MAG. 3

### District of New Jersey

| | |
|---|---|
| *Patrick Besaw v Merck & Co , Inc ,* C.A No 3:04-5178 | 05–0503 |
| *Brenda Aguero, et al v Merck & Co , Inc ,* C.A No 3:04-5341 | 05–0504 |

### Eastern District of New York

| | |
|---|---|
| *Dominick Cain, et al v Merck & Co , Inc , et al.,* C A No. 1:01-3441 | 05–0505 |
| *William Hanson v Merck & Co , Inc.,* C A No 1:04-2949 | 05–0506 |
| *Jerome Covington v. Merck & Co , Inc ,* C.A. No 1:04-4439 | 05–0507 |
| *Alan Mell v Merck & Co. Inc ,* C A. No. 1:04-4606 | 05–0508 |
| *Lorraine Fialo v. Merck & Co., Inc ,* C.A. No. 1:04-4686 | 05–0509 |
| *Lawrence Wright, et al v Merck & Co , Inc ,* C.A No 2:04-4485 | 05–0510 |
| *William Fontanetta, et al. v. Merck & Co , Inc ,* C A. No 2:04-4486 | 05–0511 |

### Southern District of New York

| | |
|---|---|
| *Laney C Davis v Merck & Co , Inc ,* C A. No. 1:04-8082 | 05–0512 |
| *Elizabeth Aiken v Merck & Co , Inc ,* C.A. No. 1:04-8085 | 05–0513 |
| *Walter McNaughton v Merck & Co Inc ,* C A. No. 1:04-8297 | 05–0514 |
| *Carmen M Pagan, et al v Merck & Co , Inc ,* C A. No. 1:04-8959 | 05–0515 |
| *Teamsters Local 237 Welfare Fund, et al v. Merck & Co , Inc ,* C A. No 1:04-9248 | 05–0516 |
| *Anna Quick v Merck & Co , Inc ,* C A. No. 7:04-8169 | 05–0517 |

### Northern District of Ohio

| | |
|---|---|
| *Marjory Knoll v Merck & Co., Inc ,* C.A. No. 1:04-2209 | 05–0518 |
| *Danford K Jones et al. v Merck & Co , Inc ,* C A No 1:04-2217 | 05–0519 |
| *James E. Meadows, et al v Merck & Co., Inc.,* C.A. No. 1:04-2229 | 05–0520 |
| *Wanda Moldovan et al v Merck & Co., Inc.,* C.A. No. 1:04-2245 | 05–0521 |
| *Janet Dauterman, et al v Merck & Co , Inc ,* C A No 3:03-7623 | 05–0522 |

### Western District of Oklahoma

| | |
|---|---|
| *Paul E House v. Merck & Co., Inc.,* C A No 5:04-1235 | 05–0523 |

### Eastern District of Pennsylvania

| | |
|---|---|
| *Henry Smith, et al v Merck & Co., Inc.,* C A No 2:04-4713 | 05–0524 |
| *Michelle Donovan v Merck & Co., Inc.,* C.A. No. 2:04-4882 | 05–0525 |
| *Gwendolyn L. Carr v. Merck & Co , Inc ,* C.A. No. 2:04-4900 | 05–0526 |
| *Fred S Engle v Merck & Co., Inc.,* C.A. No. 2:04-5077 | 05–0527 |
| *Merrick Sirota, et al v Merck & Co , Inc ,* C.A No 2:04-5130 | 05–0528 |

- A6 -

MDL-1657 Schedule A (Continued)                    **SECT. | MAG. 3**

### District of Puerto Rico

*Rafael Gonzalez-Arias, et al v Merck & Co , Inc , C.A  No  3:04-2263*                    05-0529

### District of South Carolina

*Bridget Elaine Michaud, etc  v  Merck & Co., Inc., C A. No  4:03-3083*                    05-0530

### Eastern District of Texas

*Arthur Clifford Hall, et al v Merck & Co , Inc., C A. No  1:04-684*                    05-0531
*Brenda Lewis, et al v Merck & Co., Inc , C A. No  1:04-685*                    05-0532
*Billie Painton, et al v Merck & Co , Inc , C.A No  1:04-686*                    05-0533
*Lovincy Richard, et al v. Merck & Co , Inc., et al , C.A. No. 1:04-703*                    05-0534
*Bill Jolley, et al. v. Merck & Co , Inc , C A. No  2:04-376*                    05-0535
*Marian Williamson, etc  v  Merck & Co , Inc , C A  No  2:04-406*                    05-0536
*Deborah Daley, etc  v  Merck & Co., Inc , et al., C.A  No  6:03-509*                    05-0537

### Northern District of Texas

*Dellas Staples, et al  v  Merck & Co , Inc , et al , C A  No  3:03-180*                    05-0538
*Michael R  Leonard v  Merck & Co , Inc , C A  No  3:04-2157*                    05-0539
*Jack A  Register, et al  v  Merck & Co , Inc , et al , C.A  No  3:04-2259*                    05-0540

### Southern District of Texas

*Heirs of the Estate of Pablo Flores v. Merck & Co . Inc , et al , C.A. No. 2:03-362*                    05-0541
*Audona Sandoval v. Merck & Co , Inc , C A. No. 2:04-544*                    05-0542
*Jeffrey L. Denny, et al v Merck & Co., Inc , et al , C.A  No  3:04-526*                    05-0543
*Kimberly D  Stubblefield, etc  v. Merck & Co., Inc , et al , C A. No. 4:02-3139*                    05-0544
*John P  Eberhardt v Merck & Co , Inc , C.A. No. 4:03-1380*                    05-0545
*Myrtle Louise Bell, et al  v. Merck & Co., Inc., et al , C A  No. 4:03-3448*                    05-0546
*Thomas Joseph Pikul, etc  v  Merck & Co , Inc., et al , C A  No  4:03-3656*                    05-0547
*Opalene Stringer, et al  v  Merck & Co., Inc., et al , C A  No  4:03-3657*                    05-0548
*Regnald K  Fears v Merck & Co , Inc , C.A. No. 4:04-4187*                    05-0549
*Peggy J  Balch v Merck & Co , Inc , C.A. No. 4:04-4201*                    05-0550
*John R  Stout v Merck & Co , Inc , C.A. No. 4:04-4205*                    05-0551
*Charles C. Gilmore v Merck & Co., Inc., C.A. No  4:04-4206*                    05-0552
*Johnny White v Merck & Co , Inc , C A. No  4:04-4207*                    05-0553
*Donna Hale v Merck & Co , Inc , C A  No  4:04-4208*                    05-0554
*Bernadette Young v Merck & Co , Inc., C A. No  4:04-4209*                    05-0555
*William B  Gregory, Jr. v  Merck & Co., Inc., C.A. No  4:04-4327*                    05-0556

- A7 -

MDL-1657 Schedule A (Continued)

Southern District of Texas (Continued)

| | |
|---|---|
| *Patricia Benavides, etc. v. Merck & Co., Inc., et al*, C A No 5:03-134 | 05-0557 |
| *Patricia Benavides, etc. v Merck & Co, Inc, et al*, C A No 5:04-153 | 05-0558 |
| *Olga Sanchez v Merck & Co, Inc, et al*, C A. No. 7:04-352 | 05-0559 |
| *Maria Emma Hinojosa v Merck & Co, Inc*, C.A. No. 7:04-373 | 05-0560 |

Western District of Texas

| | |
|---|---|
| *Joe Hopson, etc. v Merck & Co., Inc, et al*, C.A. No 1:04-485 | 05-0561 |
| *Larry Lee Bauman, et al. v Merck & Co, Inc*, C A No 1:04-707 | 05-0562 |
| *Carolyn Reed etc v Minor, et al*, C A. No. 1:04-731 | 05-0563 |

District of Utah

| | |
|---|---|
| *Della Jo Salt, et al v Merck & Co, Inc*, C A No 2:01-794 | 05-0564 |

District of Vermont

| | |
|---|---|
| *Sara Cheeseman v Merck & Co Inc*, C A No 1:04-261 | 05-0565 |

Western District of Virginia

| | |
|---|---|
| *Catherine Wheatley, etc v Merck & Co, Inc, et al*, C.A. No. 2:04-20 | 05-0566 |

Judicial Panel on Multidistrict Litigatio    Panel Attorney Service List

Docket: 1657 - In re Vioxx Products Liability Litigation

**SCHEDULE B**

Status: Transferred on 02/16/2005

Transferee District: LAE    Judge: Fallon, Eldon E

Printed on 02/16/2005

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| Allen Jr T Scott<br>Cruse Scott Henderson & Allen<br>2777 Allen Parkway<br>7th Floor<br>Houston TX 77019 | => Arango M D, Dario*; Dario Arango, M D . P A dba Arango Family & Industrial Clinic*· Dennis Dr Michael D *; Suderman. D O Emery L * |
| Americsourcebergen<br>1300 Morris Drive<br>Suite 100<br>Chesterbrook PA 19087 | => Amerisource Inc ; Amerisourcebergen#; Bergen Brunswig Drug Co # |
| Arsenault Richard J<br>Neblett Beard & Arsenault<br>P O Box 1190<br>Alexandria LA 71309-1190 | => Lavergne Donna |
| Aylstock Bryan F<br>Aylstock Witkin & Sasser P L C<br>55 Baybridge Drive<br>Gulf Breeze FL 32561 | => Price Bobby; Price Brenda |
| Bailey Blake H<br>Bailey Law Firm<br>112 South Broadway<br>Tyler TX 75702 | => Bailey Jerlene*; Ford. James*; Harrington John*; Hollandsworth James*; Irvin Barbara*; Jolley Bill*; Morrison. Ethel*· Smith Shirley*; Williams James*; Young David* |
| Barkley Steven C<br>3560 Delaware<br>Suite 305<br>Beaumont TX 77706 | => Hall (Ind /Rep 'Est -Margaret Isabel) Arthur Clifford; Hall Eliot: Hall Frank Harold |
| Barrett David A<br>Boies Schiller & Flexner LLP<br>570 Lexington Avenue<br>16th Floor<br>New York NY 10022 | => Cain Alex*; Moss. Bobbie*; Watkins William* |
| Becnel, Bradley Douglas<br>Law Offices Of Daniel E Becnel, Jr<br>425 W Airline Hwy<br>Suite B<br>Laplace LA 70068 | => Savage St Clifton Adam |
| Becnel Jr Daniel E<br>Law Offices of Daniel E Becnel Jr<br>106 West Seventh Street<br>P O Drawer H<br>Reserve LA 70084-2095 | => Benoit James Edward; Bracken. Dorothy· Brown Wilson; Chiszle Clarence: Christina, Sr Salvadore*; Davis Leonce; Falick. Howard Mark; Gagola Mary V ; Hudson Linda Kay; Parr Christine L ; Robertson Delores Thomas; Wilkinson, Jesse |
| Bergen Brunswig,<br>P O Box 959<br>Valley Forge PA 19482 | => Bergen Brunswig Drug Co dba Amerisourcebergen |
| Berger, C William<br>Furr & Cohen<br>One Boca Place<br>2255 Glades Road | => Silber Stanley; Silber. Susan |

Note: Please refer to the report title page for complete report scope and key

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|

Suite 337W
Boca Raton, FL 33431

Birchfield Jr Andy D
Beasley Allen Crow Methvin Portis & Miles
P O Box 4160
234 Commerce Street
Montgomery AL 36103-4160

=> Abram Antoinette*; Adams (Behalf-Janet) Eddie William*; Brown (Behalf-Stephen Anthony) Tracy*; Chapman, Eunice*; Cook, William*; Early Reginald*; Eckols Lula*; Eckols Tommy Lee*; Flanagan Geneva L *; Gough, Jerry*; Halbert Josephine*; Harmon Roy*; Holmes Gene*; Hopkins (Behalf-Emma Conner) Willie Mae*; Hudson Camillia Faye*; Johnson, Sharon*; Jones Annie*; Jones, Jessie Lee*; King Tonya Lynn*; Logan Joe W *; Magee. Bettye J *; Maynor Linder*; McFarland Leona*; McMillan Louise*; McNeil Bessie*; Morgan Janet Sue*; Morgan Stephanie*; Moulds (Behalf-Alice Lessie Atchley) Rachel*; Norwood Annie*; Oliver (Behalf-Kenneth Ray) Frances Ann*; Otts Linda Sue*; Parsons Mary*; Payton Eddie William*; Pegues Riella*; Powell, Susie M *; Smith, James*; Starling, Lamont*; Sykes, Melissa*; Tucker Barbara*; Warren James Howard*; Wheatley (Adm /Est -Carl) Catherine*; Wheaton Rosie C *; Younge (Ind /Adm /Est -Charles Marvin) Carolyn*; Zellmer, Richard*

Bradford Reshonda L
Singleton Law Firm
4050 Linwood Ave
Shreveport LA 71108

=> Allegretto Fran; Anderson, Comecia; Anderson Frederick; Baylor. Ruthie; Brooks Magaline; Edwards Joe Ree; Garcie Mattie; Hall Calvin; Kersee Mary; Merrit Norma; Netter Carlos; Payne Minnie; Rice Thelma; Upshaw James

Bruno Joseph M
Bruno & Bruno LLP
855 Baronne Street
New Orleans LA 70113

=> Alexander Angelis*

Buchanan Virginia M
Levin Papatonio Thomas Mitchell et al
316 South Baylen Street Suite 600
P O Box 12308
Pensacola FL 32501

=> Burt Benjamin R ; Burt Shirley

Cabraser Elizabeth J
Lieff Cabraser Heimann & Bernstein, LLP
Embarcadero Center West
275 Battery Street
30th Floor
San Francisco CA 94111-3339

=> Aguero, Brenda*; Herke Sherrill*

Carboy Andrew J
Sullivan Papain, Block McGrath & Cannavo
120 Broadway
18th Floor
New York NY 10271

=> Fontanetta, Robin; Fontanetta William

Carroll Raymond S
Law Offices Of Weiner,carroll & Strauss
119 Rockland Center
Suite 425
Nanuet NY 10954

=> McNaughton Walter*

Colingo Joseph R
Williams Heidelberg et al
P O Box 1407
711 Delmas Avenue
Pascagoula MS 39568-1407

=> Stewart Dr Reginald

Cory, Ernest
Cory Watson Crowder & DeGaris P C
2131 Magnolia Avenue

=> Fulton (Adm /Est -Rebeka Kayla Schultz) Arthur*; Hensley (Exe /Est -Henry Lee) Carolyn O *

*(Panel Attorney Service List for MDL 1 657 Contin.*                                          Page 3

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|

Suite 200
Birmingham AL 35205

Craig Jr C York                                    => Columbia Discount Drugs Inc ; Super D #143
Craig Hester Luke & Dodson
P O Box 12005
Jackson MS 39236-2005

Crum Richard E                                     => Turner Sr Paul*
Cobb Shealy Crum & Derrick, P A
P O Box 6346
Dothan AL 36302-6346

D Amato, Jr John Michael                           => Fialo, Lorriane
Russo Scamardella & D Amato P C
1010 Forest Avenue
Staten Island NY 10310

Deters Eric C                                      => Williams Daniel K *
Eric C Deters & Associates P S C
5247 Madison Pike
Independence KY 41051

Dixon Ivan                                         => Dixon, Ivan
8413 Edgewood Drive
Rowlett TX 75089

Eberhardt John P                                   => Eberhardt John P
#1083045
1100 FM 655
Rosharon TX 77583

Edelman Daniel A                                   => Ivory Anita
Edelman Combs & Latturner LLC
120 South LaSalle Street
18th Floor
Chicago IL 60603

Edmonson, Richard M                                => Fred s Express
Armstrong Allen PLLC
4450 Old Canton Road
Suite 210
Jackson MS 39211

Fayard, Jr. Calvin C                               => Russell Michael Wayne*
Fayard & Honeycutt
519 Florida Avenue. S W
Denham Springs LA 70726

Fears, Reginald K                                  => Fears Reginald K
James H Byrd Unit
21 FM 247
Huntsville TX 77320

Federman William B                                 => House, Paul E *: Leonard Michael R *
Federman & Sherwood
120 North Robinson Avenue
Suite 2720
Oklahoma City OK 73102

*(Panel Attorney Service List for MDL 1 657 Contin.*

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| Fiesta Ronald V<br>Kenneth B Moll & Associates Ltd<br>Three First National Plaza<br>50th Floor<br>Chicago IL 60602 | => Chartrand, Larry*; Grant Linda* |
| Flowers R Allen<br>Flowers Law Firm<br>341 North 25th Avenue<br>Hattiesburg MS 39401 | => Willis M D Todd |
| Foster Shawn G<br>Davis, Bethune & Jones LLC<br>1100 Main Street<br>Suite 2390<br>Kansas City MO 64105 | => Bench Jurhee*; Hunter, Vicky* |
| Fox, Dana Casselli<br>Waters & Kraus<br>3219 McKinney Avenue<br>Suite 3000<br>Dallas TX 75204 | => Baldoni, Eugene; Blumfield Travis; Brumfield Travis; Lassig Ashley Lassig Leonard; Lassig Martha; Pearson Carolyn; Pearson Elizabeth; Smith Carolyn; Smith Eric; Staples Billy; Staton (Ind /Per /Rep /Heirs/Est -David Wayne) Rosa Linda; Valdone Chip |
| Freese Richard A<br>Sweet & Freese P L L C<br>P O Box 1178<br>Jackson MS 39215 | => Melton Jerry |
| Gallagher Michael T<br>Gallagher Law Firm P C<br>777 Walker Street<br>Suite 2500<br>Houston TX 77002 | => Balch Peggy J * |
| Gancedo Hector G<br>Gancedo & Nieves<br>144 West Colorado Blvd<br>Pasadena, CA 91105 | => Briggs Janet |
| Garcia Ricardo A<br>820 S Main Street<br>McAllen, TX 78501 | => Sanchez Olga* |
| Gibson Mary<br>P O Box 400<br>St Marys GA 31558 | => Gibson, Mary |
| Goldser Ronald S<br>Zimmerman Reed P L L P<br>651 Nicollet Mall<br>Suite 501<br>Minneapolis MN 55402-4123 | => Dauterman Brock; Dauterman Holly; Dauterman Janet; Dauterman Rod Dauterman, Ryan; Glover Carolyn Y ; Michaud (Ind /Per /Rep on behalf of the Estate of Andre Adrian Michaud Decedent Andre Adrian Michaud) Bridget Elaine; Whitmore, Deyonne E |
| Goldwasser Andrew S<br>Ciano & Goldwasser<br>460 MK Ferguson Plaza<br>1500 West Third Street<br>Suite 460<br>Cleveland OH 44113 | => Knoll Marjory |

(Panel Attorney Service List for MDL 1 657 Continu

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| Graffeo C Anthony<br>Watson Jimmerson Givhan et al<br>203 Greene Street<br>P O Box 18368<br>Hunsrville AL 35804 | => Jones Sharon Scott |
| Griesenbeck, Tim T<br>Plunkett & Gibson<br>Renaissance Plaza, Suite 1100<br>70 N E Loop 410<br>P O Box 795061<br>San Antonio TX 78216 | => Mercy Hospital of Loredo d/b/a Mercy Regional Medical Center |
| Griffith Patricia<br>1045 Evelyn Avenue<br>Clarksdale MS 38614<br>*** Bad Address *** | => Griffith Patricia |
| Guerriero. Jeffrey D<br>Guerriero & Guerriero<br>P O Box 4092<br>Monore LA 71211-4092 | => Warren Calvin; Warren Jessica |
| Harke Lance A<br>Harke & Clasby<br>155 South Miami Avenue<br>Suite 600<br>Miami FL 33130 | => Fontanilles Clara |
| Hebderson Craig D<br>Gary Thomasson Hall & Mark<br>Professional Corp<br>P O Box 2888<br>210 S Carancahua<br>Corpus Christi TX 78403 | => Reed (Ind /widow-Johnney) Carolyn |
| Hockema David Hadden<br>Hockema, Tippit & Escobedo L L P<br>1 Paseo Del Prado<br>Bldg 101<br>P O Box 720540<br>McAllen, TX 78504-0540 | => Hinojosa, Maria Emma* |
| Hodges Robert M<br>Wise Carter, Child & Caraway<br>P O Box 651<br>Jackson. MS 39205-0651 | => Mississippi Emergency Associates P A |
| Howell III Jesse L<br>Copeland Cook, Taylor & Bush P A<br>200 Concourse. Suite 200<br>1062 Highland Colony Parkway<br>P O Box 6020<br>Ridgeland MS 39158-6020 | => Bonners Pharmacy* |
| Hughes John F<br>Wilkins Stephens & Tipton<br>P O Box 13429<br>Jackson MS 39236-3429 | => Reid, M D Richard |

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| Hutton, Mark B<br>Hutton & Hutton<br>P O Box 638<br>Wichita KS 67201 | => Smith, Betty S |
| Hylla, David A<br>Bilbrey & Hylla<br>8724 Pin Oak Road<br>P O Box 975<br>Edwardsville IL 62025<br>*** Bad Address *** | => Bilbrey, Patricia |
| Johnson, Dennis J<br>Johnson & Perkinson<br>1690 Williston Road<br>P.O. Box 2305<br>S Burlington VT 05403 | => Cheeseman, Sara* |
| Johnson, Walter T<br>Watkins & Eager<br>P O Box 650<br>Jackson MS 39205-0650 | => G D Searle & Co ; G D Searle LLC· Monsanto Co ; Pharmacia Corp |
| Johnson III, Whitman B<br>Currie Johnson, Griffin Gaines & Myers<br>P O Box 750<br>Jackson MS 39205-0750 | => Lee M D Charles D |
| Jones, Christy D<br>Butler Snow O Mara Stevens & Cannada<br>P.O. Box 22567<br>Jackson MS 39225-2567 | => Delta Discount Drugs Inc |
| Josephson, Richard L<br>Baker Botts LLP<br>One Shell Plaza<br>910 Louisiana Street<br>Suite 3000<br>Houston TX 77002-9934 | => R/D Clinical Research Inc · Resnick M D Harvey |
| Katz, Melissa C<br>Waters & Kraus<br>3219 Mckinney<br>Suite 3000<br>Dallas TX 75204 | => Barcham, Sandra· Bolen Larry; Briggs Robert; Condit Kathy; Holland Michael; Joiner Sherri·<br>Knowles Katrina; Lenormand Pamela; Mitchell, Robert· Taucer Albert; Thompson John; Tucker Jerry |
| Kegerreis, Sharon L<br>Hughes Hubbard & Reed L L P<br>201 S Biscayne Boulevard<br>Suite 2500<br>Miami FL 33131-4332 | => Publix Super Markets, Inc |
| Kennedy R Eric<br>Weisman Kennedy & Berris<br>1600 Midland Building<br>101 Prospect Avenue, West<br>Cleveland, OH 44115 | => Jones Danford K *· Jones Gilda C * |
| Kleinberg Norman C<br>Hughes Hubbard & Reed L L P | => Merck & Co Inc * |

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|

One Battery Park Plaza
New York NY 10004

Knoll, Marjory
Law Office Of Robert J Dicello
7556 Mentor Avenue
Mentor OH 44060

=> Meadows, James E *; Meadows Jr, James E ; Meadows June; Meadows, Stephen G

Kolman Timothy M
Timothy M Kolman And Associates
225 North Flowers Mill Road
The Shoppes at Flowers Mill
Langhorne, PA 19047

=> Donovan Michelle

Lamp, Joel C
Assistant General Counsel
Tort Litigation Division Wal-Mart Stores Inc
702 S W 8th Street
Bentonville, AR 72716-0215

=> Wal-Mart Stores Inc

Land John W
Bryan Nelson Randolph & Weathers
P O Drawer 18109
Hattiesburg MS 39404-8109

=> Mettsave Drugs; Quitman Drug Co

Lanier W Mark
Lanier Law Firm
6810 FM 1960 West
Houston, TX 77069

=> Brown Bobby*· Brown Linda*; Daley (Ind /Rep /Est -Robert Deleon & Next Friend for Scott A &
Shirley Mann) Deborah*: Stubblefield (Ind /Rep /Est -Keith Jerome & Next Friend-Keith Jerome
Korietta Lashay Kendall Wayne& Kedrick Roy), Kimberly D *

Leathers Jeffrey D
Greer Pipkin Russell. Dent & Leathers
P O Box 907
Tupelo MS 38802

=> Community Discount Pharmacy"

Leesfield Ira H
Leesfield, Leighton Rubio & Mahfood P A
2350 South Dixie Highway
Miami FL 33133

=> Schneider Sidney

Levin Arnold
Levin, Fishbein Sedran & Berman
510 Walnut Street
Suite 500
Philadelphia, PA 19106

=> Besaw Patrick*; Smith Henry*; Smith Mary*

Lewis, Carlene Rhodes
Goforth Lewis, Sanford LLP
1111 Bagby
Suite 2200
Houston TX 77002

=> Ahl June*; Alaniz Flora*; Allen, George*; Alston Jr , John*; Anglin Helen*; Austin Nancy*; Baker.
Mary*; Baker Norma*; Baldwin Kenneth*; Banks, Judy*; Barrington Ernest*; Bell, Myrtle Louise*;
Benavides (Ind /Rep/Est -Lucia Gutierrez). Patricia*; Berry, Flora*; Bogdany Arthur*; Bridgers,
Rebecca*; Bronze Sandra*; Brooks Fredrick*; Brow Mary*; Brown, Esther*; Brown, Wantie*; Buck
Patricia*; Buckner Claude*; Bullock, Barbara*; Burk-Cameron Patricia*; Burkett (Legal
Heir/Est -Lelan Stringer) Majorie*; Burrell Willie*; Busby-Allen, Sharla*; Butcher Shirley*; Calder
Virginia*; Camacho Maria*; Carney Homer*; Carter Andrea*; Carter Essie*; Carter, Helen Portis*:
Castro Hortensia*; Cebrum Alice*; Chambers Christopher*; Chane, Della*; Chatman Charles*;
Childress, Cynthia*; Chocolate, Belinda*; Clark Beulah*; Clark Cortyena*: Clark Delores*; Clark
Mary*; Clayton. Marsha*; Cluff, Anna*; Coleman Lula*; Combs David*; Cooper Roberts*;
Coppedge Darryle*; Crick, Kimberly*; Cruz Esperanza*; Cryer Becky*; Dahl, David*; De La Rosa.
Odilla*; Deainza Barbara*; Denny. Jeffrey L *; Denny Molly J *; Diaz Mary*; Duncan Shirley*;
Elam Claudia*; England James*; Fischbach Arleigh*; Flaniken Betty*; Forbes James*; Foward Joe*;

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| | Futrell, Sharon*; Gajdosik, Margaret*; Garrett, Manieka*; Garza, Jorge*; Garza, Linda*; Garza, Manuel*; Garza Pauline*; Geryak Janie*; Gilmore, Bobbie*; Glaspie Precious*; Goss Garcia*; Graves, Mark*; Gray, Marvinette*; Griggsby, Tenya*; Guzman Beatriz*; Haddox Gracie*; Hafemann Donald*; Hannah Reba*; Hannah, Sandra*; Hardin Larry*; Harrell Regina*; Harris Richard*; Harris Sandra*; Harris, Vivian*; Haynes Lloyd*; Heirs/Est -Pablo Flores*; Hermis Lawrence*; Hernandez Ana*; Hervey, George*; Hess Kenneth*; Hill Kristy*; Hodges Alvin*; Hogue Thelma*; Holland Wanda*; Hopson (Ind /Rep /Est -Kay Faubion) Joe*; Howard Annice*; Hubbs Judy*; Hutson, Jerry*; Jackson, Ella*; Jackson, Esther*; Jackson, Lendia*; James Tracy*; Jobe, Charles*; Johnson Willie*; Jones Terryl*; Kenne, Gordon*; King Patricia*; Knox Mary*; Kolak Alexander*; Lane Sr Prentice*; Lawson, Elva*; Lee Gary*; Lerma, Clemente*; Leslie Doris*; Leveen Jay*; Lewe Doris Jean*; Lewis Crystal*; Lise, Joyce*; Logsdon Ernest*; Lovvorn, Jesse*; Lucas Stephen*; Mallet Anthony J *; Mallet Priscilla G *; Mankarious Rifaat*; Manning Rosie*; March Alicia*; Martin Georgia*; Martinez Willie*; Mauldin, Mary*; Mayberry Janice*; Mayo Veronica*; McCleveland Kym*; McGathon, Myrtle*; McMillian, Opal*; McNulaty Sharon*; Miller Grunetta*; Molina Euardo*; Moore, Sharon*; Moreno Jesus*; Morris Gerald*; Morton David*; Mowery Ricky*; Murphy Mary*; Myer, Margaret Pearson*; Nelson Rubie*; Newell Carol*; Newton, Mary*; Nichols Fredrick*; Oliver Rena*; Owen III David*; Parker Jessie*; Parks, Dorothy*; Parks Margaret*; Patterson, Steven*; Phelan, Claudia*; Phillips, Laura M *; Pikul (Adm /Est -Paul), Thomas Joseph*; Platt Jr Alvin*; Posada, Maria*; Powers Gail*; Pradia, Carolyn*; Punch Vivian*; Pyron, Marshall*; Rady Jean*; Ramirez Josefa*; Ray Sr. Darrell*; Reyna Pete*; Reynolds Lori*; Rhodes Brian*; Rhodes George*; Richter Mary*; Rivera Epifanio*; Roberts Katherine*; Roberts Lorna*; Robertson, Teddy*; Robinson Lonnie*; Robinson Oscar*; Rodriguez, Dorothy*; Rodriguez Jose*; Rodriguez, Vivian*; Rogers Hank*; Ross, Larry*; Ross Olga*; Ross Sonsuray*; Royston Irina*; Russell Shelvy*; Saylor Richard*; Schuhrke Nora*; Seago Buncy*; Shah Ahmed*; Shields Marie*; Simmons Robert*; Simpson Ovie*; Simpson Patricia*; Skipworth Billy*; Small Weavis*; Smith Georgia*; Smith Melody*; Sorge Charles*; Steard Sheilah*; Stech, Richard*; Taylor Jimmy*; Taylor Susan*; Taylor Tammy*; Taylor-Beck, Dimitri*; Teagve James*; Thomas Gerladine*; Thomas Jr Clifton*; Thomas Leslie*; Thompson Ray*; Tucholski Ernest*; Wallace Lamar*; Ward George*; Ward Willie*; Wardlow, Willard*; Watson Jummy*; Watson Lonzine*; Wiley Littie*; Williams Belinda*; Williams Charlotte*; Williams Josephine*; Williams Theresa*; Wilson John*; Wofford Diane*; Wood, Carol*; Woodall Phyllis*; Worsley, Fred*; Wright Alice*; Yarbrough Brenda*; Yong Cha Page* |
| Lietz David K<br>Coale Cooley Lietz McInerny & Broadus<br>818 Connecticut Avenue<br>Suite 857<br>Washington DC 20006 | => Gerber Ellen B *; Gerber Melvin* |
| Lockridge, Richard A<br>Lockridge, Grindal & Nauen P L L P<br>100 Washington Avenue South<br>Suite 2200<br>Minneapolis MN 55401-2179 | => Homister, Shirley |
| Luckett Jr William O<br>Luckett Law Firm<br>P O Drawer 1000<br>Clarksdale MS 38614-1000 | => Kroger Co |
| Malone Patrick A<br>Stein, Mitchell & Mezines<br>1100 Connecticut Avenue, N W<br>Suite 1100<br>Washington DC 20036 | => Jeffers, Barbara Ann; Jeffers Daniel Martin |
| Matthews David P<br>Abraham Watkins Nichols Sorrels Matthews & Friend | => Gilmore Charles C *; Hale Donna*; Stout, John R *; White, Johnny*; Young Bernadette* |

Note: Please refer to the report title page for complete report scope and key

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| 800 Commerce Street<br>Houston TX 77002-1776 | |
| McClain Kenneth B<br>Humphrey Farrington & McClain P C<br>221 West Lexington<br>Suite 400<br>Independence MO 64050 | ==> Nevels Caroline* |
| McNamara J Leray<br>Copeland Cook Taylor & Bush P A<br>200 Concourse Suite 200<br>1062 Highland Colony Parkway<br>P O Box 6020<br>Ridgeland MS 39158-6020 | ==> Ball M D . David*; Barr. M D . William*; Hammock M D , B L ; Hassell John F ; Line, M D . Lance*;<br>Liverman, Steven B *; Newell M D  Bruce*; Peeler, M D . J G *; Smith M D . Randall; Weiss David<br>C *; Windham M D  Thomas* |
| Meaders Kim-M<br>Crouch & Ramey<br>1445 Rose Avenue<br>Ste 2300<br>Dallas TX 75202 | ==> Alford s Pharmacy* |
| Merkel Charles M<br>Merkel & Cocke<br>P O Box 1388<br>Clarksdale MS 38614-1388 | ==> Shannon Frances |
| Milam S Kirk<br>Hickman. Goza & Spragins Pllc<br>P O Drawer 668<br>Oxford MS 38655-0668 | ==> Gunn, M D  Susan*; Gunn Susan*; McIntosh M D  Cooper A * |
| Milavetz Allen Scott<br>Milavetz Gallop & Milavetz<br>6500 France Avenue. South<br>Edina MN 55435 | ==> Burris Jr  Lowell |
| Miller, Mason L<br>Getty & Mayo PLLC<br>1900 Lexington Financial Center<br>250 W Main Street<br>Lexington KY 40507 | ==> Getty  Richard J *; Stamper. Della* |
| Minor Daniel<br>1032 Cardinal Dr<br>Waco. TX 76712 | ==> Minor  Daniel |
| Minor. Steven R<br>Elliott Lawson & Minor PC<br>P O Box 8400<br>Bristol VA 24203-8400 | ==> Amerisource Corp *#; AmerisourceBergen Corp  fdba AmeriSource Corp |
| Moirano. Michael H<br>Nisen & Elliott<br>200 West Adams Street<br>Suite 2500<br>Chicago IL 60606 | ==> Oswald  Constance* |
| Mousseau Geoffrey C<br>Mousseau & Associates | ==> Ashman  Charles* |

(Panel Attorney Service List for MDL-1 657 Contin

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| 1421 Valverde Place<br>Suite B<br>Glendale  CA 91208 | |
| Mulhern  Edwin T<br>Huwel & Mulhern<br>11 New Hyde Park Road<br>Frank Square  NY 11010 | => Mell  Alan |
| Murray  Stephen B.<br>Murray Law Firm<br>909 Poydras Street<br>Suite 2550<br>New Orleans  LA 70112-4000 | => Gottsegen  M D  Warren L *; Gregory  Jr  William B * |
| Nast  Dianne M<br>Roda & Nast  P C<br>801 Estelle Drive<br>Lancaster  PA 17601 | => Engle (Ind /Adm /Est -Louise)  Fred S * |
| Naylor  Eugene R.<br>Wise. Carter  Child & Caraway<br>600 Heritage Bldg<br>401 East Capitol St<br>P O  Box 651<br>Jackson  MS 39205-0651 | => Patel  M D  Pravin |
| O Malley  Richard F<br>Sidley Austin Brown & Wood<br>10 South Dearborn Street<br>Suite 48 Southeast<br>Chicago  IL 60603 | => G D  Searle & Co *; Pfizer  Inc *; Pharmacia Corp * |
| Owen  Gregory J<br>Owen  Patterson & Owen<br>23822 West Valencia Blvd<br>Suite 201<br>Valencia  CA 91355 | => Baca. Richard David*; Berchtold  Don*; Cole  Sally*; De Luca  Barbara*· Evans  Charles*; Giles  Stan*; Goodell  Margaret Helen*; Gunn  Leroy*; Holley (Heir-Audrey L  Piscitello)  Alison*· Householder  Betty*; Jackson  Yvonne O *; Piscitello (Heir-Audrey L )  Clement*; Reagan  Gorman*, Safford  Joyce Crawford*; Salt  Della Jo*; Sieper (Heir-Audrey L  Piscitello)  Meredith*; Winward. Kenneth C *; Wright  Ward* |
| Pearson  Thomas Jack<br>Pearson & Campbell. P C<br>2394 Calder Avenue<br>Beaumont, TX 77702 | => Allen, Gloria*; Jones. Rena*; Lewis (Ind /Next Friend-Trienida & Quenida)  Brenda*; Lewis (Ind /Next Friend-Trienida & Quenida)  Darylene*· Painton, Billie*; Painton  Jack*; Richard  Calvin*; Richard, Ervin*; Richard. Kernis*; Richard  Larry*; Richard  Lon*; Richard, Lovincy* |
| Piper  Jr  Robert E<br>Piper & Associates<br>624 Pierre Avenue<br>P O  Box 69<br>Shreveport  LA 71103 | => Bates, Catherine; Bates  Leroy; Burns  Annie; Burns  Lendell; Butler, Mary; Butler  Maynard; Evans. Garnett; Evans  Marion; Harper  Josephine; McKnight  Vaughn; Sadler, Leona; Tice  Martha; Tice  William; Wright, Frances; Wright  Herchial |
| Pitre  Frank M<br>Cotchett  Pitre  Simon & McCarthy<br>San Francisco Airport Office Center<br>Suite 200<br>840 Malcolm Road<br>Burlingame  CA 94010 | => Brass  Jeffrey; Taylor  Patricia A ; Tokes  Kathy |
| Pope  Geoffrey Edward<br>Doffermyre  Shields  Canfield  Knowles & Devine<br>1355 Peachtree Street  N E | => Strickland, Edna |

Note: Please refer to the report title page for complete report scope and key

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| 1600 The Peachtree<br>Atlanta, GA 30309-3269 | |
| Price Henry J<br>Price Potter Jackson. Waicukauski & Mellowitz<br>The Hammond Block Building<br>301 Massachusetts Avenue<br>Indianapolis IN 46204 | => Baum Janice; Briner (Per /Rep /Est -Phyllis). Darai; Henderson, Kevin; Portillo (Ind /Heir-Elvira M<br>Pena) Ruben: Van Jelgerhuis Kimberly |
| Quizglas-Jordan Eric M<br>Quizglas Law Offices<br>P O Box 16606<br>San Juan PR 00908-6606 | => Gonzalez. Hilda Rita; Gonzalez Robert A ; Gonzalez-Arias Rafael* |
| Robb William R<br>Aleshire Robb & Sivils P C<br>901 St Louis Street<br>Suite 1600<br>Springfield MO 65806 | => Young (Ind /Next Friend-Steven/Adm /Est -Lisa). Russell |
| Rowland Robert D<br>2227 South State Route 157<br>Edwardsville IL 62025 | => Ellis John* |
| Ruiz. John H<br>Law Office of John H Ruiz<br>5040 N W 7th Street<br>Suite 920<br>Miami FL 33126 | => Abraham Josefa*· Alcarez Maria P *; Andino Jose* |
| Rynecki Scott<br>Rubenstein & Rynecki<br>16 Court Street<br>Suite 1717<br>Brooklyn NY 11241 | => Aiken (Adm /Est -Mary & Kenneth) Elizabeth; Covington Jerome: Davis. Laney C |
| Saia Stephen V<br>Law Offices of Stephen V Saia<br>70 Old Cart Path Lane<br>Pembroke. MA 02359 | => Saia. Frank R * |
| Schwebel Paul R M<br>5657 Rundle Court<br>Indianapolis IN 46220 | => Morrison (By his Per /Representative Patricia L ) Lowell D |
| Scott Stuart E<br>Spangenberg Shibley & Liber LLP<br>2400 National City Center<br>1900 East 9th Street<br>Cleveland OH 44114 | => Moldovan Gregory*; Moldovan Wanda* |
| Seeger Christopher A<br>Seeger Weiss LLP<br>One William Street<br>10th Floor<br>New York NY 10004-2502 | => Brown Clairse; Hanson. William*; Pagan Carmen M ; Walson (Ind /Adm /Est -Willie Jr ) Roberta* |
| Simon. Jeffrey B<br>Waters & Kraus<br>3219 McKinney Avenue | => Bias Byron; Varnado Carolyn |

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| Suite 3000<br>Dallas TX 75204 | |
| Smith David Neil<br>Nix Patterson & Roach LLP<br>205 Linda Drive<br>Dangerfield TX 75638 | => Williamson (Ind /Next friend-Courtly & Herman) Marian |
| Smith Deanna Dean<br>Ebanks Smith & Carlson LLP<br>1401 McKinney<br>Suite 2500<br>Houston TX 77010-4034 | => Truitt M D Norman |
| Snapka Kathryn A<br>Snapka Turman & Waterhouse LLP<br>606 N Carancahua Suite 1511<br>P O Drawer 23017<br>Corpus Christi TX 78403 | => Benavides (Ind /Per /Est -Juan) Patricia*; Sandoval Audona |
| Specter Shanin<br>Kline & Specter<br>1525 Locust Street<br>19th Street<br>Philadelphia PA 19102 | => Sirota Merrick*; Sirota Michele* |
| Stacy Robert F<br>Daniel Coker Horton & Bell<br>P O Box 1084<br>Jackson MS 39215-1084 | => Don s Pharmacy- Woods Drug Store |
| Steward John S<br>Meyerkord and Steward<br>2525 South Brentwood Boulevard<br>Suite 102<br>St Louis MO 63144 | => Perkins Janice |
| Sullivan, Robert G<br>Sullivan Papain Block McGrath & Cannavo<br>120 Broadway<br>18th Floor<br>New York NY 10271 | => Wright Dawn; Wright Lawrence |
| Thomas, Casandra F<br>514-C Woodrow Wilson Avenue<br>Jackson MS 39213 | => Thomas Cassandra Faye |
| Tisi Christopher V<br>Ashcraft & Gerel<br>2000 L Street NW<br>Suite 400<br>Washington, DC 20036 | => Biles, Melvin*; Edler (Ind /Per /Rep /Est -William Dale & behalf-wrongful death beneficiaries-William Dale Gail Lynne & Shawn C ) Lindsey*; Morris, Jr. David* |
| Wade Jr Lawrence D<br>Campbell DeLong Hagwood & Wade<br>P O Box 1856<br>Greenville MS 38702-1856 | => Petilos M D Salvador; Waller, M D Richard E |
| Walker Chris J<br>Markow Walker, P A | => Stone M D Deck; Weiner Roger |

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| P O Box 13669<br>Jackson MS 39236-3669 | |
| Walker  Thomas E<br>Johnson  Barton  Proctor & Powell<br>2900 AmSouth/Harbert Plaza<br>1901 6th Avenue North<br>Birmingham AL 35203 | => Harlan  Gary; Wall, Robert |
| Watson, Leila H<br>Cory  Watson  Crowder & DeGaris P C<br>2131 Magnolia Avenue<br>P O Box  55927<br>Birmingham  AL 35255-5972 | => Wilson  Danny M |
| Weaver  Jennifer Fadal<br>1305 Fossel Ridge Trial<br>Waco  TX 76712 | => Weaver  Jennifer Fadal |
| Weiner, Richard J<br>Law Offices Of Richard J  Weiner, P C<br>119 Rockland Center<br>Suite 425<br>Nanuet  NY 10954 | => Quick, Anna |
| Weisbrod, Leslie<br>Morgan & Weisbrod<br>11551 Forest Central Drive<br>Suite 300<br>Dallas  TX 75243 | => Register  Anne; Register  Jack A |
| Welch III  Jewell E<br>Cunard Reis Law Firm<br>9214 Interline Avenue<br>Baton Rouge, LA 70809 | => White  Vicki |
| Weston  John K<br>Sacks  Weston  Smolinksy  Alberi & Luber<br>510 Walnut Street<br>Suite 400<br>Philadelphia PA 19106 | => Carr, Gwendolyn L * |
| Wright  James L<br>Mithoff & Jacks<br>1 Congress Plaza<br>111 Congress Avenue<br>Suite 1010<br>Austin  TX 78701-0001 | => Bauman (Ind /Rep /Est -Elsie Geneva)  Larry Lee; Bauman, III (Ind /Rep /Est -Elsie Geneva)  Ernest Charles; Clay (Ind /Rep /Est -Elsie Geneva Bauman), Leslie Lynn Bauman; Mincher (Ind /Rep /Est -Elsie Geneva Bauman), Kelly; Moses (Ind /Rep /Est -Elsie Geneva)  Mary Carla; Tolbertt (Ind /Rep /Est -Elsie Geneva Bauman)  Lisa Bauman |
| Zonas, James John<br>James J  Zonas  Attorney at Law<br>700-2nd Avenue North<br>Suite 102<br>Naples  FL 34102 | => Dunleavey (By & Through/Per /Rep /Est -Edward)  Frances |

Nadeem Haider
606 N. Jefferson St.
Louisville, MS 39339

Barbara J. Hart
Goodkind,Labaton,Rudoff & Sucharow
100 Park Ave., 12th Floor
New York, NY 10017-5563

Steven L. Russell
Beirne,Maynard & Parsons
1700 Pacific Ave, Ste 4400
Dallas,TX 75201

# EXHIBIT D

1

```
 1                 UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF LOUISIANA
 2                    NEW ORLEANS, LOUISIANA

 3

 4

 5

   IN RE:  VIOXX PRODUCTS        *   Docket MDL 1657-L
 6    LIABILITY LITIGATION       *
                                 *   June 23, 2005
 7                               *
                                 *   9:30 a.m.
 8   * * * * * * * * * * * * * * *

 9

10
                   STATUS CONFERENCE BEFORE THE
11                 HONORABLE ELDON E. FALLON
                   UNITED STATES DISTRICT JUDGE
12

13   APPEARANCES:

14

15   For the Plaintiffs:          Seeger Weiss
                                   BY:  CHRISTOPHER A. SEEGER, ESQ.
16                                 One William Street
                                   New York, New York 10004
17

18   For the Defendants:          Stone Pigman Walther Wittmann
                                   BY:  PHILLIP A. WITTMANN, ESQ.
19                                 546 Carondelet Street
                                   New Orleans, Louisiana 70130
20

21   Official Court Reporter:     Toni Doyle Tusa, CCR
                                   500 Poydras Street, Room B-406
22                                 New Orleans, Louisiana 70130
                                   (504) 589-7778
23

24

25   Proceedings recorded by mechanical stenography, transcript
     produced by computer.
```

2

PROCEEDINGS

(June 23, 2005)

1
2
3        THE DEPUTY CLERK:  Everyone rise.

4        THE COURT:  Be seated, please.  Good morning, Ladies

5   and Gentlemen.  Call the case, please.

6        THE DEPUTY CLERK:  MDL 1657, In Re: Vioxx.

7        THE COURT:  Counsel, make your appearances for the

8   record.

9        MR. SEEGER:  Good morning, Your Honor.  Chris Seeger

10  for the plaintiffs.  I'm going to be playing Russ Herman today.

11       MR. WITTMANN:  Phil Wittmann, Your Honor, liaison

12  counsel for the defendants.

13       THE COURT:  I understand we have some counsel on the

14  phone.  Who is that?

15       MS. SOTOODEH:  Pamela Sotoodeh in Chicago.

16       MS. KOPELMAN:  Richard Kopelman of Decatur, Georgia.

17       THE COURT:  Good morning.  This is our monthly status

18  conference.  I have received from the liaison counsel the

19  proposed agenda.  We will take the items in order.  The first

20  is LexisNexis File & Serve.  Let me have a report on that.

21       MR. SEEGER:  Judge, we continue to have problems with

22  LexisNexis.  We are having problems getting documents posted

23  and served.  On the other end, they're having problems

24  identifying firms that are already previously registered.  We

25  have got some calls set up with them to try to work through

1  with this issue in that fashion.  We have a confidentiality

2  agreement which will allow the defendants comfort to produce

3  certain information without fear that their future economic

4  security is in jeopardy.  The remand issues.

5          MR. SEEGER:  Judge, that's in the report.  You are

6  going to be dealing with remand motions as a group by

7  procedures that you will be setting up.

8          THE COURT:  Right.  This is always an issue which the

9  MDL Court has to look at.  The question is posed.  There are

10  various issues of remand in various cases throughout the

11  country.  Again, a significant advantage of the MDL concept is

12  some consistency.  The Rule of Law is really based on

13  consistency.  If different decisions are made by numerous

14  judges, then you have no consistency and no predictability and

15  no one knows exactly what to do or how to do it.  It's easier

16  if one court decides some of these matters than if 50 or 100

17  courts decide the matter.

18          I'm conscious of dealing with the remand as

19  quickly as possible, but I do want to get them all together,

20  look at them, see if I can group them in some way, and then

21  direct my attention on each particular group and deal with that

22  issue in a consistent and fair fashion for that group.  I will

23  be dealing with them as quickly as I can, but also with an idea

24  of having more consistency.  I'll be speaking about this

25  perhaps later on because I do have some concepts and ideas

# EXHIBIT E

Westlaw.

Slip Copy
Slip Copy, 2005 WL 2234071 (W.D.Tenn.)
**(Cite as: 2005 WL 2234071 (W.D.Tenn.))**

Page 1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
W.D. Tennessee, Eastern Division.
James H. WILBANKS and wife, Elva Jean
Wilbanks, Plaintiffs,
v.
MERCK & CO., INC., et al., Defendants.
**No. 05-1241-T/AN.**

Sept. 13, 2005.
Steven G. Ohrvall, T. Robert Hill, Hill Boren,
Jackson, TN, for Plaintiffs.

Charles C. Harrell, Lisa M. Martin, Butler Snow
O'Mara Stevens & Canada, PLLC, Memphis, TN, for
Defendants.

ORDER GRANTING MOTION TO STAY

TODD, J.

*1 Plaintiffs James H. Wilbanks and Elva Jean
Wilbanks filed this action in the Circuit Court of
Madison County, Tennessee, on July 25, 2005,
against Merck and Company, Inc., maker of the
prescription drug known as Vioxx. Plaintiffs also
named as defendants certain local Merck sales
representatives and pharmacists. Merck removed the
action to this Court on August 26, 2005, on the basis
of diversity of citizenship, contending that the non-
diverse defendants were fraudulently joined in an
attempt to defeat diversity jurisdiction.

Also on August 26, 2005, Merck filed a motion to
stay all further proceedings pending a decision by the
Judicial Panel on Multidistrict Litigation ("MDL
Panel") on whether this case should be transferred to
the United States District Court for the Eastern
District of Louisiana as a "tag-along" action in MDL
Proceeding No. 1657, *In re Vioxx Product Liability
Litigation.* Plaintiffs filed a motion to remand the
action to state court on September 12, 2005.

The MDL Panel issued the first Transfer Order
establishing MDL-1657 on February 16, 2005. In that
order, the Panel stated:

The pendency of a motion to remand to state court
is not a sufficient basis to avoid inclusion in
Section 1407 proceedings. We note that motions to
remand in two actions, one action each in the
District of Kansas and the Eastern District of
Missouri, as well as in any other MDL-1657
actions can be presented to and decided by the
transferee judge. *See, e.g., In re Ivy,* 901 F.2d 7 (2d
Cir.1990); *In re Prudential Insurance Company of
America Sales Practices Litigation,* 170 F.Supp.2d
1346, 1347-48 (J.P.M.L.2001).
Transfer Order, at 2 (J.P.M.L. Feb. 16, 2005).

The pendency of transfer to the MDL proceeding
does not limit the authority of this Court to rule on
the plaintiffs' motion to remand. *See* JPML R. 1.5.
The decision whether to grant a stay is within the
inherent power of the Court and is discretionary. *See
Landis v. North Am. Co.,* 299 U.S. 248, 254-55, 57
S.Ct. 163, 81 L.Ed. 153 (1936). Although some
courts have opted to rule on pending motions to
remand prior to the MDL Panel's decision on transfer,
*see, e.g., Kantner v. Merck & Co., Inc.,* No.
1:04CV2044-JDT-TAB, 2005 WL 277688 (S.D.Ind.
Jan.26, 2005), there are many more that have chosen
to grant a stay, even if a motion to remand has been
filed. *E.g., Anderson v. Merck & Co., Inc.,* No. 4:05-
cv-89 (E.D.Mo. Mar. 16, 2005); *McCrerey v. Merck
& Co., Inc.,* No. 04-cv-2576 (S.D.Cal. Mar. 2, 2005);
*Dixon v. Merck & Co., Inc.,* No. 05- 0121 (S.D.Tex.
Feb. 23, 2005).

A number of Vioxx cases from this district have
already been transferred to MDL-1657, and there are
hundreds, possibly thousands, of others that have
been transferred or are awaiting transfer in other
districts. In many of those cases, the joinder of non-
diverse defendants is contested and motions to
remand have been or will be filed. Thus, the
jurisdictional issues raised in this case are similar to
those raised in other cases that have been or will be
transferred to the MDL proceeding.

*2 The Court finds that having the jurisdictional
issues decided in one proceeding will promote
judicial economy and conserve judicial resources. In
addition, the Court finds that any prejudice to the
plaintiffs resulting from a stay would be minimal.
However, in the absence of a stay, the risk to Merck
of duplicative motions and discovery is significant.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 2234071 (W.D.Tenn.)
**(Cite as: 2005 WL 2234071 (W.D.Tenn.))**

For the foregoing reasons, Merck's motion to stay pending the MDL Panel's transfer decision is GRANTED. The motion to remand is deferred to the transferee court.

IT IS SO ORDERED.

Slip Copy, 2005 WL 2234071 (W.D.Tenn.)

**Motions, Pleadings and Filings (Back to top)**

• 1:05CV01241 _____(Docket)
(Aug. 26, 2005)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ARLINE ANDERSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 4:05-CV-89 (CEJ) |
| | ) | |
| MERCK & CO., INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

On March 4, 2005, the Judicial Panel on Multidistrict Litigation entered a conditional transfer order, transferring this action to the Eastern District of Louisiana for pretrial proceedings pursuant to 28 U.S.C. § 1407. _In re VIOXX Products Liability Litigation_, Docket No. 1657 (Conditional Transfer Order March 4, 2005).

Accordingly,

**IT IS HEREBY ORDERED** that the motion of defendant Merck & Co., Inc. to stay all proceedings pending transfer to the Eastern District of Louisiana [#9] is **granted**.

**IT IS FURTHER ORDERED** that plaintiffs' motion for extension of time to file responses to dismissal motions pending ruling on plaintiffs' motion to remand [#54] is **denied**. Plaintiffs shall file responses to the dismissal motions of defendant Walgreens Co. within twenty (20) days of the date of this order.

CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 16th day of March, 2005.

# EXHIBIT G

FILED

05 MAR -3 PM 2: 44

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RITA MCCREREY, ) | Civil No. 04-2576 WQH (WMc) |
|         Plaintiff, ) | |
|          ) | **ORDER** |
|   v. ) | |
| MERCK & COMPANY, ) | |
|         Defendant. ) | |
|          ) | |

Pending before the Court is Plaintiff's Motion to Remand and Defendant's Motion to Stay. The Court takes these matters under submission on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1). After considering the arguments raised by the parties in their briefing, the Court now issues the following rulings.

### BACKGROUND

Plaintiff brings this class action law suit against Merck and Company. Merck and Company manufactured and distributed the pain prescription drug VIOXX from 1999 until September 30, 2004. On September 30, 2004, Merck and Company voluntarily withdrew VIOXX from the market after studies showed "increased relative risks for confirmed cardiovascular events beginning after 18 months of treatment in the patients taking VIOXX

17    1

1  compared to those taking placebo." D's Opposition to Motion to Remand at 2.

2      Shortly after VIOXX was taken off the market, a myriad of cases were filed throughout

3  the nation.  On November 29, 2004, Plaintiff filed a case in the Superior Court of the State of

4  California for the County of San Diego.  Shortly thereafter, Defendants removed the action to

5  Federal Court.  Plaintiffs then filed a Motion to Remand based on Defendant's failure to

6  establish the amount in controversy requirements.  Defendant opposes.  Concurrently,

7  Defendant filed a Motion to Stay the case pending transfer decision by the Judicial Panel on

8  Multi-District Litigation.  Plaintiff did not file a Response to the Motion to Stay, but did

9  advance arguments against staying the case in its Motion to Remand and Reply in support of its

10 Motion to Remand.

11                    **STANDARDS OF REVIEW**

12 **I. Motion to Remand**

13     The burden of establishing federal jurisdiction on removal falls on the party seeking

14 removal.  *See Brady v. General Dynamics Corp.*, 915 F.Supp. 1103, 1105 (S.D. Cal. 1996)

15 (Brewster, J.) (citing *Redwood Theatres v. Festival Enters.*, 908 F.2d 477, 479 (9th Cir. 1990)).

16 Courts strictly construe the removal statute, 28 U.S.C. § 1441(a), against removal.  *Id.*  If the

17 court determines that the removal was improper, 28 U.S.C. § 1447(c) requires remand.  *Id.*

18 Under the well-pleaded complaint rule, a federal question exists only if the basis for federal

19 jurisdiction appears on the face of the complaint.  *Id.* at 1106.  The court will respect a plaintiff's

20 artfully pleaded state law complaint for jurisdictional purposes even if the complaint raises a

21 federal defense, and removal under such circumstances would be improper.  *Id.*

22 **II. Motion to Stay**

23     "The power to stay proceedings is incidental to the power inherent in every court to

24 control the disposition of the cases on its docket with economy of time and effort for itself, for

25 counsel, and for litigants." *Landis v. American Water Works & Elec. Co.*, 299 U.S. 248, 254

26 (1936).  The use of this power requires exercise of sound discretion.  *Id.*

27     Additionally, it is necessary to weigh competing interests of those that will be affected by

28 the stay.  *Id.* at 254- 255.  *See CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) ("Where it

2

1   is proposed that a pending proceeding be stayed, the competing interests which will be affected

2   by the granting or refusal to grant a stay must be weighed."); *see also Filtrol Corp. v. Kelleher,*

3   467 F.2d 242, 244 (9th Cir. 1972) (quoting *CMAX*). These competing interests include: possible

4   damage which may result from the granting of a stay, the hardship or inequity which a party may

5   suffer in being required to go forward, and the orderly course of justice measured in terms of the

6   simplifying or complicating of issues, proof, and questions of law which could be expected to

7   result from a stay. *CMAX,* 300 F.2d at 268. The moving party "must make out a clear case of

8   hardship or inequity in being required to go forward, if there is even a fair possibility that the

9   stay for which he prays will work damage to someone else." *Landis,* 299 U.S. at 255.

10                                    **DISCUSSION**

11       There are currently hundreds of VIOXX related cases pending against Defendant

12  nationwide. At least eight of them are pending in California. At least nineteen cases have

13  pending motions to remand. Stays have been entered in over one hundred seventy cases to date.

14       Plaintiff did not file a formal opposition to Defendant's Motion to stay. Instead, Plaintiff

15  argues against entry of a stay and for remand to the state court in its Motion to Remand. Plaintiff

16  argues that Defendant has failed to establish that the amount in controversy requirements have

17  been met. Defendant argues that the amount in controversy requirements are easily met based on

18  Plaintiff's Complaint and prayer for "restitution and/or disgorgement of all 'revenues it has

19  derived in California,' injunctive and equitable relief, attorneys' fees and costs, and further relief

20  as the Court may deem proper."

21       Plaintiff cites to *Conroy v. Fresh Del Monte Produce Inc.,* in support of its argument that

22  this Court *must* consider the motion to remand before entering a stay. *325 F. Supp. 2d 1049 (D.*

23  *Cal., 2004).* The *Conroy* Court finds the approach involving initial resolution of a simple

24  Motion to Remand before consideration of a motion to stay. However, *Conroy* explicitly states

25  that the Ninth Circuit has not adopted the approach Plaintiff claims to be binding. *See Conroy v.*

26  *Fresh Del Monte Produce Inc., 325 F. Supp. 2d 1049, at 1053 (D. Cal., 2004).* Moreover, the

27  *Conroy* Court held that "[t]he decision to grant or deny a temporary stay of proceedings pending

28  a ruling on the transfer of the matter to the MDL court *lies within this Court's discretion. Conroy*

3

1  *v. Fresh Del Monte Produce Inc.*, 325 F. Supp. 2d 1049, 1053 (D. Cal., 2004) (emphasis added)

2  *citing Landis v. North American Co.*, 299 U.S. 248, 254-55, 81 L. Ed. 153, 57 S. Ct. 163 (1936);

3  *Good v. Prudential Ins. Co. of Am.*, 5 F. Supp. 2d 804, 809 (N.D.Cal. 1998).

4    Furthermore, in its Order transferring one hundred forty eight VIOXX related cases to the

5  Eastern District of Louisiana, the Judicial Panel on Multi-District Ligation wrote:

6     The pendency of a motion to remand to state court is not a sufficient basis
to avoid inclusion in Section 1407 proceedings. We note that motions to

7     remand...can be presented to and decided by the transferee judge. *See, e.g., In re
Ivy*, 901 F.2d 7 (2d Cir. 1990); *In re Prudential Insurance Company of America*

8     *Sales Practices Litigation*, 170 F. Supp. 2d 1346, 1347-48 (J.P.M.L. 2001).

9    Defendant argues that judicial economy and the need for consistent judicial rulings

10  mandates a stay in this action. Defendant argues that the many cases pending against VIOXX

11  include similar questions of fact and law, and Defendant would be prejudiced by a refusal to stay

12  the case. In support of its argument, Defendant filed copies of complaints filed in similar

13  VIOXX actions asking for similar relief. Defendant also argues that discovery will likely be

14  very similar in many of the cases, and that without coordination, potential witnesses could

15  conceivably be called in jurisdictions nationwide. While none of the complaints are identical,

16  each is based on Defendant's role in the production and manufacture of VIOXX.

17    Additionally, Defendant argues that other District Courts in this Circuit have granted

18  motions to stay even despite a pending motion to remand based on amount in controversy

19  requirements. For example, in *Wright v. Merck & Co Inc*, CV 04-3037-PHX-SRB the Court

20  stated:

21     Whether this case satisfies the amount in controversy requirement for
jurisdictional purposes and whether class member claims can be aggregated are

22     issues common to many of the cases which will be considered for consolidation by
the Judicial Panel on Multi-District Litigation. While this Court is not required to

23     stay consideration of the Motion to Remand, it concludes that it would be in the
best interests of judicial economy and consistency to stay this case until the

24     determination of its transfer by the Judicial Panel on Multi-District Litigation.
*Wright v. Merck & Co Inc*, CV 04-3037-PHX-SRB

25

26    This Court also finds that judicial economy and consistency will be best served by a stay

27  in this case, pending transfer decision by the Judicial Panel on Multi-District Litigation. The case

28  involves similar issues of fact and law as those being transferred to the MDL. The Court finds

4

1   that neither party will be prejudiced by granting the Motion to Stay. The Court acknowledges

2   the arguments against stay advanced by Plaintiff in its Motion to Remand and Reply in support

3   of Motion to Remand. However, the Court also notes the lack of a formal Response being filed

4   in opposition to the Motion to Stay specifically addressing each of the issues raised in the

5   Motion to Stay. Furthermore, upon a review of the pleadings, the Court finds that the

6   jurisdictional issues raised in the Motion to Remand can be decided either by the MDL, or post

7   transfer decision by the MDL.

8        "The power to stay proceedings is incidental to the power inherent in every court to

9   control the disposition of the cases on its docket with economy of time and effort for itself, for

10  counsel, and for litigants." *Landis v. American Water Works & Elec. Co.*, 299 U.S. 248, 254

11  (1936). The use of this power requires exercise of sound discretion. *Id.* Accordingly, the Court

12  will use its discretion and enter a stay in this action.

13                              **CONCLUSION AND ORDER**

14       The Court finds that for judicial economy and consistency purposes, this matter shall be

15  stayed pending a transfer decision by the Judicial Panel on Multi-District Litigation. Plaintiff's

16  Motion to Remand will be denied, with leave to renew if transfer is denied. If transfer is denied,

17  Plaintiffs shall notify the Court and file a Notice of Renewal within 10 Court days.

18  Accordingly,

19       **IT IS ORDERED** this matter is hereby **STAYED** pending transfer decision by the

20  Judicial Panel on Multi-District Litigation.

21       **IT IS FURTHER ORDERED** Plaintiff's Motion to Remand is **DENIED** with leave to

22  renew if transfer is denied.

23       **IT IS FURTHER ORDERED** if transfer is denied, Plaintiffs shall notify the Court and

24  file a Notice of Renewal within 10 Court days.

25  **IT IS SO ORDERED.**

26

27  Dated: _3/2/01_

                                          WILLIAM Q. HAYES
28  cc:  Magistrate Judge McCurine         United States District Judge
         All Counsel of Record

                                    5

# EXHIBIT H

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
ENTERED

FEB 2 3 2005

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| MARGRETT L. DIXON AND | § | |
| JAMES DIXON, Individually, | | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. H-05-CV-0121 |
| MERCK & CO., INC., | § | |
| LUIS G. SCHAEFFER, M.D. and | § | |
| DR. LUIS G. SCHAEFFER & | § | |
| ASSOCIATES, P.A., | | |
| Defendants. | § | |

## ORDER

Came on for consideration Defendant Merck & Co., Inc.'s Motion to Stay All Proceedings Pending Transfer Decision by the Judicial Panel on Multidistrict Litigation in this case.

After due consideration, IT IS ORDERED that Defendant Merck & Co. Inc.'s motion is GRANTED. All pretrial proceedings are hereby STAYED pending a transfer decision by the Judicial Panel on Multidistrict Litigation.

_____
UNITED STATES DISTRICT JUDGE

SO ORDERED at Houston, Texas, on this 23rd day of FEBRUARY 2005

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

United States District Court
Southern District of Texas
ENTERED

MAR 1 5 2004

Michael N. Milby, Clerk of Court

23

| | | |
|---|---|---|
| THE HEIRS OF THE ESTATE OF | § | |
| PABLO FLORES, INDIVIDUALLY AND | § | |
| ON BEHALF OF THE ESTATE | § | |
| | § | |
| v. | § | CIVIL ACTION NO. C-03-362 |
| | § | |
| MERCK & CO., INC. AND RANDY | § | |
| FUENTES, M.D. | § | |

## ORDER DENYING PLAINTIFFS' MOTION TO REMAND AND DISMISSING CLAIMS AGAINST DEFENDANT FUENTES

After careful consideration, the Court DENIES plaintiffs' Motion to Remand (D.E. 9) and DISMISSES all claims against defendant Fuentes.

*Fraudulent Joinder:*

Defendant Merck removed this action alleging fraudulent joinder of defendant Fuentes. Fraudulent joinder is established by showing (1) actual fraud in pleading jurisdictional facts or (2) inability of the plaintiff to establish a cause of action against the non-diverse plaintiff. *Travis v. Irby,* 326 F.3d 644, 647 (5th Cir. 2003). The Court must determine whether there is arguably a reasonable basis for predicting that state law might impose liability. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 312 (5th Cir. 2002). There must be a reasonable possibility of recovery, not merely a theoretical one. *Ross v. Citifinancial, Inc.,* 344 F.3d 458, 462 (5th Cir. 2003). "Although the Fifth Circuit has not drawn a bright-line distinction between a reasonable possibility and

1

a theoretical one, it has held that, when plaintiffs make general allegations and fail to support

them with specific, underlying facts, they have not established a reasonable basis for the

Court to predict that relief may be granted." *Staples v. Merck & Co., Inc.*, 270 F.Supp.2d

833, 837 (N.D. Tex. 2003) (citing *Great Plains Trust Co.*, 313 F.3d at 329).

Plaintiffs' petition alleges negligence, strict liability, fraud, misrepresentation,

breach of warranty, and derivative wrongful death and survival claims. The Court finds that

there is not arguably a reasonable basis for predicting that state law might impose liability

upon Fuentes for any of these claims. *Great Plains Trust Co.*, 313 F.3d at 312.

Plaintiffs make conclusory, general allegations of negligence against Fuentes which

they fail to support with specific, underlying facts. In plaintiffs' petition, the only allegation

that directly refers to Fuentes is that "Plaintiff Decedent was prescribed Vioxx® by

defendant Dr. Fuentes. Decedent presented in part with a serious history of cardiac disease,

hypertension and/or other risk factors contrary to the ingestion of Vioxx®." Yet, the

plaintiffs later claim that Merck "failed to adequately and timely inform the health care

industry of the risks of serious personal injury and death from Vioxx® ingestion." The

Court finds that there is not arguably a reasonable basis for predicting that state law might

impose liability upon Fuentes for negligence when the plaintiffs' own petition states that

Fuentes, as a member of the health care industry, was not made aware of the risks of the

ingestion of the drug.

2

Also, the strict liability claim does not form an arguably reasonable basis for the imposition of state law liability.[1]  Plaintiffs further fail to provide any factual support for their fraud or misrepresentation claims as they apply to Fuentes; they rely on speculative and conclusory allegations, which are insufficient to support these claims. *See, e.g., Staples*, 270 F.Supp.2d at 844.  Also, the breach of warranty claim is asserted solely against Merck and not against Fuentes.  Finally, it follows that the derivative claims fail to form a basis for the imposition of state law liability upon Fuentes as well. *See Schaefer v. Gulf Coast Regional Blood Center*, 10 F.3d 327, 330 (5th Cir. 1994) (Wrongful death and survival claims "are derivative actions and condition the plaintiff's ability to recover upon the decedent's theoretical ability to have brought an action had the decedent lived.").

As such, the Court concludes that Fuentes was fraudulently joined.  Therefore, the Court DENIES plaintiffs' motion to remand and DISMISSES all claims against defendant Fuentes.

ORDERED this *12* day of *March*, 2004.

HAYDEN HEAD
CHIEF JUDGE

---

[1] On the facts, it is extremely unlikely a Texas court would find Fuentes strictly liable for the prescription. *See, e.g., Cobb v. Dallas Forth Worth Medical Center–Grand Prairie*, 48 S.W.3d 820, 826 (Tex. App. 2001). Also, a strict liability claim would be time-barred under the two-year statute of limitations of Tex. Civ. Prac. & Rem. Code 16.003(b) (Vernon 2003) because decedent died on September 9, 2000 and plaintiffs did not file their action until March 6, 2003. *See also Hyundai Motor Co. v. Rodriguez ex rel. Rodriguez*, 995 S.W.2d 661, 668 (Tex. 1999) ("The statute of limitations is only . . . two years on a strict liability claim.") The agreed tolling stipulations do not affect this time bar

# EXHIBIT I

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

United States District Court
Southern District of Texas
ENTERED

MAR 1 5 2004

THE HEIRS OF THE ESTATE OF § 
PABLO FLORES, INDIVIDUALLY AND §
ON BEHALF OF THE ESTATE §
§
v. §
§
MERCK & CO., INC. AND RANDY §
FUENTES, M.D. §

Michael N. Milby, Clerk of Court

23

CIVIL ACTION NO. C-03-362

## ORDER DENYING PLAINTIFFS' MOTION TO REMAND AND DISMISSING CLAIMS AGAINST DEFENDANT FUENTES

After careful consideration, the Court DENIES plaintiffs' Motion to Remand (D.E. 9) and DISMISSES all claims against defendant Fuentes.

*Fraudulent Joinder:*

Defendant Merck removed this action alleging fraudulent joinder of defendant Fuentes. Fraudulent joinder is established by showing (1) actual fraud in pleading jurisdictional facts or (2) inability of the plaintiff to establish a cause of action against the non-diverse plaintiff. *Travis v. Irby,* 326 F.3d 644, 647 (5th Cir. 2003). The Court must determine whether there is arguably a reasonable basis for predicting that state law might impose liability. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 312 (5th Cir. 2002). There must be a reasonable possibility of recovery, not merely a theoretical one. *Ross v. Citifinancial, Inc.,* 344 F.3d 458, 462 (5th Cir. 2003). "Although the Fifth Circuit has not drawn a bright-line distinction between a reasonable possibility and

1

a theoretical one, it has held that, when plaintiffs make general allegations and fail to support them with specific, underlying facts, they have not established a reasonable basis for the Court to predict that relief may be granted." *Staples v. Merck & Co., Inc.*, 270 F.Supp.2d 833, 837 (N.D. Tex. 2003) (citing *Great Plains Trust Co.*, 313 F.3d at 329).

Plaintiffs' petition alleges negligence, strict liability, fraud, misrepresentation, breach of warranty, and derivative wrongful death and survival claims. The Court finds that there is not arguably a reasonable basis for predicting that state law might impose liability upon Fuentes for any of these claims. *Great Plains Trust Co.*, 313 F.3d at 312.

Plaintiffs make conclusory, general allegations of negligence against Fuentes which they fail to support with specific, underlying facts. In plaintiffs' petition, the only allegation that directly refers to Fuentes is that "Plaintiff Decedent was prescribed Vioxx® by defendant Dr. Fuentes. Decedent presented in part with a serious history of cardiac disease, hypertension and/or other risk factors contrary to the ingestion of Vioxx®." Yet, the plaintiffs later claim that Merck "failed to adequately and timely inform the health care industry of the risks of serious personal injury and death from Vioxx® ingestion." The Court finds that there is not arguably a reasonable basis for predicting that state law might impose liability upon Fuentes for negligence when the plaintiffs' own petition states that Fuentes, as a member of the health care industry, was not made aware of the risks of the ingestion of the drug.

2

Also, the strict liability claim does not form an arguably reasonable basis for the imposition of state law liability.[1]  Plaintiffs further fail to provide any factual support for their fraud or misrepresentation claims as they apply to Fuentes; they rely on speculative and conclusory allegations, which are insufficient to support these claims. *See, e.g., Staples*, 270 F.Supp.2d at 844.  Also, the breach of warranty claim is asserted solely against Merck and not against Fuentes.  Finally, it follows that the derivative claims fail to form a basis for the imposition of state law liability upon Fuentes as well. *See Schaefer v. Gulf Coast Regional Blood Center*, 10 F.3d 327, 330 (5th Cir. 1994) (Wrongful death and survival claims "are derivative actions and condition the plaintiff's ability to recover upon the decedent's theoretical ability to have brought an action had the decedent lived.").

As such, the Court concludes that Fuentes was fraudulently joined.  Therefore, the Court DENIES plaintiffs' motion to remand and DISMISSES all claims against defendant Fuentes.

ORDERED this *12* day of *March*, 2004.

*HucHead*

HAYDEN HEAD
CHIEF JUDGE

---

[1]On the facts, it is extremely unlikely a Texas court would find Fuentes strictly liable for the prescription. *See, e.g., Cobb v. Dallas Forth Worth Medical Center–Grand Prairie*, 48 S.W.3d 820, 826 (Tex. App. 2001). Also, a strict liability claim would be time-barred under the two-year statute of limitations of Tex. Civ. Prac. & Rem. Code 16.003(b) (Vernon 2003) because decedent died on September 9, 2000 and plaintiffs did not file their action until March 6, 2003. *See also Hyundai Motor Co. v. Rodriguez ex rel. Rodriguez*, 995 S.W.2d 661, 668 (Tex. 1999) ("The statute of limitations is only . . . two years on a strict liability claim.") The agreed tolling stipulations do not affect this time bar

# EXHIBIT J

United States District Court
Southern District of Texas
FILED
MMM

FEB 2 3 2004

Michael N. Milby, Clerk
Laredo Division

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
LAREDO DIVISION

United States District Court
Southern District of Texas
ENTERED
MMM

FEB 2 4 2004

Michael N. Milby, Clerk
Laredo Division

| | | |
|---|---|---|
| PATRICIA BENAVIDES, Individually<br>and as Representative of the<br>ESTATE OF LUCIA GUTIERREZ, | § <br> § <br> § <br> § | |
| Plaintiffs, | § <br> § | |
| vs. | § <br> § | Civil Action No. L-03-CV-134 |
| MERCK & CO., INC.,<br>CARLOS CIGARROA, M.D.,<br>MERCY HOSPITAL, and<br>DENNIS CANTU, M.D., | § <br> § <br> § <br> § | |
| Defendants. | § <br> § | |

## REPORT AND RECOMMENDATION

Pending before the Court is Plaintiff's Motion to Remand [Doc. No. 6]. Having reviewed the pending motion, the parties' filings, and the applicable law, this Court recommends to the District Court that the motion be **DENIED**.

### I. FACTS

Although Plaintiff's complaint contains scant details about events leading to the alleged injuries, additional facts can be gleaned from the parties' other filings. Plaintiff Patricia Benavides ("Plaintiff") represents herself and the estate of her mother, Lucia Gutierrez ("Ms. Gutierrez" or "Decedent"). Ms. Gutierrez died of a myocardial infarction on March 30, 2001. (Pl.'s Orig. Pet. at 4.) Defendant Dr. Dennis Cantu ("Dr. Cantu") treated Ms. Gutierrez from approximately July 1999 through February 2001. (Affidavit of Dennis Cantu, Supp. Exhibit to Def. Merck & Co.'s Resp. in Opp'n to Pl.'s Mot. to Remand). Over the course of her treatment, Dr. Cantu prescribed Vioxx (rofecoxib) to Ms. Gutierrez. *See id.* Dr. Cantu last saw Ms. Gutierrez on February 12, 2001. *Id.*

34

Defendant Merck & Co. ("Merck") markets and distributes rofecoxib as an osteoarthritis and pain-relief drug under the trade name Vioxx. (Pl.'s Orig. Pet. at 4.) Several studies published in 2001 and 2002 indicate that using rofecoxib may increase the risk of myocardial infarction. (*See* Pl.'s Orig. Pet. at 5-7.) In September 2001, the Food and Drug Administration sent a warning letter to Merck, stating in part that Merck had misrepresented Vioxx's "safety profile" in commercial promotions of the drug. *Id.* at 7.

Dr. Carlos Cigarroa ("Dr. Cigarroa") was the attending physician at Mercy Hospital who treated Ms. Gutierrez up until the time of her death. (Pl.'s Reply to Merck & Co.'s Resp. to Pl.'s Mot. to Remand at 2.) Plaintiff's complaint does not allege any facts about Dr. Cigarroa or Decedent's interactions with him, other than jurisdictional facts.

Defendant Mercy Hospital has apparently answered the complaint, although a copy of their original answer was not included with the Notice of Removal. *See* Pl.'s Mot. to Remand, Unmarked Exhibit, between Exhibit D and Exhibit E. Plaintiff's complaint does not allege any facts about Mercy Hospital or Decedent's interactions with Mercy Hospital, other than jurisdictional facts.

Plaintiff filed her Original Petition in the 49th Judicial District of Texas, Zapata County, on May 29, 2003. Plaintiff's complaint alleges negligence, strict liability, misrepresentation and suppression, breach of warranty (as to Defendant Merck), and fraud. Defendant Merck was served August 13, 2003, and removed the case on September 11, 2003, asserting that Defendants Dr. Cantu, Dr. Cigarroa, and Mercy Hospital ("Healthcare defendants") were fraudulently joined. Merck argues that any medical malpractice claim against the Healthcare defendants is barred by the statute of limitations, and that Plaintiff's complaint does not contain legally or factually sufficient claims against these defendants.

2

Plaintiff filed a motion to remand the case to state court on October 10, 2003. Plaintiff argues that her Original Petition sets forth a viable claim of negligence against Dr. Cigarroa and Dr. Cantu.[1]

## II. ANALYSIS

### A. Federal Jurisdiction

A defendant may remove a civil action brought in State court to the appropriate United States district court when the district court has original jurisdiction over the case. 28 U.S.C. §1441(a). United States district courts have original jurisdiction over civil actions when the parties have diversity of citizenship and an amount over $75,000 is in controversy. *See* 28 U.S.C. §1332(a).

The party seeking removal bears the burden of showing that federal jurisdiction exists and that removal was proper. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995). When assessing the propriety of removal, United States district courts must strictly construe removal statutes because "removal jurisdiction raises significant federalism concerns." *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988).

In this case, Plaintiff is a citizen of Texas. Defendant Merck is incorporated in New Jersey and maintains its principal place of business in New Jersey. Defendants Dr. Cantu and Dr. Cigarroa are Texas citizens. Plaintiff does not allege the incorporation or principal place of business of Defendant Mercy Hospital in her complaint. For the purposes of this motion to remand, the Court

---

[1]Plaintiff bluntly states that her original complaint sets forth a claim against Mercy Hospital, but does not offer any factual support or argument for this statement. Plaintiff also discusses Merck's burden of proof on fraudulent joinder as to "a medical malpractice claim against the *two* resident Defendants." Pl.'s Mot. to Remand at 4 (emphasis added).

will assume that Mercy Hospital is a citizen of Texas. On the face of the complaint, the Court must remand the case because there is not complete diversity. *See* 28 U.S.C. 1332.

### B. Fraudulent Joinder

However, the action may remain in federal court if, as Defendant Merck alleges in its Notice of Removal, the Healthcare Defendants were fraudulently joined in the case. If the Healthcare defendants were fraudulently joined, their citizenship becomes irrelevant for jurisdictional purposes, and this Court would have jurisdiction on diversity grounds. *See McKee v. Kansas City Southern Railway Co.*, 2004 WL 103439 at *4 (5th Cir. Jan. 23, 2004) ("[D]iversity cannot be destroyed by a plaintiff fraudulently joining a non-diverse defendant.") (citing *Hart v. Bayer Corp.*, 199 F.3d 239, 243 (5th Cir. 2000)). The defendant bears the burden of establishing that the non-diverse defendants were fraudulently joined. *Id.* at *4 (citing *Travis v. Irby*, 326 F.3d 644, 650 (5th Cir. 2003)).

To support a claim of fraudulent joinder for removal purposes, Defendant Merck may show either actual fraud in the jurisdictional facts presented to the court, or that Plaintiff has no valid cause of action against the Healthcare Defendants. *See Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003).[2] Here, Defendant Merck does not suggest actual fraud in Plaintiff's jurisdictional statements. Merck must therefore produce "evidence that would negate a possibility of liability" on the part of the Healthcare Defendants to show fraudulent joinder. *Id.* at 650. Defendant's burden of proof is a heavy one, and any contested issues of fact or ambiguities of state law must be taken in the light most favorable to Plaintiff. *Id.* at 649. When assessing a fraudulent joinder claim, the Court may

---

[2]"Fraudulent joinder can be established in two ways: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir. 1999)); *see also Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305 (5th Cir. 2002); *see also Heritage Bank v. Redcom Laboratories, Inc.*, 250 F.3d 319 (5th Cir. 2001).

4

"pierce the pleadings" and consider summary judgment-type evidence. *McKee*, 2004 WL 103439 at *4; *Travis*, 326 F.3d at 648-49.

The Fifth Circuit recently clarified the standard for fraudulent joinder allegations in *Ross v. Citifinancial, Inc.*, 344 F.3d 458 (5th Cir. 2003). The *Ross* Court specified that when examining fraudulent joinder allegations, "the Court must determine whether there is arguably a reasonable basis for predicting that state law might impose liability." *Id.* at 462 (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)). However, a theoretical possibility of recovery is not enough to legitimize a defendant's inclusion in the case. *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n.4 (5th Cir. 2000); *Travis*, 326 F.3d at 648 (citing *Great Plains Trust*, 313 F.3d at 312). Thus to establish that the Healthcare Defendants were fraudulently joined in this action, Merck must show that Plaintiff has no reasonable chance of establishing its state claims against the Healthcare Defendants.

When considering Plaintiff's allegations, "speculative and conclusory allegations do not state a cause of action without factual support." *Waters v. State Farm Mut. Auto. Ins. Co.*, 158 F.R.D. 107, 108 (S.D. Tex. 1994); *see also Jewell v. City of Covington*, 425 F.2d 459, 460 (5th Cir. 1970), *cert. denied*, 400 U.S. 929 (1970) ("General conclusionary allegations unsupported by facts are insufficient to constitute a cause of action"). If Plaintiff does not "specify a factual basis for recovery against a non-diverse party [this] constitutes a failure to state a claim and fraudulent joinder of that party." *Waters*, 158 F.R.D. at 109 (citing *Doe v. Cloverleaf Mall*, 829 F.Supp. 866, 870 (S.D. Miss. 1993)). However, the Court must also consider the degree to which discovery has proceeded, and the opportunity the plaintiff has had to develop its claims. *McKee*, 2004 WL 103439 at *4 (citing *Travis*, 326 F.3d at 649).

5

In its Notice of Removal and in its Response to Plaintiff's Motion to Remand, Defendant Merck argues that the Healthcare Defendants were fraudulently joined because Plaintiff's Original Complaint does not allege the factual or legal basis for any claim against the Healthcare Defendants, and because any medical malpractice claims against them are barred by the statute of limitations under Texas law. In order to determine whether the Healthcare Defendants were fraudulently joined, it is necessary to first consider the allegations in Plaintiff's Original Petition.

Plaintiff argues in her motion to remand that the allegations laid out in the complaint are factually and legally sufficient to constitute valid claims against Dr. Cantu, Dr. Cigarroa, and Mercy Hospital. Plaintiff relies primarily on this statement in her complaint: "Plaintiff Decedent, was given samples of and a prescription for Vioxx for pain. Mrs. Gutierrez presented with [sic] a family history of cardiac disease. Mrs. Gutierrez died on March 30, 2001, of a myocardial infarct." (Pl.'s Orig. Pet. at 4.)

However, Plaintiff's complaint does not allege that Dr. Cantu or Dr. Cigarroa treated Ms. Gutierrez, prescribed Vioxx to Ms. Gutierrez, or gave her samples of the drug. In fact, Plaintiff's complaint does not allege that Dr. Cantu or Dr. Cigarroa had *any* interactions with the Decedent. Plaintiff likewise does not allege any facts about Decedent's involvement with Mercy Hospital. The only time Plaintiff lists Dr. Cantu, Dr. Cigarroa, or Mercy Hospital by name is when alleging jurisdictional facts. (Pl.'s Orig. Pet. at 3.) In comparison, Plaintiff lists Merck by name in her complaint and alleges specific actions taken by Merck throughout her complaint.[3] (Pl.'s Orig. Pet., passim.)

---

[3]Plaintiff's complaint sometimes refers to "Defendants" generally, however none of the allegations against "Defendants" are facts that would support claims against the Healthcare Defendants.

6

Although Plaintiff's complaint lists the legal elements of several claims, the complaint does not allege even the minimally required facts about Dr. Cantu, Dr. Cigarroa, or Mercy Hospital to sustain these claims against them. The Fifth Circuit encountered a similar situation in *Griggs v. State Farm Lloyds*, 181 F.3d 694 (5th Cir. 1999). In that case, Plaintiff Griggs' original and amended petitions did not allege any actionable facts regarding Defendant Blum. *Id.* at 699. The majority of Griggs' petition consisted of factual allegations that referred to "Defendants," but did not describe any actions that could have been taken by Blum. *Id.* The Court refused to extend notice pleading to such a degree. *Id.* ("We cannot say that Griggs' petition, which mentions Blum once in passing, then fails to state any specific actionable conduct on her part whatsoever, meets even the liberalized requirements that permit notice pleading.") (citing *City of Alamo v. Casas*, 960 S.W.2d 240, 251-52 (Tex. App. 1997)). Here, Plaintiff's petition presents a nearly identical situation: Plaintiff does not assert any facts to support claims against the Healthcare Defendants.

For purposes of fraudulent joinder, Plaintiff may not augment insufficient allegations in her complaint with later assertions. Plaintiff states in her motion to remand that Dr. Cantu and Dr. Cigarroa prescribed Vioxx to the Decedent. Pl.'s Mot. to Remand at 3. However, Plaintiff does not allege this fact in her Original Petition. The propriety of removal depends on Plaintiff's allegations in state court. *Tedder v. F.M.C. Corp.*, 590 F.2d 115, 116-17 (5th Cir. 1979). The *Tedder* Court further noted, "If there is no arguably reasonable basis for predicting that state law might impose liability on the resident defendants under the facts alleged, then the claim is deemed fraudulent and lack of diversity will not prevent removal." *Id*; *see also Haines v. Natl. Union Fire Insur. Co.*, 812 F.Supp. 93, 96 (S.D. Tex. 1993) ("The determination of . . . fraudulent joinder is based on the causes of action alleged in the complaint as it existed at the time of removal."); *Pullman Co. v. Jenkins*, 305

7

U.S. 534, 537 (1939) (right to removal is determined by plaintiff's pleading at the time of removal). Although Plaintiff may supplement her claims with outside materials in her motion to remand, she may not add claims that are not stated in the complaint.

Plaintiff also incorrectly states the standard for fraudulent joinder as requiring "no possibility that plaintiff can establish a cause of action against the resident defendants." (Pl.'s Mot. to Remand at 3, emphasis in original.) Plaintiff cites *Mauck v. Warner-Lambert Co., et al.*, a 2001 case from the Northern District of Texas. 2001 U.S. Dist. LEXIS 5919 (N.D. Tex. May 4, 2001). Since *Mauck,* the Fifth Circuit has refined the standard for examining fraudulent joinder in several cases, including *Travis v. Irby*, 326 F.3d 644 (2003), and *Ross v. Citifinancial, Inc.*, 344 F.3d 458 (2003). These cases indicate that a defendant must show that there is no reasonable possibility of a plaintiff's success against non-diverse defendants to establish fraudulent joinder. *See Travis*, 326 F.3d at 648; *Ross*, 344 F.3d at 462. Based on the Original Petition, Plaintiff has no reasonable possibility of prevailing against the Healthcare Defendants.

Because Plaintiff's complaint does not allege sufficient facts against the Healthcare Defendants to constitute valid claims against them, the Court need not consider the viability of theoretical claims under Texas law. Neither does the Court need to take the stage of discovery into account in the fraudulent joinder analysis, as Plaintiff has not alleged any claims appropriate for discovery against the Healthcare defendants. Since Defendant has shown that Plaintiff's claims against Dr. Cantu, Dr. Cigarroa, and Mercy Hospital, as plead in the original petition, are baseless, these defendants' citizenship should be disregarded for purposes of diversity jurisdiction. The Court therefore has jurisdiction over the case under 28 U.S.C. §1332(a).

8

## III. RECOMMENDATION

Based on the above information, the Magistrate Court recommends that the District Court **DENY** Plaintiff's Motion to Remand.

## IV. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battle v. United States Parole Comm'n*, 834 F.2d 419 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after being served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations and, except upon grounds of plain error, shall bar the party from appellate review of proposed factual findings and legal conclusions accepted by the District Court to which no objections were filed. *See*, 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglas v. United States' Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. *en banc* 1996).

The clerk is directed to send a copy of this Report and Recommendation to all parties.

DONE at Laredo, Texas, this 23rd day of February, 2004.

ADRIANA ARCE-FLORES
United States Magistrate Judge

9

# EXHIBIT K

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION



SOUTHERN DISTRICT OF MISSISSIPPI
FILED

OCT 0 3 2003

J T NOBLIN, CLERK
BY_____DEPUTY

FRANK OMOBUDE, INDIVIDUALLY AND
ON BEHALF OF THE WRONGFUL DEATH
BENEFICIARIES OF JOSEPHINE
OMOBUDE, DECEASED                                        PLAINTIFF

VS.                                  CIVIL ACTION NO. 3:03CV528LN

MERCK & CO., INC. AND
ROBERT M. EVANS, M.D.                                   DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the court on the motion of plaintiff
Frank Omobude, individually and on behalf of the wrongful death
beneficiaries of Josephine Omobude, to remand pursuant to 28
U.S.C. § 1447. Defendant Merck & Co., Inc. has responded to the
motion and the court, having considered the memoranda of
authorities submitted by the parties, concludes that the motion is
not well taken and should be denied.

Plaintiff, a citizen of Mississippi, brought this suit in the
Circuit Court of Hinds County, Mississippi seeking to recover
damages for the alleged wrongful death of his mother, Josephine
Omobude, which he alleges resulted from her use of the
prescription drug Vioxx. Plaintiff sued Merck, the non-resident
corporation that manufactured and distributed Vioxx, and also
named as a defendant Robert M. Evans, M.D., the local physician
who is alleged to have prescribed Vioxx to Josephine Omobude.
Merck timely removed the case on the basis of diversity

jurisdiction under 28 U.S.C. § 1332,[1] contending, based on the allegations of plaintiff's complaint, that the requirement of an amount in controversy in excess of $75,000 is clearly satisfied,[2] and contending further that there is complete diversity of citizenship since Dr. Evans, though a Mississippi resident, has been fraudulently joined to defeat diversity. See Heritage Bank v. Redcom Labs., Inc., 250 F.3d 319, 323 (5th Cir. 2001) (fraudulent joinder of non-diverse will not defeat diversity jurisdiction).

The premise of Merck's fraudulent joinder argument, as gleaned from its notice of removal and its response to plaintiff's motion to remand, is that plaintiff's complaint does not allege a sufficient factual basis for his putative claim against Dr. Evans. In particular, Merck notes that throughout his complaint, plaintiff repeatedly and consistently asserts that Merck encouraged the use of Vioxx in "improper customers;" that it "misrepresented the safety and effectiveness of this drug and concealed or understated its dangerous side effects;" that despite knowledge of the defective nature of its product and for the purpose of increasing its sales and profits at the expense of the

---

[1]    That statute provides, in pertinent part, as follows: (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different states.

[2]    The court notes that plaintiff has not disputed that the amount in controversy exceeds $75,000.

2

general public's health and safety, Merck aggressively marketed
Vioxx both directly to the consuming public and indirectly to
physicians through drug sales representatives as effective and
safe and with inadequate warnings and instructions; and that Merck
failed to provide timely and adequate post-marketing warnings or
instructions after the manufacturer knew of the risk of injury
from Vioxx.  On the basis of these allegations, plaintiff alleges
claims against Merck for strict liability, negligence, breach of
express and implied warranties and fraudulent misrepresentation.
Merck argues that in light of plaintiff's repeated allegations
that Merck misrepresented the safety and efficacy of its product
and consistently concealed the known risks and dangers not only
from the consuming public but also from physicians, plaintiff's
charge of medical negligence against Dr. Evans based on nothing
more than a conclusory allegation, wholly unaccompanied by any
factual support, that Dr. Evans "knew, or should have known, of
the dangerous side effects of these medications," and that "his
prescribing such medications in light of such knowledge presents a
deviation from the standard of care," is manifestly insufficient
to state a cognizable claim.

In similar cases, this court has held that conclusory and
contradictory allegations of knowledge, which were belied by the
factual allegations of the complaint, demonstrated that the
resident defendants against whom such allegations of knowledge
were made, had been fraudulently joined.   See Brown v. Bristol
Myers Squibb Co., Civ. Action No. 4:02CV301LN, slip op. at 11-12

3

(S.D. Miss. Dec. 2, 2002) (resident physician fraudulently joined where claim was asserted in conclusory terms and contradicted by allegations of the pharmaceutical manufacturer's concealment or misrepresentation of information); Louis v. Wyeth-Ayerst Pharmaceuticals, Inc., Civ. Action No. 5:02CV102LN (S.D. Miss. Sept. 25, 2000) (same with respect to resident pharmacy defendant); see also In re Rezulin Prods. Liab. Litig., No. 00 Civ. 2843, 2003 WL 31852826, at *2 (S.D.N.Y. Dec. 18, 2002) (physician defendant fraudulently joined based on conclusory allegations). In the court's opinion, the same conclusion is in order here.

In so concluding, the court is aware of plaintiff's argument that "[a] party may plead alternative and inconsistent facts or remedies against several parties without being barred." Guy James Constr. Co. v. Trinity Indus., Inc., 644 525, 530 (5ᵗʰ Cir. 1981). While this may be true generally, the court's point here is that the plaintiff has not pled inconsistent facts, but rather has pled consistent facts that are inconsistent with the conclusion he pleads as to Dr. Evans. Every factual allegation this plaintiff has made is to the effect that Merck withheld and concealed and misrepresented the true facts regarding Vioxx; and yet, without alleging any factual basis for the charge, plaintiff concludes that Dr. Evans "knew or should have known" the truth about Vioxx that Merck had misrepresented and concealed.

The court does not suggest that a "knew or should have known" allegation" will necessarily always be conclusory and hence

4

insufficient to state a cognizable claim simply because it is not attended by a specific factual allegation as to the source of such knowledge. However, in cases like this, where a plaintiff has specifically alleged facts from which one would necessarily infer that the defendant in question would not have known information otherwise alleged to have been misrepresented or concealed from him, then in the court's opinion, in that limited circumstance, to sustain his pleading burden, the plaintiff would have to plead at least some facts tending to show why or how the defendant knew or should have known of the information that has been misrepresented to or concealed from him. Otherwise, the court would be in the untenable position of assuming that a factual basis exists for a conclusory allegation that is entirely inconsistent with every factual allegation in the complaint. No precedent of which this court is aware suggests that this would be proper.[3] The caselaw,

---

[3]    Plaintiff has cited a number of cases from this district in which claims against physician and pharmacy defendants have been found sufficient to state a claim, but in the court's opinion, these cases are readily distinguishable. Henderson v. GlaxoSmithKline, No. 5:01CV159BrS (S.D. Miss. March 21, 2000), involved a question of fraudulent misjoinder, which is not an issue here. In Hancock v. Bayer Corp., No. 3:03CV67WS (S.D. Miss. Apr. 18, 2003), plaintiff alleged that the physicians in question had committed numerous acts of negligence other than merely prescribing an allegedly defective drug, such as failing to timely recognize the plaintiffs' adverse drug reactions, failing to monitor the plaintiffs, and prescribing the drug in the wrong dosage and in a manner inconsistent with the product labeling and contraindicated usages. Womack v. Bayer Corp., No. 3:03CV157WS (S.D. Miss. Apr. 18, 2003), involved specific allegations of alleged negligence by the defendant doctor, including that the physicians should have known of the risks in light of warnings actually issued to physicians by Bayer. No such claims were pled here. Likewise in the several Bayer cases remanded by Judge Pickering and cited by plaintiff, including Easterling v. Bayer

in fact, is to the contrary.  See Great Plains Trust Co. v. Morgan
Stanley Dean Witter & Co., 313 F.3d 305, 313 (5th Cir. 2002)
(stating that the court will not "accept as true conclusory
allegations or unwarranted deductions of fact"); Sago v. Wal-Mart
Stores, Inc., 2003 WL 22076954, at *2 (S.D. Miss. 2003) (holding
that "conclusory or generic allegations of wrongdoing on the part
of the non-diverse defendant are not sufficient to show that the
defendant was not fraudulently joined") (citing Badon v. RJR
Nabisco, Inc., 224 F.3d 382, 392-93 (5th Cir. 2000); cf.
Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th
Cir. 1996) ("When considering a motion to dismiss for failure to
state a claim, the district court must take the factual
allegations of the complaint as true and resolve any ambiguities
or doubts regarding the sufficiency of the claim in favor of the
plaintiff.  However, conclusory allegations or legal conclusions
masquerading as factual conclusions will not suffice to prevent a
motion to dismiss."); Ross v. Citifinancial, Inc., 2003 WL
22026346, at *3 (5th Cir. 2003) (noting court's recognition of
"the similarity between standards for Federal Rule of Civil
Procedure 12(b)(6) (failure to state claim) and fraudulent

---

Corp., No. 2:03CV37PG (S.D. Miss. Apr. 24, 2003), Dearman v. Bayer
Corp., No. 2:03CV38PG (S.D. Miss. Apr. 24, 2003), Jones v. Bayer
Corp., No. 2:03CV53PG (S.D. Miss. Apr. 24, 2003), Keys v. Bayer
Corp., No. 2:03CV39PG (S.D. Miss. Apr. 24, 2003), and Sumrall v.
Bayer, No. 2:03CV52PG (S.D. Miss. Apr. 24, 2003), the court found
that the plaintiffs had made specific allegations of negligence
against the resident doctors "for failing to properly monitor and
test each of the Plaintiffs according to the defendant drug
companies' recommendations."  No such allegations were made in
plaintiff's complaint in the case at bar.  See infra note 4.

joinder" but noting that the latter inquiry is broader); <u>Cranston</u>
<u>v. Mariner Healthcare Mgmt. Co.</u>, 2003 WL 21517999, at *4 (N.D.
Miss. 2003)(stating that on motion to dismiss, "[t]he court will
not accept as true any conclusory allegations or unwarranted
deductions of fact").[4]

---

[4]     The court notes that the only claim plaintiff has
alleged against Dr. Evans in his complaint is medical negligence
based on the allegation that Dr. Evans "knew, or should have
known, of the dangerous side effects of these medications" and his
prescribing "said medications in light of such knowledge." In his
motion to remand, however, plaintiff attempts to recharacterize
and add to his claim against Dr. Evans. He argues, for example,
that his claim that Merck produced and distributed defective
products does not preclude his claim against Dr. Evans with regard
to his "negligence in prescribing Vioxx or his negligence in
monitoring plaintiff." He argues further that

> [j]ust as Merck failed to adequately warn Plaintiff's
> Decedent's physician, Dr. Evans failed to conduct
> regular monitoring of Plaintiff's Decedent to ensure the
> discovery of potentially serious side effects. . .
> including, not limited to, failing to perform adequate
> tests before the initiation of Vioxx treatment, and
> failing to subsequently perform other tests after
> initiation of Vioxx therapy to monitor any change in the
> status of Plaintiff's decedent. . . . Defendant Evans
> also failed to warn Plaintiff's Decedent of possible
> side effects. . . .

None of these allegations, or any hint of such allegations,
appears anywhere in the complaint which, as to Dr. Evans, alleges
only that he was negligent in prescribing Vioxx when he knew, or
should have known, of the dangers of the drug.  Plaintiff cannot
secure remand on the basis of allegations and claims that are not
set forth in his state court pleading.  <u>See</u> However, the
Cavallinis did not cite, nor have we found, any case in which such
evidence has been considered to determine whether a claim has been
stated against the nondiverse defendant under a legal theory not
alleged in the state court complaint.
<u>Cavallini v. State Farm Mut. Auto Ins. Co.</u>, 44 F.3d 256, 263
263 n.14 (5th Cir. 1995)(rejecting plaintiff's "assertion that
post-removal affidavits can be used to defeat removal by
presenting new causes of action").

7

For the foregoing reasons, the court concludes that plaintiff's motion to remand is not well taken and should be denied.

Accordingly, it is ordered that plaintiff's motion to remand is denied.

SO ORDERED this 3rd day of October, 2003.

_____
UNITED STATES DISTRICT JUDGE

8

# EXHIBIT L

<u>CONFIDENTIAL ATTORNEY WORK PRODUCT</u>

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

|  |  |
|---|---|
| IN RE: VIOXX<br>　　　PRODUCTS LIABILITY LITIGATION | MDL NO. 1657<br><br>SECTION: L<br><br>JUDGE FALLON<br><br>MAG. JUDGE KNOWLES |
| THIS DOCUMENT RELATES TO ALL CASES |  |

**PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION TO MODIFY**
**ORDER OF JUNE 6, 2005 REGARDING PHYSICIAN CONTACTS**

In its Order and Reasons of June 6, 2005, the Court held that "if either side wishes to interview a Plaintiff's prescribing physician, that party must first serve opposing counsel with five days notice of such interview in order to give opposing counsel the opportunity to be present and participate in the interview." (*Id.* at 1.) The Court has authority to modify its case management orders, *Ramirez Pomales v. Becton Dickinson & Co.*, 839 F.2d 1, 3 (1st Cir. 1988), and Plaintiffs hereby move to modify the Order for the reasons set forth below.

**1.　　The Court's Order Is Unprecedented and Inconsistent with Practice**
**in Other Major Venues of the Vioxx Litigation.**

The Court's Order of June 6, 2005 has no precedent, and would result in a sea change in the practice established by prior litigation in the Vioxx cases, as well as earlier MDLs. For example, in similar pharmaceutical MDLs such as those involving Fen-Phen, Rezulin and Baycol, the courts did not issue orders requiring plaintiffs' counsel to notify defense counsel, nor to allow them to be present during contacts with treating doctors.

As noted in Plaintiffs' Brief dated May 5, 2005, other venues exist where Vioxx

450144.1　　　　　　　　　　　　　　　　1

litigation is ongoing, in which Plaintiffs' counsel may exercise their traditional ability to act as Plaintiffs' agents in obtaining information from treating physicians without participation of defense counsel, and where defense counsel may not have *ex parte* contacts with the treating doctors.[1] As further noted in Plaintiffs' Supplemental Memorandum dated May 27, 2005, rulings to the contrary here may have the "unfortunate (but understandable) effect of discouraging participation in the MDL..." (*Id.* at 7). The PSC is obligated to inform the Court that initial responses of plaintiffs' counsel to the Order of June 6, 2005 have borne out this prediction. Many Plaintiffs' lawyers from around the country have stated their intention to file their cases in state courts rather than the MDL.

 2.  **There Is No Evidence of Improper Conduct Requiring Correction.**

During the course of several years of Vioxx litigation prior to the formation of this MDL, Defense counsel have taken numerous depositions of treating doctors, where the physicians' contacts with Plaintiffs' counsel were discoverable. Yet Defendant's pleadings on this motion have not cited a single instance of alleged impropriety arising in the contacts between treating doctors and Plaintiffs' counsel, and Defendant certainly would have cited such evidence if it existed. Instead, Defendant has relied upon a conference presentation by a lone attorney, which has apparently not resulted in any of the consequences that Defendant feared. Thus, the Court's Order of June 6, 2005 is not directed to any proven or alleged abuses, but instead refers to a hypothetical possibility. Plaintiffs submit that such a far-reaching and unprecedented ruling is unnecessary in the absence of demonstrated evidence of impropriety that would demand drastic corrective measures.

---

[1] For example, New Jersey, New York, California and Texas permit Plaintiffs' counsel to contact treating physicians without the presence of defense counsel. Thus, the Court's Order of June 6, 2005 differentiates between similarly situated plaintiffs residing in such states, based upon whether they file complaints in state or federal court. In addition, because Merck is based in New Jersey, the New Jersey court has permitted non-resident Plaintiffs to litigate against Merck in the state court. The disparate treatment of physician contacts resulting from the Court's Order of June 6 acts as a significant incentive for plaintiffs to file cases in state rather than federal court.

3.    **Plaintiffs' Proposed Modification Would Apply the Order Only Where its Underlying Rationale is Operative.**

Plaintiffs' respect the Court's decision and propose a modification that would apply the Order where it would address concerns stated therein, rather than having broad application to all MDL cases. In particular, the Court reasoned that physicians who prescribed Vioxx may be influenced by attorney contacts because they have been or may be named as defendants. (Order, at 4). Since the Court's Order was issued, Plaintiffs have determined through a review of the PACER system that, of approximately 600 filed complaints in the MDL, less than 7 percent have named a physician defendant. (*See* Declaration of Angelene Thane, filed herewith). Thus, there is little concern that treating doctors will be subject to influence by attorneys acting on behalf of their patients in the 93% or more cases where treating physicians are not parties, do not have an interest in the action, and would have no reason to favor one party over another. Plaintiffs suggest that it would be unnecessary and burdensome to apply the same restrictions on physician contacts in the vast majority of cases, where doctors are not defendants and the policy reasons underlying the Order are therefore not operative.

4.    **Amendments to Add Physician Defendants are Unlikely.**

Plaintiffs appreciate the Court's concern that physicians not presently named may be added as defendants later. While Plaintiffs cannot categorically exclude such a possibility, in practical terms such amendments will be the exception rather than the rule. First and foremost, Plaintiffs' principal allegation in the case is that Merck failed to disclose known risks of heart attacks to the medical community, depriving treating doctors of the opportunity to become "learned" intermediaries, and instead relegating them to the status of "uninformed" or even "misinformed" intermediaries. That theory is by and large incompatible with a claim that the doctor is at fault, except in unusual cases (*e.g.*, where the treater may have prescribed more than the labeled dose). While this is not the time or place for an exposition of all the facts supporting the Plaintiffs' allegations, suffice to say that recent Congressional hearings have introduced

450144.1                                     3

evidence of Merck representatives' use of a "Cardiovascular Card" to persuade doctors that Vioxx was eight to eleven times safer than other pain relievers, even after the VIGOR study had demonstrated a five times greater risk of heart attack for patients on Vioxx as opposed to naproxen, another effective pain medication. Plaintiffs' counsel have not sued doctors in over 93% of the MDL cases, because doctors cannot be held responsible when Merck failed to tell them what they needed to know.

Second, Plaintiffs' counsel investigated their cases before filing, and such initial investigations formed the basis of their decisions as to whether to allege claims against the treating doctor. As noted above, all but a small percentage chose not to sue the treating doctors. It would only be a very unusual case in which a complaint initially filed solely against the company would be amended to add the treating doctor, particularly in light of the conviction that Merck's nondisclosure of risks to the medical community is the basis for the claim.

Third, since doctors are local defendants, their presence destroys diversity, and as a practical matter, most cases in which the doctor is a defendant have been filed in state courts. Indeed, unless their joinder were fraudulent, an amendment to a federally filed case joining a treating doctor would similarly destroy diversity and make the case suitable for remand.

### 5.    Conclusion

For all of these reasons, Plaintiffs respectfully submit that the Court's Order of June 6, 2005 should be limited to circumstances in which its policy reasons are operative, that is, the Order should apply only where the treating doctor has been named as a defendant and therefore has an interest in the litigation.

Defendants may claim that such a modification would create an unlevel playing field by allowing Plaintiffs' counsel to meet with treating doctors without their participation. However, it is worth noting that Merck had unfettered access to the doctors for over five years that Vioxx was on the market, without the presence of Plaintiffs or their counsel, through the

450144.1                                         4

hiring and command of hundreds of detailing representatives who repeatedly gave the doctors the incorrect, Merck-sponsored message that Vioxx was safe. Allowing Plaintiffs' counsel to interview treating doctors as proposed above would not make the playing field "unlevel," but would instead allow Plaintiffs in federal court cases to have the same level playing field as their peers in other venues.

Respectfully submitted,

By: _Russ M. Herman by Richard J. Arsenault with permission_

RUSS M. HERMAN (Bar No. 6819)
LEONARD A. DAVIS (Bar No. 14190)
STEPHEN J. HERMAN (Bar No. 23129)
**HERMAN, HERMAN, KATZ & COTLAR, LLP**
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Facsimile: (504) 561-6024
**PLAINTIFFS' LIAISON COUNSEL**

| | |
|---|---|
| Richard J. Arsenault, Esq.<br>P.O. Box 1190<br>2220 Bonaventure Court<br>Alexandria, LA 71309-1190<br>Phone: (318) 487-9874<br>Facsimile: (318) 561-2591 | Gerald E. Meunier, Esq.<br>Energy Centre<br>1100 Poydras Street, Suite 2800<br>New Orleans, LA 70163-2800<br>Phone: (504) 522-2304<br>Facsimile: (504) 528-9973 |
| Andy D. Birchfield, Esq. (Co-Lead Counsel)<br>P.O. Box 4160<br>234 Commerce Street<br>Montgomery, AL 36103-4160<br>Phone: (800) 898-2034<br>Facsimile: (334) 954-7555 | Troy Rafferty, Esq.<br>316 S. Baylen Street, Suite 400<br>Pensacola, FL 32502<br>Phone: (850) 435-7000<br>Facsimile: (850) 497-7059 |
| Elizabeth Cabraser, Atty.<br>Embarcadero Center West<br>275 Battery Street, 30th Floor<br>San Francisco, CA 94111-3339<br>Phone: (415) 956-1000<br>Facsimile: (415) 956-1008 | Drew Ranier, Esq.<br>1419 Ryan Street<br>Lake Charles, LA 70601<br>Phone: (337) 494-7171<br>Facsimile: (337) 494-7218 |
| Thomas Kline, Esq.<br>1525 Locust Street, 19th Floor<br>Philadelphia, PA 19102<br>Phone: (215) 772-1000<br>Facsimile: (215) 772-1371 | Mark Robinson, Esq.<br>620 Newport Center Drive, 7th Floor<br>Newport Beach, CA 92660<br>Phone: (949) 720-1288<br>Facsimile: (949) 720-1292 |
| Arnold Levin, Esq.<br>510 Walnut Street, Suite 500<br>Philadelphia, PA 19106-3875<br>Phone: (215) 592-1500<br>Facsimile: (215) 592-4663 | Christopher Seeger, Esq. (Co-Lead Counsel)<br>One William Street<br>New York, NY 10004<br>Phone: (212) 584-0700<br>Facsimile: (212) 584-0799 |
| Carlene Rhodes Lewis, Atty.<br>2200 Texaco Heritage Plaza<br>1111Bagby<br>Houston, TX 77002<br>Phone: (713) 650-0022<br>Facsimile: (713) 650-1669 | Christopher Vincent Tisi, Esq.<br>2000 L Street NW, Suite 400<br>Washington, D.C. 20036-4914<br>Phone: (202) 783-6400<br>Facsimile: (307) 733-0028 |

### PLAINTIFFS' STEERING COMMITTEE

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail upon all parties by electronically uploading same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this _15th_ day of June, 2005.

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX PRODUCTS LIABILITY LITIGATION | * * * * * * * | MDL Docket No. 1657<br><br>Section L<br><br>Judge Fallon<br>Mag. Judge Knowles |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## DECLARATION OF ANGELENE THANE PURSUANT TO 28 U.S.C. § 1746

I, Angelene Thane, hereby make this declaration of facts pursuant to 28 U.S.C. § 1746 and show this Court the following:

1.     I am an employee of the law firm of Levin, Papantonio, Thomas, Mitchell, Echsner & Proctor, located in Pensacola, Florida.

2.     On June 9, 2005, I reviewed the list of "Associated Cases" for MDL Docket No. 1657, found at the Court's website (https://ecf.laed.uscourts.gov/cgi-bin/login.pl? 399856332623403-L_238_0-1).

3.     On that day, there were 605 Associated Cases listed.

4.     Using the PACER system, I reviewed the available pleadings for all Associated Cases for which multiple defendants were indicated.

5.     On that day, my review indicated that physicians were named as defendants in 40 of the Associated Cases.

6.     I declare under penalty of perjury that the foregoing is true and correct. Executed this 14th day of June, 2005.

_Angelene Thane_
ANGELENE THANE

SWORN TO and subscribed before me this 14th day of June, 2005, by ANGELENE THANE, who is personally known to me.

_Jenny McDade_
NOTARY PUBLIC
State of Florida at Large
Commission Number: DD108072
My Commission expires: April 10, 2006

Jenny Keanna McDade
Commission # DD108072
Expires April 10, 2006
Bonded Thru
Atlantic Bonding Co., Inc.

(SEAL)

2

# EXHIBIT M



IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

```
BENNETTA CHILES, ET AL.,          §
                                  §
          Plaintiffs,             §
                                  §
VS.                               §    NO. 4:03-CV-802-A
                                  §
AMERICAN HOME PRODUCTS            §
CORPORATION, ET AL.,              §
                                  §
          Defendants.             §
```

<u>ORDER</u>

Came on for consideration the motion of plaintiffs, Bennetta Chiles, individually and as next friend of Tony Chiles, a minor; Holly Blackburn and Mark Blackburn, each individually and as next friends of Mitchell Reed Blackburn, a minor; Lori M. Reed, individually and as next friend of Ryan Joseph Reed, a minor; and Krissy Fagan and Carl Fagan, each individually and as next friends of Bradley Kole Fagan, a minor, to remand. The court, having considered the motion, the response of defendants Abbott Laboratories, SmithKline Beecham Corporation d/b/a GlaxoSmithKline, Aventis Pasteur, Inc., Merck & Co., Inc., Wyeth, and Eli Lilly & Company, the reply, the record, and applicable authorities, finds that the motion should be denied.

On June 30, 2003, plaintiffs filed their original petition in the 96th Judicial District Court of Tarrant County, Texas. The action was removed by notice of removal filed July 21, 2003. Plaintiffs contend that they and their minor children were

injured as a result of the children having received vaccines
containing Thimerosal.  Plaintiffs have sued the manufacturers
and distributors of the vaccines that allegedly injured their
children and have named their children's treating physicians,
Marcia Sampson, M.D., Alfred Santesteban, M.D., John Chapman,
M.D., and Richard Chiarello, M.D. ("physicians"), as defendants.
The removing defendants maintain that the physicians have been
fraudulently joined in order to defeat diversity.

In assessing a claim of fraudulent joinder, the court
determines whether there is any reasonable basis for predicting
that state law might impose liability on the facts involved.
Travis v. Irby, 326 F.3d 644, 647-48 (5th Cir. 2003).  The
possibility that state law might impose liability must be
reasonable, not merely theoretical.  Great Plains Trust Co. v.
Morgan Stanley Dean Witter & Co., 313 F.3d 305, 312 (5th Cir.
2002).  As the Fifth Circuit has noted, "pleadings matter" when
the court addresses fraudulent joinder.  Id. at 328.  The failure
to specify a factual basis for recovery against a non-diverse
party constitutes a failure to state a claim and fraudulent
joinder of that party.  Waters v. State Farm Mut. Auto. Ins. Co.,
158 F.R.D. 107, 109 (S.D. Tex. 1994).  Speculative and conclusory
allegations do not state a cause of action without factual
support.  Id. at 108.  Fraudulent joinder will be found where a
plaintiff has failed to plead any specific acts of negligence

2

against the non-diverse defendant.  <u>See, e.g.</u>, <u>Griggs v. State Farm Lloyds</u>, 181 F.3d 694, 699 (5th Cir. 1999); <u>Cavallini v. State Farm Mut. Auto. Ins. Co.</u>, 44 F.3d 256, 260-61 (5th Cir. 1995); <u>McIntire v. Rollins, Inc.</u>, 888 F. Supp. 68, 69 (S.D. Tex. 1995).

In this case, plaintiffs' original petition does not set forth any facts that would support a claim against the physicians.  Under the heading "Liability of Healthcare Defendants," plaintiffs allege:

> 11.02  The [physicians] are liable for their own distinct tortious conduct, separate and apart from the conduct of the Manufacturer Defendants, although they acted in concert with them.

> 11.03  The conduct of the [physicians] forms an independent basis for imposing liability on them for commission of the acts referenced above.

Pls.' Pet. at 16.  Plaintiffs also plead:

> 4.06  All of the Manufacturer Defendants deliberately or negligently misrepresented to the public the efficacy and safety of these products that contained Thimerosal.  Because of their failure, in all instances, to advise doctors or consumers that the usage of Thimerosal containing products could result in mercury poisoning, the result is that plaintiff's child [sic] has experienced severe bodily injury.

> 4.07  The Manufacturer Defendants purposely downplayed and understated the health hazards and risks associated with Thimerosal.  The Manufacturer Defendants through promotional literature, deceived potential users of these products by relaying positive information and manipulating statistics to suggest widespread safety, while downplaying the known adverse and serious health effects of ethyl mercury.  The Manufacturer Defendants falsely and fraudulently kept relevant information from potential users and minimized

3

user concern regarding the safety of the products that
contained Thimerosal.

Id. at 11-12.[1]  Thus, they have affirmatively pleaded facts that
negate any possible liability of the physicians.

Plaintiffs apparently recognize the inadequacy of their
original petition to state claims against the physicians.  They
have attempted to rectify this deficiency through the submission
of affidavits in support of their reply to defendants' opposition
to the motion to remand.  But, the conclusory allegations in the
affidavits that each of the physicians would or should have been
aware of Thimerosal's dangers are simply insufficient to rectify
the pleading deficiency.  Having affirmatively pleaded that the
manufacturer defendants deliberately or negligently deceived
everyone else regarding the safety and efficacy of products
containing Thimerosal, plaintiffs' speculation that the
physicians knew or should have know of any danger is insufficient
to support a cause of action.

Finally, the court notes that it is not relying on a common
defense theory in determining that the physicians have been
fraudulently joined.  Accordingly, Collins v. American Home
Products Corporation, 2003 WL 21998574 (5th Cir. 2003), is not
relevant to the court's decision.  See Pls.' Br. in Supp. of
their Reply at 7.

---

[1] The pages in the original petition that should be numbered
10 and 11 are numbered 1 and 2.

4

The court ORDERS that plaintiffs' motion to remand be, and is hereby, denied.

SIGNED September 26, 2003.

JOHN McBRYDE
United States District Judge

# EXHIBIT N

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

NICOLE M. BROWN, SANDRA NEELY,
MIRIAM M. LONG, KAREN RODERICK AND
MISTY STALCUP                                              PLAINTIFFS

VS.                                    CIVIL ACTION NO. 4:02CV301LN

BRISTOL-MYERS SQUIBB COMPANY;
APOTHECON, INC.; CEPHALON, INC.;
AND TERRY FRENCH, M.D., AND
FICTITIOUS PERSONS A, B, C AND D                          DEFENDANTS

MEMORANDUM OPINION AND ORDER

There are currently pending in this case the following
motions:

1. The motion of plaintiffs Nicole M. Brown, Sandra
Neely, Miriam M. Long, Karen Roderick and Misty Stalcup
to remand and abstain;

2. The motion of defendant Cephalon to vacate or set
aside entry of default and putative default judgment;

3. The motion of defendant Apothecon to set aside entry
of default; and

4. Bristol-Myers' motion to strike plaintiffs' rebuttal
affidavits.

Each of these motions has been fully briefed by the parties,
and are addressed herein.

Plaintiffs, four of whom are Mississippi residents and one of
whom is a citizen of Utah, filed this case on June 9, 2002 in the
Circuit Court of Kemper County, alleging personal injury from
their use of the prescription drug Stadol®. All the plaintiffs
asserted claims against the non-resident defendants, Bristol-

Myers, Apothecon and Cephalon, and one, Sandra Neely, one of the Mississippi plaintiffs, asserted claims against her prescribing physician, Terry French.

On August 5, 2002, defendants Bristol-Myers, Apothecon and Cephalon removed the case to this court pursuant to 28 U.S.C. § 1441 and § 1452, asserting both diversity jurisdiction under 28 U.S.C. § 1332 and bankruptcy jurisdiction under 28 U.S.C. § 1334. Defendants contend that complete diversity exists in this case because plaintiffs "have improperly and fraudulently joined together and have improperly and fraudulently joined Dr. Terry French, the one resident defendant." Finally, defendants contend that the court has removal jurisdiction on the basis that the claims of two of the plaintiffs, Karen Roderick and Sandra Neely, are the property of their bankruptcy estates.

In their motion, plaintiffs argue this case is due to be remanded on the basis that defendants' removal was untimely. They further assert that Terry French is a proper defendant, that fraudulent misjoinder is no basis for remand and that although the claims of Karen Roderick do relate to her pending Chapter 13 bankruptcy proceeding, abstention and remand are mandated, or at least warranted. The court addresses each of these arguments in turn.

Timeliness of Removal:

Defendants Bristol-Meyers, Apothecon and Cephalon filed their notice of removal on August 5, 2002. Plaintiffs maintain that the notice of removal was not filed within thirty days of June 28,

2

2002, the date on which the first defendant was properly served with process, and that consequently, the notice of removal was untimely. They contend alternatively that even if the court were to conclude that their attempted service on Apothecon was ineffective, removal was still untimely, since the case was not removed within thirty days of their July 3, 2002 service on Cephalon. In the court's opinion, neither defendant was properly served, and therefore, the notice of removal was timely.

The general removal statute, 28 U.S.C. § 1446(b), provides as follows:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

In Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 119 S. Ct. 1322, 143 L. Ed. 2d 448 (1999), the Supreme Court, applying the "bedrock principle" that "[a]n individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process," concluded that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service." Id. at 347-48, 119 S. Ct. 1322. Following Murphy

3

Brothers, numerous courts have recognized that the relevant date for gauging timeliness of removal is the date on which proper service was effected or, if there has been no proper service, the date on which objections to the sufficiency of process or service of process are waived.[1]

Mississippi Rule of Civil Procedure Rule 4(d)(4) requires that service upon a "domestic or foreign corporation or upon a partnership or other unincorporated association" be made by

---

[1] See, e.g., Liberty Mut. Ins. Co. v. Bayer Corp., No. 02-343-GMS, 2002 WL 1467331, *2 (D. Del. 2002) (stating that "only after a plaintiff has rendered proper service is a defending party obligated to take action"); Mauldin v. Blackhawk Area Credit Union, No. 01 C 50221, 2002 WL 23830, *1 (N.D. Ill. January 2002)(holding that "the thirty-day removal technically never really began" since the defendant was not properly served with process, "meaning [the defendant's] notice of removal was timely"); Heredia v. Transp. S.A.S., Inc., 101 F. Supp. 2d 158, 160 (S.D.N.Y. 2000) ("[O]nce a defendant receives a copy of the initial pleading--in this case, the summons and complaint--the thirty-day period for filing notice of removal is triggered, provided that service of the initial pleading is proper."); Tabbert, Hahn, Earnest, Webble, P.C. v. Lanza, 94 F. Supp. 2d 1010, 1012 (S.D. Ind. 2000) (determinative issue was whether plaintiff's attempt at service was proper, for if it was, "then the thirty-day removal clock began to run at that time and the [defendants'] Notice of Removal [more than thirty days later] would be untimely . . . [but] if [the] attempts at service [were] ineffective, then the removal clock would still not have begun (because there ha[d] been no other attempts at service) and the Notice of Removal would be timely"); Big B Automotive Warehouse Distributors, Inc. v. Cooperative Computing, Inc., No. SC 00-2602, 2000 WL 1677948, *1-2 (N.D. Cal. Nov. 2000) (stating that under Murphy Bros., "it is not enough for Plaintiffs to show that Defendant . . . actually received a copy of the complaint by a particular date; Plaintiffs must demonstrate compliance with the requirements of service."); Ward v. Aetna Life Ins. Co., No. 98 Civ. 542E, 1999 U.S. Dist. LEXIS 5133,*2 (W.D.N.Y. 1999) (stating that "the Court's reasoning [in Murphy Bros.] supports the conclusion that the time for removal commences when service is completed and jurisdiction over the defendant has been obtained."); see also infra p. 9.

4

"delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive process." Rule 4(c)(5), which governs service on non-resident defendants, provides for service by certified mail:

> In addition to service by any other method provided by this rule, a summons may be served on a person outside this state by sending a copy of the summons and of the complaint to the person to be served by certified mail, return receipt requested. Where the defendant is a natural person, the envelope containing the summons and complaint shall be marked by "restricted delivery." Service by this method shall be deemed complete as of the date of delivery as evidenced by the receipt or by the returned envelope marked "Refused." 4(d)(4) requires that service upon a "domestic or foreign corporation" be made by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive process."

Here, the record reflects that plaintiffs sent the summons and complaint to Apothecon via certified mail, return receipt requested, but did not address it to any particular person. Rather, though they purported to send it "restricted delivery," plaintiffs failed to designate any person to whom delivery was to be restricted and mailed it instead to "Apothecon, Inc., Route 2, Province Line Road, Princeton, New Jersey." The papers were signed for by an employee of Bristol-Myers named John Kozak; but evidence submitted by Apothecon establishes that Kozak was not an officer, managing or general agent or any other agent authorized by appointment or by law to receive process for Apothecon. In fact, the evidence establishes that on July 2, the summons and complaint were returned to the sender, via United States Postal

5

Service, on July 2, 2002 and received by the sender on July 17, 2002, "because it could not be delivered as addressed."

In Rogers v. Hartford Life and Accident Insurance Company, 167 F.3d 933, 940 (5th Cir. 1999), the court considered the interrelationship between Rule 4(c)(5) and 4(d) with respect to service on nonresident unincorporated associations, and interpreted these rules as follows:

> We begin by examining the plain language of Rule 4(c)(5).  The first sentence of the Rule states that "a summons may be served on a person outside this state by sending a copy of the summons and of the complaint to the person to be served by certified mail, return receipt requested."  Miss. R. Civ. P. 4(c)(5) (emphasis added).  The Rule then states that "[w]here the defendant is a natural person, the envelope containing the summons and complaint shall be marked 'restricted delivery.' "  Miss R. Civ. P. 4(c)(5) (emphasis added).  The Rule, therefore, distinguishes between the "person" that physically receives service, and the actual "defendant."  The two terms are not synonymous.
>
> Interpreting Rule 4(c)(5) in this way is appropriate, because this interpretation makes Rule 4(c)(5) consistent with Rule 4(d).  Rule 4(d), which is entitled "Summons and Complaint: Person to Be Served," specifically identifies the "person" the plaintiff must serve with process based on the type of defendant involved in the case.  If the defendant is an "unincorporated association which is subject to suit under a common name," like the Plan, then the plaintiff must deliver "a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process."  Miss. R. Civ. P. 4(d)(4). Thus, when the defendant is an unincorporated association the "person" referred to in Rule 4(c)(5) is not the defendant itself, but the agent authorized to receive service on the defendant's behalf.

6

Rogers, 167 F.3d at 941.[2]  Plaintiffs did not properly serve
Apothecon.

Turning, then, to Cephalon, it appears from the record that
plaintiffs did correctly address and request restricted delivery
of their certified mail with the summons and complaint to John
Osborn, Cephalon's general counsel and corporate secretary, all in
accordance with Rule 4(c)(5).  However, the Postal Service
erroneously allowed the certified mail to be signed for by and
delivered to John Kolb.  Kolb, who is described as a mail clerk
and maintenance man for Cephalon, is not an officer, a managing or
general agent, or any other agent authorized by appointment or by
law to receive process on behalf of Cephalon, and he was not
authorized to sign for restricted delivery letters on behalf of
Osborn.

It does appear in the case of Cephalon, as contrasted with
the situation with Apothecon, the certified mail did make its way
to John Osborn, the person to whom it was addressed, and hence the
summons and complaint were actually received by a proper person to
receive process on this defendant's behalf.  In the court's
opinion, however, where process, though properly directed by the
plaintiff in accordance with the rules governing service of
process, is not delivered in accordance with the plaintiff's
directions and in accordance with the rules, it cannot be said

---

[2]    See also 1 Mississippi Civil Procedure § 2.12 (2001)
(stating that "[i]f the plaintiff is in possession of the name and
address of the officer or managing agent of a foreign corporation,
service may be made by mail pursuant to Rule 4(c)(5)).

that proper service has been effected. Simply stated, process was not "served" on a person authorized to receive service of process. See Kolikas v. Kolikas, 821 So. 2d 874, 878 (Miss. 2002) ("The rules on service of process are to be strictly construed. If they have not been complied with, the court is without jurisdiction unless the defendant appears on his own volition."). Accordingly, the court concludes Cephalon was not effectively served with process on July 3, 2002, as claimed by plaintiffs, and the thirty-day removal clock thus did not commence to run at that time.

There remains the question of when the time period for removal started to run. In this regard, the court recognizes that Cephalon filed an answer in this court on August 9, 2002, following removal, and in its answer, did not raise any objection to the sufficiency of service of process; Cephalon thereby waived any objections to the sufficiency of service. However, in the court's opinion, the thirty-day period for removal could not have begun to run on the basis of service of process on Cephalon until Cephalon actually waived its objections to the sufficiency of service. See Thomas v. Klinkhamer, No. 00 C 2654, 2000 WL 967984, *1-2 (N.D. Ill. 2000) (holding that 30-day period for removal began when defendants waived objections to sufficiency of service of process by appearing before the court without contesting service of process); Prescott v. Memorial Med. Center-Livingston, No. 9:00CV-00025, 2000 WL 532035, 3 (E.D. Tex. 2000) (observing that the Supreme Court in Murphy Brothers indicated that time limits run from the date of service of citation or from the time

8

of waiver of that service).  By the time that occurred in this case, Bristol-Myers had been served with process and, within thirty days of being served on July 9, Bristol-Myers, with the consent of Apothecon and Cephalon, had removed the case.  The removal was thus timely.

### Fraudulent Joinder/Misjoinder

The five plaintiffs in this case have all sued Bristol-Myers, Apothecon and Cephalon (the manufacturing defendants), alleging vaguely that as a result of their having taken the prescription drug Stadol for unspecified conditions, each became addicted and suffered injury as a result of their prolonged use os Stadol.  In addition to suing the manufacturers, one of the Mississippi plaintiffs, Sandra Neely, has also sued Terry French, the Mississippi doctor who prescribed Stadol for her.

In their notice of removal, defendants asserted that Dr. French had been fraudulently joined and claimed alternatively that Neely's co-plaintiffs had "fraudulently misjoined" their claims with those of Neely in order to defeat diversity jurisdiction over their claims against the diverse manufacturer defendants.  Having reviewed plaintiffs' complaint, the court concludes that Dr. French has been fraudulently joined, for reasons that follow.

The first amended complaint filed by plaintiffs in the Circuit Court of Kemper County contains sixteen paragraphs of "factual allegations," followed by twelve counts, the first eleven of which are primarily products liability claims directed against the manufacturer defendants, Bristol-Myers, Apothecon and

9

Cephalon. The final count encompasses Neely's putative negligence claim against Dr. French.

The "facts" set forth by plaintiff in their complaint are these: In 1992, Bristol-Myers obtained FDA approval for its nasal spray form of Stadol as an uncontrolled substance by falsely representing to the FDA and to the DEA that Stadol had few addictive qualities, and by further representing that it would be used in the same manner as prior forms of Stadol, namely, for temporary, postoperative pain relief, and not for prolonged and repetitive use. Plaintiffs allege that because the manufacturer defendants misled the FDA and DEA about the addictive nature of Stadol, it was not initially classified as a controlled substance, as a result of which it was more readily prescribed and more abundantly purchased. Plaintiffs charge that after the manufacturer defendants misled the FDA and DEA into not classifying Stadol as a controlled substance, they then began aggressively marketing Stadol, not for temporary, non-recurring pain, the use which had been identified to the FDA and DEA, but instead for chronic pain, with an emphasis on migraine headaches. They allege that "[u]pon government approval and at the urging of the corporate Defendants' marketing campaign, physicians in the State of Mississippi and elsewhere within the United States started prescribing Stadol for their patients." Plaintiffs allege that they justifiably relied on "the corporate Defendants' marketing and assurances of the safety and non-addictiveness of its product," including defendants' literature and information

10

contained in the Physician's Desk Reference, which described Stadol as a very mild drug with very little chance of abuse or addiction yet which provided patients with immediate and remarkable relief.

No facts are set forth in the complaint with respect to Dr. French, other than that he undertook to diagnose and treat Sandra Neely's "specific medical condition," and that he "failed to disclose to her the specific risks associated with the use of Stadol, to fully monitor and evaluate her progress and to do all things otherwise necessary and proper for her treatment." She charges that Dr. French therefore failed to obtain her informed consent to the use of Stadol, the lack of which proximately caused her injuries and damages.

The premise of Neely's negligence claim against Dr. French is that he was fully knowledgeable about the challenged propensities of Stadol. However, plaintiffs consistently and repeatedly allege throughout the complaint that in the manufacturing defendants' aggressive marketing of Stadol, they failed to disclose all possible side effects associated with the use of Stadol, including, in particular, addiction, and specifically misrepresented the safety and effectiveness of Stadol. Thus, in terms of Dr. French's potential liability, Neely's allegation that he "did not fully disclose to her the specific risks associated with Stadol" is essentially meaningless, since there is no allegation or hint of an allegation in the complaint that Dr. French knew or should or could have known of the information that

11

plaintiffs pointedly allege was withheld by the manufacturer defendants.[3] The court thus concludes that based on the allegations of her complaint, Neely has no reasonable possibility of recovery against Dr. French and that he should be dismissed as fraudulently joined.[4]  See Hart v. Bayer Corp., 199 F.3d 239, 246 (5th Cir. 2000) ("`To prove their allegation of fraudulent joinder [removing parties] must demonstrate that there is no possibility

---

[3]    Neely does allege that Dr. French had a duty to "be fully informed . . . of the dangers and risks inherent in the use of Stadol," but there is nothing in indicate how Dr. French was to have become "fully informed" of this information that plaintiffs contend the manufacturer defendants failed to disclose.  That is, plaintiffs allege that the information disseminated by the manufacturer defendants, including that contained in the package inserts and in the Physician's Desk Reference, did not contain information about the risks of which plaintiffs complain, and they do not allege that Dr. French did or could have obtained the subject information.  Cf. Thompson v. Carter, 518 So. 2d 609, 620 (Miss. 1987) (observing that at the point a physician diagnoses his patient and undertakes treatment with medication, "he may consult a Physician's Desk Reference, drug inserts, or a pharmacologist to determine the best drug to be given to this patient for this ailment").

[4]    In a similar case decided by this court before the Mississippi Supreme Court finally laid to rest the question of applicability of the learned intermediary doctrine in the case of pharmacists, see Moore v. Memorial Hosp. of Gulfport, 825 So. 2d 658, 664 (Miss. 2002) (extending learned intermediary doctrine to pharmacists), this court found fraudulent joinder of resident pharmacist defendants who had dispensed the allegedly unsafe drugs to the plaintiffs.  Lois v. Wyeth-Ayerst Pharmaceuticals, Inc., Civ. Action No. 5:00CV102LN (Sept. 25, 2000).  The court concluded that plaintiffs' conclusory allegation that the pharmacist defendants "knew or should have known" that the subject drugs were unsafe did not suffice to render them potentially liable since the plaintiffs' complaint, "the major theme of which is the manufacturers' intentional concealment of the true risks of the drug(s), coupled with dissemination through various media of false and misleading information of the safety of the drug(s) at issue, belie[d] any suggestion of knowledge, or reason to know by these resident defendants."  Id. slip op. at 5.

12

that [plaintiff] would be able to establish a cause of action against them in state court.'") (citations omitted); Griggs v. State Farm Lloyds, 181 F.3d 694 (5th Cir. 1999) (affirming dismissal of resident, nondiverse defendant as fraudulently joined).[5]

Bankruptcy Jurisdiction

In view of the court's conclusion that it has diversity jurisdiction, the court finds it unnecessary to determine whether

---

[5]    Having concluded that Neely has failed to allege a cognizable claim against Dr. French, the court need not address whether her claims have been fraudulently misjoined with the claims of her co-plaintiffs, though it could well be that this case does present an instance of fraudulent misjoinder sufficient to warrant relief. In this vein, the court recognizes that the Fifth Circuit recently approved the concept of fraudulent misjoinder of plaintiffs in In re Benjamin Moore & Co., 309 F.3d 296 (5th Cir. 2002). There, although the court denied the multiple defendants' petition for writ of mandamus in the wake of the district court's order granting remand, the court suggested that the case might be one of fraudulent misjoinder and observed that the district court should have considered the defendants' arguments on that point. See id. (stating, "[T]he point cannot be ignored, since it goes to the court's jurisdiction and to the defendants' rights to establish federal jurisdiction following removal," and describing this as "a feature critical to jurisdictional analysis"). Though the complaint in the case at bar is entirely lacking in factual allegations as to the individual plaintiffs' circumstances, it does not appear from the complaint that the plaintiffs have anything in common other than having taken Stadol. The court questions whether this is a sufficient tie to bind the claims of these plaintiffs. Cf. In re Rezulin Prods. Liability Litigation, 168 F. Supp. 2d 136 (S.D.N.Y. 2001) (severing claims of five plaintiffs with claims against their nondiverse physicians from those other six plaintiffs who asserted no such claims in order to preserve the defendants' right to removal in the remaining actions," and observing that the costs and efficiency benefits to joined plaintiffs "simply do not carry the same weight when balanced against the defendant's right to removal."). But this court need not decide the issue.

13

it might also properly have and exercise jurisdiction based on the
bankruptcy filing of two of the plaintiffs.[6]

### Apothecon's Motion to Set Aside Default and Cephalon's Motion to Set Aside Entry of Default and Putative Default Judgment:

Prior to removal, plaintiffs obtained a clerk's entry of
default as to Apothecon and an entry of default and default
judgment as to Cephalon.  These defendants have moved for relief
from entry of default and default judgment on the basis that they
were not properly served with process.  This court, which has now
determined that it has subject matter jurisdiction, has concluded
that service of process was not effective as to either of these
defendants.  It thus follows that the entries of default and of
the default judgment are void, having been entered without
jurisdiction over those parties.[7]  See McCain v. Dauzat, 791 So.
2d 839, 842 (Miss. 2001) (stating, "A court must have
jurisdiction, [sic] proper service of process, in order to enter a
default judgment against a party.  Otherwise, the default judgment
is void.  If a default judgment is void, the trial court has no
discretion and must set the judgment aside.").  Defendants'
motions will be granted.

---

[6]     Bristol-Meyers has moved to strike exhibits submitted by
plaintiffs with their rebuttal on the motion to remand and
abstain.  Those affidavits are devoted to the issue of bankruptcy
jurisdiction, and since the court has concluded that this issue
need not be addressed, the motion to strike is now moot and will
be denied as such.

[7]     "The proper procedure respecting the opening vel non of
a removed default judgment is to file a motion to set aside . . .
in federal court . . . ."  Pennsylvania Nat'l Bank & Trust v.
American Home Assurance Co., 87 F.R.D. 152, 154 (E.D. Pa. 1980).

14

Conclusion

Based on the foregoing, it is ordered that plaintiffs' motion to remand is denied and defendant Terry French is dismissed as fraudulently joined; Apothecon's motion to set aside entry of default is granted; Cephalon's motion to set aside entry of default and putative default judgment is granted; and Bristol-Meyer's motion to strike is denied as moot.

SO ORDERED this 30th day of November, 2002.

_____
UNITED STATES DISTRICT JUDGE

# EXHIBIT O

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

SEP 25 20

MARGIE LOUIS, PEARLIE COX, MARY
DOTTOREY, OTIS ABRON, GLORIA LOTT,
EARL PIGG, MARION WEATHERS AND KATHY
ROBERTS                                                    PLAINTIFFS

VS.                                    CIVIL ACTION NO. 5:00CV102LN

WYETH-AYERST PHARMACEUTICALS, INC. F/K/A
WYETH-AYERST LABORATORIES, A DIVISION OF
AMERICAN HOME PRODUCTS, INC.; WYETH
LABORATORIES, INC., A.H. ROBBINS COMPANY,
INC., AMERICAN HOME PRODUCTS, INC.
POLK'S DISCOUNT DRUGS, INC.; ECONOMY DRUG
STORE, INC.; BRANDON DISCOUNT DRUGS, INC.;
KING'S DISCOUNT DRUGS, INC.; FORREST BRATLEY,
JR.; SUSAN BODNE; CHRIS L. LUCKETT; LESTER A.
LALA; CHARLES CARTER, JR.; GINA SABBATINI;
SCOTT M. BOONE; VICTOR E. RUSSELL; JIMMY ROBINSON,
JR.; JEWELL E. NORMAN; MCR PHARMACEUTICALS INC.,
A/K/A AMERICAN PHARMACEUTICALS, INC, A/K/A
MCR/AMERICAN PHARMACEUTICALS, INC.; JONES
MEDICAL INDUSTRIES, A/K/A ABANA PHARMACEUTICALS,
INC.; QUALITEST PRODUCTS, INC.; SEATRACE
PHARMACEUTICALS, INC.; EON LABS MANUFACTURING,
INC.; FISONS CORPORATION; GATE PHARMACEUTICALS;
INTERNEURON PHARMACEUTICALS, INC.; MEDEVA
PHARMACEUTICALS, INC.; RUGBY LABORATORIES,
INC.; SMITHKLINE BEECHAM CORPORATION;
AND ECKERD CORPORATION                                     DEFENDANTS

                              ORDER

        This cause is before the court on the motion of plaintiffs to

remand this case to the Circuit Court of Claiborne County,

Mississippi.  Defendants have responded in opposition to the motion

and the court, having considered the memoranda of authorities

submitted by the parties in the light of plaintiffs' complaint in

this cause, concludes for reasons to follow that plaintiffs' motion

should be denied.

        Plaintiffs, like many others throughout this country, brought

this action to recover damages for injuries they claim to have

suffered as a result of their taking the diet drugs Pondimin, Redux (also known by fenfluramine and dexfenfluramine, respectively) and/or Phentermine. The plaintiffs herein, Mississippi residents, filed their suit in Mississippi state court, and in addition to suing the manufacturers of these drugs, all of which are of diverse citizenship from plaintiffs, and another diverse company, Eckerd Corporation, which is alleged to have distributed, marketed and promoted these drugs, plaintiffs sued a number of Mississippi pharmacies (Polk's Discount Drugs, Inc., Economy Drugs of Greenwood, Inc., Liberty Drug Store, Brandon Discount Drugs, Inc. and King's Discount Drugs) and a multitude of other Mississippi residents (Forest Bratley, Jr., Susan Bodne, Chris L. Luckett, Lester A. Lala, Charles Charter, Jr., Gina Savatini, Scott M. Stone, Victor E. Russell, Jimmy L. Robinson, Jr. and Jewell E. Norman) who were employed as sales representatives for one or another of the defendant drug companies. Defendants, contending that all of the Mississippi defendants were fraudulently joined, removed the case to this court on the basis of diversity of citizenship, following which plaintiffs filed their present motion to remand.

The standard for evaluating claims of fraudulent joinder is, of course, well known by all of the parties, as well as by the court; and the court, having given due consideration to that standard on the basis of the complaint filed by plaintiffs in this cause, concludes that plaintiffs have no possibility of recovery against any of the nondiverse defendants.

2

The complaint filed by plaintiffs in this cause includes, so far as the court can tell, ten counts, numbered and headed as follows:

    Count I:  Strict Product Liability
    Count II: Failure to Warn
    Count IV: Negligence
    Count I:  Strict Product Liability (Defective Design) Against
           the AHP Defendants
    Count II: Strict Product Liability (Failure to Warn) Against
           All Defendants
    Count III: Negligence Against All Defendants
    Count IV: Fraud and Misrepresentation Against All Defendants
    Count V:  Wantoness
    Count VI: Fraud, Misrepresentation and Suppression
    Count VI: Conspiracy[2]

A premise of each count that can reasonably be construed as having been asserted against the resident pharmacy defendants[2] is knowledge on the part of these defendants of the dangers posed by

---

[1]    It appears that plaintiffs may have taken two complaints from other cases and attempted to combine them into a single complaint, amending the content as needed for this case. That would explain why they have asserted their causes of action in this duplicate fashion, and why the complaint begins on page one, continues through page 19 (skipping page 18), and then picks up on a new and different page 2 and continues on through page 64, and contains two sections (each somewhat different) for each of the headings, "Parties", "Jurisdiction" and "General Allegations"/"Factual Allegations."

[2]    Plaintiffs' claims of wantoness and conspiracy, while nominally asserted against "defendants", is clearly not directed toward the pharmacy defendants, as the substance of these counts utterly belies any conclusion that these defendants are a target of these counts. See Eadon v. RJR Nabisco Inc., No. 98-30942, 2000 WL 115424, at *7 (5th Cir. Aug. 16, 2000) (noting that "[w]hile the amended complaint does often use the word `defendants,' frequently it is evident that such usage could not be referring to the `Tobacco Wholesalers.'").

5

the subject drugs.[5]  Yet, and notwithstanding the fact that the

complaint in places may allege or allude generally to knowledge

possessed by the "defendants,"[6] it is plain that the complaint on

the whole cannot reasonably and legitimately be construed as

alleging any factual basis for the conclusion that any of the

_____

[5]    Generally speaking, under Mississippi's Products
Liability Act, Miss. Code  Ann. § 11-1-63, liability of a product
seller may be based on a theory of defective design or inadequacy
of warning/failure to warn.  Either theory requires proof of
knowledge on the part of the seller.  See Miss. Code Ann. § 11-1-
63(f) ("In any action alleging that a product is defective because
of its design . . . the manufacturer or product seller shall not be
liable if the claimant does not prove by the preponderance of the
evidence that at the time the product left the control of the
manufacturer or seller: (i) [t]he manufacturer or seller knew, or
in light of reasonably available knowledge or in the exercise of
reasonable care should have known, about the danger for which
recovery is sought. . . ."); Miss. Code Ann. § 11-1-63(c)(i) ("In
any action alleging that a product is defective because it failed
to contain adequate warnings or instructions . . . the manufacturer
or seller shall not be liable if the claimant does not prove by a
preponderance of the evidence that at the time the product left the
control of the manufacturer or seller, the manufacturer or seller
knew or in light of reasonably available knowledge should have
known about the danger that caused the damage for which recovery is
sought. . . .").  Thus, even if the "learned intermediary"
doctrine, which is incorporated into the statute, see Miss. Code
Ann. § 11-1-63(c)(ii), were not an impediment to recovery, the
absence of an allegation that a defendant knew, or had reason to
know, of the product defect dooms any claim for defective design or
lack of adequate warning.  Likewise, knowledge, or a reason to
know, is also a necessary requisite for any claim of failure to
warn or negligence that a plaintiff might undertake to assert
extraneous to a claim under the Products Liability Act itself
(assuming solely for the sake of argument that such a claim could
exist).  An essential element of a claim of fraud is knowledge of
the falsity of the representation; and regarding any claim of
omission of facts, a person obviously cannot disclose what he does
not and cannot know.

[6]    They allege, for example, that the drugs "were marketed
to be used in combination which was known to the Defendants to
cause harmful side effects which outweighed any potential utility."

4

pharmacy defendants had any knowledge or reason to know of any of the dangers associated with the product(s) of which plaintiffs contend they were unaware. Quite to the contrary, the complaint, the major theme of which is the manufacturers' intentional concealment of the true risks of the drug(s), coupled with dissemination through various media of false and misleading information of the safety of the drug(s) at issue, belies any suggestion of knowledge, or reason to know by these resident defendants. According to the lengthy and extremely detailed factual allegations of the complaint, the product manufacturers had knowledge from numerous sources that the drug(s) at issue was unsafe, yet they, in the face of this knowledge, not only concealed this information, but affirmatively misrepresented to the FDA, to the public, to consumers, to the plaintiffs, to pharmacists, to dispensing entities, and even to AHP's own business partner, that the product(s) was safe.[1]   In the face of plaintiffs'

---

[1]   By way of example only, plaintiffs allege variously that: "Plaintiffs and/or their prescribing physicians and other dispensing entities justifiably relied on and/or were induced by the misrepresentations and/or active concealment of Defendants to her detriment."

"These defendants, having undertaken the manufacturing, marketing, prescription dispensing, distributing and promotion of the diet drugs described herein owe a duty to provide the Plaintiffs, and physicians, regulators and others upon whom it was known by Defendants that the plaintiffs would rely, accurate and complete information regarding its products."

"AHP was put on notice . . . that the . . . labeling was probably inadequate and needed to be revised. . . . (D)espite this warning. . . no changes were made to the labeling between 1990 and mid-1996. . . . (AHP was

5

motivated] to conceal the safety hazards of [its products]. . . . [A]lthough an FDA official warned that there were too many adverse reaction reports . . . and that he wanted AHP DEFENDANTS to discourage combination use, the Defendants did not actively discourage the use of Fen-Phen.

[AHP knew as early as 1991 that the warning on the Pondimin labeling from 1987 through 1996] was false and misleading . . [y]et . . . AHP did nothing to strengthen the warning language about PPH. . . . AHP deliberately chose not to make any change to the labeling in the summer or Fall of 1994, but chose to provide false and misleading information in its product labeling for Pondmin.

. . . .

By [February of 1995], APH was already concerned the FDA might require to have a black box warning about PPH in the Redux labeling and it had conducted market research which showed that with a black box warning, Redux sales could only be a fraction of what AHP hoped for. (AHP) was fully aware that its warning about PPH in the Pondimin labeling was inadequate.

. . . .

AHP DEFENDANTS believed it was in their best interest to have consumers uninformed about the deadly risk of PPH. . . . The PHENTERMINE DEFENDANTS also sought to keep consumers and prescribing physicians uninformed about the true risk of PPH. . . . Although [the risks of PPH] were known to phentermine manufacturers around the world, these manufacturers actively concealed this fact from prescribing physicians and consumers, including the Plaintiffs and their prescribing physicians, and misrepresented the risk of PPH by failing to place any such warning in the package insert. . . . [B]y failing to disclose [the facts], the package insert for fenfluramine implicitly and falsely stated to the Plaintiffs' prescribing physicians that it could be prescribed in combination with phentermine.

[From 1993 through 1995] [the] AHP defendants received further information [about risks of valvular heart disease] - yet chose to ignore it. . . . [T]he PHENTERMINE DEFENDANTS [also] began to receive reports [of] VHD. Defendants failed to obtain any more information about these reports. . . . AHP DEFENDANTS did not even report many of these cases to FDA. AHP DEFENDANTS should have regarded the 1994-1995 reports of VHD as an early warning signal of what was likely to

6

happen in the U.S.  However, because of its desire to
conceal safety problems and not derail the exponential
growth of Pondimin or the pending approval of Redux . .
.APH DEFENDANTS chose . . . not to report the VHD problem
[to FDA]. . . .  AHP DEFENDANTS mischaracterized many of
the reports as "non-serious" and did not report them to
FDA, to the Plaintiffs, or to the Plaintiffs' prescribing
physicians.
AHP DEFENDANTS did not change the Pondimin labeling
regarding PPH because to do so would have threatened its
diet drug business.

[AHP marketing programs] contained false and misleading
information and/or material ommisions about the true
risks . . .and the supposed benefits. . . .  The text of
one AHP document . . . falsely states "Redux is a safe
and effective product." [AHP, through its sales force]
fed false and misleading information and/or material
omissions about the true risks . . . [to doctor
advocates, whose job it was to promote AHP's products to
other physicians].
. . .

The "best case" for the company's sales was if consumers
were unaware of the risk of PPH and physicians chose not
to enlighten them.
. . .

AHP DEFENDANTS [knew of problems] but decided to say
nothing of those problems to physicians, patients or the
FDA. . . . AHP DEFENDANTS withheld critical information
from the FDA Advisory Committee, the Plaintiffs, and the
Plaintiffs' physicians, about the risks of VHD.

AHP DEFENDANTS, knowing that its market research
demonstrated that [a black box] warning would destroy
sales, adamantly resisted the black box warning requested
by FDA and any other restrictions on the use of Redux.

[An internal memo authored by an AHP executive stated]
"[E]very attempt will be made to ensure that no `Black
Box' warnings, restrictions of use or negative statements
find their way into the Redux labeling."
[After a leading researcher in the field of PPH appeared on
the Today Show expressing concerns, he was threatened by
AHP's medical director and] never again spoke to the
media about his concerns about the safety of Redux.
. . .

AHP made matters worse by having its paid consultants
write an editorial minimizing the risk of PPH with diet
drugs which was published in the New England Journal of

7

Medicine without the authors disclosing that they were paid consultants for the company. In addition, AHP DEFENDANTS sent out a misleading press release regarding the IPPHS study, which also tended to downplay the risk of PPH.

AHP did everything in its power to obscure the true scope of the problem from the Mayo Clinic, Interneuron, FDA and the public as long as it could.
. . . [R]ather than coming clean about the knowledge in its possession for about two years, AHP continued to withhold that information and feigned total surprise [when a Mayo Clinic physician reported to AHP that she had discovered VHD in a number of patients who had been using Fen-Phen].

Worried about a leak of information to the general public and prescribing physicians, AHP DEFENDANTS tried to keep IPI (its business partner) in the dark about the Mayo Clinic findings. . . .AHP [attempted] to conceal information about the VHD problem from even its own business partner for as long as possible.

AHP DEFENDANTS continued their policy of hiding information about the risk of VHD even up to the day that FDA told the company that it should take Pondimin and Redux off the market.

[Pursuant to a conspiracy between] AHP DEFENDANTS and ECKERD, false and fraudulent information was provided to pharmacists, consumers, and prescribing physicians about the risks and supposed benefits of these drugs. Upon information and belief, and in furtherance of the conspiracy, AHP Defendants and Eckerd supplied false and misleading marketing and promotional material and programs to unsuspecting pharmacists and prescribing physicians. . . . Eckerd [agreed that it would] take "no action, including but not limited to telephone calls or written communication to physician providers or Pharmacies regarding specific prescriptions, that [would] adversely affect utilization" [of AHP's products] . . . . . Upon information and belief, [certain "patient education programs" and "provider education programs" worked on by Eckerd and Wyeth-Ayerst jointly] provided false and misleading information about [the drugs].
Eon agreed and conspired with various pharmacies and/or AHP Defendants to ensure that the off-label combination use of these drugs could be timely provided to consumers, pharmacists, and prescribing physicians who were deliberately misled as to the safety and efficacy of these drugs

8

specific allegations of concerted, unabated fraud and concealment by the manufacturer defendants from virtually everyone, including pharmacists, no factual basis can be drawn from plaintiffs' complaint for their entirely general and conclusory charge that these "defendants" knew or had reason to know of the risks. Even assuming, then, for the sake of argument, that under Mississippi law, there exists the possibility that a viable cause of action could be maintained against a pharmacist who had knowledge of risks associated with a particular drug or drugs which he failed to disclose to his customer, the plaintiffs herein have failed to properly plead such a claim.[6] Accordingly, the court concludes that the pharmacy defendants have indeed been fraudulently joined.

The court also concludes, for the reasons assigned by Judge William H. Barbour in Beatrice Johnson et al. v. Parke-Davis, A

---

Eon agreed and conspired with other manufacturers to ensure that an adequate supply of phentermine could be delivered to consumers, pharmacists, and prescribing physicians who were deliberately misled as to the safety and efficacy of these drugs, and to the dangers of prescribing phentermine in combination with fenfluramine. . . . In furtherance of this conspiracy, prescribing physicians, consumers, and pharmacists were fed false and misleading information about fen-phen and Redux. . . .

[6]    See Sadon v. RJR Nabisco Inc., 2000 WL 1159424, No. 98-30942, at *7 (5th Cir. Aug. 16, 2000) (noting that plaintiffs' conspiracy allegations were "entirely general" and did not allege "any particular or specific activity, agreement, or state of mind on the part of either the in-state distributor defendants. . . . while as to the other defendants the amended complaint is replete with innumerable specific allegations of particular, identified activities, . . . .").

9

<u>Division of The Warner-Lambert Co., et al.</u>, No. 3:00CV315BN (S.D. Miss. July 21, 2000) (involving the drug Rezulin), that the sales representative defendants have also been fraudulently joined.

Accordingly, for the foregoing reasons, it is ordered that plaintiffs' motion to remand is denied.

SO ORDERED this 25th day of September, 2000.

_____
UNITED STATES DISTRICT JUDGE.

10

# EXHIBIT P

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 43356 (S.D.N.Y.)
**(Cite as: 2003 WL 43356 (S.D.N.Y.))**

Page 1

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
In re: REZULIN PRODUCTS LIABILITY
LITIGATION (MDL No. 1348)
**No. 00 Civ. 2843(LAK).**

Jan. 6, 2003.

Patient filed state court action against manufacturer and his treating physician to recover for personal injuries allegedly caused by use of prescription diabetes medication. After removal to federal court, patient moved to remand to state court. The District Court, Kaplan, J., held that physician had no duty to warn patient of need for body system monitoring.

Motion denied.

West Headnotes

**Health ⚖️706**
198Hk706 Most Cited Cases
Treating physician did not have duty to warn patient for whom he had prescribed diabetes medication of need for liver function and other body system monitoring, and thus physician's treatment was not negligent, absent allegation of basis for supposing that physician should have conducted liver testing or what information concerning need for testing was available to medical professionals at relevant time.

PRETRIAL ORDER NO. 122

KAPLAN, J.

**\*1** This Document Relates to: 02 Civ. 3583

(Motion to Remand in *Martin* )
Plaintiff has moved to remand this action based on his contention that the presence of a nondiverse defendant--plaintiff's treating physician, Garth C. Denyer, M.D.--defeats complete diversity. Defendants object to the Report and Recommendation of Magistrate Judge Katz, which

recommended that plaintiff's motion to remand be granted because "defendants have failed to demonstrate that there is no reasonable possibility that plaintiff's negligence claim against the non-diverse physician would be successful." Report & Recommendation at 6. Defendants argue that Dr. Denyer was joined fraudulently, or, alternatively, that he was misjoined with the Manufacturing Defendants.

Plaintiff asserts three theories of negligence against the physician. First, plaintiff asserts that the defendant-physician negligently failed to warn him of the risks linked to Rezulin. Petition ¶ IV(7). As this Court recently found in PTO No. 121, in light of plaintiff's myriad allegations that the defendants withheld information concerning the risks of Rezulin from physicians and others, [FN1] an entirely conclusory allegation that the physician failed to warn of risks of Rezulin is insufficient to provide the defendant sufficient notice of the claim against him. [FN2]

> FN1. *See, e.g.,* Petition ¶ IV(4) ("Defendants failed to provide adequate warnings of dangers and instruction for safe use of the drug."); Petition ¶ VI(2)(f) ("The Pharmaceutical Defendants failed to timely and adequately warn the medical community and/or Plaintiff regarding the risks associated with Rezulin as they became known."); Petition ¶ X(1)(c) ("The Pharmaceutical Defendants were grossly negligent in failing to timely and adequately warn consumers of the known adverse effects of Rezulin....").

> FN2. PTO No. 121 at n. 11 (citing *Rodriguez v. Beechmont Bus Svce., Inc.,* 173 F.Supp.2d 139, 145 (S.D.N.Y.2001) ("Allegations that are so conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains are insufficient as a matter of law."); *Strickland v. Brown Morris Pharmacy Inc.,* Civ. A. No. 96-815, 1996 WL 537736, at \*2 (E.D.La. Sept.20, 1996) (conclusory allegations that defendant knew or should have known that drug was dangerous do not warrant remand)).

Not Reported in F.Supp.2d                                                           Page 2
Not Reported in F.Supp.2d, 2003 WL 43356 (S.D.N.Y.)
**(Cite as: 2003 WL 43356 (S.D.N.Y.))**

Plaintiff next alleges that the physician negligently "fail[ed] to test and monitor her [sic] liver functions." Petition ¶ IV(7). Once again, in light of plaintiff's other allegations that the defendants failed to timely warn of the need for liver function and other body system monitoring, [FN3] plaintiff's conclusory allegation is insufficient. Plaintiff has failed to allege any basis for supposing that his physician should have conducted liver testing or even what information concerning the need for testing was available to medical professionals at the relevant time. [FN4]

> FN3. *See, e.g.,* Petition ¶ X(1)(c) ("The Pharmaceutical Defendants were grossly negligent in failing to timely and adequately warn consumers of the known adverse effects of Rezulin, the need for liver function and other body system monitoring."); Petition ¶ IV(4) ("Defendants failed to provide adequate warnings of danger and instruction for safe use of the drug."); Petition ¶ VI(2)(c)(ii) ("The Pharmaceutical Defendants failed ... to give adequate warnings regarding the dangers associated with the use of Rezulin and adequate instructions to avoid such dangers.").

> FN4. This Court need not consider the "Dear Health Care Professional" letters, FDA Talk Paper, letter from Glaxo Wellcome to the President of Sankyo Company Limited, and Rezulin product labels plaintiff appended to his motion to remand. *See* Motion Exs. C--H. As this Court previously has noted, the propriety of joinder "is to be determined based on the pleadings." *In re Rezulin Prods. Liab. Litig.,* 133 F.Supp.2d 272, 284 (S.D.N.Y.2001) (*"Rezulin I"* ) (internal quotation marks and citation omitted). Moreover, this Court has observed that "[f]ederal courts across the nation have relied upon that standard to deny remand based on inadequate pleadings and to disregard allegations not contained in the original complaint." *Id.* (citing cases).

Plaintiff's third claim of negligence against the physician likewise fails because it does not state on what basis the physician should have known the patient was unable to tolerate Rezulin.

Accordingly, there is no possibility, based on the pleadings, that plaintiff will establish his medical malpractice claim against the nondiverse physician.

The plaintiff's motion to remand is denied.

SO ORDERED.

Not Reported in F.Supp.2d, 2003 WL 43356 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 2004 WL 2973888 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment as to Claims for Certain Side-Effects Warned About in the Adverse Reactions Table of the Rezulin Labeling (Jan. 06, 2004)

• 2003 WL 23951442 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Memorandum of Law in Support of Their Motion for Summary Judgment as to Non-Liver-Related Claims Asserted by Plaintiff Orlean Maxwell (Nov. 07, 2003)

• 2003 WL 23951441 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment (Sep. 19, 2003)

• 2003 WL 23951439 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment as to Non-Liver-Related Claims (Aug. 07, 2003)

• 2001 WL 34133949 (Trial Filing) Pretrial Order No. 19 (May. 14, 2001)

• 2001 WL 34133975 (Appellate Petition, Motion and Filing) Pec%7Ds Petition for an Order Securing an Equitable Allocation of Counsel Fees and Costs for Common Benefit Work (May. 14, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT Q

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2002 WL 31852826 (S.D.N.Y.), Prod.Liab.Rep. (CCH) P 16,506
**(Cite as: 2002 WL 31852826 (S.D.N.Y.))**

**H**

**Motions, Pleadings and Filings**

United States District Court,
S.D. New York.
In re: REZULIN PRODUCTS LIABILITY
LITIGATION (MDL No. 1348)
**No. 00 Civ. 2843(LAK).**

Dec. 18, 2002.

Diabetes patients who had used prescription medication later withdrawn from market brought multiple personal injury actions against drug's manufacturer, pharmacies, physicians, and others. Actions were removed on diversity grounds, then consolidated for pretrial proceedings by Multidistrict Litigation panel. On reconsideration of its initial denial of patients' remand motions, 2002 WL 31507635, the District Court, Kaplan, J., held that: (1) plaintiffs asserting claims against non-diverse defendants were misjoined with other plaintiffs, and (2) plaintiffs failed to state claim against non-diverse physician defendants.

Motions denied.

See also 168 F.Supp.2d 136.

West Headnotes

**[1] Removal of Cases** 36
334k36 Most Cited Cases
Where removing party contends that joinder of non-diverse party is fraudulent because that party's claim is insufficient as matter of law, that party's citizenship will be disregarded only where there is no reasonable possibility that relevant state's highest court would uphold sufficiency of complaint. 28 U.S.C.A. § 1332.

**[2] Federal Civil Procedure** 387.1
170Ak387.1 Most Cited Cases
Plaintiffs asserting personal injury claims against non-diverse prescribing physicians in connection with diabetes drug later withdrawn from market and toxic tort claims against diverse manufacturer were misjoined with tort claims asserted by other plaintiffs who did not have patient relationship with physicians

in question. Fed.Rules Civ.Proc.Rule 20(a), 28 U.S.C.A.

**[3] Health** 813
198Hk813 Most Cited Cases
Under Mississippi law, diabetes patients' conclusory allegation that physicians failed to warn them of risks of taking drug was insufficient to provide physicians adequate notice of claim; there was no allegation as to whether failure was to warn of concealed risks, known risks, or both, and how and when physicians came to be aware of any such risks.

**[4] Removal of Cases** 107(4)
334k107(4) Most Cited Cases
Federal court, in deciding motion to remand removed case, must look to allegations in complaint, rather than to plaintiffs' wishful speculation as to what allegations might be made in amended complaint following discovery.

PRETRIAL ORDER NO. 121

KAPLAN, J.

**\*1** This Document Relates to: 02 Civ. 4568, 02 Civ. 4569

(Motion to Remand in *Blakeney* and *Kaho*-- Reconsideration)
On November 12, 2002, this Court adopted the report and recommendation of Magistrate Judge Katz with respect to plaintiffs' motion to remand in these actions, noting that no objections had been filed. It subsequently has come to the Court's attention that objections were timely filed, although the Clerk's office failed to docket them until November 14, 2002. In view of the Clerk's office's failure, the Court treats the objections as embracing a motion for reconsideration, grants that motion, and considers the objections *de novo*.

[1] As this Court held in *Rezulin I*, a claim of fraudulent joinder will prevail only if the removing defendant "demonstrate[s], by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings that a plaintiff can state a cause of action against the non-diverse defendants in state court." [FN1] It went on to hold, however, that where the removing party contends that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 2
Not Reported in F.Supp.2d, 2002 WL 31852826 (S.D.N.Y.), Prod.Liab.Rep. (CCH) P 16,506
**(Cite as: 2002 WL 31852826 (S.D.N.Y.))**

joinder of a non-diverse party is fraudulent because the claim is insufficient as a matter of law, the citizenship of the non-diverse party will be disregarded only where there is no "reasonable possibility that the relevant state's highest court would rule in favor of the plaintiff were the issue presented to it."  [FN2] While Judge Katz quoted only the second of these passages, plaintiffs' contention that he did not apply the correct standard in reaching his recommendation is without merit. Their further suggestion that the rule he applied would "allow ... judges sitting in motion hearings to decide the reasonableness of the Plaintiffs' claims" and that this would be "tantamount to ... granting a Rule 56 Motion without being presented with any evidence from either side" (Obj. at 3) borders on the preposterous. All that this Court, or Judge Katz, has said is that where the propriety of considering the citizenship of a non-diverse party turns on the sufficiency of the claim against it as a matter of state law, that citizenship will be considered unless there is no reasonable possibility that the state court would uphold the sufficiency of the complaint. Plaintiffs offer no responsible basis for supposing that the law is otherwise. Indeed, their assertion that the non-diverse party's citizenship should matter as long as there is *any possibility,* no matter how small, that a state court would approve the legal sufficiency of the claim against it was flatly rejected in *Rezulin I* for reasons that continue to make perfect sense. [FN3]

> FN1. *In re Rezulin Prods. Liab. Litig.,* 133 F.Supp.2d 272, 279-80 (S.D.N.Y.2001) (internal quotation marks and footnote omitted).

> FN2. *Id.* at 280.

> FN3. *Id.* at 280 n. 4.

 [2] With respect to plaintiffs' claim that the presence of non-diverse physician defendants defeats diversity, Judge Katz found that, in each action, the physician-defendant is alleged to have treated only one of the plaintiffs. Thus, Judge Katz recommended that the motions for remand of all plaintiffs except Jonnie S. Newell and Juanita Kaho, the two plaintiffs who pled a physician-patient relationship, be denied. This recommendation was appropriate because the plaintiffs with patient relationships with defendant physicians are misjoined with the other plaintiffs. [FN4]

> FN4. *See In re Rezulin Prods. Liab. Litig.,* 168 F.Supp.2d 136, 148 (S.D.N.Y.2001)

("*Rezulin II* ").

 *2 There is one respect, however, in which the Court finds merit in plaintiffs' objections, although the motions to remand ultimately should be denied. Judge Katz recommended that the motions to remand of the two plaintiffs who allege a physician-patient relationship with the defendant physicians be denied because, given the plaintiffs' allegation that the pharmaceutical representatives "fraudulently represented to physicians ... [that] the drug was in fact safe," the physicians could not have breached any duty to warn patients of a risk of which they were not aware. He therefore found that there was no reasonable possibility that the plaintiffs could recover under state law.

 This Court reaches the same conclusion, albeit by a different path. The fact that plaintiffs' pleadings may be inconsistent is not fatal. Parties may plead in the alternative and inconsistently pursuant to Fed. R. Civ. P. 8(e)(2).  [FN5] In any case, each plaintiff's assertion that his or her physician breached his "duty to warn patients of known risks of taking the drug Rezulin"  [FN6] is not necessarily refuted by other allegations in the complaints that pharmaceutical representatives "falsely and fraudulently represented to physicians ... [that] the drug was in fact safe ... when the Defendants knew or should have known that Rezulin was unsafe."  [FN7] For example, these allegations are not inconsistent to the extent that any failure to warn related to information contained in the Rezulin package inserts. [FN8]

> FN5. These cases were commenced in Mississippi state courts. As Miss. R. Civ. P. 8 is substantially identical to Fed. R. Civ. P. 8, there is no need to determine which governs here.

> FN6. Blakeney Cpt. ¶ 39; Kaho Cpt. ¶ 25.

> FN7. Blakeney Cpt. ¶ 58(c); Kaho Cpt. ¶ 45(c). Plaintiffs are cautioned, however, that "[t]he right to plead alternatively or hypothetically does not sanction deviations from the obligation to plead comprehensibly. Indeed, it is in the context of alternative and hypothetical pleading that a party must exercise the greatest care so as not to transgress the requirement in Rule 8(e)(1) of simple, direct, and concise pleading." 5 Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1282, p. 532 (1990).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 3
Not Reported in F.Supp.2d, 2002 WL 31852826 (S.D.N.Y.), Prod.Liab.Rep. (CCH) P 16,506
**(Cite as: 2002 WL 31852826 (S.D.N.Y.))**

FN8. Under Mississippi law, a package insert is "some evidence of the standard of care." *Thompson v. Carter,* 518 So.2d 609, 613 (Miss.1987).

[3] Nevertheless, plaintiffs' claims against the physician defendants fail for the fundamental reason that they do not provide the physician defendants sufficient notice of the claims against them. Although pleading standards were relaxed with the adoption of the Federal Rules of Civil Procedure and their substantial codification by Mississippi and other states, a pleading nevertheless must "advise the other party of the event being sued upon." [FN9] Furthermore, the appropriate level of generality for a pleading varies depending upon the nature of the claim at issue. [FN10] In these cases, and hundreds of others like them that have been consolidated here for pretrial proceedings by the Judicial Panel on Multidistrict Litigation, the main tenor of plaintiffs' complaints is that Rezulin was an unsafe drug and that the manufacturers concealed its risks from the public, physicians, and others. In this context, an entirely conclusory allegation that the physicians failed to warn of the risks of Rezulin is insufficient. [FN11] The pleadings shed no light on such matters as whether the defendant physicians allegedly failed to warn of concealed risks, known risks, or both, and how and when the physicians came to be aware of any such risks. Absent such information, plaintiffs cannot be said to have provided the defendant physicians adequate notice of the claims against them. [FN12]

FN9. 5 Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1202, at 69 (1990).

FN10. 5 *id.* § 1218, at 185.

FN11. *See, e.g., Rodriguez v. Beechmont Bus Svce., Inc.,* 173 F.Supp.2d 139, 145 (S.D.N.Y.2001) ("Allegations that are so conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains are insufficient as a matter of law."); *Strickland v. Brown Morris Pharmacy Inc.,* Civ. A. No. 96-815, 1996 WL 537736, at *2 (E.D.La. Sept.20, 1996) (conclusory allegations that defendant knew or should have known that drug was dangerous do not warrant remand).

FN12. *Strickland,* 1996 WL 537736, at *2.

Nor are plaintiffs incapable of providing clearer notice of their claims against the physician defendants. Plaintiffs know when they were treated by the physicians, what the physicians told them, and what information concerning the risks of Rezulin was available to medical professionals at the relevant time. But they have not included any such information in their complaints.

*3 [4] Plaintiffs' argument that their motions to remand should be granted because future discovery may reveal more information about the relationship between the physicians and the manufacturers has no merit. As this Court previously has stated, "a court in deciding a motion to remand must look to the allegations in the complaint, rather than to plaintiffs' wishful speculation as to what allegations might be made in an amended complaint following discovery." [FN13] Accordingly, there is no reasonable possibility, based on the pleadings, that plaintiffs Newell and Kaho will succeed with their medical malpractice claims against the nondiverse physicians.

FN13. *Rezulin II,* 168 F.Supp.2d at 141.

Plaintiffs' complaints can be construed to plead additional claims against the physicians for negligent misrepresentation and breach of warranty. Plaintiffs' negligent misrepresentation claims are insufficient because, having alleged fraudulent intent, plaintiffs must comply with Rule 9(b). [FN14] Furthermore, plaintiffs have failed to allege, as Mississippi law requires, that a misrepresentation was made to them, as opposed to others. [FN15] Plaintiffs' breach of warranty claims, alleged against the "defendants" in general, likewise fail against the physicians because plaintiffs do not allege that the physicians sold Rezulin or were "merchant[s] with respect to goods of that kind," as is required for liability under Mississippi's Uniform Commercial Code. *Rezulin I,* 133 F.Supp.2d at 286 (quoting Miss.Code Ann. § 75-2-314).

FN14. *Rezulin I,* 133 F.Supp.2d at 285.

FN15. *Id.* at 285-6 (citing *Armona v. Smith,* 749 So.2d 63, 67 (Miss.1999).

Finally, the Court notes that plaintiffs, correctly, do not quarrel with Judge Katz's conclusions regarding the pharmacy defendants. As for the pharmacy representative defendants, plaintiffs' objections are without merit.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 4
Not Reported in F.Supp.2d, 2002 WL 31852826 (S.D.N.Y.), Prod.Liab.Rep. (CCH) P 16,506
**(Cite as: 2002 WL 31852826 (S.D.N.Y.))**

The plaintiffs' motions to remand are denied.

SO ORDERED.

Not Reported in F.Supp.2d, 2002 WL 31852826 (S.D.N.Y.), Prod.Liab.Rep. (CCH) P 16,506

**Motions, Pleadings and Filings (Back to top)**

• 2004 WL 2973888 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment as to Claims for Certain Side-Effects Warned About in the Adverse Reactions Table of the Rezulin Labeling (Jan. 06, 2004)

• 2003 WL 23951442 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Memorandum of Law in Support of Their Motion for Summary Judgment as to Non-Liver-Related Claims Asserted by Plaintiff Orlean Maxwell (Nov. 07, 2003)

• 2003 WL 23951439 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment as to Non-Liver-Related Claims (Aug. 07, 2003)

• 2001 WL 34133949 (Trial Filing) Pretrial Order No. 19 (May. 14, 2001)

• 2001 WL 34133975 (Appellate Petition, Motion and Filing) Pec%7Ds Petition for an Order Securing an Equitable Allocation of Counsel Fees and Costs for Common Benefit Work (May. 14, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT R

Westlaw.

Not Reported in F.Supp.2d                                                   Page 1
Not Reported in F.Supp.2d, 1999 WL 554584 (E.D.Pa.)
**(Cite as: 1999 WL 554584 (E.D.Pa.))**

▷

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
In re: DIET DRUGS (Phentermine, Fenfluramine,
Dexfenfluramine) Products
Liability Litigation
Maggie M. CHANEY, et. al.
v.
GATE PHARMACEUTICALS, et. al.
**No. Civ.A. 98-20478, 1203.**

July 16, 1999.
F. Hilton-Green Tomlinson, Pritchard Mccall &
Jones, Birmingham, AL, Arnold Levin, Levin,
Fishbein, Sedran & Berman, Philadelphia, PA,
George M. Fleming, Houston, TX, James L. Doyle,
II, Rand P. Nolen, Fleming, Hovenkamp and
Grayson, P.C., Houston, TX, for Maggie M. Chaney,
Plaintiff.

F. Hilton-Green Tomlinson, Arnold Levin, George
M. Fleming, James L. Doyle, II, Rand P. Nolen, (See
above), for Betty J. Williams, Plaintiff.

F. Hilton-Green Tomlinson, Arnold Levin, George
M. Fleming, James L. Doyle, II, Rand P. Nolen, (See
above), for Leroy T. Trotter, Plaintiff.

F. Hilton-Green Tomlinson, Arnold Levin, George
M. Fleming, James L. Doyle, II, Rand P. Nolen, (See
above), for John E. Reed, Plaintiff.

F. Hilton-Green Tomlinson, Arnold Levin, George
M. Fleming, James L. Doyle, II, Rand P. Nolen, (See
above), for James F. Barthel, Plaintiff.

F. Hilton-Green Tomlinson, Arnold Levin, George
M. Fleming, James L. Doyle, II, Rand P. Nolen, (See
above), for Virginia Ann Hopps, Plaintiff.

F. Hilton-Green Tomlinson, Arnold Levin, George
M. Fleming, James L. Doyle, II, Rand P. Nolen, (See
above), for Virginia Hassell, Plaintiff.

F. Hilton-Green Tomlinson, Arnold Levin, George
M. Fleming, James L. Doyle, II, Rand P. Nolen, (See

above), for Evelyn Turner, Plaintiff.

F. Hilton-Green Tomlinson, Arnold Levin, George
M. Fleming, James L. Doyle, II, Rand P. Nolen, (See
above), for Deborah Saunders, Plaintiff.

F. Hilton-Green Tomlinson, Arnold Levin, George
M. Fleming, James L. Doyle, II, Rand P. Nolen, (See
above), for Catherine Herman, Plaintiff.

F. Hilton-Green Tomlinson, Arnold Levin, George
M. Fleming, James L. Doyle, II, Rand P. Nolen, (See
above), for Mary C. Smith, Plaintiff.

James C. Barton, Jr., Johnston, Barton, Proctor,
Swedlaw and Naff, Birmingham, AL, for Gate
Pharmaceuticals, a division of Teva Pharmaceuticals,
USA., Inc., Defendant.

Lawrence B. Clark, Lange, Simpson, Robinson &
Somerville, Birmingham, AL, for Smithkline
Beecham Corporation, Defendant.

E. Ann MC Mahan, Spain and Gillon, Birmingham,
AL, for Jones Medical Industries, Inc., f/k/a Abana
Pharmaceuticals, Inc., Defendant.

J. Allen Sydnor, Jr., Birmingham, AL, for Richwood
Pharmaceuticals Company, Inc., Defendant.

Katharine A. Weber, Maynard, Cooper and Gale,
Birmingham, AL, Ellen Steury, Arnold & Porter,
Washington, DC, Steven H. Bergman, Arnold and
Porter, Los Angeles, CA, Tony G. Miller, Maynard,
Cooper and Gale, Birmingham, AL, Maibeth J.
Porter, Maynard, Cooper & Gale, P. C., Birmingham,
AL, Steven P. Lockman, Arnold & Porter,
Washington, DC, for A.H. Robins Company,
Incorporated, Defendant.

Katharine A. Weber, Ellen Steury, Steven H.
Bergman, Tony G. Miller, Maibeth J. Porter, Steven
P. Lockman, for Wyeth-Ayerst Laboratories,
Division of American Home Products Corporation,
Defendant.

Labella S. Alvis, Sharon D. Stuart, Rives and
Peterson, Birmingham, AL, Thomas W. Christian,
Rives and Peterson, Birmingham, AL, for
Interneuron Pharmaceuticals, Inc., Defendant.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 554584 (E.D.Pa.)
**(Cite as: 1999 WL 554584 (E.D.Pa.))**

Larry W. Harper, Karen Walker Casey, Porterfield Harper & Mills PA, Birmingham, AL, for Ion Laboratories, Inc., Defendant.

Samuel H. Franklin, Lightfoot, Franklin, White and Lucas, Birmingham, AL, Harlan I. Prater, IV, Robin H. Graves, Lee M. Hollis, Lightfoot, Franklin & White, Birmingham, AL, for Medeva Pharmaceuticals, Inc., Defendant.

Steven A. Stadtmauer, Lester, Schwab, Katz, & Dwyer, New York, NY, for Goldline Laboratories, Inc., Defendant.

Emily Sides Bonds, Helen C. Foster, Walston, Wells, Anderson & Bains, Birmingham, AL, for Qualitest Pharmaceuticals Inc., Defendant.

Steven A. Stadtmauer, (See above), for Zenith Goldline Pharmaceuticals Inc., Defendant.

Emily Sides Bonds, Helen C. Foster, (See above), for United Research Laboratories Inc., Defendant.

Denise M. Smith, Benesch, Friedlander, Coplan, and Aronoff, Cincinnati, OH, for Shire Richwood Inc., Defendant.

Frank Chester Woodside, Cincinnati, OH, James W. Gewin, Bradley, Arant, Rose and White, Birmingham, AL, for Modern Wholesale Drug Co. Inc., f/k/a Rugby Laboratories Inc., Defendant.

Michael K. Choy, John W. Scott, Haskell, Slaughter, Young, Johnston and Gallion, Birmingham, AL, for Geneva Pharmaceuticals, Inc., Defendant.

Gary B. Cutler, Independence Square West, Phila, PA, Nessa B. Math, Margolis, Edelstein and Scherlis, Phila, PA, William C. Wood, Norman, Fitzpatrick, Wood, Parker and Kendrick, Birmingham, AL, for Camall Company, Defendant.

Lawrence B. Clark, (See above), for King Pharmaceuticals, Inc., Defendant.

*MEMORANDUM AND PRETRIAL ORDER NO. 769*

BECHTLE, J.

**\*1** Presently before the court are plaintiffs Maggie M. Chaney's, Betty J. Williams', Leroy T. Trotter's, John E. Reed's, James F. Barthel's, Virginia Ann Hopps', Virginia Hassell's, Evelyn Turner's, Deborah

Saunders', Catherine Herman's and Mary C. Smith's ("Plaintiffs") motion to remand the above civil action to state court and defendants A.H. Robins Company, Inc. ("Robins") and Wyeth-Ayerst Laboratories Division of American Home Products Corporation ("Wyeth") responses thereto. [FN1] For the following reasons, the court will deny Plaintiffs' motion to remand and will drop certain Plaintiffs from this civil action pursuant to Rule 21 of the Federal Rules of Civil Procedure.

> FN1. Plaintiffs have also filed several unopposed motions relating to this civil action that do not require discussion in the court's Memorandum. The court will identify and rule on those motions in the accompanying Order.

I. *BACKGROUND*

On January 15, 1998, Plaintiffs filed this civil action in the Circuit Court of Montgomery County, Alabama. [FN2] On February 17, 1998, Robins and Wyeth filed a notice of removal to the United States District Court for the Middle District of Alabama, Northern Division. The removal was based upon complete diversity of citizenship under 28 U.S.C. § 1332. [FN3] While this civil action was pending before the Middle District of Alabama, Plaintiffs filed an Amended Complaint. Additionally, Plaintiffs filed a motion to remand the action back to state court. Subsequently, the Judicial Panel on Multidistrict Litigation transferred this civil action to this transferee district court for inclusion in MDL No. 1203.

> FN2. The Complaint asserts only state common law claims and no federal claims are presented.

> FN3. That statute provides:
> The district courts shall have original jurisdiction of all actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between-
> (1) citizens of different States;
> (2) citizens of a State and citizens or subjects of a foreign state;
> (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and (4) a foreign state, defined in Section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 554584 (E.D.Pa.)
**(Cite as: 1999 WL 554584 (E.D.Pa.))**

Page 3

28 U.S.C. § 1332(a).

## II. *DISCUSSION*

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). An action based upon diversity shall be removable "only if none of the parties in interest properly joined and served as defendants is a citizen of the state in which such action is brought ." 28 U.S.C. § 1441(b). Thus, only if an action could have originally been brought in federal court may it be removed from state court to federal court. The removing party bears the burden of establishing federal jurisdiction. *Boyer v. Snap-On Tools Corp.,* 913 F.2d 108, 111 (3d Cir.1990). The removal statute is "strictly construed against removal" and all doubts are resolved in favor of remand. *Id.* The existence of diversity jurisdiction is generally determined by analyzing the plaintiff's complaint. *Abels v. State Farm Fire & Cas. Co.,* 770 F.2d 26, 29 (3d Cir.1985).

## A. *Defendants' Compliance with 28 U.S.C. § 1446*

Plaintiffs assert that Defendants failed to comply with the procedural requirements of 28 U.S.C. § 1446, which requires all joined defendants to join in the notice of removal within thirty days of service of the initial pleading. [FN4] 28 U.S.C. § 1446(b). Defendant Abana Pharmaceuticals, Inc. ("Abana") was served with Plaintiffs' initial pleading on January 22, 1998. Plaintiffs assert that Abana did not consent to or join in the notice of removal within thirty days of that date. Abana filed its notice of joinder in the removal on February 23, 1998. Plaintiffs are correct that February 23, 1998, on its face, falls outside of the prescribed thirty day time period. February 23, 1998 was exactly thirty-two days measured from January 22, 1998. However, the thirtieth day measured from January 22, 1998 was Saturday, February 21, 1998. Federal Rule of Civil Procedure 6(a) governs the computation of the time period set forth in 28 U.S.C. 1446(b). *Medina v. Wal-Mart Stores, Inc.,* 945 F.Supp. 519, 521 (W.D.N.Y.1996); *Barton v. Lloyds of London,* 883 F.Supp. 641, 642 n. 3 (M.D.Ala.1995); *Aguado v. Milwaukee Elec. Tool Corp.,* C.A. 90-0159, 1990 WL 18817, at *2 (E.D.Pa. Feb. 26, 1990). Rule 6(a) provides that "[t]he last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a legal holiday, ... in which

event the period runs until the end of the next day which is not one of the aforementioned days a Saturday, a Sunday, or a legal holiday." Fed.R.Civ.P. 6(a). Because Abana's time period for filing their joinder in the notice of removal ended on a Saturday, filing the notice on Monday, February 22, 1998, was permissible. The court finds that Defendants complied with the procedural requirements of 28 U.S.C. § 1446.

> FN4. Plaintiffs do not challenge any other aspect of any Defendants' compliance with 28 U.S.C. § 1446.

## B. *Diversity of Citizenship and Fraudulent Joinder*

*2 Plaintiffs ask the court to remand this action to state court because at least one of the Plaintiffs is a citizen of the same state as one of the Defendants. [FN5] Diversity jurisdiction only exists when all plaintiffs are citizens of different states than that of all defendants named in the action. *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267 (1806). On the face of the Complaint, complete diversity does not exist. However, Robins and Wyeth assert that certain Plaintiffs were fraudulently misjoined in this action to defeat diversity jurisdiction. They request that the court sever the claims of the non-diverse Plaintiffs and retain jurisdiction over the remaining Plaintiffs' claims.

> FN5. Plaintiffs' Evelyn Turner and Mary C. Smith and defendants Medeva Pharmaceuticals, Inc. and Ion Laboratories, Inc. are citizens of Texas. (Compl. ¶ ¶ 12, 15, 23 and 24.) Additionally, plaintiff Catherine Herman and defendants Gate Pharmaceuticals and Smithkline Beecham Corporation are citizens of Pennsylvania. (Compl. ¶ ¶ 14, 16 and 17.) Finally, plaintiff Virginia Hassell and defendant Wyeth are citizens of New Jersey. (Comp. ¶ 11, Def.'s Notice of Removal ¶ 13.)

### 1. Fraudulent Joinder

The doctrine of fraudulent joinder allows the court to disregard parties that are fraudulently joined in a civil action when determining whether complete diversity of citizenship exists. The doctrine recognizes that although plaintiffs are normally free to choose their own forum, a party may not be joined "solely for the purpose of defeating federal diversity jurisdiction." *Schwartz v. State Farm Mut. Auto. Ins. Co.,* 174 F.3d 875, 878 (7th Cir.1999); *Pampillonia v. RJR Nabisco,*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 4
Not Reported in F.Supp.2d, 1999 WL 554584 (E.D.Pa.)
**(Cite as: 1999 WL 554584 (E.D.Pa.))**

*Inc.,* 138 F.3d 459, 460-61 (2d Cir.1998); *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1360 (11th Cir.1996).* Parties must have some connection to the controversy if their joinder will defeat diversity jurisdiction. *See Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97 (1921) (holding that "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy"). In the diversity context, a district court examining fraudulent joinder is not required to find fraud in the common law sense of that term. *Katz v. Costa Armatori, S.p.A.,* 718 F.Supp. 1508, 1513 (S.D.Fla.1989); *see also Lewis v. Time, Inc.,* 83 F.R.D. 455, 460 (E.D.Cal.1979) (explaining that fraudulent joinder "does not reflect on the integrity of plaintiff or counsel ... but is merely the rubric applied when a court finds either that no cause of action is stated against the nondiverse defendant, or in fact no cause of action exists"). Accordingly, the court is not required to delve into the subjective intent behind the preparation or structure of the plaintiff's pleadings. When conducting a fraudulent joinder analysis, the court looks to the plaintiff's complaint at the time the petition for removal was filed and assumes all factual allegations contained in the complaint to be true. *Batoff,* 977 F.2d at 851-52. Additionally, a removing party who charges that a plaintiff has fraudulently joined a party to destroy diversity jurisdiction has a "heavy burden of persuasion." *Boyer,* 913 F.2d at 111.

 Fraudulent joinder may be established where a defendant shows "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant." *Boyer,* 913 F.2d at 111. Fraudulent joinder may also be established if "there is outright fraud in the plaintiff's pleading of jurisdictional facts." *Triggs v. John Crump Toyota, Inc.,* 154 F.3d 1284, 1287 (11th Cir.1998); *Pampillonia v. RJR Nabisco, Inc.,* 138 F.3d 459, 461 (2d Cir.1998). In *Tapscott v. MS Dealer Serv, Corp.,* 77 F.3d 1353, 1360 (11th Cir.1996), the Eleventh Circuit recognized a third circumstance in which fraudulent joinder can be found. In *Tapscott,* the court stated that "misjoinder can be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action." *Tapscott,* 77 F.3d at 1360. Defendants do not argue that outright fraud is present in Plaintiffs' pleading of jurisdictional facts or that Plaintiffs cannot prove a claim against a nondiverse defendant. Instead, Defendants ask the court to apply *Tapscott's* egregious joinder analysis to this case.

*3 In *Tapscott,* the court, relying on *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92 (1921), held that plaintiffs' attempt to join certain defendants in the same civil action was so egregious as to constitute fraudulent joinder because the transactions between certain plaintiffs and defendants had "no real connection" to the transactions involving the other parties. *Tapscott,* 77 F.3d at 1360. In so holding, the court did not find that any misjoinder could be labeled fraudulent. *Id.* In order to be considered fraudulent under *Tapscott* there must be an "egregious misjoinder." [FN6] *Id.* As the court will discuss below, the plaintiffs in this civil action are clearly misjoined under Federal Rule of Civil Procedure 20(a). However, before reaching that issue the court must find that the joinder is so egregious that it constitutes fraudulent joinder because it wrongfully deprives Defendants the right of removal. *See Alabama Southern Railway Co. v. H.C. Thompson,* 200 U.S. 206, 218 (1906) (stating that "[f]ederal courts may and should take such action as will defeat attempts to wrongfully deprive parties entitled to sue in the [f]ederal courts of the protection of their rights in those tribunals").

> FN6. The court notes that although the facts of *Tapscott* concerned the misjoinder of certain defendants, the reasoning of that case has been applied to find that the egregious misjoinder of plaintiffs may also constitute fraudulent joinder. *See Lyons v.. American Tobacco Co.,* No. 96-0881, 1997 WL 809677, at *4 (S.D.Ala. Sept. 30, 1997) (finding plaintiffs fraudulently misjoined); *Koch v. PLM Int'l, Inc.,* No. 97- 0177, 1997 WL 907917, at *4 (S.D.Ala. Sept. 24, 1997) (same).

 Initially, the court agrees with *Tapscott* in that a finding of mere misjoinder does not itself warrant a finding of fraudulent misjoinder. [FN7] *Tapscott,* 77 F.3d at 1360. However, the pleading presently before the court goes well beyond mere misjoinder. In the instant pleading, Plaintiffs attempt to join persons from seven different states into one civil action who have absolutely no connection to each other except that they each ingested fenfluramine, Redux (dexfenfluramine), phentermine or some combination of those drugs. Plaintiffs do not allege that they took the same drug or combination of drugs. Further, Plaintiffs do not allege that they received the drugs from the same source or any other similar connection. The Complaint was originally filed in Montgomery County, Alabama. Only two of the nine remaining Plaintiffs reside in Alabama. [FN8] Two Plaintiffs

Not Reported in F.Supp.2d                                                                    Page 5
Not Reported in F.Supp.2d, 1999 WL 554584 (E.D.Pa.)
**(Cite as: 1999 WL 554584 (E.D.Pa.))**

are listed as residents of Texas. The remaining Plaintiffs are listed as citizens of California, Florida, New Jersey, North Carolina and Pennsylvania. The nonresident Plaintiffs do not allege any contact with Alabama. Additionally, Plaintiffs do not allege that they received or purchased diet drugs in Alabama or from a source located in Alabama. Defendants correctly argue that Plaintiffs fail to point to any logical basis for the proposed joinder of the nonresident Plaintiffs . [FN9] That argument is particularly compelling when most of the nonresident Plaintiffs reside in a jurisdiction in which at least one Defendant is a citizen. Indeed, the court finds that the structure of this pleading is devoid of any redeeming feature as respects the underlying purposes of the joinder rules. The joinder rules are designed "to promote trial convenience and expedite the final determination of disputes." *Saval v. BL Ltd.,* 710 F.2d 1027, 1031 (4th Cir.1983) (citing *Mosley v. General Motors Corp.,* 497 F.2d 1330 (8th Cir.1974)). The joinder of several plaintiffs who have no connection to each other in no way promotes trial convenience or expedites the adjudication of the asserted claims. Rather, the joinder of such unconnected, geographically diverse plaintiffs that present individual circumstances material to the final outcome of their respective claims would obstruct and delay the adjudication process. Given Plaintiffs' vast geographic diversity and lack of reasonable connection to each other, the court finds that the attempted joinder of the nonresident Plaintiffs wrongfully deprives Defendants of their right of removal.

> FN7. That view is consistent with the notion that the Federal Rules of Civil Procedure shall not be construed to extend the jurisdiction of federal district courts. Fed.R.Civ.P. 82.

> FN8. Eleven Plaintiffs were listed on the Complaint. On February 22, 1999, the court entered Pretrial Order No. 479, dismissing plaintiffs John Reed and Leroy Trotter from the action.

> FN9. The court also finds that joinder of these plaintiffs would be improper under the Alabama Rules of Civil Procedure. The Alabama Rules of Civil Procedure regarding joinder of parties are virtually identical to the Federal Rules of Civil Procedure that govern joinder of parties in federal court. Ala. R. Civ. P. 20. Additionally, like its Federal counterpart, the Alabama joinder

rule is intended to promote trial convenience and limit prejudice to the parties involved. *Turpin Vise Ins. Agency. Inc. v. Foremost Ins. Co.,* 705 So.2d 368, 370-71 (Ala.1997). Accordingly, the court's reasoning discussed below supports a finding that joinder of these plaintiffs in a single civil action would be improper under the Alabama Rules. *See also City of Birmingham v. City of Fairfield,* 396 So.2d 692, 696 (Ala.1981) (stating that because Alabama procedural rules are modeled after federal procedural rules, Alabama courts look to federal court decisions for guidance when construing Alabama Rules).

*\*4 Because the court finds that the Plaintiffs that destroy diversity jurisdiction are fraudulently joined it may ignore the citizenship of the those parties and exercise jurisdiction over this civil action. Once the court properly exercises jurisdiction, the Federal Rules of Civil Procedure may be applied to shape this civil action to one that comports with those Rules. Accordingly, the court will exercise its discretion under Federal Rule of Civil Procedure 21 and dismiss the non-diverse Plaintiffs' claims without prejudice. Additionally, the court will examine the propriety of joining the remaining two Plaintiffs in a single civil action. [FN10]

> FN10. The remaining two Plaintiffs, Chaney and Williams, are Alabama citizens. According to the certified copy of the docket for this civil action forwarded to this court by the United States District Court for the Middle District of Alabama, Plaintiffs filed an Amended Complaint on April 16, 1998, after several defendants filed answers, naming Qualitest Pharmaceuticals, Incorporated ("Qualitest") as a defendant. Qualitest is also an Alabama citizen which would destroy diversity jurisdiction. However, on March 22, 1999, both Chaney and Williams filed motions to dismiss Qualitest and certain other defendants from this civil action. The court will grant those motions removing the diversity destroying defendant from this civil action.

2. Permissive Joinder of Remaining Plaintiffs

Plaintiffs assert that they are properly joined in this action under Federal Rule of Civil Procedure 20(a). [FN11] Joinder of plaintiffs under Rule 20(a) is proper if the right asserted arises "out of the same

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

transaction, occurrence, or series of transactions or occurrences" and if there is a "question of law or fact common to all these persons" arising in the action. Fed.R.Civ.P. 20(a). Plaintiffs argue that Rule 20(a) is satisfied because all plaintiffs were "harmed by diet drugs manufactured, marketed, and sold by the defendants." (Pls.' Mem. Supp. Mot. to Remand at 7.) They further assert that "the facts pertaining to the Defendants' conduct are common to all of the Plaintiffs" and "the legal issues of duty, breach of duty, proximate cause and resulting harm are common to all of the Plaintiffs." Id. Plaintiffs also argue that their respective purchases of phentermine, dexfenfluramine and fenfluramine are a series of transactions that satisfy the transaction or occurrence requirement of Rule 20(a). The court recognizes that there may be questions of law and fact that are common to these Plaintiffs regarding their respective claims against Defendants. However, the court disagrees with Plaintiffs' assertions that their respective purchases and ingestion of diet drugs, as presently alleged, are a series of transactions or occurrences which satisfy Rule 20(a).

> FN11. Rule 20(a) states in relevant part:
> (a) Permissive Joinder. All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action.
> Fed.R.Civ.P. 20(a).

To satisfy Rule 20(a)'s transaction or occurrence requirement, "the central facts of each plaintiff's claim [must] arise on a somewhat individualized basis out of the same set of circumstances." In re Orthopedic Bone Screw Prod. Liab. Litig., MDL No. 1014, 1995 WL 428683, at *2 (E.D.Pa. July 17, 1995). The claims of plaintiffs who have not purchased or received diet drugs from an identical source, such as a physician, hospital or diet center, do not satisfy the transaction or occurrence requirement. See Simmons v. Wyeth Lab., Inc., No. 96-6631, 1996 WL 617492, at *4 (E.D.Pa. Oct. 24, 1996) (severing misjoined plaintiffs under similar circumstances). The remaining Plaintiffs, who are both Alabama residents, do not allege that they purchased or received diet drugs from an identical source. However, because these remaining Plaintiffs are Alabama citizens it is possible they purchased or received diet drugs from the same source. The court will not sever these plaintiffs at this time. Rather, for

the reasons explained below the court will defer that decision to the appropriate transferor court upon remand by the Judicial Panel on Multidistrict Litigation ("JPML").

*5 The court notes that several other Complaints transferred to this court for inclusion in MDL No. 1203 list multiple plaintiffs in a single civil action. In order to efficiently direct the court's resources to the pretrial coordination efforts that it was designated to perform, the court is not inclined at this stage of the litigation to address the propriety of joinder, except in the most egregious cases. This case, with eleven Plaintiffs selected from seven different states where, coincidentally, a number of Defendants also have citizenship seems to have been an innovative, but unwise, pleading strategy that interferes with the court's ability to administer this case for pretrial purposes. Cases that do not present similarly objectionable elements will not likely be candidates for misjoinder consideration in this transferee court. Rather, such objections should be raised in the transferor districts upon remand by the JPML.

### III. CONCLUSION

For the foregoing reasons, the court will deny Plaintiffs' motion to remand the civil action back to state court and drop certain Plaintiffs from this civil action pursuant to Rule 21 of the Federal Rules of Civil Procedure.

An appropriate Order follows.

### PRETRIAL ORDER NO. 769

AND NOW, TO WIT, this 16th day of July, 1999, upon consideration of plaintiff Maggie M. Chaney's, Betty J. Williams', Leroy T. Trotter's, John E. Reed's, James F. Barthel's, Virginia Ann Hopps', Virginia Hassell's, Evelyn Turner's, Deborah Saunders', Catherine Herman's and Mary C. Smith's motion to remand, IT IS ORDERED that said motion is DENIED.

IT IS FURTHER ORDERED that, pursuant to Federal Rule of Civil Procedure 21, Plaintiffs James F. Barthel, Virginia Ann Hopps, Virginia Hassell, Evelyn Turner, Deborah Saunders and Catherine Herman are DROPPED from this civil action as follows:

(1) dropped plaintiffs have thirty (30) days from the date of this Order to file a new complaint, in a proper venue, containing the claims that they pled in their original complaints;

(2) dropped plaintiffs shall not name new or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                Page 7
Not Reported in F.Supp.2d, 1999 WL 554584 (E.D.Pa.)
(Cite as: 1999 WL 554584 (E.D.Pa.))

additional defendants in any complaints filed pursuant to this Order, but a plaintiff may name fewer defendants;

(3) when a new complaint is filed, if filed in federal court, plaintiff's counsel shall notify the Judicial Panel on Multidistrict Litigation ("JPML") that the new civil action is a potential tag-along action and has been filed. Plaintiff's counsel shall also forward to the JPML a copy of both the newly filed complaint and the docket sheet for each action;

(4) defendants shall not file any notices of opposition with the Clerk of the JPML with regard to the JPML's entry of a conditional transfer order to this district for inclusion in MDL No. 1203 for any of the potential tag-along actions filed pursuant to this Order;

(5) dropped plaintiffs are deemed to have ongoing MDL No. 1203 actions currently before this court for all purposes during the time period between the date of this Order and any filing under this Order of a new complaint and while their actions are in the process of being transferred as tag-along actions to this court. Dropped plaintiffs continue to be under the obligation to furnish required case-specific discovery on a timely basis;

*6 (6) dropped plaintiffs who choose not to file new civil actions in federal court within the thirty (30) day period will have their actions dismissed with prejudice by the court unless such plaintiff notifies this court, in writing, within the same thirty (30) day period that a new civil action has been filed in a state court;

(7) after the expiration of the thirty (30) day time period for filing of new complaints for dropped plaintiffs, upon being advised in writing as to which of the dropped plaintiffs have filed new complaints the court will enter an order dismissing those plaintiffs from this civil action without prejudice; and

(8) for the application of statutes of limitations, laches, or other time bar laws, the filing date of a newly filed action pursuant to this Order shall be deemed to relate back to the date that any dropped plaintiff originally filed his or her complaint in so far as the new complaint alleges only the claims alleged in the original complaint and joins only the defendants named (or fewer) in the original complaint or the successors of such original defendants.

IT IS FURTHER ORDERED that:

(1) plaintiff Maggie M. Chaney's motion to dismiss (document # 200748) defendants Gate Pharmaceuticals, a division of Teva Pharmaceuticals, USA, Inc., Jones Medical Industries, Inc. f/k/a/ Abana Pharmaceuticals, Inc., Richwood Pharmaceutical Company, Inc. a/k/a/ Shire Richwood, Inc., Ion Laboratories, Inc., Medeva Pharmaceuticals, Inc., Goldline Laboratories, Inc., Qualitest Pharmaceuticals, Inc., Zenith Goldline Pharmaceuticals, Inc., United Research Laboratories, Inc., Modern Wholesale Drug Co. Inc. f/k/a Rugby Laboratories, Inc., Geneva Pharmaceuticals, Inc., Camall Company and King Pharmaceuticals without prejudice is GRANTED.

(2) plaintiff Betty Williams' motion to dismiss (document # 200748) defendants Gate Pharmaceuticals, a division of Teva Pharmaceuticals, USA, Inc., Smithkline Beecham Corporation, Jones Medical Industries, Inc. f/k/a/ Abana Pharmaceuticals, Inc., Richwood Pharmaceutical Company, Inc. a/k/a/ Shire Richwood, Inc., Ion Laboratories, Inc., Medeva Pharmaceuticals, Inc., Qualitest Pharmaceuticals, Inc., United Research Laboratories, Inc., Modern Wholesale Drug Co. Inc. f/k/a Rugby Laboratories, Inc., Geneva Pharmaceuticals, Inc., Camall Company and King Pharmaceuticals without prejudice is GRANTED.

(3) plaintiff James F. Barthel's, Virginia Ann Hopps', Virginia Hassell's, Evelyn Turner's, Deborah Saunders's and Catherine Herman's motions to dismiss certain Phentermine Defendants (document # 200748) are DENIED AS MOOT.

(4) plaintiff Mary Smith's motion for voluntary dismissal without prejudice (document # 200749) is GRANTED.

(5) Qualitest Pharmaceuticals Inc.'s motion to dismiss and motion to file a reply (document # 200258) are DENIED AS MOOT.

(6) Plaintiffs' motion to dismiss defendant Upjohn Company (document # 200750) is GRANTED.

(7) Plaintiffs' motion to dismiss defendant Geneva Pharmaceuticals, Incorporated (document # 200874) is GRANTED.

**Motions, Pleadings and Filings (Back to top)**

• 2001 WL 34133956 (Trial Motion, Memorandum and Affidavit) American Home Products Corporation%7Ds Response to Elliot Palay%7Ds Motion to Exercise Initial OPT-OUT and to Rescind His Accelerated Implementation OPT-OUT contract (Jun. 14, 2001)

• 2001 WL 34133957 (Trial Motion, Memorandum and Affidavit) Class Counsel%7Ds Response to Claimants%7D Motion to Exercise an Initial OPT-

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 8
Not Reported in F.Supp.2d, 1999 WL 554584 (E.D.Pa.)
**(Cite as: 1999 WL 554584 (E.D.Pa.))**

OUT Right; Motion to Rescind the Contract (Failure to Comply With an Essential Condition of the Contract, Breach of a Material Contrctual Term, Failure of Consideration, Bre ach of Duty of Good Faith and Fair Dealing) Allowing Claimant to Pursue compensatory as Well as Punitive Damage Claims Against Defendant AHP With No Statute of Limitations BAR (May. 18, 2001)

• 2001 WL 34133965 (Trial Motion, Memorandum and Affidavit) (Mar. 05, 2001)

• 2001 WL 34129540 (Trial Motion, Memorandum and Affidavit) Motion to Request a Hearing (Mar. 01, 2001)

• 2001 WL 34129541 (Trial Motion, Memorandum and Affidavit) Hmo Louisiana, Comed Medical Expense Fund and Central States Health and Welfare Benefit Fund's Objections to and Motion to Vacate Court Approved Procedure No.1 (Mar. 01, 2001)

• 2001 WL 34129542 (Trial Motion, Memorandum and Affidavit) Hmo Louisiana, Comed Medical Expense Fund, and Central States Health & Welfare Benefits Fund's Motion to Enjoin the Ahp Settlement Trust from Disbursing any Funds to Individual Claimants and to Stay all Proceedings Regarding the Allocation of Damages Awards from Either Fund a or Fund B (Mar. 01, 2001)

• 2001 WL 34133953 (Trial Motion, Memorandum and Affidavit) Plaintiffs%7D Memorandum of Law in Support of the Joint Motion to Require the Ahp Settlement Trust to Commence Distribution of the Proceeds of Settlement Notwithstanding the %7F%7FPosition%7D%7D Asserted by the United States (Feb. 26, 2001)

• 2001 WL 34129543 (Trial Motion, Memorandum and Affidavit) Motion and Memorandum for Intervention (Feb. 08, 2001)

• 2001 WL 34131304 (Trial Motion, Memorandum and Affidavit) HMO Louisiana's Motion to Stay Local Rule 23.1 Class Certification Briefing (Jan. 11, 2001)

• 2000 WL 34016472 (Trial Motion, Memorandum and Affidavit) Dunn Objectors%7D Memorandum in Further Support of Motion to Require Disclosure with Respect to Post-Approval Settlements by Class Counsel (Dec. 01, 2000)

• 2000 WL 34016445 (Trial Filing) Pretrial Order

No. 1516 (Nov. 22, 2000)

• 2000 WL 34016444 (Trial Filing) Pretrial Order No. 1488 (Nov. 06, 2000)

• 2000 WL 34016474 (Trial Motion, Memorandum and Affidavit) Response of Dunn Objectors to Class Counsels%7D Motion to Impose a Supersedeas Bond Requirement for the Filing of an Appeal (Nov. 06, 2000)

• 2000 WL 34016469 (Trial Motion, Memorandum and Affidavit) Hmo L ouisiana%7Ds Motion to Stay Local Rule 23.1 Class Certification Briefing (Oct. 27, 2000)

• 2000 WL 34016475 (Trial Motion, Memorandum and Affidavit) Memorandum of Jane Scuteri, et al., in Opposition to Class Counsels%7D Motion to Impose a Bond Requirement on Objectors for the Filing of an Appeal (Oct. 24, 2000)

• 2000 WL 34016443 (Trial Filing) Pretrial Order No. 1433 (Sep. 15, 2000)

• 2000 WL 34016467 (Trial Motion, Memorandum and Affidavit) Motion to Intervene and for Rehearing on Pretrial Order No. 1415 (Sep. 09, 2000)

• 2000 WL 34015561 (Trial Motion, Memorandum and Affidavit) American Home Products Corporation Defendants' Motion to Strike Class Action Allegations from Complaint (Sep. 07, 2000)

• 2000 WL 34015562 (Trial Motion, Memorandum and Affidavit) American Home Products Corporation's M otion f or P rotective O rder ( Sep. 0 7, 2000)

• 2000 WL 34016466 (Trial Motion, Memorandum and Affidavit) Movant%7Ds Memorandum in Support of Motion to Intervene and for Rehearing (Sep. 06, 2000)

• 2000 WL 34016464 (Trial Motion, Memorandum and Affidavit) The Flaintiffs%7D Management Committee%7Ds Response and Concurrence in Interneuron Pharmaceuticals, Inc.%7Ds Amended Motion for Return of Funds (Aug. 29, 2000)

• 2000 WL 34016463 (Trial Motion, Memorandum and Affidavit) Interneuron Pharmaceuticals, Inc.%7Ds Amended Motion for Return of Funds (Aug. 24, 2000)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 9
Not Reported in F.Supp.2d, 1999 WL 554584 (E.D.Pa.)
**(Cite as: 1999 WL 554584 (E.D.Pa.))**

• 2000 WL 34016458 (Trial Motion, Memorandum and Affidavit) Class Counsels%7D Memorandum in Support of Final Settlement Approval (Apr. 21, 2000)

• 2000 WL 34019582 (Trial Motion, Memorandum and Affidavit) Fleming Objectors' Bench Brief to the Court for the Fairness Hearing (Apr. 14, 2000)

• 2000 WL 34016456 (Trial Motion, Memorandum and Affidavit) Fleming Objectors%7D memorandum in Support of Objections and Motion to Disapprove the Settlement Agreement (Mar. 30, 2000)

• 2 000 W L 3 4016482 (Trial P leading) O bjection o f Vicki Dunn, et al., to Proposed Class Action Settlement (Mar. 30, 2000)

• 2000 WL 34016476 (Trial Motion, Memorandum and Affidavit) (Mar. 29, 2000)

• 2000 WL 34016449 (Trial Motion, Memorandum and Affidavit) Defendant American Home Products Corporation%7Ds Memorandum in Opposition to HMO Louisiana%7Ds Motion to Intervene for the Purpose of Objecting to the Proposed Settlement and Conditional Class Certification (Feb. 14, 2000)

• 2000 WL 34016450 (Trial Motion, Memorandum and Affidavit) Class Plaintiffs Response to the Motion of Paul J. Napoli, Marc Jay Bern, and Napoli, Kaiser & Bern for an Order Striking Plaintiffs%7D Motion f or a n O rder t o S how Cause, E tc. (Feb. 0 1, 2000)

• 1999 WL 33644421 () (Dec. 22, 1999)

• 1999 WL 33740591 (Trial Motion, Memorandum and Affidavit) Motion to Intervene by Certain Health Benefit Providers for Purposes of Requesting Clarification of, and Objecting to, the Proposed Interneuron Agreement of Compromise and Settlement (Feb. 28, 1999)

• 1999 WL 33740476 (Trial Motion, Memorandum and Affidavit) Intervenors' Motion for Summary Judgment Denying Class Certification Under Rule 23(b)(1)(B) (Feb. 23, 1999)

• 1999 WL 33740493 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Intervenors' Motion for Summary Judgment Denying Class Certification Under Rule 23(b)(1)(B) (Feb. 23, 1999)

• 1999 WL 33740479 (Trial Motion, Memorandum

and Affidavit) Plaintiff's Response to State Court Intervenor's Motion for Summary Judgment Denying Class Certification Under Rule 23(a)(4) (Feb. 22, 1999)

• 1999 WL 33740474 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Management Committee's Motion t o S trike O bjections o f M argaret L . W atson to the Proposed Interneuron Limited Fund Class Settlement or in the Alternative to Compel the Deposition of Margaret L. Watson in Philadelphia Prior to February 19, 1999 or Suffer the Sanction of the Objections Being Deemed Stricken (Feb. 16, 1999)

• 1999 WL 33740469 (Trial Motion, Memorandum and Affidavit) State Court Intervenors' Motion for Summary Judgment Denying Class Certification Under Rule 23(a)(4) (Feb. 09, 1999)

• 1999 WL 33740477 (Trial Motion, Memorandum and Affidavit) Objections of Smithkline Beecham Corporation to Proposed Settlement and Request for Time to Speak at Hearing (Feb. 08, 1999)

• 1999 WL 33740478 (Trial Motion, Memorandum and Affidavit) Comments, Objections, Suggestions and Request to Speak of the Blue Cross/ Blue Shield Plans as to the Proposed Interneuron Mandatory Limited Fund Class Action Settlement (Feb. 04, 1999)

• 1998 WL 34190437 (Trial Motion, Memorandum and Affidavit) Defendant Les Laboratoires Servier's Motion to Dismiss for Lack of Personal Jurisdiction and for Forum Non Conveniens (Dec. 21, 1998)

• 1998 WL 34190439 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Patti Jo Hellmig's Motion to Intervene (Dec. 04, 1998)

• 1998 WL 34190456 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Patti Jo Hellmig's Motion to Intervene (Dec. 04, 1998)

• 1998 WL 34190427 (Appellate Petition, Motion and Filing) Plaintiffs Carol and Armond Aserinsky's Response to PMC's Petition to Set Aside Money for Counsel Fees and Costs in MDL 1203 and to Remand This Case for Trial (Nov. 12, 1998)

• 1998 WL 34190450 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Plaintiffs Carol and Armond Aserinsky's Response to PMC's Petition to Set Aside Money for Counsel Fees

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 554584 (E.D.Pa.)
**(Cite as: 1999 WL 554584 (E.D.Pa.))**

Page 10

and Costs in MDL 1203 and to Remand this Case for
Trial (Nov. 12, 1998)

•          2:98cv20478_____(Docket)
(Jun. 12, 1998)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT S

Westlaw.

Not Reported in F.Supp.2d                                                                Page 1
Not Reported in F.Supp.2d, 2003 WL 21276425 (S.D.N.Y.)
(Cite as: 2003 WL 21276425 (S.D.N.Y.))

H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
In re: REZULIN PRODUCTS LIABILITY
LITIGATION (MDL No. 1348)
**No. MDL 1348, 00 Civ. 2843(LAK).**

June 2, 2003.

PRETRIAL ORDER NO. 150

KAPLAN, J.

*\*1* This Document Relates to: 02 Civ. 6812(LAK)

(Motions to Remand--*Lusteck* )

This action was brought in a Mississippi state court, removed to federal court on the basis of diversity notwithstanding the presence of a non-diverse physician defendant, and transferred to this Court. Plaintiff moves to remand on the ground that the physician defendant deprives the Court of complete diversity.

The complaint against the physician is for medical malpractice (count II) and breach of express and implied warranty that Rezulin was safe and effective (counts V and VI). Counts V and VI are asserted also against the drug's manufacturer. The alleged malpractice was the physician's alleged negligent failures to (1) conduct liver and cardiac monitoring even after physicians were warned of the risk of liver and cardiac damage, (2) warn plaintiff of the risks associated with Rezulin and (3) diagnose plaintiff's liver dysfunction in time to prevent irreparable injury. (Cpt ¶ ¶ 26-28)

Magistrate Judge Katz, in a report and recommendation dated April 28, 2003, concluded that plaintiff had no meaningful possibility of success against the doctor on counts V, VI, and the failure to warn and monitor claims in count II, but thought the failure to diagnose malpractice claim sufficient, albeit misjoined with the claims against the manufacturers and other defendants in this case. He therefore recommended severance and remand of the malpractice claim to the state court, that the doctor be dropped as a defendant here, and that the motion to remand otherwise be denied. Plaintiff objects, arguing that the physician was joined properly, that the sufficiency of the malpractice claim against him destroys diversity, that the physician in any case did not join in the removal as required, and that the entire action therefore should be remanded.

Everything turns on the propriety of the joinder of the physician. The malpractice claim here is based in substance on the physician's failure to diagnose plaintiff's alleged liver dysfunction. The breach of warranty and other claims go principally to the safety and efficacy of the drug and have little if anything to do with the malpractice claim. For the reasons set forth by the Magistrate Judge, the joinder of the malpractice claim with the others was inappropriate because the claims do not both involve common questions of law or fact and assert "joint, several, or alternative liability ... arising from the same transaction, occurrence, or series of transactions or occurrences." Fed.R.Civ.P. 20. *Accord, e.g., Lee v. Mann,* 2000 WL 724046, at \*2 (Va.Cir.Ct. Apr. 5, 2000) (claims against drug manufacturer and malpractice claim against prescribing physician did "not arise out of the 'same transaction or occurrence' "). Plaintiff has no meaningful prospect of success on the other claims against the physician.

Accordingly, the Court adopts the report and recommendation of the Magistrate Judge. The motion to remand is granted to the extent, and only to the extent, that Count II of the complaint is severed and remanded to the Court from which it was removed. Dr. Evans is dropped as a defendant on the balance of the complaint. The motion to remand is denied in all other respects.

*\*2* SO ORDERED.

Not Reported in F.Supp.2d, 2003 WL 21276425 (S.D.N.Y.)

**Motions, Pleadings and Filings** (Back to top)

• 2004 WL 2973888 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment as

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21276425 (S.D.N.Y.)
**(Cite as: 2003 WL 21276425 (S.D.N.Y.))**

Page 2

to Claims for Certain Side-Effects Warned About in the Adverse Reactions Table of the Rezulin Labeling (Jan. 06, 2004)

• 2003 WL 23951442 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Memorandum of Law in Support of Their Motion for Summary Judgment as to Non-Liver-Related Claims Asserted by Plaintiff Orlean Maxwell (Nov. 07, 2003)

• 2003 WL 23951439 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment as to Non-Liver-Related Claims (Aug. 07, 2003)

• 2001 WL 34133941 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of the Pec's Petition for an Order Securing an Equitable allocation of Counsel Fees and Costs for Common Benefit Work (May. 14, 2001)

• 2001 WL 34133949 (Trial Filing) Pretrial Order No. 19 (May. 14, 2001)

• 2001 WL 34133975 (Appellate Petition, Motion and Filing) Pec%7Ds Petition for an Order Securing an Equitable Allocation of Counsel Fees and Costs for Common Benefit Work (May. 14, 2001)

• 1:00cv02843 (Docket) (Apr. 13, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT T

Westlaw.

Not Reported in S.E.2d                                                                                    Page 1
Not Reported in S.E.2d, 51 Va. Cir. 465, 2000 WL 724046 (Va. Cir. Ct.)
**(Cite as: 2000 WL 724046 (Va. Cir. Ct.))**

C
              Circuit Court of Virginia.
Kathy LEE (Formerly known as Kathy Lee Douglas)
                        v.
        H. Thompson MANN, M.D., et al.
                **No. LE-424-1.**

                   April 5, 2000.

Dear Counsel:

HUGHES, J.

  **\*1** As you know the plaintiff has asked the court to
reconsider the ruling made in October finding
misjoinder of the defendants.

  Briefly, plaintiff has brought claims against the
defendants, a doctor and pharmaceutical
manufacturer, for injuries received from the use of a
diet drug. The doctor defendant prescribed the drug.
The manufacturer produced the drug for sale in the
marketplace.

  Plaintiff asserts, *inter alia,* that the defendants are
joint tortfeasors whose actions brought about a single
indivisible injury. Defendants assert that they are
misjoined because any liability that may be found
against either would not be a basis for liability as to
the other. Essentially, the claim against the doctor is
for medical malpractice in prescribing the drug. The
claim against the manufacturer is for products
liability where the claims are founded upon
negligence failure to warn breach of express and
implied warranty etc.

  Both sides rely on *Fox v. Deese,* 234 Va. 412 (1987).
There, the court dealt with questions of misjoinder of
the parties defendant and causes of actions. The court
said:
    In *Norfolk Bus Term.,* we stated that 'under our
    system of pleading, unless the acts of independent
    tort-feasors concur in producing a single indivisible
    injury or damage, they may not be sued jointly in a
    single action.'
    *Norfolk Bus Term.,* however, was decided before
    the 1954 enactment of Code § 8.01-272 and before
    the 1974 enactment of Code § 8.01-281.Code §
    8.01-272 provides in pertinent part:
    In any civil action, a party may plead as many
    matters, whether of law or fact, as he shall think

    necessary. A party may join a claim in tort with
    one i n c ontract p rovided t hat a ll c laims s o j oined
    arise out of the same transaction or occurrence. The
    court, in its discretion, may order a separate trial
    for any claim.
    Code § 8.01-281 provides in pertinent part:
    A. A party asserting ... a claim ... may plead
    alternative facts and theories of recovery against
    alternative parties, provided that such claims ... so
    joined arise out of the same transaction or
    occurrence....
    B. The court may, upon motion of any party, order
    a separate trial of any claim ... and of any separate
    issue or of any number of such claims....
    In addition, Rule 1:4(k) provides in pertinent part:
    A party asserting ... a claim ... may plead
    alternative facts and theories of recovery against
    alternative parties, provided that such claims ...
    arise out of the same transaction or occurrence.
    When two or more statements are made in the
    alternative and one of them if made independently
    would be sufficient, the pleading is not made
    insufficient by the insufficiency of one or more of
    the alternative statements. A party may also state as
    many separate claims ... as he has regardless of
    consistency and whether based on legal or
    equitable grounds.
    The foregoing statutes and rule represent a radical
    departure from the common-law pleading rule
    stated in *Norfolk Bus Term.*
    **\*2** *Id.* at 422-423. (*alterations in original) (quoting
    Norfolk Bus Term. v. Sheldon,* 188 Va. 288, 296
    (1948) ( *internal citation omitted) and citing Tanner
    v. Culpeper C. Co.,* 117 Va. 154 (1915); *McMullin v.
    Church,* 82 Va. 501 (1886).

  Here, the facts alleged causing injury do not arise out
of the "same transaction or occurrence." The court
will adhere to the prior ruling.

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.