IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| KATHLEEN A. MARTIN,<br><br>                    Plaintiff,<br><br>        v.<br><br>MERCK & CO., INC., et al.<br><br>                    Defendants. | CIVIL ACTION No. 05-11716-MLW |

## MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION
## TO AMEND THE COMPLAINT

Defendant Merck & Co., Inc. ("Merck"), through its undersigned counsel, hereby submits this memorandum in opposition to Plaintiff Kathleen Martin's ("plaintiff") Cross Motion to Amend the Complaint ("Motion to Amend").

## INTRODUCTION

Plaintiff commenced this action in the Massachusetts Superior Court of Essex County against Merck and various healthcare defendants for injuries allegedly resulting from her use of the prescription drug VIOXX®, which was manufactured by Merck. Plaintiff sought to evade federal jurisdiction by joining her completely diverse product liability claims against Merck with vague, conclusory, and wholly unrelated claims against certain Massachusetts healthcare providers -- Dr. Peter Millet and Brigham & Women's Health Hospital ("Brigham & Women's") (collectively, "Massachusetts Healthcare Defendants").

On August 18, 2005, Merck removed this case to federal court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332, arguing that the citizenship of the Massachusetts Healthcare Defendants, the only non-diverse defendants, should be ignored for removal purposes

because these defendants are fraudulently joined or misjoined.  On August 29, 2005, plaintiff

filed a Motion to Remand, relying on her joinder of a Massachusetts physician, Dr. Peter Millet.

Merck filed an Opposition to Plaintiff's Motion to Remand on September 12, 2005.

Now, as an apparent last-ditch effort to evade this Court's jurisdiction, plaintiff seeks to

file a proposed Amended Complaint that purports to cure the deficiencies in the original

Complaint against the Massachusetts Healthcare Defendants.  But plaintiff's Amended

Complaint only highlights the fact that the original Complaint made no viable claims against the

Massachusetts Healthcare Defendants and was properly removed.  Accordingly, plaintiff's

attempt to amend the Complaint at this time should be denied as a transparent attempt to defeat

federal jurisdiction over this matter now that the plainly fraudulent nature of her claims against

the Massachusetts Healthcare Defendants has been exposed.

## STATEMENT OF FACTS

**The Original Complaint**

On or about April 19, 2005, plaintiff commenced this action against Merck, the

Massachusetts Healthcare Defendants, and other defendants[1] by filing a complaint in Essex

County Superior Court in the Commonwealth of Massachusetts (the "Original Complaint").  The

only specific factual allegation that the plaintiff made as to Dr. Millet is that she "on multiple

occasions was treated by Defendant Millet and provided prescriptions by Defendant Millet."

(Compl. ¶ 95)  The plaintiff further alleged in the Original Complaint that "Defendant breached

the standard of medical care, or in other words, was negligent in the delivery of medical services

and treatment as set forth above and thus breached the standard of due care and diligence in the

medical treatment of the Plaintiff."  (Compl. ¶ 96)  Plaintiff did not lodge *any* allegations at all

---

[1]  The Complaint also lodged claims against diverse defendants Dr. Roshini-Pinto Powell, Dr. Charles Carr, and Dartmouth-Hitchcock Medical Center.

against defendant Brigham & Women's Hospital, except to the extent she lodged Count VII against Dr. Millet and alleged, within that Count, that Dr. Millet was affiliated with and practicing under the auspices of Brigham & Women's. (Compl. ¶¶ 2, 14) Based on these vague and conclusory allegations, Merck argued in its Notice of Removal and Opposition to Plaintiff's Motion to Remand that plaintiff's claims against the Massachusetts Healthcare Defendants in the Original Complaint did not have a "reasonable basis in law and fact," and therefore that they were fraudulently joined. *Mills v. Allegiance Healthcare Corp.*, 178 F. Supp. 2d 1, 4-5 (D. Mass. 2001).

**The Proposed Amended Complaint**

Now that the deficiencies in plaintiff's Original Complaint have been brought to her attention, she seeks to evade this Court's jurisdiction by adding additional factual details about her claims against the Massachusetts Healthcare Defendants. In plaintiff's proposed Amended Complaint, she now lodges counts against Brigham & Women's Hospital (Counts IV, V, and VI), whereas the Original Complaint did not make any claims against Brigham & Women's Hospital at all. The proposed Amended Complaint also adds new factual details about the conduct of the healthcare defendants -- details that did not appear anywhere in the Original Complaint -- including, but not limited to the following allegations:[2]

- The Defendant medical doctors were aware of the combination of drugs being prescribed to Plaintiff and/or participated in the prescription of VIOXX and/or drugs that had known contraindications to VIOXX. (Compl. ¶ 86)

- Defendant Dartmouth and Brigham and Women's Hospital's [sic] entered into a contract with Plaintiff to provide

---

[2] Plaintiff lodges so many completely new allegations against the healthcare defendants that Merck specifically identifies only a representative sampling of those allegations here; to include all of the new allegations in plaintiff's proposed Amended Complaint would require reproducing several pages of the Amended Complaint in their entirety.

professionally competent and reasonably adequate medical services. (Compl. ¶ 91)

- Defendant Dartmouth and Brigham and Women's Hospital failed to provide medical services in a professional and reasonable manner in accordance with standard practices and requirements. (Compl. ¶ 92)

- Defendant Dartmouth and Brigham and Women's Hospital failed to warn Plaintiff of the dangers of Vioxx, even though Defendant Dartmouth and Brigham and Women's Hospital and/or its medical professionals and staff knew or had reason to know of the dangers of Vioxx and thus failed to deliver the medical and supporting services in accordance with the agreement between the parties and/or in accordance with standard medical practice. (Compl. ¶ 93)

- As a direct proximate, and foreseeable result of Defendant Dartmouth-Hitchcock Medical Center's and Brigham and Women's Hospital's acts and otherwise wrongful conduct, Plaintiff was economically harmed.  Defendant Dartmouth-Hitchcock Center and Brigham and Women's Hospital profited and benefited from the sale of Vioxx, even as Plaintiff suffered this harm. (Compl. ¶ 97)

- Defendant Dartmouth-Hitchcock Medical Center's and Brigham and Women's Hospital has voluntarily accepted and retained these profits and benefits, derived from Plaintiff with full knowledge and awareness that, as a result of Defendants' unconscionable and intentional wrongdoing, Plaintiff was not receiving products of the quality, nature, fitness, or value that had been represented by Defendants or that [sic] a reasonable consumers, expected.  Plaintiff purchased medicine that she expected would improve her health, and instead found her health negatively affected. (Compl. ¶ 98)

The additional factual detail about the healthcare defendants contained in plaintiff's proposed Amended Complaint only highlights the Original Complaint's deficiencies.

## I.    THE COURT SHOULD DENY PLAINTIFF'S MOTION TO AMEND.

Plaintiff's reliance on Fed. R. Civ. P. 15(a) in her Motion to Amend is misplaced.  *See* Motion to Amend, ¶ 2.  To the contrary, 28 U.S.C. § 1447(e) governs this inquiry because Merck

has already removed this action to this Court. Nonetheless, under either standard, plaintiff's motion should be denied.

### A.  Plaintiff's Motion Should Be Dismissed Pursuant to 28 U.S.C. § 1447(e).

Plaintiff asserts that she may amend her complaint as a matter of right pursuant to Rule 15(a), but that is the incorrect analysis. As one court explained in response to a similar argument, "Plaintiff may not amend his pleading as of right where his amendment is for the purpose of attempting to defeat diversity jurisdiction." *Smith v. BCE Inc.*, 2004 U.S. Dist. LEXIS 22161, at *6 (W.D. Tex. Nov. 3, 2004) (attached hereto as Ex. A). In *Smith*, the plaintiff sought to add a new claim against a non-diverse defendant the court had already determined to have been fraudulently joined. *Id*. Treating the plaintiff's request as the equivalent of seeking to "add an in-state defendant," the court analyzed (and denied) the request pursuant to 28 U.S.C. § 1447(e). Section 1447(e) provides:

> If after removal the plaintiff seeks to join additional defendants
> whose joinder would destroy subject matter jurisdiction, the court
> may deny joinder, or permit joinder and remand the action to the
> State court.

Although the plaintiff's Motion to Amend seeks to add more substantive allegations to defendants that are fraudulently joined -- instead of joining a new non-diverse defendant -- the effect of the plaintiff's Motion to Amend is the same as if she had moved to add a Massachusetts defendant: to defeat Merck's removal right and deprive this Court of jurisdiction over these claims. *See Smith*, 2004 U.S. Dist. LEXIS 22161, at *6. The more stringent standard of § 1447(e) therefore applies here. *See, e.g.*, *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987).

Because the plaintiff brought this Motion to Amend after Merck filed its Notice of Removal, the Court must "scrutinize [the] amendment more closely than it would an ordinary

amendment." *Id.* Courts determining whether they should permit a post-removal amendment that would defeat diversity look at four factors first articulated in *Hensgens*: (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether the plaintiff has been dilatory in asking for the amendment; (3) whether the plaintiff will be significantly injured if the amendment is not allowed; and (4) any other factors bearing on the equities. *Id.*; *Montgomery v. First Family Fin. Servs., Inc.*, 239 F. Supp. 2d 600, 606 (S.D. Miss. 2002) (applying *Hensgens* factors to deny plaintiff's motion to amend the complaint to defeat diversity); *see also Abrusley v. Merck & Co.*, No. 02-0196, Report and Recommendation at 3-4 (W.D. La. June 18, 2002) (applying *Hensgens* in denying motion to amend brought by VIOXX® plaintiff after Merck filed notice of removal) (attached hereto as Ex. B). Application of these factors in this case leads to the conclusion that plaintiff's motion should be denied.

1.    ***The Purpose of Plaintiff's Amendment Is to Defeat Federal Jurisdiction.***

It is obvious that the plaintiff's primary purpose in belatedly articulating allegations against the Massachusetts Healthcare Defendants in greater detail is to attempt to defeat this Court's jurisdiction. The plaintiff states misleadingly in her Motion to Amend that the proposed Amended Complaint "cures the alleged deficiencies cited by Defendant Brigham and Women's Hospital in its motion [to dismiss]." Motion to Amend, ¶ 3. In fact, as any brief comparison of the Original Complaint and the Amended Complaint will show, plaintiff's proposed amendment does far more than add allegations concerning Brigham & Women's Hospital: the proposed Amended Complaint reorganizes the plaintiff's counts against all the defendants, adds new counts and drops others, and adds new factual allegations concerning ***all*** of the healthcare defendants. It is plain that the amendment is attempted for no purpose other than defeating the jurisdiction of this Court. *See Smith*, 2004 U.S. Dist. LEXIS, at *9 (refusing to permit

- 6 -

amendment in part because "Plaintiff's amendment can be meant for nothing more than to defeat diversity jurisdiction.").

It is well-settled that the propriety of removal is determined based on the complaint at the time the notice of removal was filed. *Coughlin v. Mutual Ins. Co.*, 776 F. Supp. 626, 628 (D. Mass. 1991) ("Fraudulent joinder exists when the complaint in effect ***at the time of removal*** states no claim against the non-diverse defendant.") (emphasis added). Merck has also, in its opposition briefing to the plaintiff's Motion to Remand, pointed the plaintiff to abundant authority holding that generic and conclusory allegations against non-diverse defendants are not sufficient to defeat removal. *See, e.g.*, *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997) ("[B]oilerplate and conclusory allegations will not suffice. Plaintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible."); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002) (recognizing that a court will not "accept as true conclusory allegations or unwarranted deductions of fact") (citation omitted); *Baisden v. Bayer Corp.*, 275 F. Supp. 2d 759, 762-63 (S.D.W. Va. 2003) (in-state physician fraudulently joined where plaintiff's claim apparently based on an alleged drug interaction is "nowhere presented on the face of the complaint, which does not assert either that there was such a drug interaction or that information about the interaction was available to [the non-diverse physician]"); *Flores v. Merck & Co.*, Civ. Action No. C-03-362, Order at 2 (S.D. Tex. Mar. 15, 2004) (in-state physician defendants fraudulently joined where "Plaintiffs make conclusory, general allegations of negligence against [in-state physicians] which they fail to support with specific, underlying facts.") (attached hereto as Ex. C); *Benavides v. Merck & Co.*, Civil Action No. L-03-CV-134, at 5 (S.D. Tex. Feb. 24, 2004) ("When considering the Plaintiff's allegations, "speculative and conclusory allegations do

not state a cause of action without factual support") (internal citations omitted) (Report and Recommendation) (attached hereto as Ex. D).

Apparently in recognition of this abundant authority, the plaintiff's proposed Amended Complaint seeks belatedly to cure deficiencies in the Original Complaint. The facts that the amendment was not attempted until after the action was removed and the new allegations were known plaintiff at the time she filed her Original Complaint only underscore the obvious: the only purpose of the amendment is to defeat federal jurisdiction. Moreover, the added detail in the proposed Amended Complaint highlights the conclusory nature of the allegations against the healthcare defendants in the Original Complaint, and further confirms the propriety of removal of that complaint.

2. ***Plaintiff Has Been Dilatory in Requesting This Amendment***.

Plaintiff has provided no reason for her delay in requesting that the Court permit her to amend her Complaint more than five months after it was filed and more than one month after Merck filed its Notice of Removal. Plaintiff has identified no reason for this delay, other than to "cure[] the alleged deficiencies" identified by Brigham & Women's Motion to Dismiss. Under both Massachusetts and federal law, a plaintiff is required to investigate its claims, including the details of its allegations against defendants, before filing a complaint in court, not afterwards, as the plaintiff attempts to do here. *See, e.g.*, Fed. R. Civ. P. 11(b); Mass. R. Civ. P. 11. Significantly, the plaintiff offers no explanation as to why she could not have outlined these still vague and conclusory allegations against each of the healthcare defendants in her Original Complaint. It is only now, after it has become clear that no claims can be maintained against the healthcare defendants under the Original Complaint, and defendant Brigham & Women's Hospital moved to dismiss the claims against it, that plaintiff has brought this Motion to Amend.

The Court should not excuse plaintiff's delay by permitting her to amend her Complaint at this late date.

### 3. *The Plaintiff Will Not be Significantly Injured if the Court Denies the Motion to Amend*.

The plaintiff has not articulated any prejudice that she would suffer if the Motion to Amend were denied, aside from asserting in a single conclusory sentence that such prejudice would occur. *See* Motion to Amend, ¶ 4. To the contrary, denying the plaintiff's Motion to Amend would not deprive her of the ability to bring claims for medical malpractice against the healthcare defendants in state court. As Merck argued in its Opposition to the plaintiff's Motion to Remand, the plaintiff's claims against the healthcare defendants -- assuming the conclusory allegations in the Original Complaint may be interpreted to state such claims -- are misjoined with the plaintiff's claims against Merck concerning VIOXX® because they do not arise out of the same transaction or occurrence as the claims against Merck. Rather, the claims are based on different alleged injuries, different events, and different alleged risks associated with VIOXX®.

In fact, Plaintiff admits as much in her Motion to Remand, stating that the claims against Merck "stem[] from the concealment of harmful effects on an individual from a *cardio standpoint*" while claims against Dr. Millet arise out of his alleged failure to heed Merck's written warning with respect to the alleged *gastrointestinal* risks of the use of VIOXX® with aspirin. (Pl.'s Mot. to Remand at 3.) Any potential liability arising out of an alleged failure to warn of the cardiovascular risks of VIOXX® is unrelated to potential liability arising out of a physician's failure to heed the warnings relating to alleged gastrointestinal injuries, which Plaintiff admits are contained in the FDA-approved prescribing information made available to the medical community by Merck. (Pl.'s Mot. to Remand at 3 and Exhibit A thereto (attaching portion of prescribing information for VIOXX® in which it states, among other things,

- 9 -

"administration of low-dose aspirin with VIOXX may result increased rate of ulceration or other complications, compared to use of VIOXX alone").)

For this reason, any claims the plaintiff has stated against the healthcare defendants are misjoined with her claims against Merck. Accordingly, in its Opposition to the plaintiff's Motion to Remand, Merck suggested that if the Court finds that any claims against the in-state defendants survive fraudulent joinder scrutiny, it should sever those claims, remand them to state court, assert jurisdiction over the claims against Merck, and allow them to be transferred to the VIOXX® MDL proceeding. Denying the plaintiff's Motion to Amend the complaint will not prejudice the plaintiff because she can bring those claims separately against the healthcare defendants in some other court.

### 4. *The Plaintiff's Motion to Amend Is Futile Because No Reasonable Basis for Recovery Exists Against the Healthcare Defendants*.

Plaintiff's motion is futile because the questions of fraudulent joinder, the propriety of removal, and the Court's jurisdiction must be decided on the basis of the Original Complaint regardless of whether an amendment is permitted. It is well-settled that fraudulent joinder is determined based upon the operative pleading at the time of removal. *See Coughlin*, 776 F. Supp. at 628. This rule renders amendments directed at bolstering claims against fraudulently joined defendants futile. In *Cavallini v. State Farm Mut. Auto Ins. Co*., 44 F.3d 256 (5th Cir. 1995), the Fifth Circuit refused to permit an amendment under circumstances similar to this case. In *Cavallini*, the court first determined that in-state defendants were fraudulently joined, and then held that it would be futile to grant a motion to amend because "a complaint amended post-removal cannot divest a federal court of jurisdiction." *Id*. at 264. *See also Oiler v. Biomet Orthopedics, Inc*., 2003 U.S. Dist. LEXIS 16548, at *7 (E.D. La. Sept. 17, 2003) ("a post-removal amendment that attempts to alter the causes of action alleged in the state petition

will not defeat jurisdiction of a case that is properly removed") (attached hereto as Ex. E). This

rule makes good sense, the Fifth Circuit explained, because otherwise

> disposition of the issue would never be final, but would instead
> have to be revisited every time the plaintiff sought to amend the
> complaint to assert a new cause of action against the nondiverse
> defendant, all at considerable expense and delay to the parties and
> the state and the federal courts involved. Limiting the removal
> jurisdiction question to the claims in the state court complaint
> avoids that unacceptable result, and permits early resolution of
> which court has jurisdiction, so that the parties and the court can
> proceed with, and expeditiously conclude, the litigation.

*Cavallini*, 44 F.3d at 264. It would be equally futile to permit an amendment here because, as

Merck explained in its Notice of Removal and Opposition to Plaintiff's Motion to Remand, the

non-diverse defendants were fraudulently joined in the Original Complaint, and this Court

therefore has jurisdiction that cannot be divested by amendment.

As Merck has argued consistently in briefing to this Court, the plaintiff has no reasonable

basis for recovery against any of the healthcare defendants because her allegations that those

defendants should have known of the alleged dangers of VIOXX® is entirely inconsistent with

her allegations that Merck misled everyone, including healthcare providers, about those very

dangers. Many other courts considering similarly inconsistent allegations against Merck and

healthcare providers have found those healthcare providers to be fraudulently joined. *See, e.g.*,

*Flores v. Merck & Co., Inc.*, No. C-03-362 slip op. at 2 (S.D. Tex. Mar. 15, 2004) (finding doctor

fraudulently joined where allegations against the doctor were conclusory and where plaintiffs

"claim[ed] that Merck 'failed to adequately and timely inform the health care industry of the

risks of serious personal injury and death from Vioxx ingestion'") (attached as Ex. C); *Omobude*

*v. Merck & Co.*, Inc., No. 3:03CV528LN, slip op. at 3-5 (S.D. Miss. Oct. 3, 2003) (attached as

Ex. F) (finding fraudulent joinder of a physician in a suit against Merck for injuries allegedly

caused by VIOXX®: "[W]here a plaintiff has specifically alleged facts from which one would

necessarily infer that the defendant in question would not have known information otherwise alleged to have been misrepresented or concealed from him, then . . . to sustain his pleading burden, the plaintiff would have to plead at least some facts tending to show why or how the defendant knew or should have known of the information."); *see also Chiles v. Am. Home Prods. Corp.*, No. 4:03-CV-802-A, slip op. at 4 (N.D. Tex. Sept. 26, 2003) (finding doctors fraudulently joined in thimerosal litigation and denying remand where plaintiffs had alleged misrepresentation against a drug manufacturer that "negate[d] any possible liability of the physicians") (attached as Ex. G).  Because the Massachusetts Healthcare Defendants are fraudulently joined under these principles, plaintiff's motion is futile.

### B.    <u>Plaintiff's Amendment Should Not Be Permitted Under Rule 15(a).</u>

Even if plaintiff were correct that the proper analysis of her motion rests with Rule 15(a), her proposed amendment still should not be permitted.  Grounds for denying a motion to amend include "futility, bad faith, undue delay or a dilatory motive."  *One Beacon Ins. Co. v. Electrolux*, 223 F.R.D. 21, 24 (D. Mass. 2004).  All of these factors are present here.  As Merck has argue above, plaintiff's motion to amend the complaint is futile because the plaintiff has no reasonable basis of recovering against the healthcare defendants.  Since the plaintiff alleges that Merck hid the dangers of VIOXX® from everyone, she cannot argue simultaneously that the Healthcare Defendants were negligent in failing to warn her of those very dangers.  *See infra* section I.A.4.  Where, as here, the proposed amended complaint "sets forth no scenario" that would entitle the plaintiff to relief, the court should deny the motion to amend.  *Maine State Bldg. & Constr. Trades Council v. United States Dept. of Labor*, 359 F.3d 13, 19 (1st Cir. 2004) (affirming denial of motion to amend complaint).  Moreover, it is well-settled that attempting to

amend the complaint to add more specific or substantive allegations against fraudulently joined defendants is futile. *Cavallini*, 44 F.3d at 264.

Also as Merck has argued above, there is evidence of bad faith and dilatory motive in plaintiff's motion to amend. *See infra* sections I.A.1 and I.A.2. Plaintiff moved to amend the Original Complaint to add more substantive allegations against the healthcare defendants only after the deficiencies of the Original Complaint were identified in briefing to this Court. Under such circumstances, where there is no reason the plaintiff could not have lodged the same allegations in the Original Complaint, the plaintiff's motive in moving to amend at this stage is plainly to defeat federal jurisdiction, and her motion should be denied. *See Smith*, 2004 U.S. Dist. LEXIS, at *9 (refusing to permit amendment in part because "Plaintiff's amendment can be meant for nothing more than to defeat diversity jurisdiction.").

## CONCLUSION

For all of these reasons, the Plaintiff's Motion to Amend the Complaint should be denied.

MERCK & CO., INC.
By its attorneys:


/s/ Lucy Fowler
James J. Dillon (BBO# 124660)
Lucy Fowler (BBO# 647929)
Kalun Lee (BBO# 657489)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02110-2600
(617) 832-1000

Dated: October 6, 2005

**CERTIFICATE OF SERVICE**

I certify that a true copy of the foregoing document was served on October 6, 2005 electronically upon:

Andrew J. Tine, Esq.
Haese, LLC
30 Federal Street, 3rd Floor
Boston, MA 02110

John M. Dellea, Esq.
Ficksman & Conley, LLP
98 N. Washington Street
Boston, MA  02114

Maria L. Mazur, Esq.
Martin Magnuson McCarthy & Kenney
101 Merrimac Street, 7th Floor
Boston, MA  02114

/s/ Lucy Fowler

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

KATHLEEN A. MARTIN,

              Plaintiff,

      v.

MERCK & CO., INC., et al.

              Defendants.

CIVIL ACTION No. 05-11716-MLW

## DECLARATION OF LUCY FOWLER

I, Lucy Fowler, hereby depose and say:

1.     I am an attorney at the law firm Foley Hoag LLP and represent defendant Merck & Co., Inc. in this action. I am admitted to practice in the Commonwealth of Massachusetts and the United States District Court for the District of Massachusetts. I have personal knowledge of the matters set forth in this Declaration and could and would competently testify to them if called as a witness.

2.     The document attached as Exhibit A is a true and accurate copy of a decision issued on November 3, 2004 in *Smith v. BCE Inc.*, No. SA-04-CA-0303-XR, 2004 U.S. Dist. LEXIS 22161 (W.D. Tex.).

3.     The document attached as Exhibit B is a true and accurate copy of a report and recommendation issued on June 18, 2002 in *Abrusley v. Merck & Co.*, No. 02-0196, (W.D. La.).

4.     The document attached as Exhibit C is a true and accurate copy of an order issued on March 12, 2004 in *Flores v. Merck & Co., Inc.*, No. C-03-362 (S.D. Tex.).

5.     The document attached as Exhibit D is a true and accurate copy of a report and recommendation issued on February 23, 2004 in *Benavides v. Merck & Co., Inc., et als.*, No. L-03-CV-134 (S.D. Tex.).

6.     The document attached as Exhibit E is a true and accurate copy of a decision issued on September 17, 2003 in *Oiler v. Biomet Orthopedics, Inc.*, No. 02-3778,  (E.D. La.).

7.     The document attached as Exhibit F is a true and accurate copy of an order issued on October 3, 2003 in *Omobude v. Merck*, CA No. 3:03CV528LN (S.D. Miss.).

8.     The document attached as Exhibit G is a true and accurate copy of an order issued on September 26, 2003 in *Chiles v. Am. Home Prods. Corp.*, No. 4:03-CV-802-A, (N.D. Tex.).

I declare under the penalty of perjury that the foregoing statement is true and correct.

Dated:  October 6, 2005                                  /s/ Lucy Fowler_____
                                                                    Lucy Fowler

# EXHIBIT A

LEXSEE 2004 U.S. DIST. LEXIS 22161

**STEPHEN R. SMITH, Plaintiff, VS. BCE INC., BCE VENTURES INC., and EXCEL TELECOMMUNICATIONS, INC., Defendants.**

**Civil Action No: SA-04-CA-0303-XR**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS, SAN ANTONIO DIVISION**

*2004 U.S. Dist. LEXIS 22161*

**November 3, 2004, Decided**

**SUBSEQUENT HISTORY:** Motion denied by *Smith v. BCE Inc., 2004 U.S. Dist. LEXIS 24967 (W.D. Tex., Dec. 9, 2004)*

**PRIOR HISTORY:** *Smith v. BCE, Inc., 2004 U.S. Dist. LEXIS 18395 (W.D. Tex., Sept. 15, 2004)*

**DISPOSITION:** Plaintiff's motion to file First Amended Complaint granted in part and denied in part. Excel's motion for judgment on the pleadings granted and Excel dismissed from case.

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1] For STEPHEN R. SMITH, plaintiff: Tom Max Thomas, Kolodey, Thomas & Blackwood, LLP, Dallas, TX; Beth Ann Blackwood, Kolodey, Thomas & Blackwood, LLP, Dallas, TX.

For BCE INC., defendant: David J. Beck, Beck, Redden & Secrest, L.L.P., Houston, TX; Matthew P. Whitley, Beck Redden & Secrest, Houston, TX.

For BCE VENTURES, INC., defendant: David J. Beck, Beck, Redden & Secrest, L.L.P., Houston, TX; Matthew P. Whitley, Beck Redden & Secrest, Houston, TX.

For EXCEL TELECOMMUNICATIONS, INC., defendant: Craig W. Budner, Hughes & Luce, Dallas, TX; Beth W. Bivans, Hughes & Luce, Dallas, TX.

**JUDGES:** XAVIER RODRIGUEZ, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** XAVIER RODRIGUEZ

**OPINION:**

**ORDER**

Before the Court are (1) Plaintiff's motion to file his First Amended Complaint, (2) Defendant Excel Telecommunications, Inc.'s ("Excel") motion for judgment on the pleadings, and (3) Defendants BCE Inc.'s and BCE Ventures Inc.'s ("BCE") motion to dismiss. The Court will GRANT in part Plaintiff's motion insofar as it seeks to amend the complaint to meet the requirements of *FED. R. Civ. P. 9*. The Court will, however, DENY in part Plaintiff's motion (docket no. 28) insofar as it seeks to amend the complaint [*2] to add any claim against Excel. Further, the Court will GRANT Excel's motion (docket no. 24) and DISMISS Excel from the case. The Court will reserve judgment on BCE's motion (docket no. 19) until Plaintiff has submitted an amended complaint consistent with this Order.

**I. Factual and Procedural Background**

According to Plaintiff's First Amended Complaint, Plaintiff first entered into an agreement with Excel in 1989 at which time Excel agreed to pay Plaintiff commissions based on long-distance telephone revenue generated by Plaintiff's marketing system. This agreement was amended in 1996 and 1997. Plaintiff was a cofounder and stockholder of Excel. In 1998, the stockholders of Excel exchanged their interests in Excel stock for stock of Teleglobe. As a result, Excel became a wholly owned subsidiary of Teleglobe. BCE and Teleglobe reached an agreement in 2000 in which BCE would acquire Teleglobe. Plaintiff then exchanged his Teleglobe stock for BCE stock. BCE was then owner of Excel.

In August 2001, a third amendment to the agreement was entered into between Plaintiff and Excel. Plaintiff alleges that Bill Anderson, a BCE officer and the president of a BCE subsidiary, telephoned [*3] Plaintiff and asked to meet with him. According to Plaintiff, Anderson

informed him that BCE intended to sell Excel to an undisclosed purchaser and that as a condition to the sale, BCE need to secure a release of Excel from the 1989 agreement. After some negotiation, Plaintiff asserts that it was agreed that he would be paid a large sum in cash over a five year period in return for releasing Excel from the contract. Plaintiff alleges that he suggested BCE supply a guaranty for the payment. Plaintiff asserts that Anderson replied that BCS could not directly guarantee the deferrals, but that it would have Teleglobe supply the guaranty. According to Plaintiff, he was assured that BCE was committed to supporting Teleglobe, that BCE had made the decision that it was not going to walk away from its investment in Teleglobe, and that it was going to continue to support Teleglobe beyond the term of the existing financial support arrangements. Plaintiff states that he relied on these assurances, as well as public disclosure by BCE and Teleglobe that Teleglobe's 2001 capital expenditures would exceed $ 1B and that BCE had pledged to support Teleglobe to at least the $ 900 billion level. In addition, **[*4]** BCE's chief executive officer, Jean Monty, stated that BCE was prepared to put resources behind Teleglobe. Plaintiff asserts that he relied upon these statements in coming to the conclusion that Teleglobe would be a stable entity able to guaranty payment.

Paragraph 6 of the Third Amendment states, in part, ". . . Smith hereby expressly consents to the assignment of the Agreement, as amended by this Third Amendment, by Excel to Teleglobe Holdings (U.S.) Corporation, a Delaware corporation, or to BCE Inc., a Canadian corporation, and, upon such assignment, that Excel be released from all of its obligations under the Agreement, as amended by this Third Amendment." After the signing of the Third Amendment, Plaintiff was told that BCE was trying to sell Excel to a third-party (VarTec), and that Plaintiff's agreement was an impediment to that sale. Plaintiff asserts that he once again met with Anderson and was again reassured of BCE's commitment to Teleglobe.

Plaintiff further alleges that Excel made one payment under the Third Amendment and then assigned the 1989 agreement to Teleglobe on April 5, 2002. According to Plaintiff, within a matter of days of this assignment, **[*5]** BCE announced it was withdrawing financial support from Teleglobe and placed Teleglobe in bankruptcy.

Plaintiff filed suit against BCE Inc., BCE Ventures Inc., and Excel in the 216th Judicial District Court of Kerr County, Texas. BCE removed the case to this Court on April 12, 2004. BCE alleged that Excel had been fraudulently joined in an effort to avoid federal diversity jurisdiction. In an Order dated September 14, 2004, the Court denied Plaintiff's motion to remand, finding that

there was no possibility of recovery against Excel for breach of contract, the lone substantive claim against Excel, the in-state defendant. Following this Order, the remaining causes of action were against BCE for fraud, deceit, misrepresentations and omissions (fraud), negligent misrepresentation, and promissory estoppel. Plaintiff now seeks to amend his complaint to reassert a breach of contract claim, as well as a fraud claims, against Excel. Excel does not oppose the amendment as to the breach of contract claim, but does oppose the amendment as to the fraud claim. BCE opposes any amendment adding Excel as a defendant. BCE argues that Plaintiff is attempting to amend his complaint in an attempt to **[*6]** defeat diversity jurisdiction. BCE and Excel have both filed motions to dismiss.

## II. Plaintiff's Motion to File his First Amended Complaint

As to Plaintiff's motion to file his First Amended Complaint, Plaintiff argues that he may amend his original complaint as a matter of right under *FED. R. CIV. P. 15(a)*. As no defendant has filed a responsive pleading, Plaintiff is correct that he may amend his pleading as a matter of right. Plaintiff is also correct that he may amend his pleading to correct pleading deficiencies that arise due to the fact that the currently operative pleading is his original state court Petition. However, Plaintiff may not amend his pleading as of right where his amendment is for the purpose of attempting to defeat diversity jurisdiction. Plaintiff's motion attempts to add an entirely new claim, that of fraud, against an in-state defendant which has already been deemed to have been fraudulently joined. In addition, prior to this motion, Plaintiff had consistently stated to this Court that he had no intention of pursuing a fraud cause of action against Excel in this case. n1 Because Plaintiff's motion seeks to add an in-state defendant, the motion **[*7]** is a matter of discretion for this Court. *Hensgens v. Deere & Co., 833 F.2d 1179, 1182 (5th Cir. 1987).*

n1 In Plaintiff's Motion for Remand, Plaintiff stated that BCE "erroneously assumes that [Plaintiff] is attempting to litigate fraud issues against Excel. He is not . . . Excel is not alleged to have participated in the fraud." In Plaintiff's Reply to BCE's Response to Plaintiff's Motion to Remand, Plaintiff stated that "contrary to BCE's argument, [Plaintiff] neither alleges, nor is required to prove, that Excel is guilty of fraud in order to rescind the agreement." And in response to the Court's questioning during a status conference held August 5, 2004, Plaintiff's counsel stated that they did not allege a fraud claim against Excel, instead alleging only breach of contract.

Plaintiff has attached alternate versions of his proposed First Amended Complaint, one asserting fraud and breach of contract claims against Excel (Exhibit A), and one asserting only breach of contract against Excel [*8] (Exhibit B). On September 15, 2004, the Court denied Plaintiff's motion to remand, finding that there was no possibility of recovery against Excel for breach of contract. The Court will not abide Plaintiff now attempting to assert breach of contract claims against Excel under the same set of facts underlying the Court's previous decision. Therefore, the amended complaint marked as Exhibit B is completely unacceptable, as it attempts to assert only breach of contract claims against Excel. The amended complaint marked as Exhibit A is similarly unacceptable, as it contains a breach of contract claim against Excel.

As to the fraud claim against Excel contained in the amended complaint marked as Exhibit A, the Court finds that Plaintiff should not be allowed to amend his complaint to add this claim. In determining whether to allow amendment that would destroy diversity, the court should look to a number of factors, including whether the defendant would be joined solely to defeat federal) jurisdiction, the plaintiff's diligence in requesting the amendment, the prejudice to the plaintiff if the amendment were denied, and any other factors bearing on equity. *Ehrhadt v. Elec & Instrumentation Unlimited, 137 F. Supp.2d 765, 766 (E.D. Tex. 2001).* [*9] If the Court allows the amendment so as to allow Plaintiff to bring suit against the in-state defendant, it must remand the case to the state court *28 U.S.C. § 1447(e); Cobb v. Delta Exports Inc., 186 F.3d 675, 677 (5th Cir. 1999); Hensgens, 833 F2d at 1182.*

Plaintiff's amendment can be meant for nothing more than to defeat diversity jurisdiction Throughout this case, Plaintiff had been adamant that he did not intend to sue Excel for fraud in this case. Only after the Court denied his motion to remand did Plaintiff switch course and decide to bring his fraud claim against Excel. Plaintiff has offered no real justification for his change in position. This is unlike cases in which the plaintiff has amended the complaint in order to clarify ambiguous or uncertain jurisdictional prerequisites, *see Virgil v. Reorganized M. W. Co., 156 F. Supp.2d 624, 627 (S.D. Miss. 2001),* where the party to be added is a necessary party under *FED. R. CIV.P. 19, cf. Boon v. Allstate Ins. Co., 229 F. Supp.2d 1016, 1020 (C.D. Cal. 2002),* or where there is discovery of new facts or theories, *see Perez v. Arcobaleno Past Machs., Inc., 261 F. Supp. 2d 997, 1001 (N.D. Ill. 2003).* [*10] Here, Plaintiff had an opportunity to assert this claim against Excel long before now, but had consistently asserted that he did not intend to assert the fraud claim, relying solely on the breach of contract

claim. Now that Plaintiff has been defeated in his attempt to remand based on the breach of contract claim, the Court will not allow Plaintiff to retry the remand decision on a fraud claim that he had insisted he would not assert. *See Hall v. GE Plastic Pac. Ltd., 327 F.3d 391, 396 (5th Cir. 2003)* (noting that a party is estopped from asserting a position contrary to a position taken previously in the litigation where (1) the new position is "clearly inconsistent" with the previous one and (2) the district court has previously accepted that previous position). The Court finds that Excel would be joined solely to defeat federal jurisdiction. *Ehrhardt, 137 F. Supp.2d at 767-68.*

The other factors also counsel against allowing the amendment. As described above, Plaintiff has not been diligent in bringing forward this claim. In fact, he has consistently asserted that he had no intention to assert the fraud claim against Excel. In addition, Plaintiff's [*11] motion comes over six months after this case was removed and also comes after motions to dismiss by each defendant have been filed. There would also be little prejudice to Plaintiff if the amendment were denied. Plaintiff currently has a pending suit against Excel in the 216th Judicial District of Kerr County, Texas, In this state court suit, Plaintiff alleges exactly that which he wishes to allege here, causes of action for fraud, negligent misrepresentation, and unjust enrichment. This suit was filed on September 21, 2004. Plaintiff will not prejudiced by the existence of two civil proceedings based on the same events where any prejudice is of his own making. *Cf. Siedlik v. Stanley Works, Inc., 205 F. Supp.2d 762, 764 (E.D. Mich. 2002)* (permitting amendment and remanding action in part because denial would require plaintiff to litigate two parallel suits). While judicial economy may weigh in favor of consolidating this case with the case currently pending in the state court, the Court finds that this factor does not outweigh the factors in favor of denying the amendment. n2 Accordingly, the Court finds that Plaintiff should not be allowed to amend his complaint [*12] to add a fraud claim against Excel.

> n2 In addition, allowing remand in a situation such as this, in which the plaintiff files a claim in state court and simultaneously attempts to assert the very same claim against the same defendant in what appears to be an attempt to force a remand would set a dangerous precedent. The Court will not allow plaintiffs to play "fast and loose" with the jurisdiction of the courts. *See U.S. v. McCaskey, 9 F.3d 368, 378 (5th Cir. 1993).*

The Court GRANTS Plaintiff's motion to file his First Amended Complaint (docket no. 28) insofar as he attempts to meet the requirements of *FED. R. CIV. P. 9*. The proposed versions of Plaintiff's First Amended Complaint, however, are not sufficient to act as his operative complaint, as they assert claims against Excel. Therefore, the Court ORDERS Plaintiff to submit to the Court his First Amended Complaint, consistent with this Order, within ten (10) days from the date of this Order.

### III. Excel's Motion to Dismiss

Excel has [*13] filed what it refers to as a Motion for Judgment on the Pleadings. As an initial matter, while Excel makes reference to *FED. R. CIV. P. 12(b)(6)*, the title of its motion suggests it is pursuant to *FED. R. Civ. P. 12(c)*. However, as Excel has not yet filed an answer or any other responsive pleading in this case, the motion is properly a motion to dismiss for failure to state a claim under *Rule 12(b)(6)*. *See FED R. CIV. P. 12(b)* ("A motion making any of these defenses shall be made before pleading if a further pleading is permitted."); *FED. R. CIV. P. 12(c)* ("After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."). Pursuant to *Rule 12(h)(2)*, the Court will treat the motion as a proper motion to dismiss for failure to state a claim. *Puckett v. United States, 82 F. Supp. 2d 660, 663 (S.D. Tex. 1999)*; CHARLES ALAN WRIGHT & ARTHUR R. MILLER, 5C FEDERAL PRACTICE AND PROCEDURE § 1361 (2004). The legal standards for granting or denying *Rule 12(c)* and *Rule 12(b)(6)* motions are identical. GEOFFREY C. HAZARD, JR., COLIN C. TAIT, & WILLIAM A. FLETCHER, PLEADING AND PROCEDURE I 001 (1999). For the sake [*14] of convenience, however, the motion will be referred to as a "motion to dismiss."

In its September 15, 2004 Order denying remand, the Court found that there was no possibility of recovery against Excel for the initial breach of contract claim. As noted above, the Court also now finds that Plaintiff should not be allowed to bring a claim for fraud against Excel at this point in the litigation. The Court notes "the similarity of the test for fraudulent joinder and the test for a *Rule 12(b)(6)* motion alleging failure to state a claim." *Travis v. Irby, 326 F.3d 644, 648 (5th Cir. 2003)*. As Plaintiff has no claim against Excel, the Court finds that Excel's motion to dismiss should be GRANTED (docket no. 24) and Excel should be DISMISSED from this case with prejudice. Each party shall bear their own fees and costs in conjunction with this motion.

### IV. BCE's Motion to Dismiss

BCE has moved pursuant to *Rule 12(b)(6)* for dismissal for failure to state a claim. Plaintiff has sued BCE for fraud, negligent misrepresentation, and unjust enrichment. BCE asserts that Plaintiff's claims are barred under Texas's Statute of Frauds and that Plaintiff cannot assert a valid claim [*15] under Texas law. As the operative pleading at this point is Plaintiff's state court Petition, and as the Court has ordered Plaintiff to submit an amended complaint consistent with this Order within ten (10) days, the Court will reserve judgment on the motion to dismiss until it has received Plaintiff's complaint. In addition, while Plaintiff has submitted a response to BCE's motion to dismiss that seems to fully address the issues, the Court will grant Plaintiff leave to file an amended response that incorporates his amended complaint to be filed. Plaintiff should notify the Court in writing if he does not wish to amend his response. Plaintiff should attempt to file any such amended response with the Court simultaneously with the filing of his amended complaint, but in no event later than eleven (11) days from the date of this Order.

### V. Conclusion

Plaintiff seeks to amend his complaint to add breach of contract and fraud claims against Excel Telecommunications Inc. The Court has previously held that Plaintiff has no possibility of recovery against Excel for breach of contract. In addition, the Court finds that Plaintiff should not be allowed to amend his complaint to allege [*16] a claim of fraud against Excel. The Court has discretion to allow an amendment that would destroy complete diversity. The factors weigh against allowing the amendment, as Plaintiff's amendment is for no reason other than to destroy diversity, Plaintiff has not been diligent in asserting his claim, and Plaintiff would not be prejudiced by denial. Therefore, the Court GRANTS in part Plaintiff's motion insofar as he seeks to amend his complaint to meet the requirements of *Rule 9*. The Court DENIES in part Plaintiff's motion insofar as he seeks to add a cause of action against Excel. (Docket no. 28). The Court also ORDERS Plaintiff to submit an amended complaint consistent with this Order within ten (10) days from the date of this Order. As to Excel's motion to dismiss, the Court GRANTS the motion (docket no. 24) and DISMISSES Excel from the case with prejudice. The Court will reserve judgment on the motion to dismiss filed by BCE Inc. and BCE Ventures Inc. until after Plaintiff has submitted his amended complaint. In addition, the Court grants leave to Plaintiff to file an amended response to the motion to dismiss no later than eleven (11) days from the date of this Order.

SIGNED this [*17] 3rd day of November, 2004.

XAVIER RODRIGUEZ

UNITED STATES DISTRICT JUDGE

# EXHIBIT B

U. S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
FILED

JUN 1 8 2002

ROBERT H. SHEMWELL, CLERK
BY_____
                        DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

JOHN ABRUSLEY, SR.                 :      DOCKET NO. 02-0196

VS.                                :      JUDGE TRIMBLE

MERCK & CO., INC., ET AL.          :      MAGISTRATE JUDGE WILSON

### REPORT AND RECOMMENDATION

Before the court is plaintiff's motion to remand or alternatively, motion for leave to amend and then remand. [doc. # 20].[1]

In the summer of 2001, John Abrusley Sr. went to see his doctor because he was experiencing hip pain. (Petition, ¶ 2). His doctor gave him an injection of Risticar and supplied him with samples of Vioxx. *Id.* Abrusley used the Vioxx for two to three weeks, before stopping. *Id.* at ¶ 4. However, several days later, Abrusley suffered a stroke and collapsed – breaking his wrist. *Id.* at ¶¶ 5-9. Abrusley believes that Vioxx caused his stroke and resulting injuries. *Id.* at ¶ 11. Accordingly, on January 11, 2002, Abrusley filed the instant action against the Vioxx manufacturer, Merck, & Co., Inc. ("Merck") in the 33rd Judicial District Court for the Parish of Allen, State of Louisiana. Also made defendant was John Doe, the fictitious name for Merck's salesman or detailer who provided the product samples to plaintiff's doctor.

On January 31, 2002, Merck, timely removed the case to federal court on the basis of diversity jurisdiction. 28 U.S.C. § 1332. Plaintiff is a Louisiana domiliary, and thus, is deemed a

---

[1] The motion has been referred to the undersigned for decision pursuant to 28 U.S.C. § 636(b)(1)(A).

citizen of this state for purposes of jurisdiction. (Petition, preamble). Merck is a New Jersey corporation, with its principal place of business in said state. (Notice of Removal, ¶ 6). The citizenship of John Doe was disregarded because he is a fictitious party. 28 U.S.C. § 1441(a).

On March 27, 2002, plaintiff filed the instant, well-written, motion to remand or alternatively, motion for leave to amend and then remand.[2] Plaintiff contends that because John Doe was sufficiently described in the complaint and readily identifiable by Merck, then he should be considered for purposes of assessing diversity.[3] *Ibieta v. Brinks*, 1997 WL 781291 (E.D. La. 1997); *Tomkins v. Lowe's Home Center, Inc.*, 847 F.Supp. 462 (E.D. La. 1994). We respectfully disagree with these cases. Section 1441(a) unequivocally states that ". . . the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(a). No exceptions are contemplated by this rule, and we are not at liberty to impose any.

Even if we treated John Doe as a named, non-diverse defendant, then it would have been incumbent upon the removing defendant to establish that plaintiff had no possibility of recovery against the in-state defendant, and that he had been joined merely to defeat diversity. *Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir. 1993)(citing, *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992)). Here, defendant satisfied that burden.

In *Furlough v. Warner Lambert Co.*, we recognized that under Louisiana law the only duty owed by detailmen is to deliver and explain the new package inserts to the physicians in their territory. *Furlough v. Warner Lambert Co.*, Civil Action No. 3:01-0704 (W.D. La. 8/8 &

---

[2] After delay for discovery and briefing, the matter is now before the court.

[3] Plaintiff does not contest that the amount in controversy exceeds the requisite jurisdictional minimum. *See*, 28 U.S.C. § 1332. Moreover, we have reviewed plaintiff's allegations and the Notice of Removal. (*See*, Notice of Removal, ¶ 5). We are satisfied that plaintiff's claims exceed the jurisdictional minimum.

2

9/13/01)(citing, *Wallace v. Upjohn Co.*, 535 So.2d 1110 (La. App. 1ˢᵗ Cir. 1988)). However, the

instant plaintiff's original petition is devoid of any specific allegations that John Doe, (a

detailman) failed to provide the product insert to his physician or that he failed to explain the

product insert.[4] Thus, on its face, plaintiff's petition does not state a cause of action against the

fictitious defendant, and plaintiff had no possibility of recovery against said defendant at the time

of removal. John Doe is properly excluded from the assessment of diversity.

Plaintiff alternatively seeks to amend his petition to substitute Bryant Tansil for John

Doe, and to add defendant-detailmen/salesmen, Sonja Ragusa, James White, Stacey Walters,

John Matthews, Vincent Moronto, John Matthews, and Sonya Brantley. (*See*, First Supplemental

and Amending Complaint). Plaintiff alleges that these individual defendants are Louisiana

residents.[5] Of course, the post-removal joinder of any non-diverse defendant will destroy

diversity jurisdiction and require remand. *Cobb v. Delta Exports, Inc.*, 186 F.3d 675 (5ᵗʰ Cir.

1999); 28 U.S.C. § 1447(e).[6]

In *Hensgens v. Deere and Company*, the Fifth Circuit stated that "the district court, when

confronted with an amendment to add a non-diverse non-indispensable party, should use its

---

[4] The closest that plaintiff comes to stating an actionable claim against John Doe is his
allegation that he failed to convey the hazardous and dangerous nature of Vioxx to plaintiff and his
physician. (Petition, ¶ 15, 53). However, this declaration does not specifically allege that the
detailman failed to deliver or explain the package inserts to the prescribing physician. *See*, *Griggs
v. State Farm Lloyds*, 181 F.3d 694, 699 (5ᵗʰ Cir. 1999)(a petition which fails to state any specific
actionable conduct on the part of a non-diverse defendant does not satisfy the liberalized
requirements of notice pleading such as to state a valid cause of action); *Hart v. Bayer Corp.*, 199
F.3d 239, 247-248 (5ᵗʰ Cir. 1999).

[5] Presumably, they are Louisiana domiciliaries.

[6] The post-removal substitution for a fictitious defendant is also analyzed under 28 U.S.C.
§ 1447(e). *See*, *Doleac ex rel. Doleac v. Michalson*, 264 F.3d 470 (5ᵗʰ Cir. 2001).

3

discretion in deciding whether to allow that party to be added. . . ." *Hensgens v. Deere and Company*, 833 F.2d 1179, 1182 (5th Cir. 1987)(citations omitted).[7] In exercising its discretion, the district court is to consider the following factors,

> . . . the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether plaintiff has been dilatory in asking for an amendment, whether plaintiff will be significantly injured if an amendment is not allowed, and any other factors bearing on the equities.

*Hengens*, 833 F.2d at 1182.

Our first consideration is the extent to which the purpose of the amendment is to defeat federal jurisdiction. Related to this issue is whether plaintiff has a real possibility of recovery against the proposed defendants. *See, Cobb*, 186 F.3d at 678 (a court should never permit the joinder of a jurisdiction-destroying defendant when recovery against that defendant is not really possible). Without question, plaintiff's amended complaint alleges a cause of action against the putative individual defendants.[8] However, Merck submitted an uncontroverted affidavit which establishes that prior to the summer of 2001, putative defendant, Stacy K. Walters, provided the Vioxx product circular to Dr. Nesom (plaintiff's doctor), and explained it to him. (Def. Exh. C). Thus, Walters discharged her limited duty as a detailman. Moreover, even if the remaining putative defendants did not discharge their individual duties to provide and explain the product inserts to Dr. Nesom, any breach of that duty could not have been a cause-in-fact of plaintiff's injuries because Stacy Walters provided that information to Dr. Nesom prior to the summer of

---

[7] *Hengens* was decided prior to the 1988 enactment of 28 U.S.C. § 1447(e). However, some courts have suggested that § 1447(e) was a codification of *Hengens*. *See, Heininger v. Wecare Distributors, Inc.*, 706 F.Supp. 860, 862, n. 4 (S.D. Fla. 1989); *Chism v. Burlington Northern Railroad Co.*, 1996 Westlaw 408907 (N.D. Miss. 1996).

[8] *See e.g.*, ¶ 1(c)(the detailman/salesman did not convey or explain the Vioxx package inserts to plaintiff's physician).

4

2001. Accordingly, the uncontroverted evidence establishes that plaintiff does not have a real possibility of recovery against any of the putative individual defendants.

Independent of plaintiff's chances of recovery against the individual defendants, we note that the nature of the claims and parties in this case strongly indicate that the primary purpose of the amendment is to defeat federal subject matter jurisdiction. Plaintiff alleges that the detailmen/salesmen are employees of Merck. Thus, Merck would be vicariously liable for any negligence committed by its employees within the course and scope of their employment. The joinder of Merck's employees adds nothing to plaintiff's case — except to secure remand to state court.

Merck concedes that plaintiff was not dilatory in seeking leave to amend. However, Merck alleges that plaintiff will not be significantly injured if the amendment is disallowed. We agree. As stated above, Merck is vicariously liable for its employees' negligence. Merck is fully capable of satisfying any judgment against it. To the extent that Merck could prove insolvent à la Enron or Global Crossing, the fiscal health of the individual employees would be no better. They would find themselves unemployed and struggling to meet mortgage and credit card payments.[9]

For the foregoing reasons,

IT IS RECOMMENDED that plaintiff's motion to remand or alternatively, motion for leave to amend and then remand [doc. # 20], be DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

---

[9] There are no other dispositive equities to be considered.

5

FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS

AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10)

BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED

PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN

ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL

CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 18th day of

June, 2002.

COPY SENT:
DATE: 6/19/02
BY: _____
TO: Hardy
McCall
Cohen
APW1BB
JB

ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE

6

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

United States District Court
Southern District of Texas
ENTERED

**MAR 1 5 2004**

Michael N. Milby, Clerk of Court

23

| | | |
|---|---|---|
| THE HEIRS OF THE ESTATE OF | § | |
| PABLO FLORES, INDIVIDUALLY AND | § | |
| ON BEHALF OF THE ESTATE | § | |
| | § | |
| v. | § | CIVIL ACTION NO. C-03-362 |
| | § | |
| MERCK & CO., INC. AND RANDY | § | |
| FUENTES, M.D. | § | |

## ORDER DENYING PLAINTIFFS' MOTION TO REMAND AND DISMISSING CLAIMS AGAINST DEFENDANT FUENTES

After careful consideration, the Court DENIES plaintiffs' Motion to Remand (D.E. 9) and DISMISSES all claims against defendant Fuentes.

*Fraudulent Joinder:*

Defendant Merck removed this action alleging fraudulent joinder of defendant Fuentes. Fraudulent joinder is established by showing (1) actual fraud in pleading jurisdictional facts or (2) inability of the plaintiff to establish a cause of action against the non-diverse plaintiff. *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003). The Court must determine whether there is arguably a reasonable basis for predicting that state law might impose liability. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). There must be a reasonable possibility of recovery, not merely a theoretical one. *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 462 (5th Cir. 2003). "Although the Fifth Circuit has not drawn a bright-line distinction between a reasonable possibility and

1

a theoretical one, it has held that, when plaintiffs make general allegations and fail to support them with specific, underlying facts, they have not established a reasonable basis for the Court to predict that relief may be granted." *Staples v. Merck & Co., Inc.*, 270 F.Supp.2d 833, 837 (N.D. Tex. 2003) (citing *Great Plains Trust Co.*, 313 F.3d at 329).

Plaintiffs' petition alleges negligence, strict liability, fraud, misrepresentation, breach of warranty, and derivative wrongful death and survival claims. The Court finds that there is not arguably a reasonable basis for predicting that state law might impose liability upon Fuentes for any of these claims. *Great Plains Trust Co.*, 313 F.3d at 312.

Plaintiffs make conclusory, general allegations of negligence against Fuentes which they fail to support with specific, underlying facts. In plaintiffs' petition, the only allegation that directly refers to Fuentes is that "Plaintiff Decedent was prescribed Vioxx® by defendant Dr. Fuentes. Decedent presented in part with a serious history of cardiac disease, hypertension and/or other risk factors contrary to the ingestion of Vioxx®." Yet, the plaintiffs later claim that Merck "failed to adequately and timely inform the health care industry of the risks of serious personal injury and death from Vioxx® ingestion." The Court finds that there is not arguably a reasonable basis for predicting that state law might impose liability upon Fuentes for negligence when the plaintiffs' own petition states that Fuentes, as a member of the health care industry, was not made aware of the risks of the ingestion of the drug.

2

Also, the strict liability claim does not form an arguably reasonable basis for the imposition of state law liability.[1]  Plaintiffs further fail to provide any factual support for their fraud or misrepresentation claims as they apply to Fuentes; they rely on speculative and conclusory allegations, which are insufficient to support these claims. *See, e.g., Staples*, 270 F.Supp.2d at 844.  Also, the breach of warranty claim is asserted solely against Merck and not against Fuentes.  Finally, it follows that the derivative claims fail to form a basis for the imposition of state law liability upon Fuentes as well. *See Schaefer v. Gulf Coast Regional Blood Center*, 10 F.3d 327, 330 (5th Cir. 1994) (Wrongful death and survival claims "are derivative actions and condition the plaintiff's ability to recover upon the decedent's theoretical ability to have brought an action had the decedent lived.").

As such, the Court concludes that Fuentes was fraudulently joined.  Therefore, the Court DENIES plaintiffs' motion to remand and DISMISSES all claims against defendant Fuentes.

ORDERED this /2 day of ___March___, 2004.

*(signature)*

HAYDEN HEAD
CHIEF JUDGE

---

[1] On the facts, it is extremely unlikely a Texas court would find Fuentes strictly liable for the prescription. *See, e.g., Cobb v. Dallas Forth Worth Medical Center–Grand Prairie*, 48 S.W.3d 820, 826 (Tex. App. 2001).  Also, a strict liability claim would be time-barred under the two-year statute of limitations of Tex. Civ. Prac. & Rem. Code 16.003(b) (Vernon 2003) because decedent died on September 9, 2000 and plaintiffs did not file their action until March 6, 2003. *See also Hyundai Motor Co. v. Rodriguez ex rel. Rodriguez*, 995 S.W.2d 661, 668 (Tex. 1999) ("The statute of limitations is only . . . two years on a strict liability claim.")  The agreed tolling stipulations do not affect this time bar

# EXHIBIT D

United States District Court
Southern District of Texas
FILED     MMM

FEB 2 3 2004

Michael N. Milby, Clerk
Laredo Division

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

ENTERED     MMM

FEB 2 4 2004

Michael N. Milby, Clerk
Laredo Division

PATRICIA BENAVIDES, Individually §
and as Representative of the §
ESTATE OF LUCIA GUTIERREZ, §
§
    Plaintiffs, §
§
vs. §
§
MERCK & CO., INC., §
CARLOS CIGARROA, M.D., §
MERCY HOSPITAL, and §
DENNIS CANTU, M.D., §
§
    Defendants. §

008885.  0417
MOTIONS/ORDERS

Civil Action No. L-03-CV-134

## REPORT AND RECOMMENDATION

    Pending before the Court is Plaintiff's Motion to Remand [Doc. No. 6]. Having reviewed the pending motion, the parties' filings, and the applicable law, this Court recommends to the District Court that the motion be **DENIED.**

### I. FACTS

    Although Plaintiff's complaint contains scant details about events leading to the alleged injuries, additional facts can be gleaned from the parties' other filings. Plaintiff Patricia Benavides ("Plaintiff") represents herself and the estate of her mother, Lucia Gutierrez ("Ms. Gutierrez" or "Decedent"). Ms. Gutierrez died of a myocardial infarction on March 30, 2001. (Pl.'s Orig. Pet. at 4.) Defendant Dr. Dennis Cantu ("Dr. Cantu") treated Ms. Gutierrez from approximately July 1999 through February 2001. (Affidavit of Dennis Cantu, Supp. Exhibit to Def. Merck & Co.'s Resp. in Opp'n to Pl.'s Mot. to Remand). Over the course of her treatment, Dr. Cantu prescribed Vioxx (rofecoxib) to Ms. Gutierrez. *See id.* Dr. Cantu last saw Ms. Gutierrez on February 12, 2001. *Id.*

34



EXHIBIT
C

Defendant Merck & Co. ("Merck") markets and distributes rofecoxib as an osteoarthritis and pain-relief drug under the trade name Vioxx. (Pl.'s Orig. Pet. at 4.) Several studies published in 2001 and 2002 indicate that using rofecoxib may increase the risk of myocardial infarction. (*See* Pl.'s Orig. Pet. at 5-7.) In September 2001, the Food and Drug Administration sent a warning letter to Merck, stating in part that Merck had misrepresented Vioxx's "safety profile" in commercial promotions of the drug. *Id.* at 7.

Dr. Carlos Cigarroa ("Dr. Cigarroa") was the attending physician at Mercy Hospital who treated Ms. Gutierrez up until the time of her death. (Pl.'s Reply to Merck & Co.'s Resp. to Pl.'s Mot. to Remand at 2.) Plaintiff's complaint does not allege any facts about Dr. Cigarroa or Decedent's interactions with him, other than jurisdictional facts.

Defendant Mercy Hospital has apparently answered the complaint, although a copy of their original answer was not included with the Notice of Removal. *See* Pl.'s Mot. to Remand, Unmarked Exhibit, between Exhibit D and Exhibit E. Plaintiff's complaint does not allege any facts about Mercy Hospital or Decedent's interactions with Mercy Hospital, other than jurisdictional facts.

Plaintiff filed her Original Petition in the 49th Judicial District of Texas, Zapata County, on May 29, 2003. Plaintiff's complaint alleges negligence, strict liability, misrepresentation and suppression, breach of warranty (as to Defendant Merck), and fraud. Defendant Merck was served August 13, 2003, and removed the case on September 11, 2003, asserting that Defendants Dr. Cantu, Dr. Cigarroa, and Mercy Hospital ("Healthcare defendants") were fraudulently joined. Merck argues that any medical malpractice claim against the Healthcare defendants is barred by the statute of limitations, and that Plaintiff's complaint does not contain legally or factually sufficient claims against these defendants.

2

M001402231

Plaintiff filed a motion to remand the case to state court on October 10, 2003. Plaintiff argues that her Original Petition sets forth a viable claim of negligence against Dr. Cigarroa and Dr. Cantu.[1]

## II. ANALYSIS

### A. Federal Jurisdiction

A defendant may remove a civil action brought in State court to the appropriate United States district court when the district court has original jurisdiction over the case. 28 U.S.C. §1441(a). United States district courts have original jurisdiction over civil actions when the parties have diversity of citizenship and an amount over $75,000 is in controversy. *See* 28 U.S.C. §1332(a).

The party seeking removal bears the burden of showing that federal jurisdiction exists and that removal was proper. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995). When assessing the propriety of removal, United States district courts must strictly construe removal statutes because "removal jurisdiction raises significant federalism concerns." *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988).

In this case, Plaintiff is a citizen of Texas. Defendant Merck is incorporated in New Jersey and maintains its principal place of business in New Jersey. Defendants Dr. Cantu and Dr. Cigarroa are Texas citizens. Plaintiff does not allege the incorporation or principal place of business of Defendant Mercy Hospital in her complaint. For the purposes of this motion to remand, the Court

---

[1] Plaintiff bluntly states that her original complaint sets forth a claim against Mercy Hospital, but does not offer any factual support or argument for this statement. Plaintiff also discusses Merck's burden of proof on fraudulent joinder as to "a medical malpractice claim against the *two* resident Defendants." Pl.'s Mot. to Remand at 4 (emphasis added).

3

M001402232

will assume that Mercy Hospital is a citizen of Texas. On the face of the complaint, the Court must remand the case because there is not complete diversity. *See* 28 U.S.C. 1332.

### B. Fraudulent Joinder

However, the action may remain in federal court if, as Defendant Merck alleges in its Notice of Removal, the Healthcare Defendants were fraudulently joined in the case. If the Healthcare defendants were fraudulently joined, their citizenship becomes irrelevant for jurisdictional purposes, and this Court would have jurisdiction on diversity grounds. *See McKee v. Kansas City Southern Railway Co.*, 2004 WL 103439 at *4 (5th Cir. Jan. 23, 2004) ("[D]iversity cannot be destroyed by a plaintiff fraudulently joining a non-diverse defendant.") (citing *Hart v. Bayer Corp.*, 199 F.3d 239, 243 (5th Cir. 2000)). The defendant bears the burden of establishing that the non-diverse defendants were fraudulently joined. *Id.* at *4 (citing *Travis v. Irby*, 326 F.3d 644, 650 (5th Cir. 2003)).

To support a claim of fraudulent joinder for removal purposes, Defendant Merck may show either actual fraud in the jurisdictional facts presented to the court, or that Plaintiff has no valid cause of action against the Healthcare Defendants. *See Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003).[2] Here, Defendant Merck does not suggest actual fraud in Plaintiff's jurisdictional statements. Merck must therefore produce "evidence that would negate a possibility of liability" on the part of the Healthcare Defendants to show fraudulent joinder. *Id.* at 650. Defendant's burden of proof is a heavy one, and any contested issues of fact or ambiguities of state law must be taken in the light most favorable to Plaintiff. *Id.* at 649. When assessing a fraudulent joinder claim, the Court may

---

[2]"Fraudulent joinder can be established in two ways: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir. 1999)); *see also Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305 (5th Cir. 2002); *see also Heritage Bank v. Redcom Laboratories, Inc.*, 250 F.3d 319 (5th Cir. 2001).

4

M001402233

"pierce the pleadings" and consider summary judgment-type evidence. *McKee*, 2004 WL 103439
at \*4; *Travis*, 326 F.3d at 648-49.

The Fifth Circuit recently clarified the standard for fraudulent joinder allegations in *Ross v.
Citifinancial, Inc.*, 344 F.3d 458 (5th Cir. 2003). The *Ross* Court specified that when examining
fraudulent joinder allegations, "the Court must determine whether there is arguably a reasonable
basis for predicting that state law might impose liability." *Id.* at 462 (citing *Great Plains Trust Co.
v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)). However, a theoretical
possibility of recovery is not enough to legitimize a defendant's inclusion in the case. *Badon v. RJR
Nabisco, Inc.*, 236 F.3d 282, 286 n.4 (5th Cir. 2000); *Travis*, 326 F.3d at 648 (citing *Great Plains
Trust*, 313 F.3d at 312). Thus to establish that the Healthcare Defendants were fraudulently joined
in this action, Merck must show that Plaintiff has no reasonable chance of establishing its state
claims against the Healthcare Defendants.

When considering Plaintiff's allegations, "speculative and conclusory allegations do not state
a cause of action without factual support." *Waters v. State Farm Mut. Auto. Ins. Co.*, 158 F.R.D.
107, 108 (S.D. Tex. 1994); *see also Jewell v. City of Covington*, 425 F.2d 459, 460 (5th Cir. 1970),
*cert. denied*, 400 U.S. 929 (1970) ("General conclusionary allegations unsupported by facts are
insufficient to constitute a cause of action"). If Plaintiff does not "specify a factual basis for recovery
against a non-diverse party [this] constitutes a failure to state a claim and fraudulent joinder of that
party." *Waters*, 158 F.R.D. at 109 (citing *Doe v. Cloverleaf Mall*, 829 F.Supp. 866, 870 (S.D. Miss.
1993)). However, the Court must also consider the degree to which discovery has proceeded, and
the opportunity the plaintiff has had to develop its claims. *McKee*, 2004 WL 103439 at \*4 (citing
*Travis*, 326 F.3d at 649).

5

M001402224

In its Notice of Removal and in its Response to Plaintiff's Motion to Remand, Defendant Merck argues that the Healthcare Defendants were fraudulently joined because Plaintiff's Original Complaint does not allege the factual or legal basis for any claim against the Healthcare Defendants, and because any medical malpractice claims against them are barred by the statute of limitations under Texas law. In order to determine whether the Healthcare Defendants were fraudulently joined, it is necessary to first consider the allegations in Plaintiff's Original Petition.

Plaintiff argues in her motion to remand that the allegations laid out in the complaint are factually and legally sufficient to constitute valid claims against Dr. Cantu, Dr. Cigarroa, and Mercy Hospital. Plaintiff relies primarily on this statement in her complaint: "Plaintiff Decedent, was given samples of and a prescription for Vioxx for pain. Mrs. Gutierrez presented with [sic] a family history of cardiac disease. Mrs. Gutierrez died on March 30, 2001, of a myocardial infarct." (Pl.'s Orig. Pet. at 4.)

However, Plaintiff's complaint does not allege that Dr. Cantu or Dr. Cigarroa treated Ms. Gutierrez, prescribed Vioxx to Ms. Gutierrez, or gave her samples of the drug. In fact, Plaintiff's complaint does not allege that Dr. Cantu or Dr. Cigarroa had *any* interactions with the Decedent. Plaintiff likewise does not allege any facts about Decedent's involvement with Mercy Hospital. The only time Plaintiff lists Dr. Cantu, Dr. Cigarroa, or Mercy Hospital by name is when alleging jurisdictional facts. (Pl.'s Orig. Pet. at 3.) In comparison, Plaintiff lists Merck by name in her complaint and alleges specific actions taken by Merck throughout her complaint.[3] (Pl.'s Orig. Pet., passim.)

---

[3] Plaintiff's complaint sometimes refers to "Defendants" generally, however none of the allegations against "Defendants" are facts that would support claims against the Healthcare Defendants.

6

M001402235

Although Plaintiff's complaint lists the legal elements of several claims, the complaint does not allege even the minimally required facts about Dr. Cantu, Dr. Cigarroa, or Mercy Hospital to sustain these claims against them. The Fifth Circuit encountered a similar situation in *Griggs v. State Farm Lloyds*, 181 F.3d 694 (5th Cir. 1999). In that case, Plaintiff Griggs' original and amended petitions did not allege any actionable facts regarding Defendant Blum. *Id.* at 699. The majority of Griggs' petition consisted of factual allegations that referred to "Defendants," but did not describe any actions that could have been taken by Blum. *Id.* The Court refused to extend notice pleading to such a degree. *Id.* ("We cannot say that Griggs' petition, which mentions Blum once in passing, then fails to state any specific actionable conduct on her part whatsoever, meets even the liberalized requirements that permit notice pleading.") (citing *City of Alamo v. Casas*, 960 S.W.2d 240, 251-52 (Tex. App. 1997)). Here, Plaintiff's petition presents a nearly identical situation: Plaintiff does not assert any facts to support claims against the Healthcare Defendants.

For purposes of fraudulent joinder, Plaintiff may not augment insufficient allegations in her complaint with later assertions. Plaintiff states in her motion to remand that Dr. Cantu and Dr. Cigarroa prescribed Vioxx to the Decedent. Pl.'s Mot. to Remand at 3. However, Plaintiff does not allege this fact in her Original Petition. The propriety of removal depends on Plaintiff's allegations in state court. *Tedder v. F.M.C. Corp.*, 590 F.2d 115, 116-17 (5th Cir. 1979). The *Tedder* Court further noted, "If there is no arguably reasonable basis for predicting that state law might impose liability on the resident defendants under the facts alleged, then the claim is deemed fraudulent and lack of diversity will not prevent removal." *Id; see also Haines v. Natl. Union Fire Insur. Co.*, 812 F.Supp. 93, 96 (S.D. Tex. 1993) ("The determination of . . . fraudulent joinder is based on the causes of action alleged in the complaint as it existed at the time of removal."); *Pullman Co. v. Jenkins*, 305

7

M0014D2Z236

U.S. 534, 537 (1939) (right to removal is determined by plaintiff's pleading at the time of removal). Although Plaintiff may supplement her claims with outside materials in her motion to remand, she may not add claims that are not stated in the complaint.

Plaintiff also incorrectly states the standard for fraudulent joinder as requiring "no possibility that plaintiff can establish a cause of action against the resident defendants." (Pl.'s Mot. to Remand at 3, emphasis in original.) Plaintiff cites *Mauck v. Warner-Lambert Co., et al.*, a 2001 case from the Northern District of Texas. 2001 U.S. Dist. LEXIS 5919 (N.D. Tex. May 4, 2001). Since *Mauck*, the Fifth Circuit has refined the standard for examining fraudulent joinder in several cases, including *Travis v. Irby*, 326 F.3d 644 (2003), and *Ross v. Citifinancial, Inc.*, 344 F.3d 458 (2003). These cases indicate that a defendant must show that there is no reasonable possibility of a plaintiff's success against non-diverse defendants to establish fraudulent joinder. *See Travis*, 326 F.3d at 648; *Ross*, 344 F.3d at 462. Based on the Original Petition, Plaintiff has no reasonable possibility of prevailing against the Healthcare Defendants.

Because Plaintiff's complaint does not allege sufficient facts against the Healthcare Defendants to constitute valid claims against them, the Court need not consider the viability of theoretical claims under Texas law. Neither does the Court need to take the stage of discovery into account in the fraudulent joinder analysis, as Plaintiff has not alleged any claims appropriate for discovery against the Healthcare defendants. Since Defendant has shown that Plaintiff's claims against Dr. Cantu, Dr. Cigarroa, and Mercy Hospital, as plead in the original petition, are baseless, these defendants' citizenship should be disregarded for purposes of diversity jurisdiction. The Court therefore has jurisdiction over the case under 28 U.S.C. §1332(a).

8

M001402237

## III. RECOMMENDATION

Based on the above information, the Magistrate Court recommends that the District Court DENY Plaintiff's Motion to Remand.

## IV. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battle v. United States Parole Comm'n*, 834 F.2d 419 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after being served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations and, except upon grounds of plain error, shall bar the party from appellate review of proposed factual findings and legal conclusions accepted by the District Court to which no objections were filed. *See*, 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglas v. United States' Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. *en banc* 1996).

The clerk is directed to send a copy of this Report and Recommendation to all parties.

DONE at Laredo, Texas, this 23rd day of February, 2004.

ADRIANA ARCE-FLORES
United States Magistrate Judge

9

M001402238

United
South

APR 1 6 2004

Michael N. Milby, Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

ocrt
Southern District of Texas
ENTERED                :AMM

APR 1 6 2004

Michael J. Milby, Clerk
Laredo Division

008885. O 417

MOTIONS/ORDERS

| | |
|---|---|
| PATRICIA BENAVIDES, Individually and as Representative of the ESTATE OF LUCIA GUTIERREZ, | § § § § |
| Plaintiffs, | § § |
| v. | § § |
| MERCK & CO., INC., CARLOS CIGARROA, M.D., MERCY HOSPITAL, AND DENNIS CANTU, M.D., | § § § § § |
| Defendants. | § § |

Civil Action No. L – 03 – 134

## ORDER

Pending before the Court is Plaintiffs' Motion to Remand [Doc. No. 6] and Defendant

Dennis Cantu, M.D.'s Motion to Dismiss [Doc. No. 41]. The Motion to Remand was referred to

Magistrate Judge Adriana Arce-Flores for a report and recommendation. Judge Arce-Flores filed

the Report and Recommendation on February 24, 2004. No party has objected to the Report and

Recommendation. *See* 28 U.S.C. 636(b). "A party who fails to file written objections to a

magistrate judge's proposed findings and recommendations waives the objection..." *United*

*States v. Kallestad*, 236 F.3d 225, 227 (5th Cir. 2000). Finding no clear error, this Court accepts

the Report and Recommendation. Accordingly, Plaintiffs' Motion to Remand is hereby

**DENIED** and all claims against Dr. Carlos Cigarroa, Dr. Dennis Cantu, and Mercy Hospital are

hereby **DISMISSED WITH PREJUDICE.**

43

M001402239

Having adopted the Report and Recommendation, the Court has already dismissed all claims against Dr. Cantu. For that reason, the pending Motion to Dismiss is **DENIED AS MOOT**.

IT IS SO ORDERED,

SIGNED this ___ day of April, 2004.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.

2

M0014022240

# EXHIBIT E

LEXSEE 2003 U.S. DIST. LEXIS 16548

### JOHN OILER, INDIVIDUALLY AND AS SURVIVING SPOUSE OF DEBRA ANN OILER VERSUS BIOMET ORTHOPEDICS, INC., ET AL

### CIVIL ACTION No. 02-3778 SECTION: I/5

### UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA

*2003 U.S. Dist. LEXIS 16548*

**September 17, 2003, Decided**
**September 17, 2003, Filed; September 18, 2003, Entered**

**SUBSEQUENT HISTORY:** Dismissed by, in part *Oiler v. Biomet Orthopedics, Inc., 2003 U.S. Dist. LEXIS 17002 (E.D. La., Sept. 24, 2003)*

**DISPOSITION:** [*1] Motion of plaintiff to remand was denied.

**LexisNexis(R) Headnotes**

**COUNSEL:** For JOHN OILER, plaintiff: M. Elizabeth Bowman, Bowman & Howley, Gretna, LA.

For BIOMET ORTHOPEDICS INC., defendant: Frederick Theodore Haas, III, Eugene J. Radcliff, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, LA.

For HOWMEDICA OSTEONICS CORPORATION, defendant: Eugene R. Groves, Lawrence Boyd McAlpine, Jr., Taylor, Porter, Brooks & Phillips, LLP, Baton Rouge, LA.

**JUDGES:** LANCE M. AFRICK, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** LANCE M. AFRICK

**OPINION:**

#### ORDER AND REASONS

Plaintiff, John Oiler, has filed a motion to remand this action to the state court from which it was removed. n1 For the following reasons, plaintiff's motion to remand is **DENIED.**

n1 Rec. Doc. No. 3.

### BACKGROUND

On July 3, 2003, plaintiff, John Oiler, filed a petition in the Orleans Parish Civil District Court, State of Louisiana, alleging that plaintiff suffered personal injuries due to the death of his wife which was caused by the negligence of [*2] defendants Biomet Orthopedics ("Biomet") and Howmedica Osteonics Corp. ("Howmedica"). n2 Plaintiff alleges that defendants were the manufacturer and/or producer and/or distributor of the hip replacement device received by Debra Ann Oiler and used in a hip replacement surgery. n3 Plaintiff further alleges that his wife's death was caused by various infections arising from the materials and prosthesis manufactured, produced, or distributed by defendants. n4 Specifically, the petition alleges that defendants were negligent in failing to properly screen, procure, process and distribute materials used in Ms. Oiler's hip replacement device. n5 The petition states that the hip replacement surgery took place at Memorial Medical Center and that it was performed by Dr. Chad W. Millet, M.D. n6 However, the petition contains no allegations of negligence or medical malpractice as to either Memorial Medical Center or Dr. Millet.

n2 The state court petition names Biomet Orthopedics, Inc, Howmedica, ABC Manufacturing Company and ABC Insurance Company as defendants. Rec. Doc. No. 3, Petition for Damages ("Pl. Pet."), P 2. ABC Manufacturing Company is alleged to be "every manufacturing company that provided part of the hip replacement Debra Ann Oiler received" and ABC Insurance Company is alleged to be "any and every liability insurance carrier providing coverage to any defendant in this matter." *Id.* at P 5. Pursuant to *28 U.S.C. §*

*1441(a)*, "for purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded." Accordingly, this Court disregards the citizenship of "ABC Manufacturing Company" and "ABC Insurance Company."

[*3]

n3 Pl. Pet., P IV.

n4 Pl. Pet., PP IV-VII.

n5 Pl. Pet., P VII.

n6 Pl. Pet., P IV.

Biomet was served with the petition on December 10, 2002. n7 On December 20, 2002, Biomet, joined by Howmedica, timely removed the case to this Court alleging jurisdiction based on diversity of citizenship. n8 *28 U.S.C. § 1332*. It is undisputed that Biomet and Howmedica are diverse from plaintiff. On January 9, 2003, plaintiff filed a motion to remand this action, contending that while no non-diverse parties were named in this lawsuit, remand is appropriate because he is procedurally barred under Louisiana law from joining non-diverse health care providers in this action prior to an administrative review of his medical malpractice claim by a medical review panel. n9 Plaintiff further asserts that he intends to add non-diverse defendants to this action upon completion of the Medical Review Panel process. n10 Because of the future destruction of diversity, plaintiff asserts, this Court should remand this action. Defendants oppose remand on the grounds that the only named defendants [*4] in this case are diverse from plaintiff and, moreover, plaintiff has not alleged any cause of action against any non-diverse defendant in his state court petition.

n7 Rec. Doc. No. 1, Notice of Removal, P 2.

n8 Rec. Doc. No. 1, Notice of Removal, PP 4-6. Federal jurisdiction based on diversity requires complete diversity of citizenship and an amount in controversy exceeding $ 75,000.00 exclusive of interest and costs. *28 U.S.C. § 1332*. The notice of removal alleges that plaintiff, individually and as a surviving spouse, is a citizen of Louisiana. *Id.* P 4. Defendant Biomet is an Indiana corporation with its principle place of business in Indiana. *Id.* P 5. Defendant Howmedica is a New Jersey corporation with its principle place of business in New Jersey. *Id.* P 6. Biomet noted that "ABC Manufacturing Company" and "ABC

Insurance Company," named as defendants in the state court petition, could not, for purposes of removal, be identified as Louisiana citizens. *Id.* Finally, Biomet alleged that due to the cause of action and nature of injuries alleged in the plaintiff's petition, it was facially apparent that the amount in controversy exceeds $ 75,000.00 exclusive of interest and costs. *Id.* P 7.

[*5]

n9 Rec. Doc. No. 3, Pl. Mem. in Support of Mot. to Remand, at 4.

n10 Rec. Doc. No. 3, Pl. Mem. in Support of Mot. to Remand, at 8.

## LAW AND ANALYSIS

### A.

Pursuant to *28 U.S.C. § 1441(a)*, an action filed in state court may be removed to federal court if the action is one over which the federal court has subject matter jurisdiction. n11 The burden of establishing federal jurisdiction is on the party seeking removal. *Jernigan v. Ashland Oil, Inc., 989 F.2d 812, 815 (5th Cir. 1993)* (citing *Dodson v. Spiliada Maritime Corp., 951 F.2d 40, 42)*; *Willy v. Coastal Corp., 855 F.2d 1160, 1164 (5th Cir.1988))*. However, removal jurisdiction is to be strictly construed as its application "deprives a state court of a case properly before it and thereby implicates important federalism concerns." *Frank v. Bear Stearns & Co., 128 F.3d 919, 922 (5th Cir. 1997)*. Accordingly, any doubts about removal must be construed against removal and in favor of remanding the case back to state court. See *Vasquez v. Alto Bonito Gravel Plant Corp., 56 F.3d 689, 694 [*6] (5th Cir.1995)*.

n11 *Section 1441(a)* states:

> "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the place where such action is pending ...."

In determining whether this Court has jurisdiction over the removal, the Court looks to the claims in the state court petition as it exists at the time of removal. *Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 264 (5th Cir. 1995); Englande v. SmithKline, 206 F. Supp.2d 815, 816 (E.D.La. 2002 (Feldman, J.)); Maquar v. Synthes, 1992 U.S. Dist. LEXIS 7077, 1992 WL 111199, *1 (E.D. La.) (Mentz, J.); Doe v. Cutter Biological, 774 F. Supp. 1001, 1004 (E.D.La. 1991)* (Feldman, J.) ("In deciding jurisdictional issues, the Court examines the petition at the time the removal petition was filed.") (citing *In re Carter, 618 F.2d 1093, 1101 (5th Cir. 1980)).* **[\*7]** Accordingly, a post-removal amendment that attempts to alter the causes of action alleged in the state petition will not defeat jurisdiction of a case that is properly removed. See *Cavallini, 44 F.3d at 264* (noting that "without such a rule, disposition of the [jurisdictional] issue would never be final"). However, if a court permits a post-removal amendment which joins a non-diverse party, such joinder will divest the court of jurisdiction and remand is required. *28 U.S.C. § 1447(e); Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374, 98 S. Ct. 2396, 2403, 57 L. Ed. 2d 274 (1978); Cobb v. Delta Exports, Inc., 186 F.3d 675, 677 (5th Cir. 1999)* (affirming *Hensgens*); *Hensgens v. Deere & Co., 833 F.2d 1179, 1181 (5th Cir. 1987)* (noting that "most post-removal developments ... will not divest the court of jurisdiction but an addition of a nondiverse defendant will do so") (citing *IMFC Professional Services, Inc. v. Latin American Home Health, Inc., 676 F.2d 152, 157-58 (5th Cir. 1982)).*

Louisiana law requires that medical malpractice claims be administratively reviewed by a medical **[\*8]** review panel prior to commencement of a lawsuit against a Louisiana health care provider:

> No action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section.

*La. R.S. 40:1299.47 B(1)(a)(i).* If a plaintiff files a lawsuit in a Louisiana state court prior to submitting a medical malpractice claim to the review panel, the medical malpractice claim is subject to the dilatory exception of prematurity which, if sustained, results in a dismissal of that claim without prejudice. See *Englande, 206 F. Supp2d at 817* (citing *Brister v. Southwest Louisiana Hosp. Ass'n, 624 So.2d 970 (La. App 3d Cir. 1993)); Johnson v. Scimed, 92 F. Supp.2d 587, 590 (W.D.La. 2000)* (Payne, J.) (citing *Yokem v. Sisters of Charity of the Incarnate Word, 742 So. 2d 906, 909 (La. App. 2d Cir. 1999); Dunn v. Bryant, 701 So.2d 696, 699 (La. App. 1st Cir. 1997)); Cutter Biological, 774 F. Supp. at 1004* (citation omitted). In such a case, if a health-care-provider-defendant **[\*9]** does not timely raise the exception of prematurity in response to such a lawsuit, the defendant's right to have the medical malpractice claim administratively reviewed prior to a lawsuit is waived. *Barraza v. Scheppegrell, 525 So.2d 1187, 1188 (La. App. 5th Cir. 1988).*

**B.**

Since the filing of the instant motion to remand, plaintiff has attempted to amend her petition to allege that, pursuant to *Louisiana R.S. § 40:1299 et seq.,* a medical review panel has been convened and at the conclusion of those proceedings, plaintiff "will add all Louisiana qualified health care providers to this action." n12 Additionally, plaintiff has submitted to this Court a copy of a letter addressed to the Louisiana Commissioner of Administration requesting that a medical review panel be convened to investigate allegations of medical malpractice against various Louisiana health care providers arising from Ms. Oiler's hip replacement procedure. n13 Therefore, at the outset, this Court must determine whether a proposed amendment to plaintiff's state petition or other documentary evidence beyond plaintiff's state court petition may be considered in determining whether diversity jurisdiction **[\*10]** existed at the time this action was removed.

> n12 Rec. Doc. No. 12. Mot. for Leave to Amend Pet. for Damages, Amended Pet., P I.

> n13 Rec. Doc. No. 3, Pl. Mem. in Support of Mot. to Remand, Ex. A, Letter to Commissioner of Administration dated July, 3.

In *Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256 (5th Cir. 1995)*, the Fifth Circuit addressed the issue of whether a district court erred in refusing to consider the plaintiffs' affidavits and a proposed amended complaint to determine whether jurisdiction existed at the time of removal. The plaintiffs' original state complaint asserted claims against both diverse and non-diverse parties. *Id. at 258.* The defendants claimed that the non-diverse defendant was fraudulently joined. See *id. at 259.* Under the "fraudulent joinder" doctrine, the removing party " must prove that there is no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court, **[\*11]** or that there has been outright fraud in the plaintiff's pleading of jurisdictional facts." *Id.* (citation omitted). The district court held that the non-diverse defendant

was fraudulently joined because, at the time of removal, the plaintiff's state complaint did not allege facts sufficient to support a cause of action against the non-diverse defendant under state law. *Id. at 259* & n.8. Accordingly, the district court dismissed the claims against the non-diverse defendant and retained jurisdiction over the action. *Id.*

The plaintiffs argued, *inter alia,* that the district court erred when it refused to consider their affidavits and a proposed amended complaint in ruling on the fraudulent joinder/remand issue. *Id. at 260.* First addressing the issue of affidavits, the Fifth Circuit stated:

> While we have frequently cautioned the district courts against pretrying a case to determine removal jurisdiction, we have also endorsed a summary judgment-like procedure for disposing of fraudulent joinder.

*Id. at 263.* Accordingly, the Court acknowledged that a fraudulent joinder claim may be resolved by "piercing the pleadings" [*12] and considering affidavits and deposition testimony. *Id.* (citation omitted); *see also Badon v. RJR Nabisco, 224 F.3d 382, 389-90 (5th Cir. 2000)* (citing Fifth Circuit cases that consistently recognize that evidence outside the pleadings may be considered to establish the viability of causes of action alleged in a state complaint when confronting claims of fraudulent joinder).

However, the Court rejected such an approach when the issue was whether, in the first instance, a cause of action against a non-diverse defendant was present in a state court petition:

> The Cavallinis did not cite, nor have we found, any case in which such evidence has been considered to determine whether a claim has been stated against the nondiverse defendant under a legal theory not alleged in the state court complaint. In short, the Cavallinis cannot rely on their affidavits to state a ... claim against [the non-diverse defendant].

*Id. at 263.* Similarly, the Court held that the district court did not err by denying the plaintiffs' motion to amend their state complaint "because a complaint amended post-removal cannot divest a federal court of jurisdiction." *Id.*

[*13] *at 264* (citing *Pullman Co. v. Jenkins, 305 U.S. 534, 537 59 S. Ct. 347, 348-49, 83 L. Ed. 334 (1939)).* The Court elaborated:

> The rationale for determining removal jurisdiction on the basis of claims in the state court complaint as it exists at the time of removal is obvious. Without such a rule, disposition of the issue would never be final, but would instead have to be revisited every time the plaintiff sought to amend the complaint to assert a new cause of action against the nondiverse defendant, all at considerable expense and delay to the parties and the state and federal courts involved. Limiting the removal jurisdiction question to the claims in the state court complaint avoids that unacceptable result, and permits early resolution of which court has jurisdiction, so that the parties and the court can proceed with, and expeditiously conclude, the litigation.

*Id.*

Although the instant case differs factually from *Cavellini* in that defendants do not advance a fraudulent joinder claim (because plaintiff's state petition alleges claims against diverse defendants only), the Court finds that under the particular facts of this case, the reasoning [*14] of *Cavellini* controls the scope of this Court's inquiry with respect to whether subject matter jurisdiction exists. Accordingly, the Court declines to consider plaintiff's post-removal motion to amend his state petition and letter to the Commissioner of Administration to the extent that plaintiff relies on such evidence to add a legal theory or cause of action not originally alleged in his state petition. n14

> n14 The Court is aware that a post-removal amendment joining a non-diverse party, if permitted under the test announced in *Hensgens v. Deere & Co., 833 F.2d 1179 (5th Cir. 1987),* would divest this Court of jurisdiction. *See 28 U.S.C. 1447(e); Cobb, 186 F.3d at 681* (holding that where a district court permits post-removal joinder of a non-diverse, disposable party, remand is required). In the instant case, plaintiff's proposed amended petition for damages does not seek to join the Louisiana health care providers. It merely reiterates the assertions made in support of his motion to remand, i.e., that he intends to

Case 1:05-cv-11716-DPW    Document 30-3    Filed 10/06/2005    Page 18 of 35

Page 5
2003 U.S. Dist. LEXIS 16548, *

join non-diverse defendants at the conclusion of the medical panel review proceedings. *See* Rec. Doc. No. 12, Amended Petition for Damages, P I. Therefore, this case does not implicate either *section 1447(e)* or the rule announced in *Cobb*.

[*15]

C.

In support of remand, plaintiff relies on cases from the Eastern and Western Districts of Louisiana addressing the issue of whether a non-diverse health care provider is "fraudulently joined" when a lawsuit, filed in a Louisiana state court prior to the completion of the medical review panel proceedings, raises medical malpractice claims. *See Englande v. SmithKline, 206 F. Supp.2d 815 (E.D.La. 2002)* (Feldman, J.) (finding no fraudulent joinder and granting remand where non-diverse health care provider named in state lawsuit was dismissed by plaintiff pending completion of medical review panel); *Johnson v. Scimed, Inc., 92 F. Supp.2d 587 (W.D.La. 2000)* (Payne, J.) (granting remand and finding no fraudulent joinder in products liability/medical malpractice case where state petition alleged medical malpractice claims against non-diverse health care providers prior to completion of a medical review panel); *Kelly v. Danek Medical, Inc., 1994 U.S. Dist. LEXIS 8946, 1994 WL 321074 (E.D.La.)* (Beer, J.) (granting remand although non-diverse defendants were not named in state lawsuit in deference to medical review panel process because plaintiff had alleged a cause [*16] of action against the non-diverse defendants).

In *Ohler v. Purdue, 2002 U.S. Dist. LEXIS 2368, 2002 WL 88945 (E.D.La.)* (Engelhardt, J), the Court exhaustively discussed the "long unbroken line of cases" in the Eastern District of Louisiana refusing to find fraudulent joinder in cases where a state lawsuit named both a Louisiana health-care-provider-defendant and an out-of-state drug or medical device manufacturer or where the plaintiff alleged a medical malpractice claim in the state petition prior to completion of medical review panel proceedings. *Id. at ** 5-7.* The Court explained that in such cases, the medical defendants are merely subject to involuntary dismissal without prejudice, not a dismissal with prejudice, and, therefore, it could not be said that the original petition did not state a cause of action. *Id. at *5* (discussing *Erdey v. Am. Honda Co., Inc., 96 F.R.D. 593, 596 (M.D.La.)* (Parker, J.)); see also *Englande, 206 F. Supp.2d at 819* ("The key inquiry to a claim of fraudulent joinder is whether the facts as alleged support the plaintiff's substantive claims against the non-diverse defendants."). Because the state petitions in those cases [*17] alleged viable claims against the non-diverse defendants, the defendants could not show that there was "no possibility of recovery under state law or that there is

no reasonable basis for predicting recovery." *Id. at *7* (citations and internal quotations omitted). This line of cases stands for the proposition that complete diversity does not exist in a products liability/medical malpractice lawsuit where a cause of action is alleged in the state petition against diverse and non-diverse defendants, albeit prematurely, because the non-diverse medical defendants are not fraudulently joined. Therefore, in such a case, remand is appropriate. n15

n15 *See e.g., Englande, 206 F. Supp.2d at 819; Ohler, 2002 U.S. Dist. LEXIS 2368, [WL] at *6; Alexis v. GlaxoSmithKline Corp., 2002 U.S. Dist. LEXIS 9654, 2002 WL 1022261, *2 (E.D.La.)* ("Generally, federal courts in this district have held that even if plaintiffs' suit against the defendant doctors is premature, it nevertheless states a potentially viable claim against those defendants in state court [and], thus survives defendants' allegation of fraudulent joinder."); *Johnson, 92 F. Supp.2d at 591* (noting that a prematurity defense may be waived or, if exercised, only delays litigation of a stated cause of action); *Kelly, 1994 U.S. Dist. LEXIS 8946, [WL] at *2* ("Notwithstanding that the non-diverse defendants have not actually been named as parties yet, the court will not assume diversity jurisdiction because plaintiff has stated a cause of action [against the non-diverse defendants]."); *Perry v. McNulty, 794 F. Supp. 606, 608 (E.D.La. 1992)* ("While plaintiff may be procedurally barred at this time from proceeding against the non-diverse defendants, [plaintiff] certainly has stated a cause of action that could impose liability on the Louisiana defendants.").

[*18]

Plaintiff's reliance on these cases is misplaced. It is clear that Biomet and Howmedica are diverse from plaintiff. Moreover, plaintiff has neither joined non-diverse defendants in this action nor alleged facts sufficient to support a medical malpractice cause of action against any non-diverse defendant in his state petition. As noted above, "fraudulent joinder" is not at issue in this case. Nevertheless, plaintiff presses the argument that the "fraudulent joinder" cases support remand because he *intends* to amend his complaint and join non-diverse health care providers at the conclusion of the medical review panel proceedings.

Plaintiff argues that because a medical review panel has been convened, this case is similar to *Kelly v. Danek, 1994 U.S. Dist. LEXIS 8946, [WL]*. In *Kelly*, the plaintiff's state petition did not name the non-diverse health

care providers as defendants. *1994 U.S. Dist. LEXIS 8946, [WL] at *1.* Nevertheless, the Court held that remand was appropriate because the plaintiff had alleged in the state petition that Louisiana health care providers were joint tortfeasors and that a medical review panel had been convened. *1994 U.S. Dist. LEXIS 8946, [WL] at *2.* The Court concluded that such allegations [*19] were sufficient, in the face of a fraudulent joinder claim, to state a cause of action against the non-diverse defendants. *Id.*

In the present case, plaintiff argues that in light of the ongoing administrative review and his intention to add Louisiana defendants at the conclusion of the medical review panel proceedings, this Court should remand this action although it was filed against diverse defendants only. When such joinder occurs, plaintiff contends, this Court will no longer have subject matter jurisdiction and remand will be required. n16 Defendants counter that any number of circumstances may affect plaintiff's present intention to join such defendants and if, for whatever reason, plaintiff fails to join non-diverse parties to this lawsuit, defendants' right to a federal forum will be permanently lost. Further, defendants correctly argue that plaintiff has not taken any steps to join non-diverse parties to this lawsuit.

n16 On the record presented, the Court expresses no opinion on the merits of plaintiff's apparent belief that at the conclusion of the medical review panel, the joinder of non-diverse defendants would be automatic.

[*20]

The Court agrees with other Courts in this district holding that, "[a] possible future destruction of diversity, even by the addition of an indispensable party, is not a proper ground for remand." *Lillie v. Wyeth-Ayerst Laboratories, 1994 U.S. Dist. LEXIS 13834, 1994 WL 532091, at *1 (E.D.La.) (Clement, J.); Maquar, 1992 U.S. Dist. LEXIS 7077, [WL] at *1* (holding that remand is inappropriate where non-diverse defendants are merely contemplated and have not been made parties to the lawsuit). As Judge Clement noted in *Lillie,* "the fact that plaintiffs would like to have added the non-diverse defendant already, but are barred for procedural reasons from doing so, is simply not enough to justify remand." *Lillie, 1994 U.S. Dist. LEXIS 13834, [WL] at *1. Kelly* is not to the contrary. In that case, the Court determined subject matter jurisdiction by reference to allegations made in the state petition at the time of removal. Therefore, plaintiff's reliance on *Kelly* is unavailing. Plaintiff's state petition is devoid of allegations of liability for Ms. Oiler's death with respect to any non-diverse health care

provider. n17 Although the petition does state that Ms. Oiler's surgery was performed [*21] by Dr. Chad Millet at Memorial Medical Center, the sole legal theory of recovery alleged relates only to the negligence of Biomet and Howmedica. Plaintiff has not alleged that non-diverse health care providers are liable, jointly or otherwise, with the named defendants. Moreover, there is no mention of a medical review panel in the state petition. Therefore, this Court cannot find that a cause of action has been alleged as to any defendant other than the defendants named in this action.

n17 Moreover, the Court notes that while plaintiff alleges the citizenship of Biomet and Howmedica in his state petition, the petition is silent as to the citizenship of Dr. Millet. Therefore, this Court will not presume that Dr. Millet is a Louisiana citizen. However, for purposes of the present motion, the Court assumes that Memorial Medical Center, located in New Orleans, is a Louisiana health care provider. *See* Pl. Pet. PP III, IV.

Finally, plaintiff contends that this Court should remand this case in the interest of judicial [*22] economy because litigating his asserted claim against the present defendants in federal court is wasteful in light of the future joinder of the Louisiana health care providers. The Court declines plaintiff's invitation to determine its subject matter jurisdiction on the basis of judicial expediency. As Judge Clement succinctly stated in *Lillie:*

This Court may not remand a case simply because it believes that doing so would be a good idea. The Fifth Circuit has recently reaffirmed that "a district court exceeds its authority if it remands a case on grounds not expressly permitted by controlling statute." Only three such grounds have been recognized: predominance of pendent state claims; lack of subject of matter jurisdiction; and defects in removal procedure. If a case has been properly removed, and the motion for remand is not based on one of these three grounds, the court must retain the case

*Lillie, 1994 U.S. Dist. LEXIS 13834, [WL] at *1* (quoting *Buchner v. F.D.I.C., 981 F.2d 816, 820 (5th Cir. 1993)* and citing *Thermtron Prods. v. Hermansdorfer, 423 U.S. 336, 351, 96 S. Ct. 584, 593, 46 L. Ed. 2d 542 (1976)*

("We are not convinced that Congress [**23**] ever intended to extend carte blanche authority to the district courts to revise the federal statutes governing removal by remanding cases on grounds that seem justifiable to them but which are not recognized by the controlling statute")); see also *Johnson, 92 F. Supp.2d at 592* (noting that an interest in judicial economy does not permit a district court to change the rules regarding its jurisdiction).

Accordingly, for the above and foregoing reasons,

**IT IS ORDERED** that the motion of plaintiff, John Oiler, to remand is **DENIED.**

New Orleans, Louisiana, September 17, 2003.

LANCE M. AFRICK

**UNITED STATES DISTRICT JUDGE**

# EXHIBIT F



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

FRANK OMOBUDE, INDIVIDUALLY AND
ON BEHALF OF THE WRONGFUL DEATH
BENEFICIARIES OF JOSEPHINE
OMOBUDE, DECEASED                                    PLAINTIFF

VS.                                CIVIL ACTION NO. 3:03CV528LN

MERCK & CO., INC. AND
ROBERT M. EVANS, M.D.                               DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of plaintiff
Frank Omobude, individually and on behalf of the wrongful death
beneficiaries of Josephine Omobude, to remand pursuant to 28
U.S.C. § 1447. Defendant Merck & Co., Inc. has responded to the
motion and the court, having considered the memoranda of
authorities submitted by the parties, concludes that the motion is
not well taken and should be denied.

Plaintiff, a citizen of Mississippi, brought this suit in the
Circuit Court of Hinds County, Mississippi seeking to recover
damages for the alleged wrongful death of his mother, Josephine
Omobude, which he alleges resulted from her use of the
prescription drug Vioxx. Plaintiff sued Merck, the non-resident
corporation that manufactured and distributed Vioxx, and also
named as a defendant Robert M. Evans, M.D., the local physician
who is alleged to have prescribed Vioxx to Josephine Omobude.
Merck timely removed the case on the basis of diversity

jurisdiction under 28 U.S.C. § 1332,[1] contending, based on the allegations of plaintiff's complaint, that the requirement of an amount in controversy in excess of $75,000 is clearly satisfied,[2] and contending further that there is complete diversity of citizenship since Dr. Evans, though a Mississippi resident, has been fraudulently joined to defeat diversity. <u>See</u> <u>Heritage Bank</u> <u>v. Redcom Labs., Inc.</u>, 250 F.3d 319, 323 (5th Cir. 2001) (fraudulent joinder of non-diverse will not defeat diversity jurisdiction).

The premise of Merck's fraudulent joinder argument, as gleaned from its notice of removal and its response to plaintiff's motion to remand, is that plaintiff's complaint does not allege a sufficient factual basis for his putative claim against Dr. Evans. In particular, Merck notes that throughout his complaint, plaintiff repeatedly and consistently asserts that Merck encouraged the use of Vioxx in "improper customers;" that it "misrepresented the safety and effectiveness of this drug and concealed or understated its dangerous side effects;" that despite knowledge of the defective nature of its product and for the purpose of increasing its sales and profits at the expense of the

---

[1]      That statute provides, in pertinent part, as follows: (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different states.

[2]      The court notes that plaintiff has not disputed that the amount in controversy exceeds $75,000.

general public's health and safety, Merck aggressively marketed Vioxx both directly to the consuming public and indirectly to physicians through drug sales representatives as effective and safe and with inadequate warnings and instructions; and that Merck failed to provide timely and adequate post-marketing warnings or instructions after the manufacturer knew of the risk of injury from Vioxx.  On the basis of these allegations, plaintiff alleges claims against Merck for strict liability, negligence, breach of express and implied warranties and fraudulent misrepresentation. Merck argues that in light of plaintiff's repeated allegations that Merck misrepresented the safety and efficacy of its product and consistently concealed the known risks and dangers not only from the consuming public but also from physicians, plaintiff's charge of medical negligence against Dr. Evans based on nothing more than a conclusory allegation, wholly unaccompanied by any factual support, that Dr. Evans "knew, or should have known, of the dangerous side effects of these medications," and that "his prescribing such medications in light of such knowledge presents a deviation from the standard of care," is manifestly insufficient to state a cognizable claim.

In similar cases, this court has held that conclusory and contradictory allegations of knowledge, which were belied by the factual allegations of the complaint, demonstrated that the resident defendants against whom such allegations of knowledge were made, had been fraudulently joined.  See Brown v. Bristol Myers Squibb Co., Civ. Action No. 4:02CV301LN, slip op. at 11-12

3

(S.D. Miss. Dec. 2, 2002) (resident physician fraudulently joined where claim was asserted in conclusory terms and contradicted by allegations of the pharmaceutical manufacturer's concealment or misrepresentation of information); <u>Louis v. Wyeth-Ayerst Pharmaceuticals, Inc.</u>, Civ. Action No. 5:02CV102LN (S.D. Miss. Sept. 25, 2000) (same with respect to resident pharmacy defendant); <u>see also</u> <u>In re Rezulin Prods. Liab. Litig.</u>, No. 00 Civ. 2843, 2003 WL 31852826, at *2 (S.D.N.Y. Dec. 18, 2002) (physician defendant fraudulently joined based on conclusory allegations). In the court's opinion, the same conclusion is in order here.

In so concluding, the court is aware of plaintiff's argument that "[a] party may plead alternative and inconsistent facts or remedies against several parties without being barred." <u>Guy James Constr. Co. v. Trinity Indus., Inc.</u>, 644 525, 530 (5th Cir. 1981). While this may be true generally, the court's point here is that the plaintiff has not pled inconsistent facts, but rather has pled consistent facts that are inconsistent with the conclusion he pleads as to Dr. Evans. Every <u>factual</u> allegation this plaintiff has made is to the effect that Merck withheld and concealed and misrepresented the true facts regarding Vioxx; and yet, without alleging any factual basis for the charge, plaintiff concludes that Dr. Evans "knew or should have known" the truth about Vioxx that Merck had misrepresented and concealed.

The court does not suggest that a "knew or should have known" allegation" will necessarily always be conclusory and hence

4

insufficient to state a cognizable claim simply because it is not attended by a specific factual allegation as to the source of such knowledge. However, in cases like this, where a plaintiff has specifically alleged facts from which one would necessarily infer that the defendant in question would not have known information otherwise alleged to have been misrepresented or concealed from him, then in the court's opinion, in that limited circumstance, to sustain his pleading burden, the plaintiff would have to plead at least some facts tending to show why or how the defendant knew or should have known of the information that has been misrepresented to or concealed from him. Otherwise, the court would be in the untenable position of assuming that a factual basis exists for a conclusory allegation that is entirely inconsistent with every factual allegation in the complaint. No precedent of which this court is aware suggests that this would be proper.[3] The caselaw,

---

[3]    Plaintiff has cited a number of cases from this district in which claims against physician and pharmacy defendants have been found sufficient to state a claim, but in the court's opinion, these cases are readily distinguishable. Henderson v. GlaxoSmithKline, No. 5:01CV159BrS (S.D. Miss. March 21, 2000), involved a question of fraudulent misjoinder, which is not an issue here. In Hancock v. Bayer Corp., No. 3:03CV67WS (S.D. Miss. Apr. 18, 2003), plaintiff alleged that the physicians in question had committed numerous acts of negligence other than merely prescribing an allegedly defective drug, such as failing to timely recognize the plaintiffs' adverse drug reactions, failing to monitor the plaintiffs, and prescribing the drug in the wrong dosage and in a manner inconsistent with the product labeling and contraindicated usages. Womack v. Bayer Corp., No. 3:03CV157WS (S.D. Miss. Apr. 18, 2003), involved specific allegations of alleged negligence by the defendant doctor, including that the physicians should have known of the risks in light of warnings actually issued to physicians by Bayer. No such claims were pled here. Likewise in the several Bayer cases remanded by Judge Pickering and cited by plaintiff, including Easterling v. Bayer

in fact, is to the contrary.  See Great Plains Trust Co. v. Morgan
Stanley Dean Witter & Co., 313 F.3d 305, 313 (5th Cir. 2002)
(stating that the court will not "accept as true conclusory
allegations or unwarranted deductions of fact"); Sago v. Wal-Mart
Stores, Inc., 2003 WL 22076954, at *2 (S.D. Miss. 2003) (holding
that "conclusory or generic allegations of wrongdoing on the part
of the non-diverse defendant are not sufficient to show that the
defendant was not fraudulently joined") (citing Badon v. RJR
Nabisco, Inc., 224 F.3d 382, 392-93 (5th Cir. 2000); cf.
Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th
Cir. 1996) ("When considering a motion to dismiss for failure to
state a claim, the district court must take the factual
allegations of the complaint as true and resolve any ambiguities
or doubts regarding the sufficiency of the claim in favor of the
plaintiff.  However, conclusory allegations or legal conclusions
masquerading as factual conclusions will not suffice to prevent a
motion to dismiss."); Ross v. Citifinancial, Inc., 2003 WL
22026346, at *3 (5th Cir. 2003) (noting court's recognition of
"the similarity between standards for Federal Rule of Civil
Procedure 12(b)(6) (failure to state claim) and fraudulent

---

Corp., No. 2:03CV37PG (S.D. Miss. Apr. 24, 2003), Dearman v. Bayer
Corp., No. 2:03CV38PG (S.D. Miss. Apr. 24, 2003), Jones v. Bayer
Corp., No. 2:03CV53PG (S.D. Miss. Apr. 24, 2003), Keys v. Bayer
Corp., No. 2:03CV39PG (S.D. Miss. Apr. 24, 2003), and Sumrall v.
Bayer, No. 2:03CV52PG (S.D. Miss. Apr. 24, 2003), the court found
that the plaintiffs had made specific allegations of negligence
against the resident doctors "for failing to properly monitor and
test each of the Plaintiffs according to the defendant drug
companies' recommendations."  No such allegations were made in
plaintiff's complaint in the case at bar.  See infra note 4.

joinder" but noting that the latter inquiry is broader); <u>Cranston</u>
<u>v. Mariner Healthcare Mgmt. Co.</u>, 2003 WL 21517999, at *4 (N.D.
Miss. 2003)(stating that on motion to dismiss, "[t]he court will
not accept as true any conclusory allegations or unwarranted
deductions of fact").[4]

---

[4]    The court notes that the only claim plaintiff has
alleged against Dr. Evans in his complaint is medical negligence
based on the allegation that Dr. Evans "knew, or should have
known, of the dangerous side effects of these medications" and his
prescribing "said medications in light of such knowledge."  In his
motion to remand, however, plaintiff attempts to recharacterize
and add to his claim against Dr. Evans.  He argues, for example,
that his claim that Merck produced and distributed defective
products does not preclude his claim against Dr. Evans with regard
to his "negligence in prescribing Vioxx or his negligence in
monitoring plaintiff."  He argues further that
        [j]ust as Merck failed to adequately warn Plaintiff's
        Decedent's physician, Dr. Evans failed to conduct
        regular monitoring of Plaintiff's Decedent to ensure the
        discovery of potentially serious side effects. . .
        including, not limited to, failing to perform adequate
        tests before the initiation of Vioxx treatment, and
        failing to subsequently perform other tests after
        initiation of Vioxx therapy to monitor any change in the
        status of Plaintiff's decedent. . . .  Defendant Evans
        also failed to warn Plaintiff's Decedent of possible
        side effects. . . .
None of these allegations, or any hint of such allegations,
appears anywhere in the complaint which, as to Dr. Evans, alleges
only that he was negligent in prescribing Vioxx when he knew, or
should have known, of the dangers of the drug.  Plaintiff cannot
secure remand on the basis of allegations and claims that are not
set forth in his state court pleading.  <u>See</u> However, the
Cavallinis did not cite, nor have we found, any case in which such
evidence has been considered to determine whether a claim has been
stated against the nondiverse defendant under a legal theory not
alleged in the state court complaint.
<u>Cavallini v. State Farm Mut. Auto Ins. Co.</u>, 44 F.3d 256, 263
263 n.14 (5th Cir. 1995)(rejecting plaintiff's "assertion that
post-removal affidavits can be used to defeat removal by
presenting new causes of action").

7

For the foregoing reasons, the court concludes that plaintiff's motion to remand is not well taken and should be denied.

Accordingly, it is ordered that plaintiff's motion to remand is denied.

SO ORDERED this 3rd day of October, 2003.

_____
UNITED STATES DISTRICT JUDGE

8

# EXHIBIT G



IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

BENNETTA CHILES, ET AL.,        §
                                §
        Plaintiffs,             §
                                §
VS.                             §    NO. 4:03-CV-802-A
                                §
AMERICAN HOME PRODUCTS          §
CORPORATION, ET AL.,            §
                                §
        Defendants.             §

### ORDER

Came on for consideration the motion of plaintiffs, Bennetta
Chiles, individually and as next friend of Tony Chiles, a minor;
Holly Blackburn and Mark Blackburn, each individually and as next
friends of Mitchell Reed Blackburn, a minor; Lori M. Reed,
individually and as next friend of Ryan Joseph Reed, a minor; and
Krissy Fagan and Carl Fagan, each individually and as next
friends of Bradley Kole Fagan, a minor, to remand.  The court,
having considered the motion, the response of defendants Abbott
Laboratories, SmithKline Beecham Corporation d/b/a
GlaxoSmithKline, Aventis Pasteur, Inc., Merck & Co., Inc., Wyeth,
and Eli Lilly & Company, the reply, the record, and applicable
authorities, finds that the motion should be denied.

On June 30, 2003, plaintiffs filed their original petition
in the 96th Judicial District Court of Tarrant County, Texas.
The action was removed by notice of removal filed July 21, 2003.
Plaintiffs contend that they and their minor children were

injured as a result of the children having received vaccines
containing Thimerosal.  Plaintiffs have sued the manufacturers
and distributors of the vaccines that allegedly injured their
children and have named their children's treating physicians,
Marcia Sampson, M.D., Alfred Santesteban, M.D., John Chapman,
M.D., and Richard Chiarello, M.D. ("physicians"), as defendants.
The removing defendants maintain that the physicians have been
fraudulently joined in order to defeat diversity.

In assessing a claim of fraudulent joinder, the court
determines whether there is any reasonable basis for predicting
that state law might impose liability on the facts involved.
Travis v. Irby, 326 F.3d 644, 647-48 (5th Cir. 2003).  The
possibility that state law might impose liability must be
reasonable, not merely theoretical.  Great Plains Trust Co. v.
Morgan Stanley Dean Witter & Co., 313 F.3d 305, 312 (5th Cir.
2002).  As the Fifth Circuit has noted, "pleadings matter" when
the court addresses fraudulent joinder.  Id. at 328.  The failure
to specify a factual basis for recovery against a non-diverse
party constitutes a failure to state a claim and fraudulent
joinder of that party.  Waters v. State Farm Mut. Auto. Ins. Co.,
158 F.R.D. 107, 109 (S.D. Tex. 1994).  Speculative and conclusory
allegations do not state a cause of action without factual
support.  Id. at 108.  Fraudulent joinder will be found where a
plaintiff has failed to plead any specific acts of negligence

2

against the non-diverse defendant. <u>See, e.g.</u>, <u>Griggs v. State
Farm Lloyds</u>, 181 F.3d 694, 699 (5th Cir. 1999); <u>Cavallini v.
State Farm Mut. Auto. Ins. Co.</u>, 44 F.3d 256, 260-61 (5th Cir.
1995); <u>McIntire v. Rollins, Inc.</u>, 888 F. Supp. 68, 69 (S.D. Tex.
1995).

In this case, plaintiffs' original petition does not set
forth any facts that would support a claim against the
physicians. Under the heading "Liability of Healthcare
Defendants," plaintiffs allege:

> 11.02  The [physicians] are liable for their own
> distinct tortious conduct, separate and apart from the
> conduct of the Manufacturer Defendants, although they
> acted in concert with them.

> 11.03  The conduct of the [physicians] forms an
> independent basis for imposing liability on them for
> commission of the acts referenced above.

Pls.' Pet. at 16.  Plaintiffs also plead:

> 4.06  All of the Manufacturer Defendants
> deliberately or negligently misrepresented to the
> public the efficacy and safety of these products that
> contained Thimerosal.  Because of their failure, in all
> instances, to advise doctors or consumers that the
> usage of Thimerosal containing products could result in
> mercury poisoning, the result is that plaintiff's child
> [sic] has experienced severe bodily injury.

> 4.07  The Manufacturer Defendants purposely
> downplayed and understated the health hazards and risks
> associated with Thimerosal.  The Manufacturer
> Defendants through promotional literature, deceived
> potential users of these products by relaying positive
> information and manipulating statistics to suggest
> widespread safety, while downplaying the known adverse
> and serious health effects of ethyl mercury.  The
> Manufacturer Defendants falsely and fraudulently kept
> relevant information from potential users and minimized

user concern regarding the safety of the products that
contained Thimerosal.

Id. at 11-12.[1]  Thus, they have affirmatively pleaded facts that
negate any possible liability of the physicians.

Plaintiffs apparently recognize the inadequacy of their
original petition to state claims against the physicians.  They
have attempted to rectify this deficiency through the submission
of affidavits in support of their reply to defendants' opposition
to the motion to remand.  But, the conclusory allegations in the
affidavits that each of the physicians would or should have been
aware of Thimerosal's dangers are simply insufficient to rectify
the pleading deficiency.  Having affirmatively pleaded that the
manufacturer defendants deliberately or negligently deceived
everyone else regarding the safety and efficacy of products
containing Thimerosal, plaintiffs' speculation that the
physicians knew or should have know of any danger is insufficient
to support a cause of action.

Finally, the court notes that it is not relying on a common
defense theory in determining that the physicians have been
fraudulently joined.  Accordingly, Collins v. American Home
Products Corporation, 2003 WL 21998574 (5th Cir. 2003), is not
relevant to the court's decision.  See Pls.' Br. in Supp. of
their Reply at 7.

---

[1] The pages in the original petition that should be numbered
10 and 11 are numbered 1 and 2.

4

The court ORDERS that plaintiffs' motion to remand be, and is hereby, denied.

SIGNED September 26, 2003.

JOHN McBRYDE
United States District Judge